UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-20079-SINGHAL/McAliley

BRUCE MUNRO,

    Plaintiff,

vs.

FAIRCHILD TROPICAL BOTANIC
GARDEN, INC.; NIGHT GARDEN, LLC;
KILBURN LIVE, LLC; ZHONGSHAN G-
LIGHTS LIGHTING CO., LTD., AND
NANNETTE M. ZAPATA,

    Defendants.
_____/

**DEFENDANTS FAIRCHILD, NIGHT GARDEN, KILBURN AND ZAPATA'S MOTION TO DISMISS COMPLAINT AND MOTION FOR MORE DEFINITE STATEMENT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(e), Defendants Fairchild Tropical Botanic Garden, Inc., ("Fairchild"), Night Garden, LLC ("Night Garden"), Kilburn Live, LLC ("Kilburn") and Nannette M. Zapata ("Zapata") (collectively "NightGarden Defendants") move this Court for an order dismissing Plaintiff Bruce Munro's ("Plaintiff") Complaint ("Complaint") for failure to state a claim upon which relief may be granted, and for a more definite statement. In support of this motion, NightGarden Defendants state:

**Introduction**

This is an action for purported copyright infringement and violation of the Digital Millennium Copyright Act ("DMCA") arising from NightGarden Defendants' alleged

use of light fixtures in an immersive light event at Fairchild called *NightGarden*. Plaintiff has purported to bring three claims -- Count I for Direct Copyright Infringement, Count II for Contributory Copyright Infringement, and Count III for Copyright Management Information Violations under 17 U.S.C. § 1202(a) and (b).

*NightGarden* Event

The *NightGarden* event is a two-month outdoor immersive light experience occurring at Fairchild during the winter holiday months (November-January). As part of the event, visitors walk through Fairchild gardens on a designated path through many acres of exhibits ranging from an illuminated talking tree and augmented reality to holographs, spinning lights, sculptures and music. The event also features food trucks and libations. *NightGarden* occurs entirely on Fairchild garden property and is organized by Fairchild, Kilburn and Night Garden. Plaintiff's Complaint centers on lights that he believes were displayed in an area called *Mystic Mushrooms* and that consists of a miniscule portion of the event.

*Plaintiff's Claims*

First, Plaintiff's copyright claims center on light fixtures and/or displays purportedly owned by Plaintiff. Plaintiff uses the term "Munro Works", without defining it, to refer to a number of light fixtures bearing the names *Forest of Light, Fireflies, Field of Light, River of Light, Water-Towers* and *Brass Monkeys*, among others. (DE [1], ¶ 8). Against NightGarden Defendants, Plaintiff complains about copying related to four works - *Forest of Light, Fireflies, Field of Light* and *River of Light* ("Works"). Other than *Field of Light*, Plaintiff does not own United States copyright registrations on any

Work. In addition, Plaintiff does not identify what portion of the Works is subject to copyright protection, or what portion he alleges was infringed. To the extent Plaintiff intends to assert that he owns the right to useful articles – light bulbs – the Complaint must be dismissed. To the extent Plaintiff intends to assert that there is some non-utilitarian function to his Works, he has not done so, warranting dismissal for failure to state a claim or requiring a more definite statement.

Second, Plaintiff's claim that the NightGarden Defendants removed or altered copyright management information ("CMI Claim") in violation of Section 1202 of the Copyright Act is implausible and must be dismissed under Rule 12(b)(6). Plaintiff has not described or alleged the existence of CMI on his Works. He has not alleged the removal or alteration of any CMI on the Works. To the extent NightGarden Defendants understand this CMI claim, it appears to be based upon NightGarden Defendants' illustrated guide map of the NightGarden event ("Guide") and a photograph (or signage) on the *NightGarden* website. The Guide and website photo are not owned by Plaintiff, nor are they alleged to be Plaintiff's Works. A CMI claim under Section 1202 simply cannot be based on works that 1) are created and owned solely by NightGarden Defendants; and 2) do not display, nor are alleged to have displayed, any CMI owned by Plaintiff. *See* 17 U.S.C. § 1202(a)-(b).

Further as to the CMI claim, Plaintiff has not – and cannot – allege that NightGarden Defendants acted with the requisite intent under Section 1202 to encourage or conceal copyright infringement. Plaintiff's Section 1202 CMI claim fails both for failure to plead any facts forming the basis of the claim, and because the Complaint's

3

basic, conclusory allegations regarding NightGarden Defendants' knowledge and intent cannot withstand scrutiny under basic federal pleading standards.

### Argument

The purpose of Rule 12(b)(6) is to permit the court to terminate actions that are fatally flawed from the start, to spare the litigant and the court the burdens of unnecessary pretrial and trial activity. When evaluating a motion to dismiss a court "must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff." *Hunnings v. Texaco, Inc.*, 29 F. 3d 1480, 1484 (11th Cir. 1994). However, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this pleading requirement, a complaint must plead facts that would satisfy the elements of a claim. *Iqbal*, 556 U.S. at 679. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Although a complaint does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Importantly, the United States Supreme Court has instructed that the plausibility requirement includes pleading of "malice, intent, knowledge, or other conditions of a person's mind." *Iqbal*, 556 U.S. at 686-87 ("Rule 9 merely excuses a party from pleading [malice] under an elevated

pleading standard. It does not give [a party] license to evade the less rigid – though still operative – strictures of Rule 8").

### A. <u>Plaintiff Fails to State a Claim for Copyright Infringement.</u>

The Copyright Act protects only pictorial, graphic, and sculptural works. 17 U.S.C. § 101. These works include "works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned." *Norris Indus., Inc. v. Int'l Tel. & Tel. Corp.*, 696 F.2d 918, 923 (11th Cir. 1983). To state a claim for copyright infringement, a complaint must allege facts to demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). With respect to the second element, a plaintiff must demonstrate that the copying in question amounts to infringement because substantial similarity exists between the defendant's work and the <u>protectable elements</u> of the plaintiff's work. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1325 (11th Cir. 2012) ("plaintiff may show copying by demonstrating that the defendants had access to the copyrighted work and that the [protectable elements of the] works are substantially similar") (alterations in original) (internal citations omitted). Where the copyrightability of subject matter is not plead, the complaint fails to state a claim. *Classic Concepts, Inc. v. Linen Source, Inc.*, Nos. 04-8088, 04-8457, 2006 U.S. Dist. LEXIS 96767, at *5 (C.D. Cal. Apr. 27, 2006) (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 13.01[A] (2005)) ("ownership element…breaks down into…'copyrightability of the subject matter.'").

United States copyright registration holders are afforded a presumption of validity on their work and facts stated in the registration certificate. *See* 17 U.S.C. § 410(c); *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1302-03 (11th Cir. 2012) ("A certificate of registration serves as prima facie evidence of copyright validity. Further, only owners of registered works may collect statutory damages and attorney's fees."). Plaintiff does not allege he holds United States Copyright Registrations for any work except *Field of Lights*. (DE [1], ¶ 32). Accordingly, he is not afforded a presumption of validity on the majority of the Works and bears the burden to prove a valid copyright on the Works.

It is axiomatic that Plaintiff must allege the valid copyrightable elements in his claimed Works. In the Complaint, however, Plaintiff claims copyright protection in the fiber-optic light products which encompass his "sculptural works." (DE [1] ¶¶ 23, 41, 55). Specifically, Plaintiff alleges NightGarden Defendants infringed his Works by displaying "replicas" of the "fiber-optic light products" that were sold by Defendant G-Lights. *Id.* at ¶ 41, 55. Importantly, Plaintiff fails to allege any individual, protectible design element on any of his Works. *Progressive Lighting, Inc. v. Loew's Home Ctrs., Inc.*, 549 Fed. Appx. 913, 921 (11th Cir. 2013) ("our precedent makes clear that an entire useful article cannot receive copyright protection"); *Bel Air Lighting, Inc., v. Progressive Lighting, Inc.*, No. 1:07-cv-2822, 2010 U.S. Dist. LEXIS 23468, at *6 (N.D. Ga. Mar. 15, 2010) (concluding designs for light fixtures were not copyrightable); *Ochre LLC v. Rockwell Architecture, Planning & Design, P.C.*, 530 Fed. Appx. 19, 20 (2d Cir. 2013) (affirming 12(b)(6) dismissal of copyright claim where "light fixtures…[we]re plainly useful articles"); U.S. Copyright Office, Compendium of U.S. Copyright Office Practices

§ 906.8 (3d ed. 2017) ("a lamp is considered a useful article, because it has an intrinsic utilitarian function, namely, to provide lighting.").

The design of a useful article is considered "a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified <u>separately from, and are capable of existing independently of</u>, the utilitarian aspects of the article." *Norris Indus., Inc.* 696 F.2d at 923. (emphasis added). Thus, light fixtures are not generally copyrightable. Rather, Plaintiff is required to plead facts demonstrating that the creative elements in the Works are separable from the light fixtures' utilitarian elements. Plaintiff has not done so. As such, the complaint should be dismissed.[1]

1. ***No Aspect of the Light Fixtures is Physically Separable from its Utilitarian Function.***

Physical separability exists only where an artistic component of the useful article can be removed from the original item and sold separately without adversely impacting the article's functionality. *Norris Indus. Inc.*, 696 F.2d at 923 (physical separability means "that after removal of those features which are necessary for the utilitarian function of the article, the artistic features would nevertheless remain intact."). That physically separable design element would then be eligible for copyright protection. *Id*.

Where there is no alleged separability, as here, dismissal is proper. In *Aqua Creations*, the Court granted defendant's motion to dismiss a copyright claim finding the

---

[1] When the direct infringement claim is dismissed, the contributory infringement claim must be dismissed as well. *Peter Letterese and Assocs. v. World Inst. Of Scientology Enters.,* 533 F.3d at 1287 n.11 (11th Cir. 2008) ("[T]here can be no contributory infringement without a direct infringement.").

plaintiff's lighting fixtures did not possess physical or conceptual elements that were separable from the lighting fixtures' functional features. *Aqua Creations v. Hilton Hotels*, No. 10-cv-246, 2011 U.S. Dist. LEXIS 31982, at *13 (S.D.N.Y. Mar. 28, 2011). There, the plaintiff had claimed that the artistically-shaped shades of his lighting fixtures were physically separable from the functional elements of the lighting fixtures (light bulbs, wires, etc.) because they could be physically removed from the fixtures without interfering with the fixtures' primary function, *i.e.* to provide light. *Id*. at *15-16. The court disagreed and granted the motion, finding that "although Aqua's light fixture may still 'illuminate a room' once its decorative shades are removed, a shade is an important functional element of a lighting fixture" and its removal "would certainly adversely affect that functionality." *Id*. at *16.

Here, no aspect of the light-based Works is physically separable. Indeed, Plaintiff has not alleged that any component of his Works can actually be removed from the original light fixture without adversely impacting the Work's functionality as a light bulb. A plain reading of the Complaint makes clear that the Works serve one useful utilitarian purpose – lighting – and removing any portion would affect that purpose. The wiring and light bulbs provide the means for illumination, while the shades and optic fibers color and filter the light. If the frames or wiring were removed, the Works would have no structure or light. If the bulbs were removed, the works would not illuminate. The four corners of the Complaint do not allow a reader to glean any other conclusion. Just as the lamp shade in *Aqua*, no component of the Works can be removed without affecting their functionality.

8

### 2. *No Aspect of the Light Fixtures is Conceptually Separable from its Utilitarian Function.*

Conceptual separability exists only where an artistic component of the useful article is wholly unrelated to the function of the article. *Norris*, 696 F.2d at 924 (conceptual separability extends to "ornamental, superfluous designs contained within useful objects" but does not extend to "functional components of utilitarian articles, no matter how artistically designed."). Moreover, "the mere fact that certain [artistic] features are nonfunctional or could have been designed differently is irrelevant under the statutory definition of pictorial, graphic and sculptural works. Thus, the fact that a light[] fixture might resemble abstract sculpture would not transform the light[] fixture into a copyrightable work." *Bel Air Lighting, Inc.*, 2010 U.S. Dist. LEXIS 23468, at *13-14 (citing U.S. Copyright Office, Compendium II, Copyright Office Practices § 505.03) (alterations in original) (emphasis added).

In the present case, Plaintiff has again failed to plead what, if any, elements of the lighting designs are conceptually separable from the utilitarian aspects of his Works. Looking at the Complaint and Exhibits thereto, the Works appear to be largely circular bulbs with attached wiring to a power outlet (*See* DE [1])[2]. The bulbs are related to the function of the light, and are not alleged to have any conceptual separability from the lighting function. Even if the light fixtures originated as a purely artistic creation, they were adapted to accommodate and further a utilitarian purpose – illuminate whatever field or landscape they were positioned on. Because the features of the Works are

---

[2] The *Fireflies* appear to be light strands rather than circular bulbs, but still appear to present one purpose – to provide light.

functional components, it does not matter that they may be creatively arranged to create the appearance of a "river," or placed in a "forest." *See Norris*, 696 F.2d at 924. It is evident from the Complaint that each component of the fixtures is functional and not separable. Accordingly, as there is no physical or conceptual separability warranting copyright protection, Plaintiff has failed to state a claim for copyright infringement for any aspect of the Works and his copyright claims should be dismissed.

### B. Alternatively, Plaintiff Should Be Required to Plead A More Definite Statement.

While NightGarden Defendants believe dismissal is appropriate, to the extent this Court believes a plain reading of the Complaint does not warrant dismissal, Plaintiff should still be required to plead a more definite statement. When a complaint is "so vague or ambiguous that the party cannot reasonably prepare a response," the Court may require a plaintiff to file an amended complaint. Fed. R. Civ. P. 12(e); *See also Adobe Sys. Inc. v. Software Speedy*, No. C-14-2152, 2014 U.S. Dist. LEXIS 173670, at *16 (N.D. Cal. Dec. 16, 2014) (granting 12(e) motion to clarify "general allegation that Defendants have infringed . . . copyrights"); *see also Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36-37 (S.D.N.Y. 1992) (granting 12(e) motion as to deficient copyright allegations).

In the Complaint, Plaintiff makes vague and sweeping allegations of copyright infringement without specifying the scope of his alleged copyrights, his ownership of protectable elements in the works, or physical and/or conceptual separability in the works. For example, Plaintiff merely alleges that Defendants' display of "replicas" of his "light products" purchased from Defendant G-Lights infringed his copyrighted works, without pointing out or referencing any of the alleged original, protectable elements that

10

have been infringed. (DE [1] ¶¶ 23, 44, 51). As discussed above, Plaintiff fails to allege what design features are conceptually or physically separable from the lights' utilitarian purpose. Instead, Plaintiff generally asserts ownership of copyrights in fiber-optic lights. Defendants cannot reasonably answer such vague and ambiguous allegations. *See, e.g. Chestang v. Yahoo Inc.*, No. 2:11-cv-00989, 2011 U.S. Dist. LEXIS 110908, at *7 (E.D. Cal. Sept. 28, 2011) ("plaintiff must, at a minimum, identify the copyrighted material at issue with specificity sufficient to put defendant on notice of what he claims was infringed."); *Brown v. Adidas Int.*, 938 F. Supp. 628, 636 (S.D. Cal. 1996) ("the complaint fails to make clear the designs upon which Adidas allegedly infringed and the designs to which Brown allegedly owns a copyright.").

The Complaint should be dismissed for the reasons set forth in Section A, *supra*. But because the Complaint also fails to meet the pleading requirement of Rule 8 for a claim of copyright infringement, Plaintiff – at minimum – should be required to amend the Complaint: 1) to identify the specific ornamental designs on the light fixtures that are allegedly protected by the asserted copyright, namely, the design elements it contends are original and separable, and 2) the corresponding design elements on the accused NightGarden exhibit that allegedly infringe the purported copyrights.

**C. Plaintiff Fails to State a Claim for Violation of 17 U.S.C. § 1202.**

Plaintiff also purports to bring a DMCA claim for "CMI Violations" (DE [1], pg. 31-32). As an initial matter, Plaintiff's Section 1202 claim should be dismissed based on Plaintiff's failure to allege the most fundamental element of the claim against

NightGarden Defendants – existence of CMI on any of Plaintiff's Works.³ *BanxCorp. v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (existence of CMI is essential element of the claim). Instead, Plaintiff complains that NightGarden Defendants did not attribute his name on NightGarden Defendants' proprietary, illustrated Guide map, or on general "signage" or Defendant's website, none of which is alleged to be owned by Plaintiff. Plaintiff does not even make clear what "signage" entails. Although Plaintiff generally cites to both sub-Sections 1202(a) and 1202(b) in his Complaint, the alleged facts do not form a basis for a CMI claim under either of those sub-Sections.

Under the Copyright Act, CMI is defined in relevant part as "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c)(3). CMI is intended to convey information and usually includes the author's name, title of the work upon which it appears, or a copyright logo with date (ex. © *John Doe 2020*). *See Watson v. Kappa Map Grp., LLC*, No. 1:14-CV-100-TWT, 2015 U.S. Dist. LEXIS 82941, at *5 (N.D. Ga. June 25, 2015) (disposing CMI claim related to CMI "Copyright #x00A9; Kappa Map Group, LLC 2012" printed on Defendant's own map).

To state a claim for CMI violations under sub-Section 1202(a), Plaintiff must plausibly allege that NightGarden Defendants knowingly, and with the intent to induce, enable, facilitate or conceal infringement (1) provided copyright management information that is false, or (2) distributed or imported for distribution copyright

---

³ Plaintiff has purported to allege claims against Defendant G-Lights related to photographs displayed on G-Lights website. Those photographs and website are not at issue against NightGarden Defendants.

management information that is false. 17 U.S.C. §§ 1202(a)(1)-(2). Importantly, courts have rejected CMI claims that are based not on Plaintiff's works, but on a Defendant's copyright markings on Defendant's own works. *See Odom v. Navarro*, No. 09-21480-CIV-UNGARO, 2010 U.S. Dist. LEXIS 151724, at *16-17 (S.D. Fla. Mar. 10, 2010) (holding there was no legal authority supporting a claim that defendants' copyright notice on its website "© 2008-2009" concealed infringement of Plaintiff's images used on that same website).

Sub-Section 1202(b) also provides that no person shall, "without the authority of the copyright owner . . . intentionally remove or alter" copyright management information, or distribute or import for distribution copyright management information. 17 U.S.C. §§ 1202(b)(1)-(2). In other words, Plaintiff must plausibly allege that <u>his</u> Works contained CMI, and that NightGarden Defendants intentionally removed or altered Plaintiff's identified CMI <u>from Plaintiff's Works</u>. *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 929 (N.D. Ill. 2013) (dismissing CMI claim and stating "a defendant must remove the CMI from the 'body' or the 'area around' the work to violate DMCA.") (internal citations omitted). The Court may award attorneys' fees to the prevailing party per 17 U.S.C. § 1203.

1. ***Plaintiff Fails to Allege Any Facts that Support a CMI Claim.***

Plaintiff's Complaint wholly fails to state a CMI Claim. Plaintiff has generally recited statutory language contained in both sub-Sections 1202(a) and (b), and against all

13

Defendants lumped together,[4] stating that they are "knowingly providing, distributing, and importing for distribution copyright management information ("CMI") that is false; by intentionally removing and altering CMI; and by distributing, importing for distribution and publicly performing and displaying copyright and replicas of Munro Works. . ." (DE [1], ¶ 88). Such conclusory allegations do not survive dismissal scrutiny. *Appsoft Dev., Inc. v. Diers, Inc.,* No. 3:13-cv-1520-J-32JBT, 2014 U.S. Dist. LEXIS 109712, at *14 (M.D. Fla. Aug. 8, 2014) (dismissing § 1202 claims where Plaintiff simply recited statutory language).

Regarding sub-Section 1202(a), Plaintiff must allege that NightGarden Defendants intentionally concealed infringement by providing or distributing false CMI. To support this CMI Claim, Plaintiff points to NightGarden Defendants' own works, stating "defendants use phony titles and self-attribution in an effort to conceal that they are exploiting copyrighted materials. . ." and accuse NightGarden Defendants of using "false title and authorship" (DE [1] ¶¶ 62; 89). Specifically, Plaintiff alleges that one area on NightGarden Defendants' Guide, called "*Mystic Mushrooms*" may have – in person – included light displays similar to those owned by Plaintiff. *Id*. ¶ 62. A review of the Guide quickly makes clear that any CMI Claim here is implausible. NightGarden Defendants' Guide is similar to a theme-park map, displaying areas of different interactive experiences coined by names fitting within a theme, and including useful

---

[4] Adding to the confusion, Plaintiff includes G-Lights in the allegations together with NightGarden Defendants. As part of this Claim, Plaintiff also lists the titles of works not previously addressed in the Complaint and not alleged to be relevant to NightGarden Defendants' purported actions. (DE [1], ¶ 88)

14

information such as the location of restrooms. A copy of the Guide, as displayed in the Complaint (DE [1], p. 25), is below.



This Guide is not owned by Plaintiff, nor is it alleged to be. Plaintiff does not allege that any of <u>his</u> CMI is located on the Guide. Plaintiff does not allege that *Mystic Mushrooms* – or any other items listed on the Guide – is CMI at all. Plaintiff's allegation that one portion of the in-person light display may include copies of Plaintiff's Works does not form a basis for any CMI Claim related to an event Guide or signage. There are simply no facts forming a basis for a sub-Section 1202(a) CMI Claim. *See Pers. Keepsakes, Inc.*, *supra,* 975 F. Supp. 2d at 929 (dismissing § 1202(a) claim where CMI notice was displayed at the bottom of a website and not conveyed with allegedly infringed works).

The CMI Claims similarly fail under sub-Section 1202(b). To state a claim under sub-Section (b), Plaintiff must allege that NightGarden Defendants intentionally removed or altered CMI from Plaintiff's Works. In addition to the basic failure to actually identify Plaintiff-owned CMI, Plaintiff never attempts to explain how NightGarden Defendants removed or altered CMI from any of Plaintiff's Works, if CMI existed. *See Fey v. Panacea Mgmt. Grp. LLC*, 261 F. Supp. 3d 1297, 1313 (N.D. Ga. 2017) (granting judgment for defendant where there was no visible or legible name that defendants could have removed or altered in violation of § 1202(b)(1)). *See Spinelli v. NFL*, 903 F.3d 185, 204 (2d Cir. 2018) (affirming dismissal of section 1202 claim where complaint contained only conclusory allegation that "CMI was removed" and did not describe the information removed from the photographs or allege that the works contained any identification or credit). Plaintiff's only allegation is a "removing and altering CMI" recital from the statutory language, with no further factual basis or explanation. (DE [1], ¶88). This is insufficient to survive a motion to dismiss.

As stated above, it is clear that an action for removal of CMI requires the information <u>to be removed from a plaintiff's product or original work.</u> *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010). In *Faulkner Press,* Plaintiff brought a DMCA claim under sub-Sections 1202(a) and (b). The defendant was alleged to have taken some of the plaintiff's class notes, copied them, and incorporated the notes into defendant's note packages. *Id.* No CMI was removed from plaintiff's copyrighted notes, warranting dismissal of the sub-Section 1202(b) claim. Defendants also added "Einstein's Notes ©" onto defendant's note packages. *Id.* at 1360.

The Court held that the defendant's packages were a different product than plaintiff's and adding defendant's own marking to its own product was not a violation of 1202(a). *Id.*

Much like *Faulkner Press,* NightGarden Defendants have created their own works – a Guide map and event signage. In doing so, NightGarden Defendants have not used any of Plaintiff's Works or removed any CMI from Plaintiff's Works. Plaintiff has not alleged any facts otherwise. Further, NightGarden Defendants' addition of things like "*FTBG*", "*Night Garden*", "*Mystic Mushrooms*" or "*Orchid Trail*" to NightGarden Defendants' Guide – if even considered CMI – is NightGarden Defendants' own work and not a violation of sub-Section 1202(a). Accordingly, dismissal of the DMCA CMI Claim against NightGarden Defendants is warranted.

### 2. *Plaintiff has Failed to Allege the Requisite Intent.*

Finally, Plaintiff must allege more than speculation to support an allegation that NightGarden Defendants acted with the requisite intent under Section 1202. *Smith v. City of Sumiton*, 578 Fed. Appx. 933, 935 n.4 (11th Cir. 2014) ("for purposes of a Rule 12(b)(6) motion to dismiss, [court] do[es] not have to take as true allegations based merely 'upon information and belief.'"); *see also Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013-14 (11th Cir. 2005) (allegations based on information and belief do not provide an "indicia of reliability" because they fail to provide an underlying basis for such allegations). A violation of Section 1202 requires a showing that "the defendant <u>intentionally</u> removed or altered CMI knowing, or having reasonable grounds to know, that the removal will aid infringement."*Aeropost Int'l Servs. v. Aerocasillas, S.A.*, No. 09-23437-CIV-MORE, 2011 U.S. Dist. LEXIS 165635, at *19-20 (S.D. Fla. Mar. 31, 2011)

(emphasis added). Plaintiff has failed to plead specific underlying facts from which this Court can reasonably infer the requisite intent, providing another basis for dismissal. Instead, Plaintiff alleges "upon information and belief, Defendants' removals and falsifications of CMI were committed knowingly…" (DE [1], ¶89). There are no facts that have or can be alleged to support Count III for DMCA violations, and any amendment of this claim would therefore be futile. Accordingly, this Court should dismiss the Complaint (DE [1]) and award NightGarden Defendants their fees and costs as prevailing parties per 17 U.S.C. §§ 505; 1203.

## Conclusion

Plaintiff has failed to state a claim upon which relief can be granted for any of his claims. Accordingly, for the foregoing reasons, NightGarden Defendants respectfully request that Plaintiff's Complaint be dismissed in its entirety under Rule 12(b)(6) and/or 12(e).

Dated: March 10, 2020.

Respectfully Submitted,

SHULLMAN FUGATE PLLC

**Allison S. Lovelady**
Deanna K. Shullman (Fl Bar No. 514462)
Allison S. Lovelady (Fl Bar No. 70662)
Giselle M. Girones (Fl Bar No. 124373)
2101 Vista Parkway, Suite 4006
West Palm Beach, FL  33411
Tel: (561) 614-2592
dshullman@shullmanfugate.com
alovelady@shullmanfugate.com
ggirones@shullmanfugate.com
*Attorneys for Defendants Kilburn, Night Garden, Fairchild and Zapata*

4836-2235-4338, v. 1