**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:20-cv-20079-ASH/Louis**

BRUCE MUNRO and BRUCE MUNRO,
LTD. d/b/a BRUCE MUNRO STUDIO,

        Plaintiff,

v.

FAIRCHILD TROPICAL BOTANIC
GARDEN, INC., NIGHT GARDEN, LLC,
KILBURN LIVE, LLC, ZHONGSHAN G-
LIGHTS LIGHTING CO., LTD., NANETTE
M. ZAPATA, KILBURN MEDIA, LLC,
MARK C. MANUEL, IMAGINER LTD,
IMAGINER, INC. and MAX PAINTER,

        Defendants.

_____

**AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**
**(INJUNCTIVE RELIEF DEMANDED)**

        Plaintiffs BRUCE MUNRO and BRUCE MUNRO LTD. ("Plaintiffs") respectfully allege

as follows against Defendants FAIRCHILD TROPICAL BOTANIC GARDEN, INC.,

NANETTE M. ZAPATA, NIGHT GARDEN, LLC, KILBURN LIVE, LLC, KILBURN

MEDIA, LLC, MARK C. MANUEL, IMAGINER LTD, IMAGINER INC., MAX PAINTER,

and ZHONGSHAN G-LIGHTS LIGHTING CO., LTD.

## TABLE OF CONTENTS

Table of Figures ............................................................................................................ 3

Parties ........................................................................................................................... 5

Nature of the Claims .................................................................................................... 8

Jurisdiction and Venue ................................................................................................. 8

Conditions Precedent ................................................................................................... 9

Background Facts .......................................................................................................... 9

   A.  Internationally-Acclaimed Artist Bruce Munro ................................................... 9

   B.  Munro's Copyrighted Works & Copyright Management Information ............... 14

      1.   UK Work #1: Field of Light (Long Knoll, Wilshire, UK, 2004) ................... 15

      2.   UK Work #2: *Field of Light* (Eden Project, Cornwall, UK, 2008) ............... 16

      3.   UK Work #3: *Fireflies* (Residential Installation, UK, 2008) & (*Arrow Spring*, Longwood Gardens, PA 2012) & (*Arrow Spring*, The Hermitage, TN 2014)...................... 19

      4.   UK Work #4: *Water-Towers* (Salisbury Cathedral, Wiltshire, UK, 2010) ................... 21

      5.   UK Work #5: *Field of Light* (Holburne Museum, Bath, UK, 2011)............................. 23

      6.   UK Work #6: *Brass Monkeys* (Royal United Hospital, Bath, UK, 2012)...................... 24

      7.   U.S. Registered Work #1: *Forest of Light* (Longwood Gardens, PA 2012) ................. 25

      8.   U.S. Installation #2: *Field of Light* (Longwood Gardens, PA 2012) ........................... 30

      9.   UK Work #8: *River of Light* (Waddesdon, UK 2013) ................................................. 32

   C.  Defendants' Infringing and Illegal Acts ........................................................... 34

      1.   Overview of Defendants' copyright infringements.................................................... 36

      2.   Defendants had prior knowledge of and earlier access to Munro's Works ................. 37

      3.   Overview of Defendants' CMI violations ................................................................... 38

      4.   Pre-opening April 2018 pitch-deck violations (Manuel, Painter, K-Media, K-Live, Imaginer) .................................................................................................................... 39

      5.   Pre-opening August 2018 pitch-deck violations (Manuel, Painter, K-Media, K-Live, Imaginer, Fairchild, Zapata)........................................................................................ 41

      6.   G-Lights violations and Defendants' importation activities ......................................... 45

      7.   *NightGarden* Season 1 violations (re knock-off installations displayed for 36 separate nights between November 20, 2018 and January 11, 2019 and images thereof)................... 53

      8.   *NightGarden* Season 2 violations (re knock-off installations displayed for 42 separate nights between November 15, 2019 and January 11, 2020 and images thereof)................... 58

Count I -- Copyright Infringement.............................................................................. 67

Count II -- Contributory Copyright Infringement....................................................... 69

**SRILAW**

Cᴀʟɪғᴏʀɴɪᴀ ◆ Gᴇᴏʀɢɪᴀ ◆ Fʟᴏʀɪᴅᴀ ◆ Tᴇɴɴᴇssᴇᴇ ◆ Nᴇᴡ Yᴏʀᴋ

Count III -- Copyright Management Information Violations ........................................ 71

Injunctive Relief ............................................................................................................ 72

Jury demand .................................................................................................................. 73

Prayer ........................................................................................................................... 73

Certificate of Service ................................................................................................... 75

## <u>TABLE OF FIGURES</u>

Figure 1 *Bruce Munro: Catching the Light* (2013 ed.) (cover) ................................... 11

Figure 2 *Bruce Munro: Catching the Light* (2013 ed.) (cover and spine) ................... 11

Figure 3 *Field of Light* (Long Knoll, Wiltshire, UK, 2004). ...................................... 15

Figure 4 *Field of Light* (Eden Project, Cornwall, UK, 2008). .................................... 17

Figure 5 *Field of Light* (Eden Project, Cornwall, UK, 2008). .................................... 17

Figure 6 *Fireflies* ........................................................................................................ 19

Figure 7 *Arrow Spring* (Longwood Gardens, PA 2012) (also displaying (*Fireflies*). ............... 20

Figure 8 *Arrow Spring* (The Hermitage, TN 2014) (also displaying (*Fireflies*). .......... 21

Figure 9 *Water-Towers* (Salisbury Cathedral, Wiltshire, UK, 2010). .......................... 22

Figure 10 *Field of Light* (Holburne Museum, Bath, UK, 2011). ................................. 23

Figure 11 *Brass Monkeys* (Royal United Hospital, Bath, UK, 2012). .......................... 25

Figure 12 *Forest of Light* (Longwood Gardens, PA, 2012) .......................................... 26

Figure 13 *Forest of Light* (Longwood Gardens, PA, 2012) .......................................... 27

Figure 14 *Forest of Light* (Longwood Gardens, PA, 2012) .......................................... 27

Figure 15 *Forest of Light* (Longwood Gardens, PA, 2012) .......................................... 28

Figure 16 Signage: *Forest of Light* (Longwood Gardens, PA, 2012) .......................... 29

Figure 17 *Field of Light* (Longwood Gardens, PA, 2012) ........................................... 30

Figure 18 *River of Light* (Waddesdon, UK, 2013) ...................................................... 32

Figure 19 4/18 Pitch-deck excerpt (Bates # KILBURN00494) ..................................... 40

Figure 20 8/18 Pitch-deck excerpt (Bates # KILBURN00386) ..................................... 43

Figure 21 8/18 Pitch-deck excerpt (Bates # KILBURN00396) ..................................... 43

Figure 22 G-Lights Alibaba Listing ............................................................................. 49

Figure 23 G-Lights ....................................................................................................... 52

Figure 24 Zapata Twitter post re Infringing Season 1 Installation. ............................... 55

Figure 25 Zapata Twitter posts re Infringing Season 1 Installation.............................................55

Figure 26 Zapata Twitter posts re Infringing Season 1 Installation.............................................56

Figure 28 Knock-offs of Munro's *Fireflies* sculptural Works.....................................................59

Figure 27 Knock-offs of Munro's *Fireflies* sculptural Works.....................................................59

Figure 29 Knock-offs of Munro's *Fireflies* sculptural Works.....................................................60

Figure 30 Knock-offs of Munro's *Fireflies* sculptural Works.....................................................60

Figure 31 Knock-offs of Munro's *Fireflies* sculptural Works.....................................................60

Figure 32 Representative Photos from *NightGarden*.................................................................61

Figure 33 Representative Photos from *NightGarden*.................................................................61

Figure 34 Representative Photos from *NightGarden*.................................................................61

Figure 35 Representative Photos from *NightGarden*.................................................................61

Figure 36 Representative Photos from *NightGarden*.................................................................62

Figure 37 Representative Photos from *NightGarden*.................................................................62

Figure 38 NightGarden Promotion ............................................................................................64

Figure 39 NightGarden Guide ...................................................................................................64

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## PARTIES

1.      Plaintiff BRUCE MUNRO ("Munro") is an internationally acclaimed artist residing in England who focuses on the medium of light and is best known for large-scale, immersive, light-based installations and exhibitions produced through his eponymously named studio, Bruce Munro Ltd. dba Bruce Munro Studio.

2.      Plaintiff BRUCE MUNRO LTD. dba Bruce Munro Studio ("Studio") is a United Kingdom private limited company.

3.      Defendant FAIRCHILD TROPICAL BOTANIC GARDEN, INC. ("Fairchild") is a Florida not-for-profit corporation with its principal address at 10901 Old Cutler Road, Coral Gables, Florida, 33156 and can be served via its registered agent, Carl E. Lewis, at the same address.  Fairchild has already appeared in this action.

4.      Defendant NANETTE M. ZAPATA ("Zapata") is an individual that works and resides in Miami, Florida and is and since at least 2014 has been Fairchild's Chief Operating Officer and Director of Marketing and Communications. Zapata controlled and directed Fairchild's conduct alleged herein.  Zapata has already appeared in this action.

5.      Defendant NIGHT GARDEN, LLC ("NGL") is a Florida limited liability company incorporated on September 11, 2018 with its principal address at 11333 Iowa Avenue, Los Angeles, California, 90025, and can be served via its registered agent, CT Corporation, at 1200 South Pine Island Road, Plantation, Florida, 33324.  NGL has already appeared in this action.

6.      Defendant KILBURN LIVE, LLC ("K-Live") is a Delaware limited liability company with its principal address at 11333 Iowa Avenue, Los Angeles, California, 90025 and can be served via its registered agent, Mark C. Manuel, at the same address.  K-Live is and has been NGL's sole manager according to records filed with the Florida Secretary of State, and

controlled and directed NGL's conduct alleged herein.  K-Live has conducted business and committed torts within this state as described herein but has not appointed an agent for service of process and, accordingly, may be served through the Florida Secretary of State under Fla. Stat. §§ 48.181, 48.193.  K-Live has already appeared in this action.

7.       Defaulted defendant ZHONGSHAN G-LIGHTS LIGHTING CO., LTD. ("G-Lights") is a Chinese company with its principal place of business at No. 3, Dongyi Road, Luosha Industrial Area, Haizhou, Guzhen Town, Zhongshan City, Guangdong Providence, China 52841.  G-Lights has conducted business and committed torts within this state as described herein but has not appointed an agent for service of process and, accordingly, may be served through the Florida Secretary of State under Fla. Stat. §§ 48.181, 48.193.  G-Lights was served with process and the Original  Complaint (DE [1]) in this case through the Florida Secretary of State as its statutorily-authorized agent for service of process and otherwise notified of this action (DE [15, 21]), but has not appeared and default was entered against G-Lights on the Original Complaint on April 8, 2020 (DE [44]).   Solely as against G-Lights and in furtherance of that entry of default to pursue default judgment, Plaintiff maintains and expressly incorporates herein the allegations and claims of his Original Complaint (DE [1]) against G-Lights.  The present pleading is not intended to amend Plaintiff's action as reflected in the Original Complaint as against G-Lights.

8.       Defendant KILBURN MEDIA, LLC ("K-Media") is a California limited liability company with its principal address at 11333 Iowa Avenue, Los Angeles, California, 90025 and can be served via its registered agent, Chief Executive Officer, sole Manager, and member Mark C. Manuel, at the same address.  Press releases and web posts issued by K-Media and K-Live represent K-Live to be a "division" of K-Media.  K-Media has conducted business and

committed torts within this state as described herein but has not appointed an agent for service of process and, accordingly, may be served through the Florida Secretary of State under Fla. Stat. §§ 48.181, 48.193.

9.      Defendant MARK C. MANUEL ("Manuel") is an individual that resides in California and is and since at least 2018 has been the Chief Executive Officer and controlling owner of both K-Media and K-Live.  Manuel controlled and directed the conduct of K-Live, K-Media, and NGL alleged herein.  Manuel has conducted business and committed torts within this state as described herein but has not appointed an agent for service of process and, accordingly, may be served through the Florida Secretary of State under Fla. Stat. §§ 48.181, 48.193.

10.     Defendant IMAGINER LTD. ("I-Ltd") is a United Kingdom private limited company with its principal address at 5 Regent Place, Kingswood Road, Tunbridge Wells, United Kingdom, TN2 4UP and can be served via its registered agent and sole director Max Painter at the same address.  I-Ltd has conducted business and committed torts within this state as described herein but has not appointed an agent for service of process and, accordingly, may be served through the Florida Secretary of State under Fla. Stat. §§ 48.181, 48.193.

11.     Defendant IMAGINER INC. ("I-Inc") is a California corporation with its principal address at 2613 14th Street. Santa Monica, California 90405 and can be served via its Chief Executive Officer, Chief Financial Officer, Secretary, and sole director Max Painter at the same address or via it registered agent Anthony Ciak at 1800 N Vine Street, Los Angeles, California 90028.  I-Inc has conducted business and committed torts within this state as described herein but has not appointed an agent for service of process and, accordingly, may be served through the Florida Secretary of State under Fla. Stat. §§ 48.181, 48.193.

12.     Defendant MAX PAINTER ("Painter") is an individual that resides in England

and is and since at least 2018 has been the Chief Executive Officer and controlling owner of both I-Ltd and I-Inc (collectively referred to herein as "Imaginer").  Painter controlled and directed the conduct of I-Ltd and I-Inc alleged herein.  On information and belief and as reflected on the Imaginer business website located at the web address  www.imaginer.live, Painter jointly operates I-Ltd and I-Inc as a singular enterprise using and under the business name "Imaginer." Painter has conducted business and committed torts within this state as described herein but has not appointed an agent for service of process and, accordingly, may be served through the Florida Secretary of State under Fla. Stat. §§ 48.181, 48.193.

## NATURE OF THE CLAIMS

13.     Fairchild, Zapata, NGL, K-Live, K-Media, Manuel, I-Ltd, I-Inc, Painter, and G-Lights (collectively, "Defendants") do and have done business and committed torts in this District, including the business and torts described herein that form the basis for this action.

14.     This is an action for copyright infringement and contributory copyright infringement under 17 U.S.C. §§ 101 et seq., and the Berne Convention for the Protection of Literary and Artistic Work and for violations of copyright management information under 17 U.S.C. §§ 1202 et seq., arising in connection with Defendants' unauthorized commercial exploitation and appropriation of multiple sculptural artistic works, including, inter alia, Munro's federally-registered *Forest of Light* sculptural work, and *Fireflies*, *Field of Light*, *River of Light*, *Water-Towers*, and *Brass Monkeys* sculptural works and series of works (collectively, "Works"). Munro and the Studio are entitled to injunctive, monetary, declaratory, exemplary, and equitable relief against the Defendants.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action under 17 U.S.C. §§ 101 et seq. (the U.S. Copyright Act), 28 U.S.C. §§ 1331 (federal question) and 1338(a) (copyrights),

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

and treaties of the United States (e.g., the Berne Convention for the Protection of Literary and Artistic Works).

16.     This Court has personal jurisdiction over the Defendants because, among other things, they reside, transact business, or have purposefully availed themselves of the privilege of doing business in Florida; because the claims arise out of Defendants' conduct in and effecting Florida; because Defendants committed and are continuing to commit infringing and other illegal acts in and having an effect in the state of Florida; and because the exercise of jurisdiction is reasonable.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b), (c) & (d) and 28 U.S.C. § 1400(a).

18.     All asserted claims arise from a common nucleus of operative facts.

### CONDITIONS PRECEDENT

19.     All conditions precedent have occurred or been performed.

### BACKGROUND FACTS

#### A. INTERNATIONALLY-ACCLAIMED ARTIST BRUCE MUNRO

20.     Munro is an acclaimed international artist known for light-based works, sculptures, and large-scale immersive sculptural installations and exhibitions produced through his eponymously named studio, co-plaintiff Bruce Munro Ltd. dba Bruce Munro Studio.

21.     Munro is an acknowledged, recognized leader in the installation art movement. Writing for the art publication *My Modern Met* on contemporary art and its installation art subgenre in the 2019 article "What is Contemporary Art? An In-Depth Look at the Modern-Day Movement", author and art historian Kelly Richman-Abdou (M.A., Art and Museum Studies, Georgetown University; B.A., Art History and Arts Management, University of San Francisco) names Munro as one of three well-known installation artists:

> **"**[I]nstallation art is an immersive medium of art. Installations are three-dimensional constructions that transform their surroundings and alter viewers' perceptions of space. Often, they're large-scale and site-specific, enabling artists to transform any space into a customized, interactive environment. Well-known installation artists include **Yayoi Kusama**, **Dale Chihuly**, and **Bruce Munro."**

Richman-Abdou, K., *What is Contemporary Art? An In-Depth Look at the Modern-Day Movement*, MY MODERN MET (Aug. 11, 2019) (emphasis in original). In 2017 *My Modern Met* also highlighted Munro and his works in its article *10 Cutting-Edge Artists Who Create Inventive 21st Century Art*, MY MODERN MET (Aug. 30, 2017). Similarly, *The Independent* placed Munro's 2013 U.K. exhibition at Waddesdon Manor on its "best visual arts of the year" list. Hamilton, A., *2013 - the year in review: The best visual arts of the year*, THE INDEPENDENT (Dec. 27, 2013).

22.     Munro's unique light-based artwork and artistic installations have been displayed and exhibited at hundreds of top-tier galleries, museums, gardens, and public spaces around the world, and are the subject of authorized publications such as the 2013 hard-back anthology on Munro's works entitled *Bruce Munro: Catching the Light*, which as shown in Figures 1 and 2 depicts on its cover the Munro sculptural installation *Field of Light* (Long Knoll, Wilshire, UK, 2004):



Figure 1
*Bruce Munro: Catching the Light* (2013 ed.)
(cover)



Figure 2
*Bruce Munro: Catching the Light*
(2013 ed.) (cover and spine)

23.     Professional honors awarded to Munro include, for instance, the Guggenheim Museum's 2010 invitation in celebration of its 50th anniversary to display in the inspirational rotunda of the Frank Lloyd Wright–designed Guggenheim building in Manhattan; the 2011 Artist of the Year Award from Wiltshire Life Magazine; the 2013 American Alliance of Museums Excellence in Exhibition Award; the 2017 Americans for the Arts Public Art Network Year in Review Award for one of the 49 most compelling public art projects of 2016; and the 2019 National Award of Excellence for Community Based Initiative of the Year from Parks and Leisure Australia for Munro's 2018 *Field of Light* installation at the Avenue of Honor, Albany, Australia.

24.     Munro and his works and exhibitions are the frequent subjects of widely distributed complimentary articles, media interviews, stories, broadcasts, and reports, including broadcast PBS documentaries.

25.     Remarking on Munro and his 2012 Longwood Gardens, Pennsylvania exhibition, for instance, *The Washington Post*'s Adrian Higgins wrote that, "Munro is to fiber optics, you might say, as Dale Chihuly is to blown glass and Christo to wrapped fabric, an artist whose

11

outdoor installations intensify their subject landscapes."  Higgins, A., *At Longwood Gardens, Bruce Munro sees the light*, THE WASHINGTON POST (Sept. 19, 2012).  The *New York Times* recently named Paso Robles, California sixth in its list of the top 52 places to go in the world in 2020 due to Munro's ongoing *Field of Light* at Sensorio installation, noting that "[l]ast fall, the artist Bruce Munro created 'Field of Light,' a show of 60,000 illuminated glass orbs spread over 15 acres that has turned Paso Robles into an art destination."  *52 Places To Go in 2020*, THE NEW YORK TIMES (January 8, 2020).  Similar accolades came from *My Modern Met,* which also lauded the Munro Sensorio installation in its article *Best of 2019: Top 10 Amazing Art Installations that Defined the Past Year*, MY MODERN MET (Dec. 13, 2019).

26.     Munro has developed and is known for a signature style that is valued, appreciated, and desired by the public, by exhibitors and curators, and by other consumers.

27.     For well over a decade, Munro and his Studio have presented and exhibited at scores of preeminent galleries, museums, facilities, venues, gardens, and public spaces around the world, which contract for Munro's in-demand exhibitions, installations, and associated services and merchandise.  Places like the Atlanta Botanical Gardens, the United Kingdom's Salisbury Cathedral, Houston's Discovery Green Park, and Pennsylvania's Longwood Gardens—one of the most well-known and respected display gardens in all of North America— have all held highly successful exhibitions of Munro's unique, large-scale light-based installations, drawing millions of aggregate attendees.

28.     Exhibitions of Munro Works routinely generate substantial media, public, and online interest and underwriter sponsor support.  Munro installations and exhibitions have been seen and visited by millions of people; lauded in myriad media and online reports in widely circulated publications; consistently drive media and public interest, attendance, revenues, and

publicity; and for exhibitors regularly result in hundreds of thousands of attendees, millions in underwriting, ticketing, gift shop, and food court revenues, substantial increases in unique website visitor web traffic and traditional and social media mentions, and valuable publicity, media impressions and online and social media engagement.

29.      Due to attendant public interest, exhibitions of Munro Works consistently provide tangible attendance, publicity, and financial benefits for exhibiting spaces.  As an illustrative example, from midsummer to early fall of 2012, Munro exhibited at Pennsylvania's Longwood Gardens to regional and national publicity that included feature reports on that Munro exhibition in national publications such as the *Washington Post*.  The Munro Longwood Gardens exhibition, which Tennessee's Cheekwood Botanical Gardens & Museum of Art later described as "wildly popular" in announcements for its own subsequent Munro exhibition, drew over 300,000 attendees, many from more than three hours away.  How popular was Munro's Longwood Garden's exhibition?  By comparison, the Rolling Stones' 2014 concert tour, one of the top tours of 2014, drew 651,816 attendees.  In just one exhibition at Longwood Gardens, Munro's installations drew roughly half that many attendees. As Longwood Garden's director Paul Redman noted to the Washington Post, "'When that exhibit opened, [Munro] was a rock star. He was a rock star.'"

30.      Installations and exhibitions are also a primary revenue driver for Munro and the Studio's business and, as a result, Munro Works and their associated intellectual property rights hold inestimable value to Munro and the Studio, and support their business and livelihood.

31.      Private collectors and investors also retain and commission Munro and his Studio to produce specially-commissioned, high-value works of art.  These opportunities and sales are

spurred by Munro and the Studio's public exhibitions and installations and their attendant publicity and interest.

### B. MUNRO'S COPYRIGHTED WORKS & COPYRIGHT MANAGEMENT INFORMATION

32.     Munro has created, exhibited, and is the author of numerous light-based artistic sculptural Works for which he is entitled to and has copyright protections under U.S. law and the Berne Convention, including the below-described and -depicted United States-published-and -registered work titled *Forest of Light* and several other below-described and -depicted United Kingdom-published works and series of works ("UK Works").

33.     The Berne Convention for the Protection of Literary and Artistic Works of 1886 as revised ("Berne Convention") requires its signatories to recognize the copyright of works of authors from other signatory countries in the same way as it recognizes the copyrights of its own nationals and to provide strong minimum copyright protections.

34.     The United States of America became a signatory member of the Berne Convention on March 1, 1989.  The United Kingdom became a signatory member of the Berne Convention in 1886, ratified the convention in 1887, and fully implemented the convention in 1988.

35.     Copyright under the Berne Convention is automatic, and no registration requirements can be imposed on a Work from a different Berne member country.  (Berne Convention, Article 5(2).)   The United Kingdom also does not require formal registration to obtain a copyright, which vests automatically.

36.     Munro's UK Works are Berne Convention Works as defined in the Copyright Act, 17 U.S.C. § 101, and under the Berne Convention are subject to the protections of the Copyright Act, 17 U.S.C. §§ 101 et seq.  Munro's UK Works are not "United States Works" under 17 U.S.C. § 101, and are therefore also exempted from registration under 17 U.S.C. § 411.

14

**1.  UK Work #1: Field of Light (Long Knoll, Wilshire, UK, 2004)**

37.     In 2004, Munro created and first exhibited with the Studio the mixed media original sculptural artistic Work titled *Field of Light* in Long Knoll, Wilshire, United Kingdom ("*Field of Light* (Long Knoll, Wilshire, UK, 2004)"), a photo of which is depicted for illustrative purposes in Figure 3:



Figure 3
*Field of Light* (Long Knoll, Wiltshire, UK, 2004).

38.     The *Field of Light* (Long Knoll, Wilshire, UK, 2004) sculptural Work was conceived of and originated by Munro, is not a utilitarian object or useful article, and as depicted in Figure 3 reflects a multitude of non-utilitarian creative artistic choices by Munro in the conception, design, and display of the overall Work.

39.     As Figure 3 also depicts, the Work includes, in part, a multitude of repeating translucent, orb-like-spheres each capping a slender, transparent tubular stem ("Stemmed Orbs"). These three-dimensional Stemmed Orb mini-sculptures and their original artistic sculptural design depicted in Figure 3 are artistic, were conceived of and originated by Munro in the United Kingdom, and reflect a multitude of creative, non-utilitarian artistic choices Munro made

regarding the Stemmed Orbs' decorative artistic sculptural design features (including, e.g., the geometric shape, translucence/transparency, and relative size ratios of various portions) outside of and separable from any illuminability of the 3-D Stemmed Orb mini-sculptures.

40.      Under United Kingdom law Munro has copyright protection both for the *Field of Light* (Long Knoll, Wilshire, UK, 2004) Work and for the Work's constituent Stemmed Orb mini-sculpture, and under the Berne Convention and the Copyright Act (17 U.S.C. §§ 101 et seq.) is entitled to copyright protection in the United States.

41.      The above photo in Figure 3 of the *Field of Light* (Long Knoll, Wilshire, UK, 2004) Work with its constituent Stemmed Orb mini-sculptures has previously appeared in, inter alia, (i) the above-described 2013 *Bruce Munro: Catching the Light* book on Munro's works (on the cover and on p. xiv); (ii) another 2013 book on Munro's works entitled *Bruce Munro: Light* (at pp. 32-33); and (iii) a 2013 packet of note cards picturing various Munro works.  Both books and the note card included nearby the above photo of the Work additional copyright management information ("CMI") within the meaning of Sections 1201 through 1203 of the Digital Millennium Copyright Act ("DMCA"), including the © symbol and title and authorship information for the Work.

 **2.  UK Work #2: *Field of Light* (Eden Project, Cornwall, UK, 2008)**

42.      In 2008, Munro created and first exhibited with the Studio an original mixed media sculptural artistic Work titled *Field of Light* in the United Kingdom at the Eden Project exhibition in Cornwall ("*Field of Light* (Eden Project, Cornwall, UK, 2008)"), photos of which are depicted for illustrative purposes in Figures 4 and 5:



Figure 4
*Field of Light* (Eden Project, Cornwall, UK, 2008).



Figure 5
*Field of Light* (Eden Project, Cornwall, UK, 2008).

43.     The *Field of Light* (Eden Project, Cornwall, UK, 2008) sculptural Work was conceived of and originated by Munro, is not a utilitarian object or useful article, and as depicted in Figures 4 and 5 reflect a multitude of non-utilitarian creative artistic choices by Munro in the conception, design, and display of the overall Work.

44.     As Figures 4 and 5 also depict, the Work includes, in part, a multitude of repeating translucent, frosted-glass-orb-like-spheres each capping a slender, transparent, acrylic tubular stem ("Stemmed Orbs").  These three-dimensional Stemmed Orb mini-sculptures and their original artistic sculptural design depicted in Figures 4 and 5 are artistic, were conceived of and originated by Munro in the United Kingdom, and reflect a multitude of creative, non-utilitarian artistic choices Munro made regarding the Stemmed Orbs' decorative artistic sculptural design features (including, e.g., the geometric shape, frosting, translucence/transparency, materials, and relative size ratios of various portions) outside of and separable from any illuminability of the 3-D Stemmed Orb mini-sculptures.

45.     Under United Kingdom law Munro has copyright protection both for the *Field of Light* (Eden Project, Cornwall, UK, 2008) Work and for the Work's constituent Stemmed Orb mini-sculpture, and under the Berne Convention and the Copyright Act (17 U.S.C. §§ 101 et seq.) is entitled to copyright protection in the United States.

46.     The above photo in Figure 5 of the *Field of Light* (Eden Project, Cornwall, UK, 2008) Work with its constituent Stemmed Orb mini-sculptures has previously appeared in, inter alia, (i) the above-described 2013 *Bruce Munro: Catching the Light* book (at pp. 182-83); and (ii) the 2013 packet of note cards picturing various Munro works.  The book and the note card included nearby the above photo of the Work additional CMI within the meaning of Sections

1201 through 1203 of the DMCA, including the © symbol and title and authorship information

for the Work.

**3. UK Work #3: *Fireflies* (Residential Installation, UK, 2008) & (*Arrow Spring*, Longwood Gardens, PA 2012) & (*Arrow Spring*, The Hermitage, TN 2014)**

47.     In 2008, Munro created and first exhibited with the Studio an original mixed

media sculptural artistic Work titled *Fireflies* at a residence in the United Kingdom ("*Fireflies*"),

a photo of which is depicted for illustrative purposes in Figure 6:



Figure 6
*Fireflies*

48.     The *Fireflies* sculptural Work was conceived of and originated by Munro, is not a

utilitarian object or useful article, and as depicted in Figure 6 reflects a multitude of non-

utilitarian creative artistic choices by Munro in the conception, design, and display of the Work

(including, e.g., the geometric shapes, pedal-like flowering design, and relative size ratios of

various portions) outside of and separable from any illuminability of the Work.

49.     Under United Kingdom law Munro has copyright protection for the *Fireflies* Work, and under the Berne Convention and the Copyright Act (17 U.S.C. §§ 101 *et seq.*) is entitled to copyright protection in the United States.

50.     The above photo in Figure 5 of *Fireflies* has previously appeared in, inter alia, (i) the above-cited 2013 *Bruce Munro: Catching the Light* book (at pp. 44); and (ii) the Munro Studio public website on Munro and his works.  The book and website included nearby the above photo of the Work additional CMI within the meaning of Sections 1201 through 1203 of the DMCA, including title and authorship information for the Work.

51.     Munro and the Studio also later exhibited the *Fireflies* Work in the United States in 2012 at Pennsylvania's Longwood Gardens and in 2014 at The Hermitage in Tennessee in original sculptural installations titled *Arrow Spring*, photos of which are depicted for illustrative purposes in Figures 7 and 8:



Figure 7

*Arrow Spring* (Longwood Gardens, PA 2012) (also displaying (*Fireflies*).



Figure 8
*Arrow Spring* (The Hermitage, TN 2014) (also displaying (*Fireflies*).

52.     The above photo in Figure 7 of *Fireflies* in the *Arrow Spring* installation at Longwood Gardens previously appeared in, inter alia, the public Longwoods Gardens website light.longwoodgardens.org on the Munro Longwood Gardens exhibition "LIGHT: Installations by Bruce Munro at Longwood Gardens."  The above photo in Figure 8 of *Fireflies* in the *Arrow Spring* installation at The Hermitage previously appeared in, inter alia, the Munro Studio public website on Munro and his works.  The websites included nearby the above photos of the *Fireflies* Work and *Arrow Spring* installations additional CMI within the meaning of Sections 1201 through 1203 of the DMCA, including title and authorship information for the Work and installations.

**4.  UK Work #4: *Water-Towers* (Salisbury Cathedral, Wiltshire, UK, 2010)**

53.     In 2010, Munro created and first exhibited with the Studio an original mixed media sculptural Work titled *Water-Towers* in the United Kingdom at the Salisbury Cathedral in

Wiltshire.  Under United Kingdom law Munro has copyright protection for the *Water-Towers*

*Work*, and under the Berne Convention and the Copyright Act (17 U.S.C. §§ 101 *et seq*.) is

entitled to copyright protection in the United States.  A representative photo of this  *Water-*

*Towers* sculptural Work from the cover of the 2013 book on Munro's works entitled *Bruce*



*Munro: Light* is depicted below for illustrative purposes in Figure 9:

Figure 9
*Water-Towers* (Salisbury Cathedral, Wiltshire, UK, 2010).

### 5.   UK Work #5: *Field of Light* (Holburne Museum, Bath, UK, 2011)

54.    In 2011, Munro created and first exhibited with the Studio an original mixed media sculptural Work titled *Field of Light* in the United Kingdom at the Holburne Museum in Bath ("*Field of Light* (Holburne Museum, Bath, UK, 2011)"), a photo of which is depicted for illustrative purposes in Figure 10:



Figure 10
*Field of Light* (Holburne Museum, Bath, UK, 2011).

55.    The *Field of Light* (Holburne Museum, Bath, UK, 2011) sculptural Work was conceived of and originated by Munro, is not a utilitarian object or useful article, and as depicted in Figure 11 reflects a multitude of non-utilitarian creative artistic choices by Munro in the conception, design, and display of the overall Work.

56.    As Figure 10 also depicts, the Work includes, in part, a multitude of repeating

translucent, frosted-acrylic-orb-like-spheres each capping a slender, transparent, acrylic tubular stem ("Stemmed Orbs").  These three-dimensional Stemmed Orb mini-sculptures and their original artistic sculptural design depicted in Figure 10 are artistic, were conceived of and originated by Munro in the United Kingdom, and reflect a multitude of creative, non-utilitarian artistic choices Munro made regarding the Stemmed Orbs' decorative artistic sculptural design features (including, e.g., the geometric shape, frosting, translucence/transparency, materials, and relative size ratios of various portions) outside of and separable from any illuminability of the 3-D Stemmed Orb mini-sculptures.

57.     Under United Kingdom law Munro has copyright protection both for the *Field of Light* (Holburne Museum, Bath, UK, 2011) Work and for the Work's constituent Stemmed Orb mini-sculpture, and under the Berne Convention and the Copyright Act (17 U.S.C. §§ 101 et seq.) is entitled to copyright protection in the United States.

58.     The above photo in Figure 10 of the *Field of Light* (Holburne Museum, Bath, UK, 2011) Work with its constituent Stemmed Orb mini-sculptures has previously appeared in, inter alia, the 2013 book on Munro's works entitled *Bruce Munro: Light* (at pp. 13).  The book included nearby the above photo of the Work additional CMI within the meaning of Sections 1201 through 1203 of the DMCA, including the © symbol and title and authorship information for the Work.

**6.   UK Work #6: *Brass Monkeys* (Royal United Hospital, Bath, UK, 2012)**

59.     In 2012, Munro created and first exhibited with the Studio an original mixed media sculptural Work titled *Brass Monkeys* in the United Kingdom at the Royal United Hospital in Bath.  Under United Kingdom law Munro has copyright protection for the *Brass Monkeys* Work, and under the Berne Convention and the Copyright Act (17 U.S.C. §§ 101 *et seq.*) is entitled to copyright protection in the United States.  A representative photo of this *Brass*

*Monkeys* sculptural Work that previously appeared, inter alia, on page 110 of the above-described 2013 *Bruce Munro: Catching the Light* book is depicted below for illustrative purposes in Figure 11



Figure 11
*Brass Monkeys* (Royal United Hospital, Bath, UK, 2012).

### 7.  U.S. Registered Work #1: *Forest of Light* (Longwood Gardens, PA 2012)

60.     In 2012, Munro created in the United States and with the Studio first exhibited and displayed at Pennsylvania's Longwood Gardens the original mixed media sculptural Work titled *Forest of Light*.  On August 24, 2019, Munro registered the *Forest of Light* Work with the U.S. Copyright Office and is the owner of the associated copyright registration.  *See* **Exhibit A**

(U.S. Copyright Registration Certificate No. VA 2-176-825).  Representative deposit specimen photos of Munro's *Forest of Light* sculptural Work on deposit with the U.S. Copyright Office, are depicted below for illustrative purposes in Figures 12 - 15:



Figure 12
*Forest of Light* (Longwood Gardens, PA, 2012).



Figure 14
*Forest of Light* (Longwood Gardens, PA, 2012).



Figure 13
*Forest of Light* (Longwood Gardens, PA, 2012).



Figure 15
*Forest of Light* (Longwood Gardens, PA, 2012).

61.     The *Forest of Light* sculptural Work was conceived of and originated by Munro, is not a utilitarian object or useful article, and as depicted in Figures 12 - 15 reflects a multitude of non-utilitarian creative artistic choices by Munro in the conception, design, and display of the overall Work.

62.     As Figures 12 - 15 also depict, the Work includes, in part, a multitude of repeating spherical clear glass orbs visibly displaying wound fiber and capping slender, transparent acrylic tubular stems ("Stemmed Sphere").  These three-dimensional Stemmed Sphere mini-sculptures and their original artistic sculptural design depicted in Figures 12 - 15 are artistic, were conceived of and originated by Munro, and reflect a multitude of creative, non-utilitarian artistic choices Munro made regarding the Stemmed Spheres' decorative artistic sculptural design features (including, e.g., the geometric shape, transparency, materials, fiber positioning and winding arrangement, and relative size ratios of various portions) outside of and separable from any illuminability of the 3-D  mini-sculptures. Copyright subsists in and Munro has copyright

protection for the *Forest of Light* Work and its sculptural Stemmed Spheres under the Copyright Act (17 U.S.C. §§ 101 et seq.) and is entitled to copyright protection in the United States.

63.     The above photo in Figure 16 showing Munro's *Forest of Light* Work with its constituent Stemmed Sphere mini sculptures has previously appeared in, inter alia, promotional materials for the Munro Longwood Gardens exhibition "LIGHT: Installations by Bruce Munro at Longwood Gardens."  At Longwood Gardens signage was also posted nearby the installation of the Work, a photo of which is depicted for illustrative purposes in Figure 16:



Figure 16
Signage: *Forest of Light* (Longwood Gardens, PA, 2012).

64.     The promotional materials containing photos of the Work and signage posted at the Longwood Gardens exhibition displayed near the Work additional CMI within the meaning of Sections 1201 through 1203 of the DMCA, including title and authorship information for the Work.

### 8.  U.S. Installation #2: *Field of Light* (Longwood Gardens, PA 2012)

65.    In 2012, Munro created and exhibited with the Studio an original mixed media sculptural Work titled *Field of Light* in the United States at Longwood Gardens in Pennsylvania ("*Field of Light* (Longwood Gardens, PA, 2012)"), a photo of which is depicted for illustrative purposes in Figure 17:



Figure 17
*Field of Light* (Longwood Gardens, PA, 2012).

66.    The *Field of Light* (Longwood Gardens, PA, 2012 sculptural Installation was conceived of and originated by Munro, is not a utilitarian object or useful article, and as depicted in Figure 18 reflects a multitude of non-utilitarian creative artistic choices by Munro in the conception, design, and display of the overall Work.

67.    The Work includes, in part, a multitude of repeating translucent, frosted-glass-orb-like-spheres each capping a slender, transparent, acrylic tubular stem ("Stemmed Orbs"). These three-dimensional Stemmed Orb mini-sculptures and their original artistic sculptural design depicted in Figure 18 are artistic, were conceived of and originated by Munro, and reflect a multitude of creative, non-utilitarian artistic choices Munro made regarding the Stemmed Orbs' decorative artistic sculptural design features (including, e.g., the geometric shape, frosting, translucence/transparency, materials, and relative size ratios of various portions) outside of and separable from any illuminability of the 3-D Stemmed Orb mini-sculptures.

68.    Under United States and United Kingdom law Munro has copyright protection both for the *Field of Light* (Longwood Gardens, PA, 2012 sculptural Installation and for its constituent Stemmed Orb mini-sculpture, and under the Berne Convention and the Copyright Act (17 U.S.C. §§ 101 et seq.) is entitled to copyright protection in the United States.

69.    The above photo in Figure 17 and an almost identical photo of the *Field of Light* (Longwood Gardens, PA, 2012) sculptural Installation with its constituent Stemmed Orb mini-sculptures has previously appeared in, inter alia, (i) promotional materials for the Munro Longwood Gardens exhibition "LIGHT: Installations by Bruce Munro at Longwood Gardens," and (ii) the 2013 packet of note cards picturing various Munro works.  The note card and promotional materials included nearby the above photo and similar photo of the Installation

additional CMI within the meaning of Sections 1201 through 1203 of the DMCA, including the © symbol and title and authorship information for the Installation.

### 9.   UK Work #8: *River of Light* (Waddesdon, UK 2013)

70.     In 2013, Munro created and first exhibited with the Studio in the United Kingdom at a *Winter Light at Waddesdon* exhibition an original mixed media sculptural Work titled *River of Light,* a photo of which is depicted below for illustrative purposes in Figure 18:



Figure 18
*River of Light* (Waddesdon, UK, 2013).

71.     The *River of Light* sculptural Work was conceived of and originated by Munro, is not a utilitarian object or useful article, and as depicted in Figure 18 reflects a multitude of non-utilitarian creative artistic choices by Munro in the conception, design, and display of the overall Work.

72.     As Figure 19 also depicts, the Work includes, in part, a multitude of repeating spherical clear glass orbs visibly displaying wound fiber and capping slender, transparent acrylic tubular stems ("Stemmed Sphere").  These three-dimensional Stemmed Sphere mini-sculptures

**SRIPLAW**
Cᴀʟɪғᴏʀɴɪᴀ ◆ Gᴇᴏʀɢɪᴀ ◆ Fʟᴏʀɪᴅᴀ ◆ Tᴇɴɴᴇssᴇᴇ ◆ Nᴇᴡ Yᴏʀᴋ

and their original artistic sculptural design depicted in Figure 18 are artistic, were conceived of and originated by Munro, and reflect a multitude of creative, non-utilitarian artistic choices Munro made regarding the Stemmed Spheres' decorative artistic sculptural design features (including, e.g., the geometric shape, transparency, materials, fiber winding arrangement and positioning, and relative size ratios of various portions) outside of and separable from any illuminability of the 3-D mini-sculptures.

73.     Under United Kingdom and United States law, copyright subsists in and Munro has copyright protection for the *River of Light* sculptural Work and for the Work's constituent Stemmed Sphere mini-sculpture, and under the Berne Convention and the Copyright Act (17 U.S.C. §§ 101 et seq.) is entitled to copyright protection in the United States.

74.     Accordingly, Munro owns copyrights for *Forest of Light*, *River of Light*, and their Stemmed Spheres, the *Field of Light* works (including above-described *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Eden Project, Cornwall, UK, 2008), *Field of Light* (Holburne Museum, Bath, UK, 2011), and *Field of Light* (Longwood Gardens, PA, 2012)) and their Stemmed Orbs, *Fireflies*, *Arrow Spring*, *Water-Towers*, and *Brass Monkeys* (collectively, "Works"), which are protectable and enforceable under the U.S. Copyright Act, including via Munro's federally-registered U.S. copyright registration (Reg. Cert. No. VA 2-176-825) and via the Berne Convention.

75.     For the above-described installations, CMI within the meaning of Sections 1201 through 1203 of the DMCA (such as title and authorship information for a Work) accompanied the Works' public display via signage and exhibition guides, literature, and catalogues.

76.     Munro and the Studio also maintain exemplative images of a variety of his Works at the website www.brucemunro.co.uk ("Munro Site") and its associated webpages, which

proximate to each of the images display CMI within the meaning of Sections 1201 through 1203 of the DMCA, including authorship and titles.  See **Exhibits B1 – B11** (excerpted Munro Studio Site webpages displaying images of and title and authorship CMI for the following Munro Works: *Beacon*, *Bell Chandelier*, *Blue Moon, Brass Monkeys, Fagin's Urchins, Field of Light, Fireflies, Icos, TePees, Water-Towers,* and *Whizz Pops*).

77.     Neither Munro nor the Studio has authorized or licensed any Defendant to exploit any of the Works, their associated copyrights, or any other Munro Works or associated copyrights.  Nevertheless, Defendants extensively commercially exploited myriad Munro Works and without proper attribution used false, altered, or removed CMI to do so.

## C. Defendants' Infringing and Illegal Acts

78.     Defendants consciously, intentionally, and to Munro and the Studio's detriment copied and knocked off the above-listed Munro Works and exploited and appropriated related images and intellectual property.  Defendants K-Live, K-Media, NGL, Manuel, Painter, Imaginer, Fairchild and Zapata's (collectively, "NightGarden Defendants") wrongful conduct revolved around the "NightGarden," a large-scale limited-duration mid-November-to-mid-January light-focused evening entertainment event they collectively created, produced, operated and hosted at Fairchild's Coral Gables facilities.  The NightGarden's inaugural season was from November 20, 2018 to January 11, 2019 ("Season 1"); it returned in a reconfigured, "all new" version for a November 15, 2019 to January 11, 2020 second season ("Season 2"), and it announced a third season starting November 2020 ("Season 3").  Defaulted defendant G-Lights was a supplier for the NightGarden via K-Media and K-Live.

79.     The NightGarden Defendants and their supplier, G-Lights extensively infringed copyrights in the Munro Works, committed copious related CMI violations, and continue to do so.  The nature, scope, and extent of each defendants' infringing conduct is still known only to

the Defendants, is the subject of ongoing discovery, and at present has not been disclosed to but instead has been concealed from Plaintiffs (including via obstructive discovery tactics and alteration of CMI), thereby preventing identification of the myriad infringements and/or CMI violations each defendant committed.

80.     The discovery rule and fraudulent concealment doctrine apply.

**1. Supervisory authority and liability for defendants' NightGarden activities**

81.     Fairchild operates a tropical botanical garden, outdoor venue space, and related research facility. Fairchild and K-Live together contracted to host and put on the NightGarden, and to share in the benefits received. Fairchild's COO Zapata actively and materially controlled, directed, participated in, facilitated, and approved the Fairchild NightGarden-related conduct underlying the stated claims against Fairchild, and may be held contributorily liable for its NightGarden-related activities.

82.     K-Live is the live entertainment division of Los Angeles-based entertainment company K-Media. Manuel, K-Media's, K-Live's, and NGL's CEO, owner, and controlling person and major driving force behind the NightGarden, actively and materially controlled, directed, participated in, facilitated, and approved the K-Media, K-Live, and NGL NightGarden-related conduct underlying the stated claims against those entities , and may be held contributorily liable for those entities' NightGarden-related activities.

83.     Painter is and has been the "creative director" for the NightGarden, and has fulfilled that role directly and through his I-Inc. and I-Ltd Imaginer businesses. Imaginer CEO, owner, and controlling person Painter actively and materially controlled, directed, participated in, facilitated, and approved all Imaginer conduct underlying the stated claims against Imaginer, and may be held contributorily liable for Imaginer's NightGarden-related activities, and Imaginer may be held vicariously liable for Painter's activities.

## 2.  Overview of Defendants' copyright infringements

84.     The Munro Works (including their Stemmed Orbs and Stemmed Spheres) classify as copyrighted sculptural works of visual art under the Copyright Act, 17 U.S.C. § 101, and "artistic works" per United Kingdom law.  Copyright, Designs and Patents Act 1988, Pt. I, Ch. I, § 1, 4.

85.     Munro owns the copyrights in the Munro Works, Stemmed Orbs, and Stemmed Spheres.

86.     For the Munro Works and copyrights, no Defendant has received permission from Munro or the Studio to exploit any of the Copyright Act's enumerated Section 106 exclusive rights.

87.     Defendants did so anyway.  They did so repeatedly.  They did so in a variety of ways, including by (i) copying and digitally reproducing images of the Munro Works, compare Figs. 1-3, 5, 7-11, 15, 17, 18 with Figs. 19-23; (ii) making, importing, and on certain nights in Season 1 and Season 2 publicly displaying substantially similar derivative 3-D copies of the Munro Works (i.e., knock-off NightGarden installations), compare, e.g., Figs. 3-5, 10 with Figs. 24-26, Figs. 12-15, 18 with Figs. 32-37, and Figs. 6-8 with Figs. 27-31, which they also charged the public admission fees to view, infra, Fig. 38; and (iii) taking, digitally reproducing, uploading, and sending out (e.g., in media releases and social media posts) photos of the knock-off NightGarden installations, infra, Figs. 24-26, 30, 34, 36, 38.  They also facilitated and actively encouraged each other as well as other third parties to do so, too, resulting in numerous contributory copyright infringements for downstream (i.e., third party) infringements (via, e.g., photos and videos of the knock-off NightGarden installations taken, distributed, or posted by third parties, including in, e.g., media reports, articles, hash-tagged uploads, social media posts, web posts, etc.).  See, infra, e.g. Fig. 37.  Photos of the knock-off NightGarden installation

36

appeared and have been widely circulated, for example, on Twitter, Facebook, Instagram, Yelp, and Shutterstock, in Miami Herald and Miami New Time's news articles, and in videos on YouTube and Vimeo.

### 3. Defendants had prior knowledge of and earlier access to Munro's Works

88.     Defendants were not unaware of Munro's Works before they set about infringing them and altering their CMI.  Rather, they had already been informed of and provided with various photos of Munro Works on multiple prior occasions.

89.     In 2012, for instance, Longwood Gardens sent Fairchild director Carl Lewis a packet about that summer's Munro Longwood Gardens containing photos of the *Forest of Light* and *Field of Light* (Longwood Gardens, PA, 2012) Works depicted above in Figs. 12, 13, 14, and 17.

90.     In late 2014, Munro, his Studio personnel, and Fairchild's Zapata emailed each other several times about Munro and his recent Works and exhibits.  That December, the Studio shipped Zapata at her Fairchild address copies of Munro's 2013 books *Bruce Munro: Catching the Light* and  *Bruce Munro: Light* (see, supra, Figs. 1, 2, 9), an impact report on the 2012 Munro Longwood Gardens exhibition, and handouts on other Munro exhibitions.  In the two books, each Munro Work mentioned above is photographically illustrated and discussed, including the *Forest of Light*, *Field of Light* (from Longwood and other locations), and *Fireflies* Works, with several pages apiece devoted to each of those Works.  The impact report similarly contained multiple photos of *Forest of Light*, *Field of Light* (Longwood Gardens, PA, 2012), and *Fireflies*. After receiving and reviewing those materials, Zapata wrote back and exclaimed in a December 2014 email to Munro's Studio: "I will call you soon to discuss Bruce's work—which is extraordinary!"

91.     By no later than spring 2018, Manuel, K-Media, K-Live, Painter, and Imaginer

had also seen and reviewed photos of Munro's *Forest of Light* and *Field of Light* (Longwood

Gardens, PA, 2012) Works and by later that summer had reviewed additional photos of *Fireflies*

and *Field of Light* (both from Longwood Gardens and other locales).  As a result, they were each

acutely aware well in advance of their  November 2018 opening of the NightGarden that none of

them had originated or come up with these artistic sculptural designs.

92.     On November 11, 2019, shortly before Season 2 of the NightGarden commenced,

defendants Manuel, K-Media, K-Live, NGL, Fairchild, and Zapata were explicitly notified of

Munro's copyright interests in the Works in a cease-and-desist letter depicting *Forest of Light*

and certain other Munro works.  The letter also warned these defendants of their exposure to

copyright infringement claims if Season 2 of the NightGarden opened to the public and included

one or more installations substantially similar to Munro's Works.

93.     As a result, the Defendants each had prior knowledge of, access to, and familiarity

with Munro's Works or images thereof—and had clear reason to know their actions would

violate copyrights and CMI integrity—before they each commenced with their infringements and

CMI violations.

### 4.  Overview of Defendants' CMI violations

94.     Unlike with Defendants' knock off copies of the Munro Works, correct title and

authorship CMI accompanied and was displayed nearby the original Munro Works and

authorized images thereof when, for instance, (a) the Studio and Munro exhibited the Works live;

or (b) authorized images of the Works were included in authorized publications, like the books

*Bruce Munro: Catching the Light* and *Bruce Munro: Light*.

95.     None of the Defendants have bothered in the least to protect the integrity of the

original copyright information associated with the Munro Works.  Instead, the Defendants have

individually and collectively on scores of occasions, (i) reproduced and distributed photos of the

Munro Works without their attendant CMI or with CMI replaced or altered, see, e.g., infra Figs. 19-23 (Bates # KILBURN000386, 396, 494); (ii) made for each season and then on 36 nights in Season 1 and 42 nights in Season 2 of the NightGarden displayed un-titled/re-titled and/or falsely self-attributed  3-D copies of certain Munro Works (i.e., the herein described knock-off NightGarden installations), see, e.g., infra Figs. 24-29, 31-35, 39, whilst knowing and having reason to know the knock-off installations had been copied and derived from Munro Works or images thereof; and (iii) reproducing, distributing and causing the distribution of (e.g., via press outlets, web or social media posts and "shares", news reports, etc.) photos, images, and videos of those un-titled/re-titled and/or falsely self-attributed knock-offs, see, e.g., infra Figs. 24-26, 20, 36-38, all of which lacked the original Munro CMI.  As a result of these activities, which each defendant engaged in more than once and which as a result of their extensive publicity and social media activities Defendants in the aggregate engaged in possibly thousands of times, each defendant has with the requisite intent described in DCMA § 1202 committed multiple violations of the CMI integrity provisions of DCMA § 1202(a)(1), (a)(2), (b)(1), (b)(2) & (b)(3).

96.     Specific illustrative examples of Defendants' copyright infringements, contributory copyright infringements, and CMI violations are further described below.

### 5.  Pre-opening April 2018 pitch-deck violations (Manuel, Painter, K-Media, K-Live, Imaginer)

97.     Prior to K-Live contracting with Fairchild to host the NightGarden at its facility, during April 2018 defendants Manuel, Painter, K-Media, K-Live, and Imaginer created, made copies of, circulated, and emailed around a pitch-deck about a contemplated live-event "art and entertainment" project "featuring nature-inspired immersive art installations" that they called "The NightGarden."  See Bates # KILBURN00489-496 (pitch-deck with cover page entitled "THE NIGHTGARDEN CONCEPT OVERVIEW," a contacts page listing "Mark C. Manuel

CEO, Kilburn Media" and "Max Painter Director, Imaginer" as project contacts, and bearing a header that reads, "Imaginer").

98.      Figure 19, below, depicts a page excerpted from defendants' April '18 pitch-deck.  On it, however, are two untitled, unauthorized copies of images that indisputably are of Munro Works *Forest of Light* and *Field of Light* (Longwood Gardens, PA, 2012), compare, supra, Figs. 15, 17, but that are stripped of the Works' original accompanying Munro CMI. Defendants were never authorized to copy or use either of these images (or any others) of Munro's Works.  The pitch-deck via its page header and contacts page also misattributes the content of the two unauthorized stolen images to Imaginer, Painter, K-Media, and Manuel.



Copied Work:

R1, C1: *Forest of Light* (Fig. 15, supra)

R2, C1: *Field of Light* (Longwood Gardens, PA, 2012) (Fig. 17, supra)

Figure 19
4/18 Pitch-deck excerpt (Bates # KILBURN00494)

99.      The CMI provided on and about the above pitch-deck for the two stolen images and their depicted content is false, was altered, and was provided by and distributed by these defendants.

100.    CMI for the depicted Munro Works in the pitch-deck page's two stolen images was altered and/or removed without Munro or the Studio's permission.  These defendants distributed the altered/removed CMI multiple times, including each time any one of them copied the pitch-deck or circulated it via email.

101.    From the stolen images themselves and from defendants' manner of acquiring them, these defendants knew and had reason to know that the sculptural works depicted in the pitch-deck page's two stolen images either (a) were Munro's, or (b) did not originate with these defendants.  Accordingly, these defendants acted knowingly and with the intent to induce, enable, facilitate, or conceal infringement and had reasonable grounds to know that distribution of the images sans their proper CMI would induce, enable, facilitate, or conceal infringement.

102.    As a result, defendants Manuel, Painter, K-Media, K-Live, and Imaginer violated § 1202 of the DCMA and are liable under § 1203 for damages for each such violation. Additional discovery is needed to assess and quantify the total number of violations each of these defendants committed, which relates, in part, to the number of times they each circulated or copied the pitch-deck and/or the stolen images therein.

### 6.    Pre-opening August 2018 pitch-deck violations (Manuel, Painter, K-Media, K-Live, Imaginer, Fairchild, Zapata)

103.    Around July 27, 2018, K-Live through Manuel and Fairchild through Zapata entered into their written agreement for an annual production and entertainment event called the NightGarden to be held at Fairchild's facility for initially up to three years.  Since that date, K-Live and Fairchild have shared in the NightGarden project's financial and other benefits and in creative control decisions, with K-Live (and K-Media) taking the lead on creative matters and Fairchild retaining substantial approval rights over the NightGarden and anything brought into or displayed at Fairchild's facility.

104.     Soon thereafter. in August 2018 defendants Manuel, Painter, K-Media, K-Live, Imaginer, Fairchild, and Zapata created, made copies of, circulated, and emailed around another more detailed and refined pitch-deck on their NightGarden project.  See Bates # KILBURN00377-398 (pitch-deck with cover page entitled "THE NIGHTGARDEN  . . . PHASE II CONCEPT DESIGN" and cover email).

105.     Figure 20, below, depicts two pages excerpted from defendants' August '18 pitch-deck.  On them, however, are four more unauthorized copies of images that indisputably are of the additional Munro Works *Field of Light* (Holburne Museum, Bath, UK, 2011), *Field of Light* (Long Knoll, Wilshire, UK, 2004), and *Fireflies* (from Munro's *Arrow Spring* installations both at The Hermitage and at Longwood Gardens), compare, supra, Figs. 1, 2, 3, 5, 7, 8, and 10, but that are stripped of the Works' original accompanying Munro CMI.  Defendants were never authorized to copy or use any of the four images (or any others) of Munro's Works.  As shown below in the pitch-deck page headers and as appears other pitch-deck pages, defendants have also mis-titled the four unauthorized stolen images, and in the pitch-deck (and subsequently in the NightGarden event itself) give them new, false installation names.



Figure 20
8/18 Pitch-deck excerpt (Bates # KILBURN00386)

Figure 21
8/18 Pitch-deck excerpt (Bates # KILBURN00396)

106.   The CMI provided on the above pitch-deck pages for the four stolen images and

their depicted content is false, was altered, and was provided by and distributed by these

defendants.

107.    The CMI for the depicted Munro Works in the pitch-deck pages' four stolen images was altered and/or removed without Munro or the Studio's permission.  These defendants distributed the altered/removed CMI multiple times, including each time any one of them copied the pitch-deck or circulated it via email.

108.    From the stolen images themselves, from defendants' manner of acquiring them, and from these defendants prior familiarity with Munro's Works, these defendants knew and had reason to know that the sculptural works depicted in the pitch-deck pages' four stolen images either (a) were Munro's, or (b) did not originate with these defendants.  Accordingly, these defendants acted knowingly and with the intent to induce, enable, facilitate, or conceal infringement and had reasonable grounds to know that distribution of the images sans their proper CMI would induce, enable, facilitate, or conceal infringement (which is exactly what subsequently occurred).

109.    As a result, defendants Manuel, Painter, K-Media, K-Live, Imaginer, Fairchild, and Zapata violated § 1202 of the DCMA and are liable under § 1203 for damages for each such violation.  Additional discovery is needed to assess and quantify the total number of violations each of these defendants committed, which relates, in part, to the number of times they each circulated or copied the pitch-deck and/or the stolen images therein.

110.    Additional discovery is also needed to investigate and assess other similar CMI violations and copyright infringements Defendants have not revealed but may have committed each time they copied and used images of Munro's Works or derivatives thereof, or distributed any such images with CMI altered, removed or falsified.

111.    These defendants' creation and circulation of the pitch-deck and its pages containing copied images of multiple Munro Works as shown in Figures 20 constitutes copyright

infringement by Manuel, Painter, K-Media, K-Live, Imaginer, Fairchild, and Zapata of the following Munro Works: *Field of Light* (Holburne Museum, Bath, UK, 2011), *Field of Light* (Long Knoll, Wilshire, UK, 2004), and *Fireflies*, for which these defendants are liable to Plaintiffs for damages and injunctive relief.

112.    Not long after the creation and circulation of the blatantly infringing August '18 pitch-deck, in September 2018 K-Media and K-Live through Manuel got about to formalizing Painter's ongoing role as the NightGarden's "creative director" via entry into a formal written multi-year agreement.

### 7.   G-Lights violations and Defendants' importation activities

113.    Defaulted defendant G-Lights is making, selling, advertising for sale, and importing into the United States unauthorized infringing copies and derivatives of Munro's above-identified copyright-protected Works in violation of 17 U.S.C. §§ 501, 602, et seq. Moreover, with the intent to induce, enable, facilitate, and conceal infringement, G-Lights has knowingly removed and provided and distributed false CMI associated with multiple Munro Works and images thereof in violation of § 1202 of the DMCA.  17 U.S.C. § 1202.

114.    In particular, G-Lights maintains multiple sales sites on the Alibaba platform that advertise into the United States and this district the sale of unauthorized copies and derivatives of Munro's above-identified copyright-protected Works, including for public display.  True and correct screenshots of G-Light Alibaba sites advertising and selling knock-off replicas of Munro Works are attached as Exhibits C - F.

115.    Exhibit C contains a G-Lights Alibaba sale site advertising and offering for sale knock-off replicas of Munro *Forest of Light*, *River of Light*, and *Field of Light* sculptural Works. On information and belief, G-Lights is specifically aware that it is offering and selling unauthorized replicas of these Munro Works as (a) multiple exemplative photos prominently

included by G-Lights on the site actually are of Munro's *Forest of Light* exhibit at Longwood Gardens, see Ex. C at p. 1, and (b) G-Lights includes prominent text on the site describing its offering as "Bruce Munro style outdoor . . . light." Id. G-Lights, NGL, K-Live, K-Media, Painter, Imaginer, and Fairchild have imported into the United States and this district and publicly displayed in this district these G-Light-promoted unauthorized replicas of Munro *Forest of Light*, *River of Light*, and *Field of Light* sculptural Works and, alternatively, assisted and aided one another in doing so. Fairchild COO Zapata materially participated in, directed, and approved the public display of these and other replicas at Fairchild's facilities in Coral Gables, Florida. K-Media, K-Live, and NGL's Manuel actively managed and materially participated in, directed, and approved importation of these and other replicas and the public display of these replicas at Fairchild's facility in Coral Gables, Florida.

116.   G-Lights also included in and distributed via its Alibaba listing shown in <u>Exhibit C</u> an image copied from the Munro Site of Munro Work *Whizz Pops*, but with both the title and authorship CMI removed. Compare <u>Exhibit B11</u> at p. 2 with <u>Exhibit C</u> at p. 8. This G-Lights listing therefore reflects at least two (2) violations of DMCA § 1202.

117.   **Exhibit D** contains a G-Lights Alibaba sale site advertising and offering for sale knock-off replicas of Munro's *Fireflies* sculptural Work. On information and belief, G-Lights is specifically aware that it is offering and selling unauthorized replicas of this Munro Work as the exemplative photos G-Lights included on the site actually are of Munro's *Fireflies* sculptural Works, see <u>Ex. D</u> at pp. 1, 3-6; compare, e.g, supra at Fig. 8, and the listing and photos of "[o]ther fiber optic light products" on that site are of other Munro Works. Id., at p. 6. G-Lights, NGL, K-Live, K-Media, Painter, Imaginer, and Fairchild have imported into the United States and this district and publicly displayed in this district unauthorized replicas of Munro's *Fireflies*

sculptural Works and, alternatively, have assisted and aided one another in doing so.  As Fairchild COO Zapata participated in, directed, and approved the public display of these replicas at Fairchild's facility in Coral Gables, Florida.  K-Media, K-Live, and NGL's Manuel actively managed and materially participated in, directed, and approved importation of these replicas and the public display of these replicas at Fairchild's facility in Coral Gables, Florida.

118.    G-Lights also included in and distributed via its Alibaba listing shown in Exhibit D (a) two images copied from the Munro Site of Munro Work *Fireflies*, but with both the title and authorship CMI removed and the false CMI "glightsled.en.alibaba.com" inserted instead, compare Exhibit B7 at pp. 1-2 with Exhibit D at pp. 3-5 and with supra at Fig. 8; and (b) two images copied from the Munro Site of Munro Work *Whizz Pops*, but with both the title and authorship CMI removed.  Compare Exhibit B11 at p. 2 with Exhibit D at pp. 6, 13.  This G-Lights listing therefore reflects at least twelve (12) violations of DMCA § 1202.

119.    **Exhibit E** contains a G-Lights Alibaba sale site advertising and offering for sale knock-off replicas of Munro's *Water-Towers* sculptural Work.  On information and belief, G-Lights is specifically aware that it is offering and selling unauthorized replicas of this Munro Work as the exemplative photos G-Lights included on the site are of Munro's *Water-Towers* sculptural Works.  See Ex. E at pp. 1, 3-4; compare id., at p. 4, 2nd image with supra at ¶ 53, Fig. 9.

120.    G-Lights also included in and distributed via its Alibaba listing shown in Exhibit E (a) five images copied from the Munro Site of Munro Work *Water-Towers*, but with both the title and authorship CMI removed and the false CMI "glightsled.en.alibaba.com" inserted instead, compare Exhibit B10 at pp. 5-7 with Exhibit E at pp. 1, 3-4; and (b) one image copied from the Munro Site of Munro Work *Fagin's Urchins*, but with both the title and authorship

CMI removed, compare Exhibit B11 at p. 2 with Exhibit E at p. 11.  This G-Lights listing therefore reflects at least sixteen (16) violations of DMCA § 1202.

121.   Exhibit F contains a G-Lights Alibaba sale site advertising and offering for sale knock-off replicas of Munro's *Brass Monkeys* sculptural Work.  On information and belief, G-Lights is specifically aware that it is offering and selling unauthorized replicas of this Munro Work as multiple exemplative photos G-Lights included on the site are of Munro's *Brass Monkeys* sculptural Works.  See Ex. F at pp. 1, 3-4; compare id., at p. 3, 1st image with supra at ¶ 59, Fig. 11.

122.   G-Lights also included in and distributed via its Alibaba listing shown in Exhibit F (a) three images copied from the Munro Site of Munro Work *Brass Monkeys*, but with the title and authorship CMI removed in all three and the false CMI "glightsled.en.alibaba.com" inserted instead in one, compare Exhibit B4 at pp. 1-2 with Exhibit F at pp. 1, 3-4; and (b) three images copied from the Munro Site of Munro Work *Whizz Pops* but with the title and authorship CMI removed, compare Exhibit B11 at pp. 1-2 with Exhibit F at pp. 3-4.  This G-Lights listing therefore reflects at least thirteen (13) violations of DMCA § 1202.

123.   G-Lights also promotes and advertises via its Alibaba pages the following collection of images of "[m]ore designs for outdoor" offered for sale by G-Lights, see Ex. E at p. 5; Ex. F at p. 6, which generally consist of CMI-stripped images from the Munro Site of Munro's below-listed Works:



Figure 22
G-Lights Alibaba Listing

| | Title of Munro Work | | | |
|---|---|---|---|---|
| Row 1 | | *Blue Moon* | *Bell Chandelier* | *Beacon* | *Blue Moon* |
| Row 2 | *Vandergraph* | *Beacon on the Hill* | *Snowball chandelier* | *Snowball chandelier* | *Whizz Pops* |
| Row 3 | *Whizz Pops* | *Brass Monkeys* | | *Fagin's Urchins* | *Fagin's Urchins* |
| Row 4 | *Icos* | *Icos* | | *TePees* | *TePees* |

124.    Via the preceding collection of images shown in Exhibits E & F under the heading "[m]ore designs for outdoor," G-Lights included in and distributed via its Alibaba listings in Exhibits E & F:

      a.    two images copied from the Munro Site of Munro Work *Beacon*, but with both the title and authorship CMI removed and the false CMI "glightsled.en.alibaba.com" embossed instead;

      b.    an image copied from the Munro Site of Munro Work *Bell Chandelier*, but with both the title and authorship CMI removed and the false CMI "glightsled.en.alibaba.com" embossed instead;

      c.    two images copied from the Munro Site of Munro Work *Blue Moon*, but with both the title and authorship CMI removed and the false CMI "glightsled.en.alibaba.com" embossed instead;

      d.    an image copied from the Munro Site of Munro Work *Brass Monkeys*, but with both the title and authorship CMI removed and the false CMI "glightsled.en.alibaba.com" embossed instead;

      e.    two images copied from the Munro Site of Munro Work *Fagin's Urchins*, but with both the title and authorship CMI removed and the false CMI "glightsled.en.alibaba.com" embossed instead;

      f.    two images copied from the Munro Site of Munro Work *Icos*, but with both the title and authorship CMI removed and the false CMI "glightsled.en.alibaba.com" embossed instead;

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

g.      two images copied from the Munro Site of Munro Work *TePees*, but with

both the title and authorship CMI removed and the false CMI "glightsled.en.alibaba.com"

embossed instead; and

h.      two images copied from the Munro Site of Munro Work *Whizz Pops*, but

with both the title and authorship CMI removed and the false CMI

"glightsled.en.alibaba.com" embossed instead.

*Compare* Exhibits B1 at pp. 3-4, B2 at p. 2, B3 at pp. 1-2, B4 at p. 2, B5 at pp. 1-2, B8 at pp. 1-2,

B9 at pp. 1-3, *and* B11 at pp. 1-2 *with* Exhibit E at p. 5 *and* Exhibit F at p. 6.  This G-Lights

listing therefore reflects at least forty-two (42) violations of DMCA § 1202.

125.    Via the additional following collection of images shown in Exhibit E under the

heading "[m]ore designs for outdoor", G-Lights also promotes and advertises via its Alibaba

pages and included in and distributed via its Alibaba listing in Exhibit F CMI-stripped images

from the Munro Site of additional Munro Works, including:  (a) an image copied from the

Munro Site of Munro Work *Field of Light*, but with both the title and authorship CMI removed;

and (b) an image copied from the Munro Site of Munro Work *Water-Towers*, but with both the

title and authorship CMI removed.  *Compare* Exhibits B6 at p. 10 *and* B10 at p. 6 *with* Exhibit F

at p. 5.  This G-Lights listing therefore reflects at least four (4) violations of DMCA § 1202.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK



Figure 23
G-Lights

126.     G-Lights also maintains an internet website and homepage at

www.glightsled.com ("G-Lights Homepage") that advertises into the United States and this

district the sale of unauthorized copies and derivatives of Munro's above-identified copyright-

protected Works, including for public display.  Attached as Exhibit G is a true and correct copy

of G-Light's Homepage.

127.     G-Lights also includes on and distributes via the G-Lights Homepage shown in

Exhibit G an appropriated image copied from the Munro Site of Munro Work *Whizz Pops*, but

with both the title and authorship CMI removed.  Compare Exhibit B11 at p. 2 with Exhibit G at

p. 1.  The appropriated and CMI-stripped *Whizz Pops* image, which is used by G-Lights to

market its own offerings, is prominently displayed at the top of G-Light's Homepage alongside

the promotional message, "Fiber optic lighting makes outdoor landscape project nice and

different."  The G-Lights Homepage therefore reflects at least two (2) violations of DMCA § 1202.

128.    The G-Lights Homepage also advertises and offers for sale knock-off replicas of Munro *Forest of Light*, *River of Light*, and *Field of Light* sculptural Works under the "Hot Product" listing for "Party And Event Fiber Optic Decorative."  See Ex. G at p. 1.

129.    The attached Exhibits C - F therefore reflect G-Lights' wholesale commercial appropriation, exploitation, and copying of more than a dozen of Munro's Works – including *Beacon, Bell Chandelier, Brass Monkeys, Blue Moon, Fagin's Urchins, Field of Light, Fireflies, Forest of Light, Icos, River of Light, TePees, Water-Towers,* and *Whizz Pops* – and  a multitude of images thereof, and G-Light's knowing unauthorized removal, alteration, falsification, and distribution of associated copyright management information with the intent to induce, enable, facilitate, and conceal infringement.

130.    G-Lights' blatant and intentional copying, exploitation, and infringement of the Munro Works and G-Lights' numerous DMCA § 1202 CMI violations reflected in and on the attached G-Lights Alibaba listings and G-Lights Homepage (i.e., Exhibits C - F) have had a direct and substantial impact in the United States and in this district as knock-off replicas of Munro' Works obtained from G-Lights have been imported into and publicly displayed in this district, including by NGL, K-Live, K-Media, Painter, Imaginer, and Fairchild at an exhibition in Coral Gables, Florida promoted as the NightGarden.  Munro's Studio has also had to field other inquiries regarding the authenticity and quality of the offerings on G-Lights Alibaba sites, including from Tennessee residents.

**8.  *NightGarden* Season 1 violations (re knock-off installations displayed for 36 separate nights between November 20, 2018 and January 11, 2019 and images thereof)**

131.    For Season 1 of the NightGarden, Defendants made and displayed one or more

infringing replica knock-off installations derived from and substantially similar to certain Munro Works depicted in defendants pitch-decks cited above.  Though copied from Munro Works, NightGarden Defendants employed and included on maps and guides several different installation title names for these knock-off installations like "mystic mushrooms," "magical mushrooms," and "seed."

132.    NightGarden Defendants, and Zapata and Painter in particular, promoted at least one of Season 1's knock-off installations the false title "Web of Life" and falsely attributed that knock-off installation to Painter.  Figure 21, below, shows screenshots of three Zapata Twitter social media posts dated November 18, 2018 and November 29, 2019 from her personal Twitter account handle that are also tagged to "@FairchildGarden" and "@nightgardenexperience."  In them, Zapata posts photos and videos of a large knock-off installation that is visually substantially similar to and that infringes the copyrights associated with the Munro Works *Field of Light* (Holburne Museum, Bath, UK, 2011) and *Field of Light* (Long Knoll, Wilshire, UK, 2004):



Figure 24
Zapata Twitter post re Infringing Season 1 Installation.



Figure 25
Zapata Twitter posts re Infringing Season 1 Installation.



Figure 26
Zapata Twitter posts re Infringing Season 1 Installation.

133.    Figure 20's excepted defendant pitch-deck unambiguously confirms that the NightGarden Defendants derived the above-pictured knock-off installation, at least in substantial part, from the Munro Works *Field of Light* (Holburne Museum, Bath, UK, 2011) and *Field of Light* (Long Knoll, Wilshire, UK, 2004).

134.    Season 1 of the NightGarden opened to the public and commenced for ticketed attendees around November 20, 2018, concluded on January 11, 2019, and between those dates was intermittently open to ticketed attendees only on 36 nights separate nights.

135.    Creation and the 36 nights of public display at the NightGarden of the knock-off installation depicted in Figs. 22-24 constitutes intentional copyright infringement of the Munro Works *Field of Light* (Holburne Museum, Bath, UK, 2011) and *Field of Light* (Long Knoll, Wilshire, UK, 2004) by K-Media, K-Live, Fairchild, Imaginer, Manuel, Painter, and Zapata, and for which Munro is entitled to damages and injunctive relief.

136.     The CMI that Zapata, Painter, Fairchild and the other NightGarden Defendants provided and distributed on maps, guides, social media posts (like, e.g., Zapata's Twitter posts above) and by other means in connection with the above-pictured Season 1 knock-off installation depicted in Figs. 22-24, and in any other images thereof, is false.

137.     The CMI for this installation and images thereof was removed and altered without Munro's authorization and the above Twitter posts and images were distributed multiple times by Zapata and other defendants, including each time they re-posted or shared any of the above Twitter posts or of the photos or videos linked therein.

138.     From the stolen images in the above-cited pitch-decks, from defendants' manner of acquiring them, and from these defendants prior familiarity with Munro's Works, these defendants knew and had reason to know that the knock-off installation depicted Figs. 22-24 either (a) were copied and derived from Munro's Works, or (b) did not originate with these defendants.  Accordingly, these defendants acted knowingly and with the intent to induce, enable, facilitate, or conceal infringement and had reasonable grounds to know that display of the knock-off installation and distribution of images thereof sans proper CMI would induce, enable, facilitate, or conceal infringement (which is exactly what subsequently occurred).

139.     As a result, defendants Fairchild, Zapata, Painter, Imaginer, K-Media, K-Live, Manuel, and NGL violated § 1202 of the DCMA and are liable under § 1203 for damages for each such violation.  Additional discovery is needed to assess and quantify the total number of violations each of these defendants committed, which relates, in part, to the number of times they each copied or distributed  images or videos of the Season 1 knock-off  NightGarden installations.

140.    Additional discovery is also needed to investigate and assess other related similar CMI violations and copyright infringements the Defendants have not revealed but may have committed, including each time they made, copied, or used images of the  knock-off NightGarden installations that were based on Munro's Works or derivatives thereof, or any such images thereof that were distributed with CMI altered, removed or falsified.

141.    At the end of NightGarden's Season 1, all NightGarden installations were disassembled, removed from Fairchild's facilities, and placed in storage.

**9.  *NightGarden* Season 2 violations (re knock-off installations displayed for 42 separate nights between November 15, 2019 and January 11, 2020 and images thereof)**

142.    From roughly November 15, 2019 to January 11, 2020, the NightGarden Defendants conducted, publicized, marketed, and sold tickets for Season 2 of their commercial public NightGarden event, which was touted as newly redesigned and was again held Fairchild's facility.  And once again—but this time after their prior receipt on November 11, 2020 of a copyright notice letter from Munro—they created, publicly displayed, and featured at the NightGarden unauthorized and unattributed replica knock-off installations substantially similar to, that were derived from, and that at least one of which <u>intentionally</u> infringed Munro's *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Holburne Museum, Bath, UK, 2011), and U.S.-registered *Forest of Light* sculptural Works and Munro's copyrights therein and also infringed Munro's *River of Light*, and at least another of which <u>intentionally</u> infringed Munro's *Fireflies* sculptural Work and Munro's copyrights therein.

143.    On information and belief, the NightGarden Defendants obtained material portions of these Season 2 replica knock-off installations, at least in part, from G-Lights and, along with G-Lights, imported the replicas into the United States and this district for commercial public display.  Notably, G-Lights' Alibaba site that advertises and offers knock-off replicas of

58

Munro's *Forest of Light*, *River of Light*, and *Field of Light* sculptural works (e.g., <u>Exhibit C</u>)

promotes them as "Bruce Munro style outdoor . . . light[s]" and also specifically lists and depicts

the NightGarden Defendants' NightGarden as a G-Light reference account.  See Ex. C at pp. 1,

5.

   144. Representative illustrative photos from Season 2 of the NightGarden showing

infringing knock-offs of Munro's *Fireflies* sculptural Works exhibited and publicly displayed by

the NightGarden Defendants and of an image thereof that they posted to an



Figure 27
Knock-offs of Munro's *Fireflies* sculptural
Works



Figure 28
Knock-offs of Munro's *Fireflies* sculptural Works

"@nightgardenexperience" Instagram social media account are depicted below in Figs. 27-31:





Figure 31
Knock-offs of Munro's *Fireflies* sculptural
Works

Figure 29
Knock-offs of Munro's *Fireflies* sculptural
Works



Figure 30
Knock-offs of Munro's *Fireflies* sculptural Works

145.    Representative illustrative photos from Season 2 of the *NightGarden* showing infringing knock-offs of Munro's *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Holburne Museum, Bath, UK, 2011), *Forest of Light*, and *River of Light* sculptural Works exhibited and publicly displayed by the NightGarden Defendants and two images thereof that they and others posted to an "@nightgardenexperience" Instagram social media account and to a Fairchild Instagram page are depicted below in Figs. 31-36:


Figure 32
Representative Photos from
*NightGarden*


Figure 33
Representative Photos from *NightGarden*


Figure 34
Representative Photos from *NightGarden*


Figure 35
Representative Photos from *NightGarden*



Figure 36
Representative Photos from *NightGarden*



Figure 37
Representative Photos from *NightGarden*

146.    K-Live, K-Media, NGL, Manuel, Fairchild, Zapata, Imaginer, and Painter have heavily promoted the NightGarden both seasons in media releases, on websites, and on social media sites (including Facebook, Instagram, and Twitter) and continue to do so, and have also specifically encouraged visitors to post photos from their NightGarden visits.  Social media posts promoting the NightGarden include photos of these copied knock-off replicas of Munro's Works publicly exhibited and displayed by NightGarden Defendants in their NightGarden exhibition.

147.    NGL, K-Live, Fairchild, and Zapata have collaboratively marketed the NightGarden and its public display of infringing knock-off replicas of Munro's Works.  For instance, Fairchild's www.fairchildgarden.org website touted the exhibition as "the NightGarden at Fairchild!"  Fairchild's online promotions emphasize the NightGarden not only for the sale and purchase of single-ticket sales, but also for purchase of season membership passes. Fairchild's website also links to the www.thenightgarden.com ticketing and promotional website maintained by NGL and K-Live, which facilitates and promotes the online sale and purchase of NightGarden tickets and prominently includes the following image in Fig. 37 of the NightGarden Defendants' public display of unauthorized infringing knock-offs of Munro's *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Holburne Museum, Bath, UK, 2011), *Forest of Light*, and *River of Light* Works:



Figure 38
NightGarden Promotion

148.    Fairchild, NGL, and K-Live published and is also provided and distributed the

following guide map to NightGarden attendees:



Figure 39
NightGarden Guide

149.    But nowhere on the guide map, on the www.thenightgarden.com website, on Fairchild's website, or anywhere on display at the NightGarden exhibition do any of these defendant ascribe attribution to Munro with respect to their NightGarden's knock-offs of Munro's infringing knock-offs of Munro's *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Holburne Museum, Bath, UK, 2011), *Forest of Light*, and *River of Light* sculptural Works, despite supplier G-Lights' acknowledgement that the knock-offs are replicas of Munro's Works.  See, e.g., Ex. C at p. 1.  Rather, on the guide map, on the www.thenightgarden.com website, and on signage at the NightGarden exhibition the NightGarden Defendants instead ascribe false titles to and self-credit each display, see, e.g., supra at ¶¶ 147, 148 (guide ascribing the title "Mystic Mushrooms" to the NightGarden replicas of Munro's *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Holburne Museum, Bath, UK, 2011), *Forest of Light*, and *River of Light* Works.  By all appearances, defendants utilized phony titles and self-attribution in an effort to conceal that they were and are exploiting copyrighted materials without the authorization of Munro.  This, too, violates the DMCA and its prohibition against the use of false information related to the owner, author, or title of a creative work.  17 U.S.C. § 1202.  Accordingly, Fairchild, Zapata, NGL, Painter, Imaginer, Manuel, and K-Live have in violation of § 1202 knowingly provided and distributed false copyright management information with the intent to or with reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement.  Accordingly, the NightGarden guide, website, and onsite signage therefore reflect at least three more of the many violations of DMCA § 1202 these defendants have committed.

150.    As already stated above, the NightGarden Defendants have had substantial grounds to know their actions constitute infringement of Munro's copyrights and that their

provision and distribution of false CMI will induce, enable, facilitate, or conceal infringements. In addition, other indicators and red flags include that, (a) they obtained and imported, at least in part, knock-off replicas of Munro's Works from China, a country notoriously lacking in intellectual property protections and known for production of counterfeits; (b) their apparent supplier G-Lights' own Alibaba listings state that the replicas are "Bruce Munro style . . . light[s]", see Ex. C at p. 1; (c) Fairchild via Zapata, and K-Live via its registered agent Mark Manuel, were delivered copyright notice letters notifying them in advance of Season 2 that certain displays at defendants' NightGarden were expected to constitute infringement of Munro's federally-registered *Forest of Light* Work; and (d) Fairchild and its COO Zapata have specific prior familiarity with Munro and his Works.

151.    Notably, and as already mentioned, Zapata and a member of Fairchild's board previously communicated with Munro Studio personnel regarding interest in a Munro and his Works.  As Fairchild's agent, Zapata's knowledge regarding Munro and Munro's Works is imputable and attributable to Fairchild, Zapata's principal.  Fairchild also received from Munro's Studio books on Munro and a promotional pamphlet on Munro's Longwood Gardens exhibition, which all contained multiple images of Munro's *Forest of Light*, *Field of Light* and *Fireflies* Works.  As a result of the relationships between Fairchild, K-Live, Manuel, and Zapata relating to the NightGarden, Zapata's knowledge regarding Munro and Munro's Works is also imputable and attributable to K-Live, K-Media, and Manuel.

152.    Accordingly, the NightGarden Defendants and G-Lights had knowledge of, access to, information on, and awareness of Munro and Munro's Works prior to their acts described above.

153.     As a result, the NightGarden Defendants were and are specifically aware that they imported and publicly displayed unauthorized knock-offs of multiple Munro Works and assisted and aided one another in doing so.  Moreover, they have posted and encouraged others to post on social media and elsewhere photos and images of improperly-titled and -attributed unauthorized knock-off copies of Munro Works that were on display at the NightGarden.

154.     Nevertheless, with Zapata's and others' direct assistance and approval, the NightGarden Defendants continued to publicly display unauthorized infringing copies and derivatives of Munro's above-identified copyright-protected Works.  17 U.S.C. § 501, et seq. Moreover, with the intent to induce, enable, facilitate, and conceal infringement, the NightGarden Defendants have each knowingly removed and provided and distributed false CMI associated with multiple Munro Works in violation of § 1202 of the DMCA.  17 U.S.C. § 1202.

## COUNT I -- COPYRIGHT INFRINGEMENT

155.     Munro incorporates the allegations of paragraphs 1 through 154 of this Amended Complaint as if fully set forth herein.

156.     Defendants' above-described (i) copies of photos of Munro Works, (ii) knock-off installations and products, and (iii) advertisements and numerous derivatives thereof (including innumerable photos, web posts, social media posts, media releases, and displays making up the advertising and social media publicity campaign described herein for the NightGarden) share similarities so substantial to the copyrighted Munro Works that their production, importation, reproduction, and public display constitute copyright infringement.

157.     By their actions alleged above, defendants K-Live, K-Media, NGL, Manuel, Painter, Imaginer, Fairchild, Zapata, and G-Lights have infringed Munro's copyrights in Munro's federally-registered *Forest of Light* Work and in his *Fireflies*, *River of Light*, and the *Field of Light* (Long Knoll, Wilshire, UK, 2004; Eden Project, Cornwall, UK, 2008; and

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Holburne Museum, Bath, UK, 2011) Works.  Specifically, defendants Fairchild, NGL, K-Live, and G-Lights have infringed Munro's exclusive rights set forth in 17 U.S.C. § 106 by copying, reproducing, making derivatives of, distributing, importing, advertising for sale and import, publicly displaying, and otherwise exploiting these Munro Works (including for the NightGarden exhibition at Fairchild's facilities and on defendants' sales and promotional websites).  See 17 U.S.C. §§ 501, 602.

158.    On information and belief, Manuel and K-Live are the dominant influence over NGL, and Zapata is a dominant influence over Fairchild, and each determined or directed the actions that led to the NightGarden-related infringements of Munro's *Forest of Light*, *Fireflies*, *River of Light*, and *Field of Light* (Long Knoll, Wilshire, UK, 2004; Eden Project, Cornwall, UK, 2008; and Holburne Museum, Bath, UK, 2011) Works complained of herein.  Accordingly, Manuel, Zapata and K-Live are jointly and severally liable for such direct copyright infringement.

159.    On further information and belief, K-Live maintained the right and ability to supervise the infringing activities of NGL and had a direct financial interest in those activities by virtue of its stake and role in NGL and the profits derived from the NightGarden exhibition. Accordingly, K-Live is also vicariously liable for copyright infringement.

160.    NGL is also vicariously liable for all infringements committed by K-Live (its managing agent) within the scope of its agency.

161.    By its actions alleged above, defendant G-Lights has also infringed Munro's copyrights in Munro's *Water-Towers* and *Brass Monkeys* Works.  Specifically, defendant G-Lights has infringed Munro's exclusive rights set forth in 17 U.S.C. § 106 by copying, reproducing, making derivatives of, distributing, importing, advertising for sale and import,

publicly displaying, and otherwise exploiting Munro's *Water-Towers* and *Brass Monkeys* Works (including for its sales and promotional websites).  See 17 U.S.C.  §§ 501, 602.

162.    Defendants' actions constitute willful infringement of Munro's copyrights inasmuch as they knew, or had reason to know, that their use of and exploitation of Munro's Works was unauthorized; and/or because they have acted with reckless disregard of Munro's copyrights.

163.    As a result of the foregoing, Munro is entitled to actual damages, plus Defendants' profits, and at Munro's election statutory damages of up to $150,000 for infringement(s) of his *Forest of Light* work, plus attorney's fees and costs of court.

164.    Munro is additionally entitled to immediate and permanent injunctive relief and impounding and destruction of offending items and materials.

## COUNT II -- CONTRIBUTORY COPYRIGHT INFRINGEMENT

165.    Munro incorporates the allegations of paragraphs 1 through 165 of this Amended Complaint as if fully set forth herein.

166.    By their actions alleged above, Defendants have contributorily infringed Munro's copyrights in the Munro Works.

167.    Defendant G-Lights has induced, caused, and/or materially contributed to infringing conduct by defendants Fairchild, NGL, and K-Live and by others, including by, inter alia, producing, advertising for sale, and importing into the United States replicas of the Munro Works and encouraging and facilitating the importation and public display of such replicas, including by NightGarden Defendants for one or more seasons of the NightGarden.

168.    Defendants each NightGarden Defendant has induced, caused, and/or materially contributed to infringing conduct by one another and Zapata has induced, caused, and/or materially contributed to infringing conduct by Fairchild, NGL, and K-Live including by, inter

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

alia, (a) Fairchild's provision of facilities for commercial public display of infringing knock-offs of Munro's *Fireflies*, *Forest of Light*, *River of Light*, and *Field of Light* (Long Knoll, Wilshire, UK, 2004; Eden Project, Cornwall, UK, 2008; and Holburne Museum, Bath, UK, 2011) Works, (b) Fairchild, Zapata, NGL, Painter, Imaginer, K-Media, and K-Live's collaboration on and co-promotion of the NightGarden exhibition publicly displaying replicas of infringing knock-offs of Munro's *Fireflies*, *Forest of Light*, *River of Light*, and *Field of Light* (Long Knoll, Wilshire, UK, 2004; Eden Project, Cornwall, UK, 2008; and Holburne Museum, Bath, UK, 2011) Works and their online posts of derivative images thereof on websites and social media platforms.

169.    Defendants Fairchild, NGL, and K-Live have induced, caused, and/or materially contributed to infringing conduct by others including by, inter alia, utilizing hashtags and creating specified web and social media sites which allow and encourage NightGarden attendees to re-post photographs and images of the infringing knock-offs of Munro's *Fireflies*, *Forest of Light*, *River of Light*, and *Field of Light* (Long Knoll, Wilshire, UK, 2004; Eden Project, Cornwall, UK, 2008; and Holburne Museum, Bath, UK, 2011) Works that were on commercial public display in one or more seasons of the *NightGarden*.

170.    Defendants obtained economic benefits in connection with their actions constituting contributory infringement, including increased visibility, exposure, attendance, ticket sales, and revenues for the NightGarden exhibition and increased visibility, exposure, product sales, and revenues for G-Lights.

171.    Defendants' actions constitute willful infringement of Munro's copyrights inasmuch as they knew, or had reason to know, that their use of and exploitation of Munro's Works was unauthorized; and/or because they have acted with reckless disregard of Munro's copyrights.

172.     As a result of the foregoing, Munro is entitled to actual damages, plus

Defendants' profits, and at Munro's election statutory damages of up to $150,000 for

infringement(s) of his *Forest of Light* work, plus attorney's fees and costs of court.

173.     Munro is additionally entitled to immediate and permanent injunctive relief and

impounding and destruction of offending items and materials.

### COUNT III -- COPYRIGHT MANAGEMENT INFORMATION VIOLATIONS

174.     Munro incorporates the allegations of paragraphs 1 through 173 of this Complaint

as if fully set forth herein.

175.     By their actions alleged above, Defendants have violated Section 1202 of the

Digital Millennium Copyright Act with regard to Munro's *Beacon*, *Bell Chandelier*, *Blue Moon*,

*Brass Monkeys*, *Fagin's Urchins*, *Field of Light* (Long Knoll, Wilshire, UK, 2004; Eden Project,

Cornwall, UK, 2008; Holburne Museum, Bath, UK, 2011; and Longwood Gardens, PA, 2012),

*Fireflies*, *Icos*, *TePees*, *Water-Towers*, and *Whizz Pops* Works and images thereof by knowingly

providing, distributing, and importing for distribution copyright management information

("CMI") that is false; by intentionally removing and altering CMI; and by distributing, importing

for distribution, and publicly performing and displaying copies and replicas of Munro Works

knowing and having reason to know that CMI had been removed and/or altered without Munro's

authorization.  17 U.S.C. § 1202(a) & (b).

176.     Specifically, G-Lights has committed at least ninety-one (91) CMI violations in

connection with its above-described intentional removal and falsification of title and authorship

CMI associated with the identified Munro Works and images thereof; and each NightGarden

Defendant has committed multiple CMI violations in connection with their above-described

removal and use of false of title and authorship CMI in connection with their reproduction and

distribution of copied images of Munro' s Works, public displays of the knock-off NightGarden

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

installations and reproduction and distribution of images thereof, and their signage, guides, website(s), and social media pages for their knock-off NightGarden installations that infringed Munro Works.  On information and belief, Defendants' removals and falsifications of CMI were committed knowingly, and with the intent to induce, enable, facilitate and/or conceal infringement (including in connection with NGL, K-Live, and Fairchild's encouragement of attendees' re-posts on social media of photos of the NightGarden's public display of replicas and copied knock-offs of Munro's Works).

177.    On information and belief, K-Live, Fairchild, and Manuel maintained the right and ability to supervise and/or control the publication of false CMI in connection with the NightGarden exhibition and derived a direct financial benefit therefrom, and therefore also vicariously liable for violation of Section 1202 of the Digital Millennium Copyright Act.

178.    As a result of the foregoing, Munro is entitled to actual damages plus the profits of Defendants; or in the alternative, statutory damages for each violation in an amount no less than $2,500 and no more than $25,000 per violation, plus costs and attorney's fees.  17 U.S.C. § 1203(b)(4), (5) & (c).

## INJUNCTIVE RELIEF

179.    As a direct and proximate result of the Defendants' foregoing acts and omissions, Plaintiffs have sustained, and will continue to sustain, substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Plaintiffs are informed and believe in view of the above-described conduct of Defendants that unless enjoined and restrained by this Court, Defendants will continue to infringe the Munro Works and copyrights and commit copyright management information violations.  Accordingly,  Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief ordering that Defendants and all persons under their direction, control, permission or authority be enjoined and permanently restrained from

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

exploiting the Munro Works and copyrights and to seizure, impounding, and destruction of offending items and materials.

**JURY DEMAND**

Plaintiffs demand a jury trial for all issues so triable in this action.

**PRAYER**

For the foregoing reasons, Plaintiffs request judgment against the Defendants for the following:

A.      All damages, actual damages, statutory damages, exemplary damages, enhanced damages, profits, and other legally permissible damages or recoveries allowed by law, statute, or equity, including for each work infringed and each violation of the Digital Millennium Copyright Act an award of actual damages and/or statutory damages per 17 U.S.C. §§ 504(c) & 1203(c);

B.      Temporary, preliminary, and permanent injunctive relief as alleged and as otherwise allowed per 17 U.S.C. §§ 502 & 1203(b), including an order that Defendants and all persons under their direction, control, permission or authority be enjoined and permanently restrained from exploiting the Munro Works or displaying inaccurate CMI;

C.      Seizure, impounding, and destruction of all infringing copies, equipment used to make them, related records, and any device(s) or product(s) involved in any CMI violation per 17 U.S.C. §§ 503 & 1203(b)(2) & (6);

D.      Pre-judgment and post-judgment interest on any award at the maximum legal rate;

E.      Reasonable costs and attorneys' fees as allowable and per 17 U.S.C. §§ 505 and 1203(b)(4) & (5); and,

F.      All other relief to which Plaintiffs may be entitled or as the Court may deem just, equitable, necessary, proper and/or appropriate under the circumstances.

73

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Dated:  July 22, 2020                         Respectfully submitted,


                                              */s/ Joel B. Rothman*
                                              JOEL B. ROTHMAN
                                              Florida Bar No. 98220
                                              joel.rothman@sriplaw.com
                                              CRAIG A. WIRTH
                                              Florida Bar Number:  125322
                                              craig.wirth@sriplaw.com

                                              **SRIPLAW**
                                              21301 Powerline Road, Suite 100
                                              Boca Raton, FL 33433
                                              561.404.4350 – Telephone
                                              561.404.4353 – Facsimile

                                              and

                                              CARL F. SCHWENKER
                                              cfslaw@swbell.net

                                              **LAW OFFICES OF CARL F. SCHWENKER**
                                              The Parsons House
                                              3807 Duval Street, Suite E
                                              Austin, TX  78751
                                              512.480.8427 – Telephone
                                              512.857.1294 – Facsimile

                                              *Counsel for Plaintiff Bruce Munro*

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 22, 2020, a true and correct copy of the foregoing document was served by electronic mail to all parties listed below on the Service List.

*Joel B. Rothman*
JOEL B. ROTHMAN

## SERVICE LIST

Deanna K. Shullman
Allison S. Lovelady
Giselle M. Girones
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Telephone: (561) 429-3619
dshullman@shullmanfugate.com
alovelady@shullmanfugate.com
ggirones@shullmanfugate.com

*Counsel for Defendants Kilburn Live, LLC, Night Garden, LLC, Fairchild Tropical Botanic Garden, Inc., and Zapata*

John K. Shubin, Esq.
SHUBIN & BASS, P.A.
46 S.W. First Street, Third Floor
Miami, Florida 33130
Telephone:(305) 381-6060
Facsimile: (305) 381-9457
jshubin@shubinbass.com
eservice@shubinbass.com

*Co-counsel for Defendants Fairchild Tropical Botanic Garden, Inc. and Zapata*

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK