**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

BRUCE MUNRO, et al.,

Plaintiff,

v.

FAIRCHILD TROPICAL BOTANIC GARDEN, INC., et al.,

Defendant.

**CASE NO: 1:20-cv-20079-Singhal/Louis**

**NON-PARTY RBB COMMUNICATIONS, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Non-Party RBB Communications, LLC ("**RBB**"), by and through undersigned counsel, hereby responds in opposition to Plaintiffs' Motion to Compel.

Plaintiffs served a third-party Subpoena to Produce Documents, Information, or Objects (the "**Subpoena**") on RBB on January 11, 2021 with a due date of 11 days later, January 22, 2021. This Subpoena response date was also the same day as the discovery cut off in this matter. RBB timely served objections to the Subpoena on January 22, 2021.

**A. Untimely as Discovery is Closed**

This Court recently denied Plaintiffs' fifth motion to extend discovery deadlines. [DE 106] This Court importantly stated "Plaintiffs' dilatory tactics will not be condoned in this case" and cited to the following: "A motion for extension of time is not self-executing; no motion is, unless expressly provided for by the applicable rule. Yet, by filing these motions on or near the last day, and then sitting idle 'pending the Court's disposition of the motion,' parties essentially grant their own motion. The Court will not condone this." *Compere v. Nusret Miami, LLC*, 2020 WL 2844888, *2 (S.D. Fla. 2020) (internal citations omitted).

As this Court made abundantly clear on February 23, "… the discovery period in this case closed on January 22, 2021 [75], and the Parties request to extend this discovery deadline was previously denied [106]. The Court's practice for resolving discovery disputes without filing a motion is not available beyond the discovery period. Accordingly, any application for relief from the Court may only be pursued via motion, in compliance with Local Rules 7.1 and 26.1." [DE 113].

The Discovery deadline in this case was established as January 22, 2021 as a result of prior extensions. [DE 75]. Now, 42 days after the close of discovery, Plaintiffs have filed this motion to compel, and apparently continue their dilatory attempts, which this Court previously rejected and admonished Plaintiffs. [DE 106] Plaintiffs were wildly dilatory in seeking discovery from non-party RBB, as they were aware of RBB since at least June 2020. [DE 105, p.10]; see also *Lee v. Etowah Cty. Bd. of Educ.*, 963 F.2d 1416, 1421 (11th Cir. 1992) (finding that the plaintiffs were "primarily responsible for any prejudice" because they failed to conduct discovery diligently and because their request for additional discovery "was quite tardy" coming a day before the deadline); *Jimenez v. Gov't Employees Ins. Co.*, 2014 WL 12625084, at *1 (M.D. Fla. 2014) (finding Motion to Compel untimely because it was filed 23 days after the close of discovery). Plaintiffs attempt to argue that this Court may hear the dispute after the close of discovery when the delay is minimal. The delay is far from minimal when taken in light of the dilatory actions which this Court has already ascribed to Plaintiffs, coupled with Plaintiffs' long-term knowledge (since at least June 2020) of RBB.

**B. Untimely under Local Rule 26.1(g)(1)**

Aside from being brought after the close of discovery, Plaintiffs' Motion to Compel fails as it is untimely under Local Rule 26.1(g)(1), which provides:

> [A]ll disputes related to discovery shall be presented to the Court by motion (or, if the Court has established a different practice for presenting discovery disputes, by other Court-approved method) within (30) days from the: (a) **original due date** (or later date if extended by the Court or the parties) of the response or objection to the discovery request that is the subject of the dispute; (b) date of the deposition in which the dispute arose; or (c) **date on which a party first learned of or should have learned** of a purported deficiency concerning the production of discovery materials. Failure to present the dispute to the Court within that timeframe, **absent a showing of good cause** for the delay, may constitute a waiver of the relief sought at the Court's discretion. The thirty (30) day period set forth in this rule may be extended once for up to seven (7) additional days by an unfiled, written stipulation between the parties, provided that the stipulation does not conflict with a Court order.

SDFL Local Rule 26.1(g)(1)(emphasis added); see also *4Demand, LLC v. G4S Secure Sols., Inc.*, 2020 WL 3266102, at *2 (S.D. Fla. 2020).

Plaintiffs' Motion to Compel is more than 30 days past RBB's response date and fails to show good cause for the delay. Even though it was not even requested by Plaintiffs, this Motion is also past the 7-day additional extension period in the Local Rule. Given the nature and scope of the objections, it was entirely reasonable that Plaintiffs should have known about this discovery dispute.[1] "This Rule was designed to prompt early resolution of discovery disputes and to ensure that discovery motions are filed when ripe and not held until shortly before the close [of] discovery or the eve of trial." *Higgs v. Costa Crociere S.P.A. Co.*, 2015 WL 5915789, at *1 (S.D. Fla. 2015). "In short, these deadlines are meant to focus the parties' conferral efforts and lead to a resolution (with or without Court intervention) before an issue festers and infects

[1] Plaintiffs also failed to timely serve a copy of the Amended Motion to Compel [DE 116] which was filed on Friday March 5, but not served (contrary to its certificate of service) until Monday March 8. RBB still timely complies with the response deadline regardless.

other discovery efforts or other stages of the litigation." *Haney v. PGA Tour, Inc.*, 2021 WL 535366, at *1 (S.D. Fla. 2021). Although RBB is not a party, this discovery motion practice, after the close of discovery and after this Court already denied Plaintiff's attempt to extend discovery, certainly infects other stages of the litigation.

**C. Failure to Meet and Confer**

Plaintiffs also failed to conduct a meaningful meet and confer as required by the local rules. In fact, it appears as though this is a constant pattern with Plaintiffs in this case. "Plaintiffs almost never conferred after receiving responses, documents, or objections, and often attempted to raise issues well outside of the limitation period in Local Rule 26.1(g)(1)." [DE 105, p.2].

Importantly, Plaintiffs failed to meet and confer in good faith on this discovery dispute with a non-party. See *Progressive Emu, Inc. v. Nutrition & Fitness Inc.*, 2019 WL 3798494, at *5 n.10 (11th Cir. 2019) (noting that Rule 37 "expressly requires an attempt to confer in good faith before filing a motion to compel" and local rule may impose a duty to confer); *Blanco v. Bank of Am., N.A.*, 2019 WL 4140944, at *1 (M.D. Fla. 2019). The emails exchanged between counsel highlight the behavior of Plaintiffs in this matter. On February 8, instead of seeking to meet and confer on this, Plaintiffs demanded counsel's availability for a hearing with Magistrate Judge Louis. [DE 116-3] On the same day, after additional exchanges with all counsel, the undersigned offered two different dates for a discovery hearing with Magistrate Judge Louis (despite discovery being closed). [DE 116-3]. Plaintiffs' counsel demanded that the hearing must occur during that same week of February 8, without any reasonable need and improperly claimed that the undersigned refused to cooperate. [DE 116-3]. On February 9, in response, the undersigned provided two more additional dates for a hearing. [DE 116-3]. There were no other

communications from Plaintiffs after that February 9 email until a copy of the original Motion to Compel was served on March 4. As a result, no meet and confer ever occurred prior to requesting dates for a hearing with Magistrate Judge Louis, nor prior to the filing of this instant Motion.

Upon receiving the objections, counsel for Plaintiffs responded by email to the undersigned noting that the burden of the responses on RBB was the fault of Defendants. Instead of offering to narrow the requests, or addressing any of the objections through a meet and confer, counsel for Plaintiffs instead stated "How soon can your produce?". [DE 116-3 p.9] Their Motion to Compel now sits before this Court as a result of Plaintiffs' failures.

**D. Subpoena is Facially Overbroad and Unduly Burdensome**

"Rule 45 subpoenas are not to be used as an 'end-run' around the regular discovery rules that apply to parties, i.e., notices of deposition in Rule 30, or for production of documents in Rule 34." *Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 2008 WL 4186989, *2 (M.D. Fla. 2008); see also *Thomas v. IEM, Inc.*, 2008 WL 695230, *2 (M.D. La. 2008)(Rule 45 subpoenas are "generally used to obtain documents from non-parties and are 'clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34'")(quoting *Burns v. Bank of America*, 2007 WL 1589437 (S.D.N.Y. 2007)); *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996)(discovery of documents from a party, as distinct from a non-party, is not accomplished pursuant to Rule 45); see also *Panchoosingh v. Gen. Labor Staffing Services, Inc.*, 2009 WL 10667883, at *1 (S.D. Fla. 2009).

The Subpoena was facially and grossly overbroad and unduly burdensome. As the Eleventh Circuit Court of Appeals recently found, "requiring the production of 'any and all

documents' that 'refer to, relate to, or evidence' 10 categories of documents over a ten-year period, was grossly overbroad and unduly burdensome. See *Progressive Emu Inc. v. Nutrition & Fitness Inc.*, 785 Fed. Appx. 622, 628 (11th Cir. 2019). In the instant case Plaintiffs' subpoena included 45 numbered requests, in which 25 of those numbered requests include multiple subpart requests. This is the epitome of grossly overbroad and unduly burdensome. Plaintiffs' requests ranged across vast areas and categories. A short sampling of the over-breadth nature of these requests is identified in request Nos. 7, 13, 15, 18, 20, 30, 32 and 35.   With the exception of the time limitation in the instructions, namely January 1, 2018 to present, there are no other limitations in these requests.

In yet another example of the facially overboard and burdensome scope of these requests, Plaintiffs very first request (which includes 9 separate subparts) seeks: "Contracts relating to the NightGarden between YOU and: (a) K-Media; (b) K-Live; (c) NG; (d) IL; (e) II; (f) G-Lights; (g) Painter; (h) Zapata; (i) Manuel." [DE 116 p.9]. Are the Plaintiffs legitimately arguing that after apparently over one thousand discovery requests directed at the collective Defendants, that no contracts between RBB and the listed 9 entities or individuals had been produced?[2]  The Motion states "Discovery of the contracts between the principals, the named defendants in this suit, and their agent provides a legitimate need for the documents. The scope of the agreement is crucial to Plaintiffs' ability to understand the roles of each the many different actors involved in the production, promotion, display, etc. of the NightGarden exhibition." [DE 116 p-9-10]. This is exactly the type of request that should have been narrowly tailored from the start, or at best to have been narrowed after the objections were received. Is RRB expected to believe that 11 days

---

[2] This is not an admission by RBB that any contract(s) existed between one or more of those listed in Request No. 1.

prior to the close of discovery Plaintiffs still are unsure of the "roles of each the many different actors involved in the production, promotion, display, etc. of the NightGarden exhibition." If that is the case, then this this serves as a clear indication of the dilatory efforts by Plaintiffs, and the utter overbreadth of these requests. Plaintiffs failed to narrow these requests, provide context of what agreements they already have, nor the information regarding these undefined "roles" as claimed in their Motion.

"Rule 45 leaves no room for a party or attorney to issue an untimely, facially overbroad and unduly burdensome subpoena and expect to work out the details later, especially when the subpoena requires compliance in less than one business day, as was the case here." *Progressive Emu Inc.*, 785 Fed. Appx. at 629. In the instant matter, RBB was faced with compliance of this subpoena under an **11 day deadline** which coincided with the last day of discovery. This type of wildly excessive demand with such a short response deadline is exactly the concern that the courts have cautioned against. Plaintiffs' scope of requests utterly fail to exercise an attempt to comply with the obligation to "take reasonable steps to avoid imposing an undue burden or expense" under Rule 45.

"With regard to the burden imposed on non-parties in responding to discovery requests, courts consider the following factors: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request." *Great Am. Ins. Co. v. Veteran's Support Org.*, 166 F. Supp. 3d 1303, 1310 (S.D. Fla. 2015) (quoting *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 521 n. 2 (N.D.Fla.2013) (balancing enumerated factors in deciding motion to quash subpoenas) (quoting *Bozeman v. Chartis Cas. Co.*, 2010 WL 4386826, at *3–4 (M.D.Fla. Oct. 29, 2010)); accord *United Tech. Corp. v. Mazer*,

2007 WL 788877, at * 1 (S.D.Fla. Mar. 14, 2007); *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D.Ohio 1999). In balancing the need for discovery against the burden imposed on the person from whom documents are sought "**the status of a person as a non-party is a factor that weights against disclosure**."   See *Great Am. Ins. Co.*, 166 F. Supp. 3d at 1310 (emphasis added); see also *Schaaf v. SmithKline Beecham Corp.*, 2006 WL 2246146, at *2 (M.D.Fla. 2006).

There is nothing in these 45 numbered requests that gives a hint that any of the requested documents are already in the possession of Plaintiff through discovery, or that Plaintiff even attempted to obtain these records from the long list of Defendants. This callous approach has equally been addressed before. "Moreover, the requests remain duplicative of documents already produced by Defendant, such as audits. Plaintiff attempts to justify its duplicative request with the explanation that a witness has provided testimony indicating that Defendant's response is incomplete." *Marine Depot, Int'l, Inc. v. James River Group, Inc.*, 2020 WL 7493110, at *3 (S.D. Fla. 2020, Hon. Louis).   This idea of "information from a witness" in a deposition is the same excuse that Plaintiff provided to this Court during the February 2nd hearing with Magistrate Judge Louis. Interestingly, there is no admission or even explanation that these non-party requests directed at RBB are not duplicative of those directed at or responded to by any of the 11 Defendants.

RBB has shortened the 45 numbered requests in the laundry list below. This does not expressly include the list of requests seeking Communications, but instead focuses on Documents.

> Contracts, agreements, written authorizations, decks or design plans, design, configuration, footprint, and dates of public display, title of, creator of, or signage for any installations, Documents identifying employees, contractors, agents, and personnel, the document entitled "2018 Recap Report The NightGarden,", the document entitled "NightGarden 2019-2020 Earned/Paid Media & Influencer Engagement Report", and the data and information used to prepare the report(s), and documents sufficient to identify the authors and recipients of the report(s), reports to any NightGarden Defendant on any Buzz Media, Promotions, or Promotional Campaign, photos, images, or videos of the NightGarden, maps, guides, literature, and handouts provided or made available to NightGarden Season attendees, Press releases, Paid and earned media regarding the NightGarden and documents sufficient to identify the circulation of each instance of paid or earned media, Billboard and digital billboard ads for the NightGarden and documents specifying their location, duration, and display frequency, Advertisements for the NightGarden, any related advertising agreements, and documents specifying where each ad ran or was placed, and its circulation, Email blasts, distribution lists for each email blast, Sponsorship solicitations, Articles, reports, and media reports (including digital, electronic, online, print, or physical), any documents quantifying the distribution, circulation, or number of impressions of each article or report, Copies of any interviews regarding the NightGarden, and documents identifying the publisher, broadcaster, or streamer of each interview, and the viewership for each interview, copies of websites and social media pages and accounts under YOUR control or used by YOU or YOUR agents to advertise, promote, or market the NightGarden, Documents listing any social media sites, handles, or hashtags used, Each social media post, Each web page, Authorizations, permissions, and copyright clearances received.

The striking nature of this document list should serve to spotlight the facial overbreadth of these Requests when shown together. Plaintiffs' motion should be denied.

**E. Definition Problems**

The definitions of the Subpoena include nine (9) different corporate Defendants, whereby Plaintiffs broadly include "all representative, agents, employees, attorneys and accountants" of

each entity. These definitions are so broad and expansive, that they alone can serve to cause this Court to rule the Subpoena is facially overbroad and unduly burdensome. Instead of making any attempt to narrow down the objections prior to filing this motion, Plaintiffs ignore this significant deficiency with the Subpoena. Plaintiffs address this definition problem in a single sentence in the Motion, but only to identify the existence of the objection. [DE 116, p3]. There is no substance addressing this critical definitional issue, which permeates the entire set of requests. Given the nature of documents and communications being sought, Plaintiffs showed no scintilla of an attempt to narrow the requests, nor the definitions of the multiple entities and individuals listed and that formed the basis for them.

The burden on RBB doesn't end there, as Definitions w, x, y and cc-jj, all reference specific pleadings, which were not attached to the Subpoena. Instead of providing these pleadings, RBB is forced to incur the time and expense of searching for and obtaining these pleadings. It appears as though Plaintiffs may have just used copy/paste from prior discovery requests to actual party Defendants, when drafting this Subpoena. For this reason, the Motion to Compel should be denied.

**F. Specific Problems with Subpoena**

RBB believes the Court's review of this matter should end with the above cited sections and result in a denial of the Motion to Compel. In the rare event that the Court seeks more justification or extends Plaintiffs a lifeline to confer after the close of discovery and attempt to narrow the requests, Plaintiffs requests are still doomed as they must meet a required standard of being both relevant and proportional. The Subpoena is facially neither relevant nor proportional. Without the aid of any prior discovery production by any of the 11 Defendants, the burden

should plainly not be placed on RBB to determine proportionality. Additionally, Plaintiffs admitted to being unable to comply with the page limit, and simply cast away requests 13-45 as if they are simply the same analysis. At a minimum, Plaintiffs requests to compel regarding Nos. 13-45 must be denied. Plaintiffs never sought relief from this Court for an expanded briefing page limit.

The proportionality concern is explained in a recent opinion from this Court, when dealing with requests for non-party email communications. "However, not all of the narrowed categories are apparently relevant, or proportional. For example, **not all email communications between auditor and Defendant about Ayassure are relevant**; even accepting Plaintiff's theory of relevance, only communications that evidence Defendant's plan to set aside a specific budget for payments to or for Ayassure would be. **The burden of requiring the auditors to conduct a search of its electronically stored information including emails to identify communications with Defendant is not proportional to the need of the case**." *Marine Depot* at *3 (S.D. Fla. 2020, Hon. Louis)(emphasis added).

The communications requested in this Subpoena attempt to cover every possible breathable space of RBB, as shown in Request Nos. 3, 14, 15, 16, 17, 18, 19, 20, 21, 28, 38, 39, 41, 43 and 44. Those requests directly use the term Communications, but there are additional requests that inherently require communications as defined by Plaintiffs, including Nos. 6, 8, 9, 10, 11, 12, 22, 23, 25, 26, 27, 29, 30, 33, 35, 37, 40, and 45. Much like the failure to narrow or identify those contracts that Plaintiff may have received during discovery with the Defendants, the same failure to identify or narrow as to Communications is present here. It is apparent that Plaintiffs were provided significant email communications from the Defendants, yet seek to

burden RBB with a full internal search analysis and document production without limitation.

In yet another example of the overbreadth and failure to narrow by Plaintiffs, a review of Request Nos 27-32 seeks documents that are not specifically limited to those in the possession or control of RBB. Instead, they seek every single aspect of advertising, marketing, media, articles, stories, photos, videos, etc. It is also noteworthy that so many of the Requests across the board in the Subpoena are duplicative of each other, and further highlight how unreasonable the Requests are.

The Court in *Marine Depot* went further to note, that even relevancy was not enough in some instances. "I find that while relevant, the burden of requiring these non-parties to respond disproportional to the needs of the case. 'The availability of similar documents and information is itself a separate basis to quash these subpoenas under Rule 26.' …Plaintiff has been permitted discovery from Defendant on the same issue …..Plaintiff's requests had vastly exceeded that which was even proffered as relevant. Plaintiff's requests to Carmen Solutions and Leading Edge similarly, to the extent they seek relevant documents, **are completely duplicative of discovery compelled from Defendant and disproportionate to the needs of this case**." *Marine Depot* at *3 (S.D. Fla. 2020, Hon. Louis)(citations omitted)(emphasis added).

Plaintiffs consistently sought facially overbroad document production. As an example, Request Nos. 12-13 seek: "Maps, guides, literature, and handouts provided or made available to (a) NightGarden Season 1 attendees; (b) NightGarden Season 2 attendees." and "Photos, images, footage, film, and videos of: (a) NightGarden Season 1; (b) NightGarden Season 2." It is clear that there was no limitation on the scope of these requests, and would require a complete production of nearly every single aspect of the work that RBB conducted. How could every

single photo or image possible be proportional to the allegations in this case? These Requests necessarily include photos that were never circulated or published, but nonetheless in the possession of RBB. In fact, Request No 37, makes it clear that Plaintiffs understood the differentiation of images that were created but not distributed, as they have a special indicator for the same in that Request. These are simply ridiculous requests given the arc and timing of the discovery in this case, and are not proportional.

Another example which perfectly encapsulates the expansive and overbroad requests is shown in Request No. 6: "Documents identifying the tasks YOU performed in connection with any Buzz Media, Promotions, or Promotional Campaign relating to: (a) NightGarden Season 1; (b) NightGarden Season 2." RBB is shocked that this even requires an explanation of the unrestricted nature and scope of the Request. It must be viewed with a full reading of the definitions of terms listed in the Request:

> (z) "Promotional Campaign" means the advertising, social media, web, and promotional campaign associated with the NightGarden, including either Season 1 or Season 2; (aa) The term "Buzz Media" means communications by any person, other than the NightGarden Defendants, reporting, announcing, describing, discussing, commenting, or otherwise disseminating statements in the traditional and nontraditional media, including but not limited to articles, blogs, social media platforms, and other third- party websites. (bb) "Promotions" means any form of advertising, marketing or promotion, including but not limited to online, social media, and buzz marketing, videos, ads, press releases, announcements, email blasts, tweets, or social media posts.

Compelling RBB to produce documents identifying **every task** performed by RBB is facially absurd when read in full context with the definitions.

Yet another example of the overbroad and unduly burdensome request comes in Request No. 33: "Copies of websites and social media pages and accounts under YOUR control or

used by YOU or YOUR agents to advertise, promote, or market the NightGarden." There is no limitation to this production Request since it includes websites and accounts along with social media pages. Therefore, entire websites and entire accounts would necessarily be required. This is facially overbroad and lacks proportionality. Moreover, it seeks not just those under RBB's control but any of those electronic locations "used by" RBB. This includes any within the possession and control of other non-parties or Defendants.

Regarding RBB's appropriate assertion of confidentiality, Plaintiffs brush past this objection simply noting that a Protective Order is in place, despite one not being provided in connection with the service of the Subpoena. Plaintiffs fail to acknowledge or explain how this information is necessary or proportional. "When the party responding to the subpoena shows that the requested information is confidential and that its disclosure might be harmful, the party seeking discovery must show that the information is not only relevant, but also necessary to its case." *United Technologies Corp. v. Mazer*, 2007 WL 788877, *1 (S.D. Fla. 2007). Plaintiffs cite to *Emery v. Allied Pilots Ass'n*, 2017 WL 3412234, at *2 (S.D. Fla. 2017) to support the claim that they do not have to first seek documents from Defendants. The Court in *Emery* compelled the production of a single settlement agreement, after an *in camera ex parte* review. This is a far cry from the expansive nature of the Requests, reaching into every aspect RBB's activities. It would be inexplicable how confidential information, which based upon these Requests includes internal operating procedures, financials, strategies and personnel information, is needed, and the Motion fails to make such a justification.

Plaintiffs' Subpoena and this entire discovery dispute, after the close of discovery, is perfectly summed up by the following case:

> Relatedly, the subpoenas to Leading Edge and Carmen Solutions **demonstrate a clear failure by Plaintiff to avoid unnecessary burden on a subpoena recipient**. Fed. R. Civ. P. 45(d)(1). The subpoenas **fail to describe with any meaningful specificity what documents are actually sought** and inherently would require the recipient to undertake expensive searches to identify responsive documents. For example, Plaintiff seeks documents that contain the names of any employee or contractor that worked for either subpoena recipient over a four-year period. Putting aside the absurd overbreadth of the request, the search that would be required to respond to it is staggering to imagine. The only requests that are specific enough to reasonably enable the recipient to identify responsive documents present a different burden on the recipient: disclosure of sensitive or confidential information. The subpoenas demand that Leading Edge and Carmen Solutions disclose to a competitor financial information including what they paid their employees, how much they earned, and what they charged their clients for services, and disclosure of services rendered to their clients. **There is no crevice of the subject businesses these subpoenas would leave unexplored. In sum, it cannot be overstated how far these subpoenas strayed from the duty to avoid burden to the subpoena recipient**.

*Marine Depot,* at *2 (S.D. Fla. 2020, Hon. Louis)(emphasis added)

**G. RBB as Agent of Defendants**

Plaintiffs' claims regarding RBB and Defendants control and authority as an alleged "agent" is entirely misplaced. Plaintiffs take a hardline position, which was rejected by Magistrate Judge Louis, and carries it back into this Motion. In fact, Plaintiffs even cite to a decision that supports denial of this current motion: "The Court already found that a management relationship, standing alone, does not demonstrate that Peninsular had the practical ability to produce or control the documents of the five hotels it manages. The burden was on Plaintiff, as the party seeking the discovery, to present this information…" *Bouton v. Ocean Properties, Ltd.*, 2017 WL 2720927, at *3 (S.D. Fla. 2017). This issue of agency has already been addressed by this Court. The Court has previously stated that discovery disputes from early in the case, based on any alleged deficiencies from the early production is time barred. It is clear that Plaintiffs either never moved to compel, or failed to timely move to compel documents or responses from

Defendants as part of the myriad of lengthy and repetitive Discovery requests.

Regarding Plaintiffs'' alleged attempts to obtain the discovery from Defendants, there is no showing or evidence in the Motion that Plaintiffs identified the scope of those documents and efforts. Plaintiffs state that RBB is an agent of Defendants, which includes at least 11 different party Defendants according to the Subpoena. There was no good faith attempt to narrow the Requests to indicate what documents each of the different Defendants provided. There was no good faith attempt to reduce the burden on RBB. Considering that Plaintiffs have known about RBB since June 2020, and has issued over a thousand discovery requests, it strains the imagination how RBB is now burdened with an explicitly overbroad discovery push regarding every single moment surrounding the allegations in this case.

**H. Privilege**

Plaintiffs argue that RBB's objections are improper without a privilege log. In this matter though, the obligation of a privilege log is further burdensome, and appropriately excusable for any delay preparation and production. Given that discovery is closed and the facially overboard and burdensome nature of the Requests, it is unreasonable for RBB to be forced to provide this additional information. As one court recently explained, the failure to produce a privilege log did not result in a waiver. See *Pierre v. Intuitive Surgical, Inc.*, 2018 WL 7080036, at *5 (S.D. Fla.2018). In the event the Court determines that responses to any of the Requests is required, and after the Court determines the appropriate scope of those Requests, RBB will be in a position to provide an appropriate privilege log.

**I. Conclusion**

Non-Party RBB requests that this court DENY the Plaintiffs' Motion to Compel.

**Dated: March 19, 2021.**

**THE CONCEPT LAW GROUP, P.A.**
*Counsel for Non-Party RBB Communications, LLC*
6400 North Andrews Avenue, Suite 500
Fort Lauderdale, Florida 33309
(t): 754-300-1500
(f): 754-300-1501

By: */s/ Darren Spielman*
Darren Spielman (FBN: 010868)
Email: dspielman@conceptlaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the on March 19, 2021 a true and correct copy of this document was filed via CM/ECF of was emailed to all attorneys of record as per the below Service List.

By: */s/ Darren Spielman*
Darren Spielman (FBN: 010868))

**SERVICE LIST**

Joel B. Rothman
Joel.rothman@sriplaw.com
SRIP Law
21301 Powerline Road
Suite 100
Boca Raton, Florida 33433
Tel: 561-404-4350
*Attorneys for Plaintiff TARGUS INTERNATIONAL, LLC*

Deanna K. Shullman
Allison S. Lovelady

Giselle M. Girones
James Slater
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Telephone: (561) 429-3619
dshullman@shullmanfugate.com
alovelady@shullmanfugate.com
ggirones@shullmanfugate.com
jslater@shullmanfugate.com
Counsel for Defendants Kilburn Live, LLC,
Kilburn Media LLC, Manuel, Night Garden,
LLC, Fairchild Tropical Botanic Garden,
Inc., Zapata, Imaginer Ltd., Imaginer Inc.,
and Painter


John K. Shubin, Esq.
SHUBIN & BASS, P.A.
46 S.W. First Street, Third Floor
Miami, Florida 33130
Telephone:(305) 381-6060
Facsimile: (305) 381-9457
jshubin@shubinbass.com
eservice@shubinbass.com
Co-counsel for Defendants Fairchild
Tropical Botanic Garden, Inc. and Zapata