**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-20079-SINGHAL/LOUIS

BRUCE MUNRO, *et al.*,

      Plaintiffs,

v.

FAIRCHILD TROPICAL BOTANIC GARDEN, INC., *et al.*,

      Defendants.

**DEFENDANTS'[1] RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO
DEEM MATTERS ADMITTED (DE [125]) AND MOTION TO STRIKE**

Throughout this case and as recently as last week, Plaintiffs have served almost every single discovery document in this case at or around midnight, most certainly to truncate Defendants' response time. They did so on Christmas Eve with their last requests for admission, taking a huge gamble—late service would mean fewer than 30 days in the discovery period,[2] obviating Defendants' requirement to respond; timely service would mean fewer days over the holidays for Defendants to respond to approximately 2,000 requests for admission, in addition to

---

[1] The term "Defendants" excludes Defendant Zhongshan G-Lights Lighting Co., Ltd.

[2] Plaintiffs continue to misrepresent when fact discovery closed in this case. They claim here and in other papers that certain fact discovery matters were appropriate after January 22, 2021 because the expert discovery deadline was extended. (DE [125] at 8; [122] at 7 n.14). Those arguments are wrong. (*See* DE [75, 94, 106]). Fact discovery closed on January 22. It was not extended beyond that date, and in fact, the Court expressly declined to extend fact discovery beyond the January 22, 2021 cutoff (DE [106]).

the 621 requests for production and 72 interrogatories served just before midnight on December 22, 2020.[3]

Plaintiffs' gamesmanship failed to pay off. They served their requests for admission after midnight on December 24, 2020, meaning Defendants were not required to respond. However, in an abundance of caution, Defendants served a motion for protective order ("MPO") (DE [125-5, 125-6]) at the close of discovery anyway in case there was a later dispute as to timing of service.

Instead of accepting their blunder, Plaintiffs waited 82 days from service of Defendants' MPO and notice that their requests were untimely to confer with Defendants for the first time about an hour before they filed their motion (DE [125]) with the Court. They employ half-truths to persuade the Court to deem almost 2,000 late and improper requests for admission technically admitted. Their motion is baseless.

### I. PLAINTIFFS' MOTION IS AN IMPROPER VEHICLE FOR RELIEF AND SHOULD BE STRICKEN

Plaintiffs' request is not appropriate. Here, as explained in detail below, the requests were served too late to require a response, so no requests were admitted, and Rule 36 is not the appropriate mechanism for relief. *Green v. Costco Wholesale Corp.*, No. 8:17-CV-1428-T-27AAS, 2018 WL 1899031, at *2 (M.D. Fla. Apr. 20, 2018) (motions to deem requests admitted are contrary to plain language of the rule); *Schwartz v. NCL (Bahamas), Ltd.*, No. 08-23092-CIV,

---

[3] This number (2,000 requests) accounts for around 400 subparts to the 1,530 propounded requests for admission. It would be wholly inappropriate for the Defendants to respond collectively that request, as many questions concern items that can only be confirmed through a single defendant's personal knowledge, like whether Nannette Zapata "regularly reviewed emails" received at a certain email address during a certain time frame, to confirm the relationship between Kilburn Media and Kilburn Live, to determine how long Mark C. Manuel has served as CEO of Kilburn Live, or to confirm Fairchild received certain payments. Only Fairchild can confirm it received payments; only Zapata can confirm she "regularly reviewed emails," and so forth.

2009 WL 10666990, at *1 (S.D. Fla. Aug. 17, 2009) (appropriate mechanism is for a party to move to withdraw admissions under Rule 36(b)); *Ramos v. Yokopor*, No. 17-23107-CIV, 2018 WL 5044256, at *1 (S.D. Fla. Jan. 4, 2018) (striking a motion to deem requests admitted as "unauthorized and unnecessary" under Rule 36).

Instead, Plaintiffs should have discussed the matter with Defendants and thereafter brought the timing issue and Defendants' MPO before the Court pursuant to the Court's procedures and the Local Rules should the issue remain unresolved. But they did not. They waited too long under Local Rule 26.1(g)(1) to seek *any* relief or respond to or even make any effort to confer about Defendants' MPO. Now they use a procedurally improper motion to challenge an issue that should have been brought before the Court in January or February, not April 2021. For this reason alone, their motion should be or stricken from the docket or otherwise denied. Notwithstanding, the motion is substantively without merit. The Court should find that the requests were untimely served, and, if not, that the MPO demonstrates good cause for protection under Rule 26(c).

**II.     PLAINTIFFS' REQUESTS FOR ADMISSION WERE UNTIMELY SERVED**

On December 24, 2020, Plaintiffs served a single document containing 170 requests for admission directed to each Defendant, or 1,530 total requests. (DE [125-6] at 9–10; [125-2]). Pursuant to this district's local rules, Defendants were not required to respond to Plaintiff's requests or serve a motion for protective order because there were only 29 days between Plaintiff's service email (December 24, 2020) and the close of fact discovery (January 22, 2021). *See* S.D. Fla. L. R. 26.1(d).

Plaintiffs claim that their service email was initiated at 11:56 pm eastern time on December 23, 2020, and that time should be dispositive for determining when service occurred

under Rule 5(b). (DE [125] at 8–9). Again, had Plaintiffs not resorted to gamesmanship, there would be no need for their argument as to what time is controlling for "sending" the email: purportedly clicking the "send" button (or scheduling delayed delivery) at or around 11:56 pm, or when the email was sent from Plaintiff's server for transfer. Plaintiffs provide no caselaw to support their position that clicking "send" (or scheduling a send time) is the proper inquiry.

It cannot be. Pursuant to Rule 5(b)(2)(E), service by email is complete "upon […] sending but is not effective if the filer or sender learns that it did not reach the person to be served; . . ." Rule 5 does not define "sending," but the latter part of the rule makes clear that simply clicking "send" (or scheduling a delayed delivery) is not enough. In fact, from a technical standpoint, an email is not sent when the "send" button is clicked or at the time an email is later scheduled to be sent. Rather, a message is not "sent" until after the mail server determines the recipient IP address and breaks down the message into packets for transfer to the recipient's servers. *See Hall v. Sargeant*, No. 9:18-CV-80748, 2019 WL 1359485, at *1 (S.D. Fla. Mar. 26, 2019) (explaining the process of sending email); *United States v. Szymuszkiewicz*, 622 F.3d 701, 704 (7th Cir. 2010), as amended (Nov. 29, 2010) (explaining how emails are broken down into packets before sending).

Plaintiffs' position ignores that there is a delay between clicking the "send" button (or when a delayed email is scheduled to send) and the actual movement of the message beyond the sending lawyer's own server. To illustrate how Plaintiffs' position cannot stand, the Court need only reference Plaintiffs' copies of their service email attached to their motion – each copy shows a *different timestamp.* (DE [125] Ex. 3, 4] (showing 11:54 and 11:56 p.m. sent timestamps). The discrepancy can be easily explained—those two servers factored a different message initiation time, likely around the time counsel scheduled an email delivery (which

4

Defendants assume is the method of delivery considering counsel consistently serves documents just before or after midnight). But Defendants' recipient server calculated a later initiation time (after midnight), likely because there was either a delay in sending the message to a transfer agent, or because of general delays in scheduled delivery. *See* (DE [125] Ex. 6, p. 9) (showing 12:05 a.m. timestamp); *See also,* MICROSOFT SUPPORT, *Delay or schedule sending email messages*, https://support.microsoft.com/en-us/office/delay-or-schedule-sending-email-messages-026af69f-c287-490a-a72f-6c65793744ba (explaining that scheduled emails can be delayed up to 120 minutes). Plaintiffs would have the Court ignore these delays. According to Plaintiffs' theory, Defendants would have had to guess that the email was initiated before midnight to calculate a response time even though the timestamp on Defendants' email client listed a time after midnight. That simply cannot be the correct reading of Rule 5.[4]

The Court should find that (1) Plaintiffs have not met their burden to show that their requests were served timely, *Reeves v. Wilbanks*, 542 F. App'x 742, 746 (11th Cir. 2013), and (2) their motion itself is untimely. *See* S.D. Fla. L.R. 26.1(d), (g)(1).

### III. EVEN IF THE REQUESTS WERE TIMELY, THE MPO WAS PROPERLY SERVED, ANY DELAY IS PLAINTIFFS' FAULT, AND PROTECTION IS NECESSARY

Next, Plaintiffs claim that Defendants' MPO is not effective or persuasive. They focus on the fact that the motion was served, but not filed, and then try to shift the blame onto Defendants for Plaintiffs' ignoring the motion for three months. They also argue that Defendants' objections

---

[4] Defendants did provide later notice that the email was sent after midnight, which—if the Court disagrees with Defendants' interpretation of "sending"—should implicate the second clause in Rule 5(b)(2)(E) ("but is not effective if the filer or sender learns that [the email] did not reach the person to be served"). Although caselaw on this precise issue is scant, clearly Plaintiffs later knew that the email did not arrive until December 24, 2020. They did not do anything for 82 days. They only now argue that the email was initiated earlier. They should be precluded from raising these arguments now under Local Rule 26.1.

to the 1,530 requests for admission "flaunt precedent" and do not sufficiently demonstrate good cause. Should the Court consider Plaintiffs' untimely and procedurally improper motion at all, it can easily dispense with Plaintiffs' arguments.

### A. Defendants Were Not Required to File the MPO, and Plaintiffs Waived Perceived Deficiencies by Waiting Three Months to Confer.

First, Plaintiffs complain that the MPO is "literally, a still-unfiled document" that is not effective at preserving Defendants' objections to Plaintiff's last-minute sweeping requests for admission. (DE [125] at 13). The Court, however, has required the parties to serve (but not file) motions for protective order during the discovery period. (*Cf.* DE [113]) (requiring discovery relief to be pursued by motion *after* the discovery period). And Defendants served (but did not file) a motion for protective order earlier in this case to no objection from Plaintiffs. Were this argument in good faith, or had Plaintiffs carefully read the quote from the Court's discovery practices they cite on the very next page of their motion, they would know that this argument is frivolous. (*Id.* at 14) (motions for protective order "must be served (not filed)").

Further, the cases Plaintiffs rely on have nothing to do with a purported filing requirement for a motion for protective order: *Goodwin*[5] stands for the proposition that a motion to stay, not a motion for protective order, is necessary to obviate a deposition; and *Merrill Lynch*,[6] in granting a motion for protective order, explains the burden of persuasion. Plaintiffs

---

[5] *Goodwin v. City of Bos.*, 118 F.R.D. 297 (D. Mass. 1988).

[6] *Pensacola Firefighters' Relief Pension Fund Bd. of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 3:09CV53/MCR/MD, 2011 WL 3512180, at *10 (N.D. Fla. July 7, 2011), report and recommendation adopted, No. 3:09CV53/MCR/MD, 2011 WL 3511069 (N.D. Fla. Aug. 10, 2011).

offer no other support for their erroneous contention that Defendants were required to file the MPO.[7]

Next, based on the Court's discovery practices, Plaintiffs argue that Defendants waived any objections in the MPO by not bringing the dispute promptly before the Court. This argument ignores that Defendants were never required to serve the MPO in the first place or take any action as to Plaintiffs' late-served requests under Local Rule 26.1(d) (which expressly includes moving for a protective order). *Zendejas v. Redman*, No. 15-81229-CV, 2017 WL 2782034, at *2 (S.D. Fla. June 26, 2017) (no need to move for protective order under L.R. 26.1(d)); *Grimsley v. Focus Fin. Servs.*, No. 15-81263-CIV, 2016 WL 4920992, at *1 (S.D. Fla. Mar. 25, 2016), aff'd sub nom. *Grimsley v. Palm Beach Credit Adjusters, Inc.*, 691 F. App'x 576 (11th Cir. 2017) (defendants did not have to respond to discovery because there were fewer than 30 days left in the discovery period). Defendants never obfuscated this fact—the first paragraph of the MPO specifically states that "Defendants are not required to respond to these voluminous requests or serve this motion [under Local Rule 26.1(d)]" but "serve this [MPO] in case there is any dispute as to the timing of service." (DE [125-6] at 2).

Even if the Court finds that Plaintiffs timely served their requests, Defendants have not waived their arguments by not setting the MPO for hearing. Courts routinely find that "minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver." *Bin Salem Holding Co., LLC v. Blair*, No. 11-60931-CIV, 2012 WL 12838284, at *1 (S.D. Fla. Sept. 5, 2012) (quoting *Ritacca v. Abbott*

---

[7] As mentioned, Defendants also previously served, but did not file, a motion for protective order in the summer, causing Plaintiffs to withdraw certain discovery requests. In that instance, Plaintiffs addressed the matters raised in the motion with Defendants and did not ignore the issue for months then complain that the motion was not filed with the Court.

*Laboratories*, 203 F.R.D. 332, 335 (N.D. Ill. 2001) (no waiver of objections to requests for production); *Allstate Ins. Co. v. Fed. Sav. Bank*, No. 12-60077-CIV, 2012 WL 12860753, at *1 (S.D. Fla. Aug. 20, 2012) (no waiver of interrogatory objections where counsel learned of the interrogatories after deadline); *Payne v. Seminole Elec. Coop., Inc.*, No. 3:19-CV-1173-J-32MCR, 2020 WL 7324683, at *4 (M.D. Fla. Dec. 11, 2020) (no waiver where responses were late). Defendants served their MPO in an abundance of caution and did not in good faith believe they were required to set the MPO for hearing because the requests were late. To the extent the Court deems the requests timely, a finding that Defendants waived their precautionary MPO would result in a severe penalty despite this good-faith belief. !

Further, any failure here rests squarely with Plaintiffs. Around the time Defendants served the MPO, Plaintiffs sought to extend the discovery deadline and raised several other discovery matters before the Court. (*See, e.g.*, DE [101, 103, 106, 113]). But they never raised the MPO. They never conferred about the MPO. Having heard no response to the MPO from Plaintiffs, Defendants reasonably presumed Plaintiffs abandoned them as untimely. Instead, they waited three months to address the MPO with Defendants, and it was only so they could comply with Local Rule 7.1(a)(3) just an hour or two prior to filing the instant motion. If anyone waived the right to address the requests for admission, it was Plaintiffs.

### B. The MPO is Proper and Necessary.

As to the substance of the MPO, Plaintiffs argue that Defendants lack good cause and assert boilerplate objections. (DE [125] at 15–20). Plaintiffs primarily take issue with the fact that each Defendant did not object to each propounded request—in essence, the MPO is not sufficient because there are not 1,530 objections. (In fact, when counting subparts, Defendants would have needed to raise approximately 2,000 objections to pass Plaintiffs' proposed test for

8

good cause.) (DE [125-6] at 4). But that is the point of Defendants' MPO—they need protection from the sheer volume of Plaintiffs' broad-sweeping requests. *JCW Software, LLC v. Embroidme.com, Inc.*, No. 10-80472-CIV, 2011 WL 2149062, at *2 (S.D. Fla. May 31, 2011) (finding good cause for protection as to thousands of requests for admission); *Joseph L. v. Connecticut Dep't of Child. & Fams.*, 225 F.R.D. 400, 403 (D. Conn. 2005) (good cause based in part on excessive subparts). Not only that, but Defendants have sufficiently asserted why the volume and nature of requests were improper considering the circumstances of this case.

To provide context, Plaintiffs typically send form requests to all or categories of Defendants. In this instance they sent a single document to all Defendants bearing 170 requests. (DE [125-2]). After calculating subparts, each Defendant would be required to provide approximately 2,000 answers, denials, or objections. Because of Plaintiffs' decision to employ these templates throughout this case, each Defendant has been faced with responding to requests or interrogatories that have nothing to do with them. In this instance, for example, Request No. 72 asks every Defendant to admit that Max Painter has used a certain email address since 2018. That request is only appropriate for Max Painter, not every single Defendant in this case. As noted in footnote 3 above, another request asks every Defendant to confirm whether Nannette Zapata "regularly reviewed emails" using a certain email address—no one but Nannette Zapata can answer that question, yet Plaintiffs posed it to everyone. Thus, the form of the requests itself is highly objectionable. *JCW Software*, 2011 WL 2149062, at *1 (same requests copied for each defendant were objectionable).

Defendants also explained in the MPO that the nature of the requests compounded with the sheer volume of them warranted protection. (DE [125-6] at 5–6). The crux of the requests are admissions as to the authenticity of produced documents. (*See* DE [125] at 16). Those requests

would require each Defendant to go through myriad discovery documents to make admissions or denials as to those documents. Courts have granted protection against such "enormous task[s]." *Gross v. Guzman*, No. 11-23028-CIV, 2013 WL 12091159, at *10 (S.D. Fla. Jan. 25, 2013). Further, even if some of the requests were "straightforward, pertinent questions" as Plaintiffs contend in their motion (DE [125] at 17), that does not excuse them from unnecessarily burdening Defendants with thousands of requests. Had the requests been straightforward, reasonably numbered, and, of course, timely served, then Defendants would not have needed to move for protection. Considering the relatively few works at issue in the case and the limited nature of the event at issue (two seasons spanning a few months each), there was no need for Plaintiffs to propound more than 2,000 requests (inclusive of subparts). *See Roland Corp. v. inMusic Brands, Inc.*, No. 17-CV-22405-MORENO/LOUIS, at *3 (S.D. Fla. Sep. 24, 2019) (noting that the overall complexity of the dispute is the primary consideration for protection), attached as Exhibit 1.[8]

Accordingly, to the extent the Court deems that Plaintiffs' requests were served timely, Defendants respectfully request that their MPO be granted for the reasons stated above.

### IV. TO THE EXTENT ANY REQUESTS ARE DEEMED ADMITTED, DEFENDANTS REQUEST LEAVE TO WITHDRAW THEM

Last, in the event the Court deems any of Plaintiffs' requests for admission technically admitted under Rule 36(a)(3), then Defendants respectfully request that they be granted leave to withdraw such technical admissions. Fed. R. Civ. P. 36(b); *Perez v. Miami-Dade County*, 297 F.3d 1255, 1264 (11th Cir. 2002) (the test for withdrawal is whether it will subserve the

---

[8] In *Roland*, the Court found that Defendants had not met their burden seeking protection as a third set of requests for admission containing 511 requests in a patent case with more than 100 claims relating to 8 different patents. Here, Plaintiffs complain about two lights and six images. There is no rational explanation for needing 2,000 requests in this case.

presentation of the merits and prejudice the nonmoving party). Allowing Defendants to withdraw any technical admissions would aid in the ascertainment of truth and development of the merits in this case without establishing any liability. *Perez*, 297 F.3d at 1266. Further, Plaintiffs would not be prejudiced by any withdrawal because trial has not begun and reverting to their normal burden in proving elements of their case is not grounds for a finding of prejudice. *Id.* at 1266–67.

## V. CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' motion because it is not the proper vehicle for addressing this dispute. To the extent the Court considers the merits of Plaintiffs' claims, it should deny the motion because Plaintiffs' requests were untimely under the Local Rules and because Defendants satisfied good cause for entry of a protective order.

Dated: April 26, 2021.

Respectfully Submitted,

SHULLMAN FUGATE PLLC

**Deanna K. Shullman**
Deanna K. Shullman (FBN 514462)
Allison S. Lovelady (FBN 70662)
Giselle M. Girones (FBN 124373)
James M. Slater (FBN 111779)
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Tel: (561) 614-2592
dshullman@shullmanfugate.com
alovelady@shullmanfugate.com
ggirones@shullmanfugate.com
jslater@shullmanfugate.com

*Attorneys for Defendants*