## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:20-cv-20079-SINGHAL/LOUIS

BRUCE MUNRO, *et al.*,

        Plaintiffs,

v.

FAIRCHILD TROPICAL BOTANIC
GARDEN, INC., *et al.*,

        Defendants.

## DEFENDANTS'[1] JOINT MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendants move for the entry of summary judgment in their favor on the entirety of Plaintiffs' First Amended Complaint (DE [69]) ("FAC"). As detailed here, Plaintiffs' copyright and Digital Millennium Copyright Act ("DMCA") claims fail as a matter of law on several grounds, and there exists no genuine dispute as to any material fact. Accordingly, Defendants are entitled to judgment as a matter of law.[2]

## INTRODUCTION

This case is about Plaintiffs' attempts to unlawfully monopolize the use of lightbulbs with fiber-optic cables in outdoor displays. They proceed even though the U.S. Copyright Office recently refused to register one of the very works at issue in this lawsuit because it is a useful article and consists of simple, geometric shapes lacking any originality or creativity. And they

---

[1] The term "Defendants" excludes Defendant Zhongshan G-Lights Lighting Co., Ltd.

[2] Pursuant to Local Rule 56.1, Defendants' joint motion is supported by their Statement of Undisputed Material Facts ("SOF"), inclusive of exhibits attached to a Notice of Filing filed contemporaneously and the Declarations of Max Painter and of James Slater, also filed contemporaneously. Some exhibits are also filed under seal pursuant to this Court's prior orders.

raise other frivolous claims—such as seeking copyright protection for images or photographs they do not own, seeking damages precluded by the Copyright Act, and requesting enforcement of a copyright in an idea or concept, among other things. The Court should find summary judgment appropriate as to all counts because:

(a) The DMCA claims must all fail because "knock-offs" are not entitled to protection under the DMCA, and Plaintiffs do not own the lights, map or photographs they complain about;

(b) The alleged works are useful articles that constitute unprotectible basic shapes and lack any creativity or originality;

(c) There is no substantial similarity between the parties' installations because the alleged works have no protectable elements to copy, and Defendants cannot be liable for copying an idea;

(d) The individual Defendants as corporate officers cannot be liable for contributory infringement as to their own entities; and

(e) Plaintiffs cannot demonstrate any actual damages and are not entitled to statutory damages and attorneys' fees.

## **BACKGROUND**

This case concerns purported copyright infringement and DMCA violations brought by two United Kingdom Plaintiffs: individual Bruce Munro ("Munro") and his studio. Plaintiffs are not based in Florida or the United States. SOF ¶ 1–2. Despite the meandering FAC (DE [69]) and the various irrelevant allegations therein, this case boils down to two basic issues. First, Plaintiffs bring a copyright and DMCA claim based on Defendants' own *NightGarden* light installations (light bulbs and fiber-optic lights) that Plaintiffs contend are "knock-offs" of Munro's works. *See, e.g.*, FAC ¶¶ 78, 149, 154. Second, the DMCA claim is also based on photographs of the *NightGarden* event taken by and/or posted by third-party *NightGarden* attendees and others. SOF ¶ 77; FAC ¶¶ 87, 169. The DMCA claim is further based on a map of the *NightGarden* and the alleged use of certain photographs in internal electronic documents created prior to the *NightGarden* ("pitch decks"), none of which were created or owned by Plaintiffs. FAC ¶¶ 76, 82-83. There are no issues of material fact that preclude judgment in favor of Defendants on the DMCA and infringement claims.

## A.      The *NightGarden*

The *NightGarden* was a two-month, outdoor, interactive, immersive event occurring at Fairchild Tropical Botanic Garden ("Fairchild") during the holiday months (November through January). *See id.* at ¶ 78. The first season of *NightGarden* occurred from November 20, 2018 to January 11, 2019. *See id.*; SOF ¶ 84. It returned for a second season from November 15, 2019 to January 11, 2020. FAC ¶ 78; SOF ¶ 85.

*NightGarden* was created in partnership between Fairchild, a not-for-profit tropical garden located in Miami, Florida, and NightGarden, LLC, via Kilburn Live, a live events production company. Max Painter, through his companies, Imaginer Ltd. and later Imaginer, Inc. ("Imaginer") worked with Kilburn Live and Fairchild to develop creative ideas for the project. Defendants and their contractors created and built custom light displays to provide a unique experience. SOF ¶ 87. They also ordered light components in bulk from Chinese manufacturers for the event. SOF ¶¶ 100, 105.

During the evening event, visitors walked through more than 20 acres of the Fairchild gardens on a designated illuminated path, which featured vignettes with a talking tree, spinning lights, holographs, and other interactive features. (DE [35], 2); SOF ¶ 86. The event also featured music, food trucks, and beverages. *Id.*

## B.      The *NightGarden* Mushrooms and Fiber Lights

Plaintiffs complain that Defendants "exploit[ed] and appropriat[ed] [] multiple sculptural artistic works, including, inter alia, Munro's federally-registered *Forest of Light* sculptural work, and *Fireflies*, *Field of Light*, *River of Light*, *Water-Towers*, and *Brass Monkeys* sculptural works and series of works" at the *NightGarden*. FAC ¶ 14. Besides Munro's federally registered *Forest of Light* at Longwood Gardens work ("Forest Registration"), the remainder of his works are alleged unregistered United Kingdom works. FAC ¶¶ 32, 36.[3]

---

[3] Despite Plaintiffs making clear that this is *not* about an alleged infringement of selection and arrangement of lights or infringement of any particular Munro exhibition, Plaintiffs still complain about one work under United Kingdom law that was first "created and exhibited" in the United States—*Field of Light* at Longwood Gardens. FAC ¶ 65; SOF ¶¶ 14, 29–30. Because the work was first published in the United States, it is not a United Kingdom work, and therefore must be registered with the Copyright Office prior to suit. *See Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 885 (2019) (requiring registration prior to suit); *see also*

(*footnote continued on next page*)

Despite listing several "works" in the FAC, Plaintiffs actually take issue with two items—a stick-and-bulb light and a fiber-optic cable light. The stick-and-bulb lights at the *NightGarden* were generally referred to as "mushrooms" or "mystic mushrooms." The fiber-optic cable lights had no distinguishing name at any time, but for purposes of this Motion will be referred to as "fiber lights." The mushrooms were used in both seasons of the *NightGarden*, and the fiber lights were only used in season two. SOF ¶¶ 97, 102–103. Below are images of the *NightGarden* mushrooms and fiber lights:



| **Mushroom** | **Fiber lights** |

*Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1304 (11th Cir. 2012) (explaining a plaintiff's burden to prove a publication occurred abroad to avoid registration). Plaintiffs cannot bring any claims on this work for their failure to register it.

Plaintiffs[4] claim that these two lights—used in a small portion of the *NightGarden* event[5]—were "knockoffs" or "copies" of Munro's stick-and-bulb light and fiber-optic light he calls *Fireflies*.[6] SOF ¶ 88; FAC ¶¶ 115, 117, 133, 149–50. Plaintiffs are *not* claiming that Defendants have selected and arranged the lights in the same manner that Plaintiffs have displayed Munro's lights. SOF ¶ 30. Despite disclaiming any selection and arrangement similarity between the *NightGarden* displays and Plaintiffs' exhibitions, Plaintiffs have also testified that they do not consider the lights individually, because every Munro exhibition is a "whole" with all lights to be viewed together. SOF ¶ 31. In contradictory fashion, Plaintiffs then claim that any use of a single light infringes their copyright, regardless of how they are arranged. SOF ¶ 31. Accordingly, per Plaintiffs, no one else—including Defendants—can use such lights in their own, unique light displays.

## ARGUMENT

### I.     Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.

---

[4] Plaintiff Bruce Munro Ltd. (Munro's studio) does not have sufficient standing to pursue any claims associated with this lawsuit. 17 U.S.C. § 501(b) only accords standing to the legal or beneficial owner of an "exclusive right" in a copyrighted work. *Itar-Tass Russ. News Agency v. Russ. Kurier, Inc.*, 153 F.3d 82, 91 (2d Cir. 1998); *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011). Neither Plaintiff has established any ownership in the photographs allegedly in dispute in this case. For the tangible lights at issue, Munro claims that *he* is the owner of them. *See, e.g.*, FAC ¶¶ 32, 37, 85 ("Munro owns the copyrights in the Munro Works, Stemmed Orbs, and Stemmed Spheres.") Accordingly, Bruce Munro Ltd. does not have standing to pursue these claims or recover any damages. Defendants refer to "Plaintiffs" herein for brevity.

[5] For example, the bulbs in *NightGarden* season 2 were confined to fewer than 2,000 square feet, or 0.046 acres, of the more than 20-acre event.

[6] The light bulb used in Munro's *Forest of Light*, *Field of Light*, and *River of Light* displays are collectively referred to as the "stick-and-bulb light." Although Plaintiffs give those displays different names, there is only one difference—outdoor location placement of the work and how Munro feels. SOF ¶¶ 29, 32.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). A dispute is genuine only if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247–48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247–48).

## II.   Defendants are Entitled to Summary Judgment on Count III (DMCA).

With sweeping accusations that lack meaningful detail, Plaintiffs allege in Count III that Defendants have "violated Section 1202 of the Digital Millennium Copyright Act [DMCA]" by committing "multiple CMI violations." FAC ¶¶ 175–76. Plaintiffs assert that these violations fall into two categories: (a) "false" CMI (which is the subject of § 1202(a))[7] and (b) "removal" of Plaintiffs' CMI (which is the subject of § 1202(b)).[8] By way of background, "CMI" refers to "copyright management information," which the DMCA defines as "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c)(3). CMI often appears in a form akin to: © *Jane Doe 2020*.

As the wording of the statute reflects (*see* footnotes 7 and 8)—and as the body of case law under the DMCA confirms—this type of statutory claim is quite narrow with specific

---

[7] 17 U.S.C. § 1202(a) is entitled "False Copyright Management Information" and provides that "[n]o person shall **knowingly** and with the **intent** to induce, enable, facilitate, or conceal **infringement** (1) provide copyright management information that is **false**, or (2) distribute or import for distribution copyright management information that is **false**." (Emphasis added.)

[8] 17 U.S.C. § 1202(b) is entitled "Removal or Alteration of Copyright Management Information" provides that "No person shall, without the authority of the copyright owner or the law- (1) **intentionally remove or alter** any copyright management information, (2) distribute or import for distribution copyright management information **knowing** that the copyright management information has been **removed or altered** without authority of the copyright owner or the law, or (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, **knowing** that copyright management information has been **removed or altered** without authority of the copyright owner or the law." That statute further requires that when committing such an act, the violator must "**know**[], or, with respect to civil remedies under section 1203, hav[e] reasonable grounds to know, that it will induce, enable, facilitate, or conceal an **infringement** of any right under this title." (Emphasis added.)

requirements that a plaintiff must prove. To that end, courts are not shy about granting summary judgment if any of those requirements lack solid evidentiary support. As explained below, Munro has not and cannot present any evidence of record to support even a single requirement of either subsection of the statute. No evidence exists that Defendants provided any false CMI, that Defendants removed any Munro CMI, or that Defendants possessed the strictly required "double scienter" of acting both "knowingly" and with "intent" to aid an infringement. In addition, none of the works upon which the DMCA claim rests are original works created by Munro himself (or his studio). All the works at issue were created by others—a fact that, standing alone, is fatal to any DMCA claim.

## A.     Stringent Requirements of DMCA

Illustrating how stringent the DMCA requirements are and how vulnerable such claims are to summary judgment is *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352 (N.D. Fla. 2010)—which has been routinely cited by courts across the country. In *Faulkner Press*, the defendant published a study aid for students called "Einstein's Notes" that incorporated material from the plaintiff's published textbooks and lecture notes authored by a professor at the University of Florida. A DMCA claim was brought alleging that: (a) the defendant intentionally "altered or removed" CMI by including in its study aid some material that was contained in the plaintiff's publications and (b) the defendant intentionally published false CMI by stamping "Einstein's Notes (C)" on its study aid. This claim did not survive summary judgment.

*First*, the court rejected the "removal" argument because the defendant's own workers had prepared their own summaries of the plaintiff's publications and those summaries are what was ultimately included in the "Einstein Notes" product. *Id.* at 1359. As the court reasoned, because the plaintiff's original work itself was not included in the study aid, the accompanying CMI could not be deemed to have been "removed." *Id.* at 1359. *Second*, the court rejected the "false" CMI argument outright because the defendant *itself* had created a new product that was different from the plaintiff's original work and thus it was not "false" to print "Einstein's Notes" on *its own* product. *Id.* at 1359–60. *Third*, the court found that the record failed to support the "intent" requirement of the statute. Even though the study aid was based on the plaintiff's publications, the court deemed that study aid to be the defendant's own "derivative work," and the record contained no evidence demonstrating that the defendant had created it with any "intent

to aid infringement." *Id.* at 1360. These very points have been adopted and/or are reflected in a string of other DMCA cases, and this wealth of authority collectively reinforces the demanding requirements of the statute, including but not limited to the following:

➢ ***Actual "Removal" from Plaintiff's Original Work Is Required.*** Building on the point made in *Faulkner Press*, the court in *Design Basics, LLC v. WK Olson Architects, Inc.*, 2019 WL 527535 (N.D. Ill. Feb. 11, 2019), dismissed a DMCA claim with prejudice because it was based on a product that defendant had created itself. Even though the defendant's product did copy certain aspects of the plaintiff's work, the court concluded there could be no "removal" within the meaning of the DMCA unless there was an actual removal of CMI from that work. The court explained:

> Plaintiffs claim that [the defendants] violated § 1202 by removing or omitting plaintiffs' CMI from [their] allegedly infringing plans. . . . An action for removal of copyright management information requires the information to be removed ***from a plaintiff's product or original work***. Here, Plaintiffs do not allege [the defendant] directly reproduced their plans without CMI. Instead, they contend that [defendants] copied aspects of its original works, with [defendants'] plans appearing virtually identical to those of Plaintiffs. Basing a drawing on another's work is not the same as removing [CMI]. . . . [T]he Court dismisses the DMCA claim with prejudice because further amendment of the claim would be futile.

*Id.* at *5 (citations omitted; emphasis added). *See also Park v. Skidmore, Owings & Merrill LLP*, 2019 WL 9228987, at *11 (S.D.N.Y. Sept. 30, 2019) (no DMCA violation for "removal" of CMI where defendant merely "incorporated the plaintiff's copyrighted materials into *its own* work and then applied its [defendant's] name as the author of the work") (emphasis added).

➢ ***"Removal" Cannot Be Based on Mere Failure to Give Attribution.*** Because a CMI "removal" claim under the DMCA requires an *affirmative* act of removal, it necessarily follows that the mere failure to give attribution to someone else does not and cannot suffice. In *Frost-Tsuji Architects v. Highway Inn, Inc.*, 2014 WL 5798282 (D. Haw. Nov. 7, 2014), for example, the plaintiff complained that the defendant's work was "virtually identical" to plaintiff's own work and thus violated the CMI "removal" prohibition because it failed to include any CMI attributing ownership to the plaintiff. The court disagreed. As the court explained in throwing out the DMCA claim on summary judgment, this is not the type of scenario that falls within the prohibition of this particular statute. In the Court's words:

> [Defendant's] possession of floor plans that [plaintiff] says are virtually identical to its work does not mean that [defendants] removed or had anyone remove [plaintiff's CMI] from [plaintiff's] plans. "Virtually identical" plans could have been created by redrawing [plaintiff's] plans and not including [plaintiff's CMI], but that would not involve any removal or alteration of [CMI] from [plaintiff's] original work. … Without evidence of removal, [plaintiff] has no viable claim for removal of [CMI]. . . . ***The physical act of removal is not the same as basing a drawing on someone else's work.*** Reliance on another's work is insufficient to support a claim of removal of [CMI].

*Id.* at *5–6 (emphasis added); *accord RAZ Imports, Inc. v. Regency Int'l Business Corp.*, 2020 WL 4500627 (N.D. Tex. Aug. 5, 2020) (dismissing DMCA claim with prejudice because merely failing to give attribution to a plaintiff for images that a plaintiff may own is not the same as "removing" a plaintiff's CMI).

> ➢ ***CMI Must Be Removed from "Body" of Plaintiff's Original Work.*** To be actionable under the DMCA, the "removal" must relate to CMI that is contained in or right next to the "body" of the plaintiff's original work. That was the very point made in *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920 (N.D. Ill. 2013), which explained that:

> [§ 1202(b)] applies only to the removal of [CMI] *on* a plaintiff's product or original work – in other words, not simply printed somewhere on the website. . . . Such a rule prevents a "gotcha" system where a picture or piece of text has no CMI near it but the plaintiff relies on a general copyright notice buried elsewhere on the website.

*Id.* at 929 (emphasis added; quotation omitted). Simply put, the DMCA "removal" prohibition does not kick in if the defendant would have had to go searching around to find the plaintiff's CMI.

> ➢ ***CMI Is Not "False" if it Relates to Defendant's Own Derivative Work.*** Relying on *Faulkner Press*, another court in Florida granted summary judgment on a DMCA claim just two months ago. In *Yellow Pages Photos, Inc. v. Dex Media, Inc.*, 2021 WL 799695 (M.D. Fla. Feb. 3, 2021), the defendant Dex Media included in its own yellow-page directory a series of images for which the plaintiff (YPPI) held registered copyrights. At the bottom corner of the directory's cover page, the defendant printed its own CMI: "© 201[_] Dex Media. All rights reserved." The plaintiff claimed that this violated the DMCA. It theorized that the defendant's placement of its own CMI on the directory was "false" because the plaintiff owned the photos inside the directory and its CMI was excluded. The court disagreed and entered summary

9

judgment in favor of Dex Media. In so ruling, the court explained that the directory as a whole was a different product than the plaintiff's photos inside it, that the defendant's own CMI appearing on the cover of the directory was therefore not "false," and that it was not conveying any CMI regarding the images therein. *Id.* at *7; *see also Personal Keepsakes*, 975 F. Supp. 2d at 929 (no § 1202(b) violation because defendant's placement of its own CMI in its website footer is not tantamount to displaying "false" CMI information about specific works or images contained on the website).

> ➤ ***DMCA Violation Requires Proof of "Double Scienter."*** As an additional ground for entering summary judgment, the *Dex Media* court pointed out that the plaintiff failed to present any evidence demonstrating that the defendant had acted "knowingly" *and* with the "intent to induce, enable, facilitate, or conceal infringement"; as the court explained, absence of such proof to support this "double scienter" requirement "sounds the death-knell" for the DMCA claim. *Dex Media, supra*, at *7; *see generally Krechmer v. Tantaros*, 747 Fed. App'x. 6, 9 (2d Cir. 2018) (affirming dismissal of DMCA claim for failure to meet the "double scienter requirement"). While those authorities arose in the context of § 1202(a), it should be noted that the text of § 1202(b) likewise requires proof of a double layer of knowledge—*i.e.*, knowledge/intent as to the CMI removal and knowledge that such removal will "induce, enable, facilitate, or conceal an infringement." *See*, footnote 8, *supra*.

### B.   No Evidence to Support DMCA Violation under § 1202(a) or § 1202(b)

The allegations of the DMCA claim in Count III are nebulous. The following were alleged to the be the basis of this claim in the FAC: (1) Defendants' own bulbs, fiber, and lights used in their own *NightGarden* displays; (2) six specific images that were taken or created by individuals other than Munro and used in pre-event internal pitch decks (*see* DE [69] at Fig. 3, 7, 8, 10, 15 & 19 R2, C1); and (3) two Defendant-created works—namely, a *NightGarden* season two webpage containing a link to "Buy Tickets" for the *NightGarden* event, and a one-page illustrated map of the season two *NightGarden* event (*see* DE [69] at Fig. 38 & 39).[9] None of these items are even capable of giving rise to a valid DMCA claim. In this regard:

---

[9] Oddly, Plaintiffs also take issue broadly with any Defendant or person—including *NightGarden* attendees—*that may have captured his or her own photographs* of the *NightGarden* displays and posted them online or on social media, including the use of hash tags. FAC ¶¶ 169, 176. There is simply no legal or evidentiary support for these allegations. These

(*footnote continued on next page*)

1. ***Bulbs, Fiber, and Lights in NightGarden Displays***. There is no dispute that the tangible items used in the *NightGarden* displays were *not* created by Plaintiffs. SOF ¶ 89. As the evidence shows, the mushroom light components were purchased from Alibaba via a manufacturer in China, *see* Declaration of Max Painter ¶ 20-21 ("Painter Decl."); SOF ¶ 100, and fiber lights were purchased the following year from a different manufacturer in China, *see* SOF ¶ 105. Because this category does not involve any of Plaintiffs' original works at all, there can be no valid DMCA claim—as underscored by *Faulkner Press*, *Design Basics*, and *Frost-Tsuji*, among others. Indeed, in this context, there could not logically be any "removal" of Munro's CMI, addition of "false" CMI that omits Plaintiffs, or any knowledge thereon, because Plaintiffs were not involved in creating or manufacturing those items in the first place. SOF ¶ 89.[10]

2. ***Six Images Not Created by Munro***. The evidence shows that none of the images at issue were taken or created by Plaintiffs, nor did any of them contain Plaintiffs' CMI. Indeed, they were all taken or created by third parties, *see* SOF ¶¶ 60, 62, 64, 69, 71–73. There are no written assignments or work-made-for-hire agreements for any of these works that would transfer these third parties' rights to either Plaintiff. SOF ¶¶ 59, 61, 63, 67–68, 70–75. The only written agreement between any photographer and Plaintiffs that has been produced in this action only applies to photographs taken *after* 2018, *see* SOF ¶¶ 66–67, and all the pitch deck images were created *prior to* 2018. SOF ¶¶ 59, 61, 63, 68, 71–72.[11] Because none of the photographs are

---

photographs would depict *Defendants' NightGarden* displays, and Plaintiffs have not claimed to own any of these photographs. Plaintiffs also have not—and cannot—claim that Plaintiffs' CMI existed on them in any event.

[10] While not necessary to the analysis, it should be noted that Munro's own components that Plaintiffs install in their own displays <u>do not even contain any CMI</u>, *see* SOF ¶¶ 41–42, 50–51, and as *Personal Keepsakes* teaches, any CMI that Plaintiffs might have placed elsewhere would be irrelevant to any DMCA claim.

[11] Plaintiffs also obliquely reference "copies of photos of Munro Works" in their count for direct infringement, although earlier in the FAC the only allegations related to the pitch decks concern DMCA. *See* FAC ¶ 156. To the extent Plaintiffs claim direct infringement as to the pitch decks or other images, that claim must also fail because again, Plaintiffs do not own them, and the majority are clearly United States works subject to the requirement that Plaintiffs obtain copyright registration prior to commencing suit, per *Fourth Estate*, 139 S. Ct. at 885; *see also Kernel Recs. Oy v. Mosley*, 694 F.3d at 1304; *see, e.g.*, FAC ¶¶ 98, 105 (including photographs

(*footnote continued on next page*)

Plaintiffs' original works, Plaintiffs are barred from asserting any DMCA violation thereon under the *Faulkner Press* line of authority discussed above. Moreover, to the extent images were located through a Google Images search and then saved into Defendants' internal "pitch decks," (Painter Decl. ¶¶ 7-9, 11) there is *no* evidence that any CMI was ever removed from those images, *no* evidence that any false CMI was added to those images, *no* evidence that Defendants had any knowledge about CMI being removed, and *no* evidence of any intent to aid an infringement. As such, all of the required ingredients for a DMCA violation are missing.

What the evidence does show directly negates the claim. Indeed, the creator of the pitch deck confirmed that he never even saw Plaintiffs' names in connection with *any* of the images, nor did he remove, crop, edit or alter any markings on any image used in the pitch decks. SOF ¶¶ 54–55; Painter Decl. ¶¶ 13–15. The evidence further establishes that the pitch decks were merely Defendants' internal documents which served as background for those working on the *NightGarden* event *and they were never disseminated to the public*. SOF ¶ 56; Painter Decl. at ¶¶ 7, 11–12. That too cuts directly against the "intent" element for a DMCA violation.

> ***3.*** **_The "Buy Tickets" Webpage & Map of NightGarden Event._** As Plaintiffs readily acknowledged, they had *no* involvement whatsoever in the *NightGarden* events. As such, photos on the *NightGarden* season two "Buy Tickets" webpage and the map of *NightGarden* (which was created by a third-party contractor working on the event, *see* SOF ¶ 83), are obviously *not* the original work product of Munro himself. That alone defeats his DMCA claim for the reasons discussed above. Again, in such a context, Plaintiffs have not *and cannot* present any evidence that *Munro's CMI* was "removed" or that "false" CMI omitting him was added, much less that any such (non-existent) acts were done knowingly or with an intent to further an infringement.

What all these glaring evidentiary deficiencies underscore is that Plaintiffs are pursuing a theory of recovery that simply does not fit the facts or law. As the Eleventh Circuit has made clear, summary judgment must be entered where the nonmoving party (Plaintiffs here) fails to present "specific facts showing there is a genuine issue for trial," and neither a "scintilla of evidence" nor mere "conclusory allegations" suffice. *See Johnson v. New Destiny Christian Ctr.*

---

allegedly taken at Longwood Gardens in Kennett Square, Pennsylvania and Hermitage Museum in Norfolk, Virginia); SOF ¶¶ 59, 61, 71–72. *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (the burden is on Plaintiffs to demonstrate ownership of a valid copyright and that the applicable statutory formalities are met).

*Church, Inc.,* 2020 WL 5289881 at *3 (11th Cir. Sept. 4, 2020); *Middlebrooks v. Sacor Fin., Inc.*, 775 Fed. App'x. 594, 596 (11th Cir. 2019). Plaintiffs have not *and cannot* satisfy their evidentiary burden on this record, and Defendants are entitled to summary judgment on Count III.

### III. Defendants are Entitled to Summary Judgment on the Copyright Infringement Claims because Plaintiffs' Works Are Useful Articles That Are Not Copyrightable.

Defendants are also entitled to judgment on the copyright infringement claims. To establish infringement, Plaintiffs must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Plaintiffs bear the burden to demonstrate prima facie evidence of copyright validity and originality of *all* the Munro works—including Munro's Forest Registration—because that work was not registered within five years of publication and is therefore not afforded any presumption of validity under 17 U.S.C. § 410. SOF ¶¶ 4–5, 8; *see Bel Air Lighting, Inc. v. Progressive Lighting, Inc.*, No. 1:07-CV-2199-TWT, 2010 WL 966422, at *5 (N.D. Ga. Mar. 15, 2010), *aff'd sub nom. Progressive Lighting, Inc. v. Lowe's Home Centers, Inc.*, 549 F. App'x 913 (11th Cir. 2013) (the presumption of validity "merely orders the burdens of proof"). Thus, this Court will determine whether, absent the presumption, Munro's light fixtures are entitled to copyright protection. Here, the Court can look to the Copyright Office and Plaintiffs' admissions to conclude that Plaintiffs' lights are functional and useful articles. Further, Plaintiffs are misusing the Forest Registration to assert rights they do not have regarding uncopyrightable lights.

Plaintiffs' claims fail as a matter of law because Plaintiffs cannot meet the first element of establishing copyright infringement: ownership of a valid copyright. Instead, the works are useful articles that cannot be protected as valid copyrights.[12] Summary judgment can be granted

---

[12] Although the Court previously stated at the dismissal stage that the accused works were "protectable under the Copyright Act as sculptures" (DE [65] at 5), now that the Court can turn its focus outside the four corners of Plaintiffs' complaint to view the record evidence, including the Copyright Office's refusal of Munro's exact stick-and-bulb works, there can be no doubt that the accused works are useful articles that cannot be protected by copyright law. *See Garden Meadow, Inc. v. Smart Solar, Inc.*, 24 F. Supp. 3d 1201, 1209 (M.D. Fla. 2014) (determining that
(*footnote continued on next page*)

on Count I and II on this basis alone.

> ***Useful Articles Cannot Form the Basis for a Copyright Claim.*** Pursuant to the Copyright Act, original works of authorship, such as sculptural works, can receive copyright protection. *See* 17 U.S.C. § 102(a). Sculptural works include "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans." 17 U.S.C. § 101. Protection does not extend, however, to the design of a useful article—"an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *See id.*

In fact, the Copyright Act includes a "special rule for copyrighting a pictorial, graphic, or sculptural work incorporated into a 'useful article.'" *Alper Automotive*, 2020 WL 5514414, at *4 (quoting *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1008 (2017)). That special rule is that a feature incorporated into the design of a useful article is eligible for copyright protection only if the feature "(1) can be perceived as a two- or three-dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work—either on its own or fixed in some other tangible medium of expression—if it were imagined separately from the useful article into which it is incorporated." *Star Athletica*, 137 S. Ct. at 1007. This standard is known as the "separability test." In applying this test, the Court must first "look at the useful article and spot some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities," and then "must determine that the separately identified feature has the capacity to exist apart from the utilitarian aspects of the article." *Star Athletica*, 137 S. Ct. at 1010. If a work satisfies this two-prong separability test, then to receive copyright protection it must also be "sufficiently original." *Id.* at 1012 n.1. Plaintiffs cannot satisfy this test or the originality requirement, as explained below.

---

it is more appropriate to address whether the plaintiff's work is protected "at the summary judgment stage of the proceedings when it has the benefit of additional evidence").

A.     **The U.S. Copyright Office Refused to Register Munro's Stick-and-Bulb Light.**

Plaintiffs assert protection over two different fiber-optic lights by generally claiming Munro's works are sculptures that constitute "works of authorship." FAC ¶ 14.[13] Prior to bringing the lawsuit, Munro applied for registration of his stick-and-bulb light, but the U.S. Copyright Office refused registration. The Copyright Office has now found—twice—that the stick-and-bulb light is a useful article and cannot pass the originality requirement under the Copyright Act and *Star Athletica*. SOF ¶¶ 20, 22. Here, the Court can take guidance from the Copyright Office as to Munro's stick-and-bulb application. *Norris Industries, Inc. v. Int'l Tel. & Tel. Corp.*, 696 F.2d 918, 922 (11th Cir. 1983) (deference should be given to the Copyright Office's decision to deny registration to a useful article because it had considerable expertise); *Olem Shoe Corp. v. Wash. Shoe Corp.*, 591 F. App'x 873, 882 n.10 (11th Cir. 2015) (giving *Skidmore* deference to the Copyright Office's Compendium definitions because "it is apparent that the Copyright Office 'can bring the benefit of specialized experience to bear on the subtle questions in this case'") *quoting United States v. Mead Corp.*, 533 U.S. 218, 235 (2001)). Applying *Skidmore* deference, courts defer to agency rules and determinations to the extent they have the "power to persuade." *See Goodson v. OS Rest. Servs., LLC*, No. 5:17-CV-10-OC-37PRL, 2017 WL 1957079, at *3 (M.D. Fla. May 11, 2017) (outlining the factors under *Skidmore v. Swift Company*, 323 U.S. 134 (1944) and its progeny). The Eleventh Circuit in *Norris* appears to apply at least *Skidmore* deference to its decision to rely on the Copyright Office's determination that a work is an uncopyrightable useful article—referencing the Copyright Office's "considerable experience." *Norris*, 696 F.2d at 922; *see also Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 479 (6th Cir. 2015) (noting that it is unsurprising the *Norris* court did not label its deference because it preceded the decision in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)).[14]

In applying the separability test, the Copyright Office found, when viewing only the extracted features, that all that remains are "basic and familiar shapes that are not subject to

---

[13] As discussed in more detail below, Munro also seeks protection for the "essence," concept, or "spirit" contained in his works. SOF ¶ 31. But an idea, concept, or process can never be protected by copyright law. 17 U.S.C. § 102(b); *Baby Buddies*, 611 F.3d at 1317 (noting that to protect a "basic combination of features [depicting a bear] would in effect give [the plaintiff]

(*footnote continued on next page*)

copyright protection." SOF ¶ 21-22 (citing 37 C.F.R. §201.1(a)).[15] In doing so, the Copyright Office relied on its Compendium and case law supporting the conclusion that "standard designs and shapes" even where there are "minor alterations" do not satisfy the creativity requirement under *Feist. Id.* (citing *Feist*, 499 U.S. at 345). Additionally, the Copyright Office found no originality in the selection and arrangement of components, stating that the "configuration of the filament"[16] in Munro's bulbs "is not selected and arranged by the author, but instead, is caused by the natural curvatures of the hollow tube and sphere" and therefore unprotectible. SOF ¶ 22.

### B. Munro Admits and the Evidence Shows that His Lights are Functional and Lack Originality.

The Copyright Office was correct in refusing Munro's stick-and-bulb light. The same analysis necessitates finding that Munro's firefly is an unoriginal useful article as well.

As for his stick-and-bulb lights, when separated, all that remains are basic shapes, unoriginal placement, and functional components. Separated, the components are 1) a simple

___

exclusive rights over the very idea of a plastic sculpted teddy bear, which is expressly precluded under the copyright laws"); *see also Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1346 (Fed. Cir. 2020) (employing Eleventh Circuit law to conclude as a matter of law that the plaintiff was impermissibly seeking to assert protection over any and all expressions of the idea of a chalk pencil holder).

[14] Since *Norris*, other circuits have applied *Skidmore* deference to the opinions of the Copyright Office or questioned whether the more deferential *Chevron* deference would apply instead. *See, e.g.*, *Varsity Brands*, 799 F.3d at 479 (holding that *Skidmore* deference applied to Copyright Office opinions); *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041–42 & n.2 (9th Cir.2014) (same); *but see Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 685 n.52 (9th Cir. 2014) (not deciding which deference applied but accepting the Copyright Office's opinion under the less stringent *Skidmore* test); *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 287 (3d Cir. 2004) (same).

[15] Basic shapes, symbols, or designs are not protectable by copyright law. *See Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 35 (1st Cir. 2001) (no protection for rectangular shapes); *Atari Games Corp. v. Oman*, 979 F.2d 242, 247 (D.C. Cir. 1992) ("We do not in any way question the Register's position that 'simple geometric shapes and coloring alone are per se not copyrightable.'"); *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541, 545 (2d Cir. 1959) (circular, rectangular, and octagonal shapes not protected); *William S. Geiger Corp. v. Gigi Accessories, Inc.*, No. 97 Civ. 5034(JSM), 1997 WL 458668, at *2 (S.D.N.Y. Aug.11, 1997) (plaintiff has no right to copyright a geometric shape).

[16] The word "filament" is used herein to describe a simple, fiber-optic cable.

tube shape, 2) a simple bulb shape, and 3) fiber-optic cable filament; the connector collars and
ground stake are purely functional and cannot exist independently. SOF ¶ 33; *see Baby Buddies*,
611 F.3d at 1317 (finding a tether connecting the pieces to clothing inseparable from the article
and therefore not entitled to copyright protection); *Norris Indus.*, 696 F.2d at 924 (giving
deference to the Copyright Office that wire wheel covers were "not superfluous ornamental
designs, but functional components" that could not be afforded protection). The stick-and-bulb is
a clearly functional and unoriginal work:



**Munro's stick-and-bulb light**

Plaintiffs admit that the grommet to connect the bulb and stem is functional and
inseparable, as they select the type of grommet based on the weather and environment where the
light will be displayed. SOF ¶ 34; *see Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d
1142, 1147–48 (2d Cir. 1987) (denying copyright protection to a purported artistic bike rack as
there were "design changes made in response to functional concerns."). Plaintiffs also cannot
refute that the sticks and bulbs are basic shapes that cannot be protected by copyright law. 37
CFR § 202.1(a). The parts are shapes that are bulk-ordered from third parties, and Plaintiffs
select sizes and specifications to ensure that the pieces fit together when assembling them. SOF
¶¶ 38–39. Munro also admits that his stick-and-bulb lights lack the creativity required under *Star
Athletica* and *Feist*, because when deploying his stick-and-bulb configurations, Munro's staff
and various volunteers insert the lighting filament into the bulbs until it naturally stops. SOF ¶¶
36–37.

As for Munro's firefly light, the analysis is the same. The light is constituted from fiber-optic cable, a copper tube, and turned brass connectors. SOF ¶ 44. Like the stick-and-bulb light, the component parts are bulk ordered from third parties. SOF ¶ 45. The filament is put through an aperture (hole) in the tube and connector to create the tree-like shape. SOF ¶ 47. Separated, the components are 1) a simple copper tube shape and 2) fiber-optic cable filament. The connector (collar) piece and ground stake are purely functional and cannot exist independently. *See Baby Buddies*, 611 F.3d at 1317. As set forth above, a copper tube separately is not capable of copyright protection because it is a simplistic geometric shape. Similarly, simple fiber-optic cable—purchased from a third party in bulk—does not meet any originality requirement. Further, the insertion of the filament through the tube until it naturally falls does not meet the creativity/originality requirement. The light is clearly an unprotectible useful article:



**Munro's *Fireflies***

This case is factually analogous to *Bel Air Lighting*, in which the court held that light fixtures were useful articles that were not sufficiently original to warrant copyright protection. *Bel Air Lighting*, 2010 WL 966422, at *3.[17] There, the plaintiff had argued that its designs were original because of the creative way they were suggestive of a *fleur de lis*. *Id.* at *4. The court found that the plaintiff had not, however, argued that any individual element separated from the overall arrangement was original. *Id.* The court gave deference to the Copyright Office, which had initially rejected plaintiff's registration on originality and creativity grounds. *Id.* There, like

---

[17] While *Bel Air* and *Norris* predate *Star Athletica,* those cases are referenced herein to direct the court to the copyright office deference and originality analysis conducted after separability and are not used to suggest a distinction between physical/conceptual separability, a distinction that *Star Athletica* later deemed "unnecessary." *Star Athletica,* 137 S. Ct. at 1016.

here, the functional use was threading a filament to create a light source. Relying on *Norris*, the court noted separability does not extend to functional components. *Id.*

Here, Munro does not even make artistic design choices to his light fixtures; his staff, or volunteers at exhibition sites push the filament into the basic geometric shapes until it naturally stops (stick-and-bulb lights) or hangs down (fireflies). SOF ¶¶ 36–37, 47. As Nimmer on Copyright aptly concludes, "[a]rtistic skill, rather than physical or manufacturing skill, is required in order to satisfy the originality requirement." 1 NIMMER ON COPYRIGHT § 2.01[A][1] (2019). Further, the design choices are purely functional; like in *Brandir*, Munro changes components to reflect weather and environmental differences of the areas he displays his lights. SOF ¶ 34.  These lights cannot be original works of authorship subject to copyright protection.

### C.  Plaintiffs' Claims Are Barred.

Because Plaintiffs cannot satisfy their prima facie case of copyright infringement to the stick-and-bulb light and fireflies, summary judgment should be entered on Counts I and II. As an additional ground, the Court can also find summary judgment on Defendants' defenses of copyright misuse and invalidity as to Munro's Forest Registration. (DE [92]).

Copyright misuse prohibits a copyright holder from using a copyright "to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant." *Home Design Servs., Inc. v. Park Square Enterprises, Inc.*, No. 6:02-CV-637-ORL28JGG, 2005 WL 1027470, at *11 (M.D. Fla. May 2, 2005) (quoting *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999)). A copyright misuse defense functions as "an absolute bar on recovery for copyright plaintiffs who have attempted to extend their limited rights to 'property not covered by the . . . copyright.'" *Id.* (quoting *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 972 (4th Cir. 1990). A classic misuse is to assert rights in non-copyrightable materials to discourage others from integrating these non-protectable materials into their own creative works. *Id.* at *12. Here, Plaintiffs are asserting rights in the stick-and-bulb lights and fireflies to impermissibly seek copyright protection over non-copyrightable subject matter. This includes continuing to seek protection over the stick-and-bulb light despite the U.S. Copyright Office's refusal to register it. *See* SOF ¶¶ 15–26; *See Home Design*, 2005 WL 1027470, at *12); *Design Basics, LLC v. Petros Homes, Inc*., 240 F. Supp. 3d 712, 720 (N.D. Ohio 2017).

As to the Forest Registration specifically, Plaintiffs are misusing Munro's registration to claim infringement of any stick-and-bulb light, despite the copyright office rejecting same. SOF ¶ 20–22. It strains credulity to view the Forest Registration as a registration of *the* stick-and-bulb light where the deposit images depict multiple stick-and-bulb lights and list the dimensions as "6 acres (approx.)." SOF ¶¶ 9–11, 13. Compare that registration with Munro's *rejected* stick-and-bulb application for a single "object," where the deposit images list the dimensions as "sphere: 60 mm diameter, stem: 400, 600, or 800 mm, filament: 4 to 12 m." SOF ¶¶ 15–17, 25. Clearly, the Copyright Office believed that the Forest Registration was for a specific, large arrangement of many lights at Longwood Gardens. SOF ¶¶ 24–25 (correspondence with the Copyright Office clarifying scope of rejected stick-and-bulb application). Plaintiffs' attempts to claim protection and infringement for *the* stick-and-bulb light constitutes copyright misuse. And to the extent Plaintiffs continue to claim the Forest Registration protects *the* stick-and-bulb light, the registration is invalid for lack of copyrightable subject matter as discussed above. *See, e.g.*, *Bel Air Lighting*, 2010 WL 966422, at *3 (affirming summary judgment by accepting defendant's invalidity defense that the plaintiff's light fixtures were not copyrightable); *Baby Buddies*, 611 F.3d at 1316 (quoting *Feist*, 499 U.S. at 348) (the "mere fact that a work is copyrighted does not mean that every element of the work may be protected.").

In sum, because Munro's stick-and-bulb lights and fireflies are useful articles and are familiar shapes that lack sufficient originality and creativity, Defendants are entitled to summary judgment as a matter of law. Further, because the Forest Registration is not afforded the presumption of validity,[18] the Court should find that Plaintiffs cannot meet their burden to demonstrate ownership of a valid copyright in that work. There is no original authorship for the reasons stated above, and Plaintiffs are attempting to extend a registration improperly and misuse their purported copyright. *See* Copyright Office Refusal, SOF ¶ 21 ("this work does not contain sufficiently creative authorship either in the component elements or in the selection and arrangement of the component elements and registration must be refused."). For all these reasons, the Court should grant summary judgment on Counts I and II in favor of Defendants.

---

[18] The Court can also find that the Forest Registration is not entitled to a presumption of validity as a matter of law. *Habersham Plantation Corp. v. Art & Frame Direct, Inc*., No. 10-61532-CIV, 2011 WL 4005454, at *3 (S.D. Fla. Sept. 8, 2011) (granting summary judgment on no entitlement to presumption of validity).

**IV.    Defendants are Entitled to Summary Judgment because Defendants Have Not Copied Any Protected Elements of Munro's Useful Article Works.**

Because this Court can easily conclude that the lights at issue are useful articles and Plaintiff is unable to prove the first element of copyright infringement, a substantial similarity analysis is unnecessary. Even if, *arguendo,* Plaintiffs can prove that Munro has valid copyrights in his stick-and-bulb light and/or firefly, they must also prove the second element - that Defendants copied the *protectable elements* of them, which they cannot do. *See Feist*, 499 U.S. at 361. To satisfy this element, Plaintiffs have to prove two separate inquiries: "1) whether the defendant, as a factual matter, copied portions of the plaintiff's work, and 2) whether, as a mixed issue of fact and law, those elements of the work that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable." *Cortes v. Universal Music Latino*, 477 F. Supp. 3d 1290, 1295–96 (S.D. Fla. 2020) (citing *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548 (11th Cir. 1996)) (citations and brackets omitted); *see also Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020). Plaintiffs also fail on both of these grounds.

Factual copying may be established either directly or indirectly. *Cortes*, 477 F. Supp. 3d at 1296. It requires evidence that all or part of the protected work was *actually* copied to a meaningful degree. *Lifetime Homes, Inc. v. Walker Homes, Inc.*, 485 F. Supp. 2d 1314, 1320 (M.D. Fla. 2007), aff'd, 270 F. App'x 811 (11th Cir. 2008). Direct evidence of copying rarely exists. *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1274 (M.D. Fla. 2008). It typically includes evidence of an express admission by the alleged infringer that he or she copied the purported protected work. *Id.* Here, there is no such admission or direct evidence. To be sure, Defendants did not order any lights from Munro; all the *NightGarden* lights at issue were ordered from China prior to season one (mushrooms); and season two (fiber lights). SOF ¶¶ 100, 105. Defendant Imaginer, who worked with Kilburn Live to order one set of mushroom lights, had never heard of Munro or his works. SOF ¶ 95. And as stated below, Defendants did not know of Munro or his exhibits prior to *NightGarden* commencing. Accordingly, Plaintiffs will have to prove indirect copying.

To establish indirect copying, Plaintiffs must establish (1) that the defendant had access to the allegedly infringed material; and (2) that the defendant's work is substantially similar to

the plaintiff's copyrighted expression. *See, e.g., John Alden Homes v. Kangas*, 142 F. Supp. 2d 1338, 1344–45 (M.D. Fla. 2001) (finding no substantial similarity).

To demonstrate access, Plaintiffs must show that Defendants had a reasonable opportunity to view Munro's work, not just the mere possibility to view it. *Dream Custom Homes, Inc. v. Mod. Day Const., Inc.*, 773 F. Supp. 2d 1288, 1302 (M.D. Fla. 2011), aff'd, 476 F. App'x 190 (11th Cir. 2012). Plaintiffs cannot meet this burden. Kilburn testified that it and its CEO Mark Manuel did not know of Munro prior to receiving the cease-and-desist letter about Munro's stick-and-bulb exhibitions, just days before the second season of *NightGarden*. SOF ¶¶ 90–91. Imaginer and its principal Max Painter testified that they did not know of Munro until after this lawsuit was filed, and Painter further testified that he had never been to a Munro exhibition. SOF ¶¶ 95–96; Painter Decl. ¶¶ 15–19. Fairchild executive Nannette Zapata testified that she realizes *now* that she had received some correspondence from a Bruce Munro Ltd. representative in 2014—years before the *NightGarden* event—but that she had no recollection of that correspondence until receiving the complaint in this lawsuit and searching for the alleged 2014 correspondence referenced therein. SOF ¶ 94. There is no evidence that any Defendant had a reasonable opportunity to view Munro's works—or specific works at issue—prior to the *NightGarden*.

> ➤ ***No Substantial Similarity Without Protectable Elements.***

To demonstrate substantial similarity, the court must determine whether the protectable elements of an original work are substantially similar. *Cortes*, 477 F. Supp. 3d at 1296 (as to this second prong, "copyright protects only the author's original contributions") (quoting *Feist*, 499 U.S. at 359)). In copyright infringement cases, the Eleventh Circuit has determined that substantial similarity can be decided as a matter of law at the summary-judgment stage where, like here, the similarity concerns only noncopyrightable elements or when no trier of fact could find the works substantially similar. *See Intervest Const., Inc. v. Canterbury Estate Homes, Inc*., 554 F.3d 914, 920 (11th Cir. 2008) (stating that where the dispute concerns substantial similarity at the level of protectable expression, it is often more "reliably and accurately resolved" at summary judgment); *see also Cortes*, 477 F. Supp. 3d at 1296 (quoting *Lil' Joe Wein Music, Inc. v. Jackson*, 245 F. App'x 873, 876 (11th Cir. 2007)). The Eleventh Circuit has "approved of deciding infringement prior to trial, observing that it 'signals an important development in the

law of copyright, permitting courts to put 'a swift end to meritless litigation' and to avoid lengthy and costly trials.'" *Id.* (quoting *Lil' Joe Wein Music*, 245 F. App'x at 876).

The term "substantial similarity" has been defined as existing "where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 n.4 (11th Cir. 1994) (internal citations omitted); *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560, 1567 (M.D. Fla. 1995) (defining 'average lay observer' as someone informed and alert to identify precisely the differences and similarities in the competing designs). No matter how the copying is proven (directly or indirectly), "the plaintiff also must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work with regard to its protected elements." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000) (internal citations omitted).

> ### ➤ *The Filter Test.*

To conduct this analysis, the court must filter out and disregard the non-protectable elements. *Cortes,* 477 F. Supp. 3d at 1297. Once filtered, the Plaintiff must prove substantial similarity as to any remaining protectable material. *Id.* In filtering, Courts employ extrinsic (objective) and intrinsic (subjective) tests to determine substantial similarity. *See, e.g.*, *Lil' Joe Wein Music*, 245 F. App'x at 877. Plaintiffs must satisfy both tests for a finding of substantial similarity. *Cortes*, 477 F. Supp. 3d at 1297.

Under the extrinsic test, a court will inquire into whether, as an objective matter, the works are substantially similar in protected expression. *Cortes*, 477 F. Supp. 3d at 1297("'the court will determine whether [the plaintiff] seeks to protect only uncopyrightable elements,' and if so, the works are not substantially similar as a matter of law, and summary judgment is appropriate.")  Similarly, under the intrinsic test, the differences between the works "at the level of protectable expression" must be "so significant that no reasonable, properly instructed jury could find the works substantially similar. *Id.; Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1327 (11th Cir. 2012). Thus, for either test, the Court must first filter out unprotectable elements. *Compulife Software Inc.*, 959 F.3d at 1303 ("Filtration, again, refers to the process of separating the protectable elements of a copyrighted work from elements that, for one reason or another, aren't protected").

To determine whether the protected elements of two works are substantially similar, courts compare the components of the works while being mindful that "lists of similarities are

inherently subjective and unreliable, particularly where the lists contain random similarities, and many such similarities could be found in very dissimilar works." *Baby Buddies*, 611 F.3d at 1316 (internal quotations omitted). Further, analyzing characteristics, such as the "mood" or "combination of elements" can "create[] a danger of unwittingly extending copyright protection to unoriginal aspects of the work." *Id.* (quoting *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1215 (11th Cir. 2000)). In other words, the Court does not look at the arrangement or combination of all elements of the lights; it must first filter out the non-protectible elements of each light and then analyze what remains. *Compulife*, 959 F.3d at 1306 (after filtration "the burden shifts back to the plaintiff to prove substantial similarity between any remaining (*i.e.*, unfiltered) protectable material and the allegedly infringing work"). If a defendant demonstrates that the works are similar only as to unprotectable material, such as no similarities remain after filtration, summary judgment is proper. *Cortes,* 477 F. Supp. 3d 1290.

## A.  Plaintiffs Cannot Satisfy Either Test Because There is No Protectable Expression to Copy.

The Copyright Office correctly found that Munro's stick-and-bulb light constitutes basic geometric shapes incapable of protection and that the stick-and-bulb was not sufficiently original or creative—a necessary requirement to demonstrate substantial similarity. SOF ¶ 20–22. *See Cortes*, 477 F. Supp. 3d at 1297 ("After filtering out similarities as to non-protectable elements, a side-by-side comparison reveals no commonalities between the works as to any protectable elements.")

As set forth in more detail above, the record evidence illustrates that Munro's stick-and-bulb components are functional elements ordered in bulk that constitute familiar shapes: sphere and circle. Any similarities are related to the non-protectable elements—the circle bulb, basic fiber-optic cable that can be purchased anywhere, and a stick/sphere. The spike at the bottom is, much like any outdoor landscaping light, simply to place the stick into the ground. SOF ¶ 46. After filtering out these non-protectible elements of the stick-and-bulb, there is simply nothing left to protect or compare. SOF ¶ 20–22. Further, the application of filament to the bulbs is not creative or original because the filament is merely pushed into the bulb to fill the bulb's natural curvature. SOF ¶ 22 (concluding "that these features do not satisfy the originality requirement, regardless of whether they are considered individually or as part of the overall design.")

The same analysis can be applied to the fireflies, which are functional components put together to create a small tree-like light. The shapes are basic, common and simplistic and are not capable of originality. Any similarities are related to the non-protectible elements – a simple sphere/stick shape, and basic fiber-optic cable that can be purchased off the shelf. The spike at the bottom is again, simply to place the stick into the ground. SOF ¶ 46. After filtering out these non-protectible elements of the firefly light, no protectible expression remains to protect or compare.[19] Further, hanging fiber optic cable from a stick does not meet the originality requirement. Accordingly, without protectable elements there is no way for Plaintiffs to meet their burden and this court can find as a matter of law that there is no substantial similarity.

Even in the unlikely event that this Court finds that, by itself, a circular bulb, basic fiber-optic cable, and tube shape are protectible, there are still distinct differences between Munro's stick-and-bulb light and the *NightGarden* mushrooms, as well as Munro's firefly and *NightGarden* fiber light. Where differences in the protectable elements of two works are significant, no substantial similarity will be found. *See Dream Custom Homes, Inc. v. Modern Day Const., Inc*., 476 F. App'x. 190, 192 (11th Cir. 2012) (noting that the district court appropriately performed the substantial similarity analysis by separating what was protectable expression from what was not protectable and by examining the similarities and dissimilarities with respect to the protectable elements). The Court must consider the similarities between the designs as well as the dissimilarities. *Howard v. Sterchi*, 974 F.2d 1272, 1276 (11th Cir. 1992).

There are distinct differences in sizes, materials used, colors and overall look. SOF ¶¶ 38, 45, 87; *see also* pp. 4, 17–18, *supra*. For example, Plaintiffs primarily use frosted bulbs while Defendants' installation used clear bulbs. *Compare* SOF ¶ 38 (Slater Decl. Ex. J at MUNRO1693) *with* SOF ¶ 101 (Slater Decl. Ex. T at KILBURN154–55). The Plaintiffs' firefly light also uses far fewer fiber optic cable strands with much longer fiber optic cable hanging out of the copper tube, while Defendants' lights—as ordered from China—are mere inches of exposed fiber optic cable, gathered tightly together and are attached to green plastic sticks. *See* SOF ¶ 106; pp. 4, 17–18 *supra.* It is undisputed that Plaintiffs did not participate in the creation,

---

[19] There is no analysis of how the lights are arranged in a particular landscape because Plaintiffs have claimed that is *not* at issue here, and have made clear that the layout is different for each installation depending on the landscape and that Defendants did not copy the arrangement of any of Plaintiffs' works. SOF ¶ 30.

installation or assembly of the *NightGarden* installations. SOF ¶ 89. Further, where there are only a limited number of ways to illuminate a lightbulb on a stick or use fiber-optics with a stick, similarities "can easily occur innocently" and preclude a finding of substantial similarity. *Miller's Ale House*, 702 F.3d at 1326 (after combining the intrinsic and extrinsic tests, determining that no reasonable, properly instructed jury could find the differences between sports-bar layouts substantially similar). In such cases, courts will reject similarities that exist on a "conceptual level." *Id.* at 1327. To the extent there are *any* protectable elements here, they are merely conceptual and limited based on the simplistic nature of the products: round or tree-shaped lights on sticks, illuminated by fiber-optics.

### B.  Plaintiffs Cannot Protect Ideas.

Munro is clear that his works are ideas, claiming that Defendants have infringed on the "spirit" of his works. SOF ¶ 31. Indeed, it has become clear that Plaintiffs are attempting to prevent anyone from using fiber-optic cable lights outdoors. However, to the extent there is any originality in putting the shapes and fiber-optic cables together, or placing lights outdoors, those concepts or the idea of a certain style are not protectable. *See Ale House Mgmt. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 143 (4th Cir. 2000) (the concept of using an island to separate a seating area in architectural drawings "is nothing more than a concept, as distinct from an original form of expression, and is not copyrightable") (citation omitted); *Wickham v. Knoxville Int'l Energy Exposition, Inc.*, 739 F.2d 1094, 1097 (6th Cir. 1984) ("The 'idea' of a tower structure certainly is not copyrightable. Ideas are not protected by copyright, only expressions of ideas") (citation omitted).

Munro testified that he no longer assembles the lights; he instead creates "ideas" that he communicates to his team members and volunteers who assemble and install them. SOF ¶¶ 48–49. He impermissibly seeks protection of his concept or the process of putting the pieces of the lights together (a level of protection applicable to patent law only). *See Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 825 n.5 (11th Cir. 1982) (noting that neither the idea of a type of doll nor the process of sculpting it was copyrightable). Therefore, assuming for argument only some copying occurred, Defendants cannot be found liable for copying a concept, idea, or a process.

The Eleventh Circuit has squarely rejected this type of claim. In *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1227 (11th Cir. 2008), for instance, the Eleventh Circuit

found that filtered elements in building design, such as rounded building ends, sloping, alternating concave and convex structures, that were dissimilar between the two buildings precluded a finding of substantial similarity. The Eleventh Circuit then noted that the district court correctly reasoned that a finding of substantial similarity would require a finding that the plaintiff "owns a copyright in the concept of a convex/concave formula or in that of using three external elevator towers that extend above the roof of a building." *Id.* Such a finding would "extend the protections of copyright law well beyond their proper scope." *Id.* The Eleventh Circuit then confirmed were it to reverse the district court's decision, it would "effectively bar all other architects from incorporating these concepts into new and original designs." *Id.* at 1228; *see also Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.*, 998 F. Supp. 2d 1340, 1353 (S.D. Fla. 2014) (finding no substantial similarity because it "would require a finding that [the plaintiff] owns a copyright in a concept, *i.e.* this flower shape, something the Eleventh Circuit has consistently rejected").

Here too, Plaintiffs seek protection of an idea or concept that can only be protected by patent law, if at all. Munro admits that he creates ideas and others assemble and install the lights for him. SOF ¶ 49. And he rarely assembles the works. SOF ¶ 48. The protection Plaintiffs seek in the concept of lights on sticks with fiber-optics goes well beyond the proper scope of copyright protection and warrants against a finding of substantial similarity.

In sum, Plaintiffs are attempting to enforce rights they do not have. Even if Plaintiffs were attempting to enforce a viable right in the lights, there are no facts to support a finding that Defendants had access to Plaintiffs' lights. The lights have no protectable elements to support any finding of copying. Even if there are protectable elements to compare (which there are not), there are significant dissimilarities between Munro's works and the *NightGarden* installations at issue to still conclude as a matter of law that there is no substantial similarity.

## V.    Defendants are Entitled to Summary Judgment on Count II for Contributory Infringement.

Because Plaintiffs' direct infringement claim fails, Plaintiffs' contributory infringement claim similarly fails and no further analysis on Count II is necessary. *GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.*, 131 F. Supp. 3d 1291, 1299 (M.D. Fla. 2015) ("Thus, for a party to be held liable for a claim of contributory infringement, there must first be a finding of direct infringement") (citing *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l,*

533 F.3d 1287, 1298 n.11 (11th Cir. 2008). Separately, Plaintiffs' contributory infringement allegations against Defendants Nannette Zapata, Max Painter, and Mark Manuel (collectively, the "Individual Defendants") also fail as a matter of law because officers cannot be held secondarily liable for the alleged conduct of their *own* corporate entities and because the record evidence does not demonstrate knowledge of the alleged infringing acts.

### A. Plaintiffs Cannot Hold Corporate Officers Liable for Contributory Infringement.

Under the Copyright Act, a plaintiff can pursue direct and secondary liability. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). "Secondary liability applies when a defendant is held responsible for a *third party's* acts of infringement." *43 N. Broadway LLC v. Essential Media Grp. LLC*, No. 17-24518-CV, 2018 WL 2864014, at *2 (S.D. Fla. June 11, 2018) (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984)) (emphasis supplied). Contributory liability is a type of secondary liability. *43 N. Broadway LLC*, 2018 WL 2864014, at *2 (citing *Grokster*, 545 U.S. at 930).

The Eleventh Circuit has stated "the well-settled test for a contributory infringer as 'one who, *with knowledge of the infringing activity*, induces, causes or materially contributes to the infringing conduct of another.'" *Hydentra HLP Int. Ltd. v. Luchian*, No. 1:15-CV-22134-UU, 2016 WL 5951808, at *12 (S.D. Fla. June 2, 2016) (quoting *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990)) (emphasis added). The case law is clear, however, that inducing, causing, or materially contributing to the "infringing conduct of another" under *Cable/Home* <u>absolutely does not mean</u> the infringing conduct of one's own company. *See 43 N. Broadway*, 2018 WL 2864014, at *4 (holding that the officer "must first induce *third parties* . . . to commit activity constituting direct infringement."). In other words, a corporate officer cannot be held contributorily liable for the actions of the corporation he or she controls. *Id.* at *2–4. Simply put, to allege and prove contributory infringement, Plaintiffs must also allege and prove the direct infringement of a third party resulting from the Individual Defendants' knowing actions. *See id.* at *4 (citing *Arista Records LLC v. USENET.com*, 663 F. Supp. 2d 124, 149 (S.D.N.Y. 2009) ("For all three theories of secondary copyright infringement [to be valid], there must be the direct infringement of a third party.")).

This is not a novel issue. The reasoning in *43 N. Broadway* soundly applies here. There, the plaintiffs sought to add a contributory infringement claim against the corporate defendant's officers, claiming the officers "intentionally induced, encouraged or materially contributed to

[the corporate defendant's] direct infringement." *Id.* at *1–2. In denying the plaintiffs' motion to amend, the court determined that allowing the amendment would be futile because the individual officers and the corporation were "one and the same." *Id.* at *3. That is "any actions undertaken by the [defendant] corporation's managers would be directly imputed to [the defendant corporation], and a corporation only acts through its officers, employees, or agents." *Id.* Thus, the court stated, the proposed amendment in *43 N. Broadway* was not "and cannot ever be" pleaded because the corporate officer's own entity could not be the "third party direct infringer." *Id.* (citing also *In re Spear & Jackson Securities Litigation*, 399 F. Supp. 2d 1350, 1361 (S.D. Fla. 2005) for the proposition that "[c]ourts have uniformly held that acts of a corporate officer that are intended to benefit a corporation to the detriment of outsiders are properly imputed to the corporation" (emphasis in original) and *United Feature Syndicate, Inc. v. Sunrise Mold Co., Inc.*, 569 F. Supp. 1475, 1480–81 (S.D. Fla. 1983) for the proposition that "[k]nowledge of officers, directors, employees and agents of the corporation is imputed to the corporation itself.").

Ignoring the law on this point, Plaintiffs contend the following:

(1)    That Zapata, an officer of Fairchild, "actively and materially controlled, directed, participated in, facilitated, and approved the Fairchild NightGarden-related conduct underlying the stated claims against Fairchild, and may be held contributorily liable for its NightGarden-related activities." FAC ¶ 81; *see also* (DE [1] ¶ 78).

(2)    That Manuel, an officer, "owner, and controlling person" of Kilburn, "actively and materially controlled, directed, participated in, facilitated, and approved the [Kilburn entities'] NightGarden-related conduct underlying the stated claims against those entities, and may be held contributorily liable for those entities' NightGarden-related activities." FAC ¶ 82.

(3)    That Painter, an officer, "owner, and controlling person" of Imaginer "actively and materially controlled, directed, participated in, facilitated, and approved all Imaginer conduct underlying the stated claims against Imaginer, and may be held contributorily liable for Imaginer's NightGarden-related activities, and Imaginer may be held vicariously liable for Painter's activities." *Id.* ¶ 83.

None of these officers can be contributorily liable for their respective companies' alleged acts. Zapata is Fairchild for purposes of supervisory liability. Manuel is Kilburn. And Painter is Imaginer. Under this set of facts, Plaintiffs' claim that the Individual Defendants should be liable

for contributory infringement is "legally impossible" because the corporate officers and the corporate defendants are "one and the same." *43 N. Broadway*, 2018 WL 2864014, at *3.

**B. Plaintiffs Cannot Otherwise Meet the Elements for Contributory Infringement.**

Further, the record evidence demonstrates that none of the Individual Defendants had knowledge of the alleged infringing activity. The standard of knowledge for contributory infringement is objective: "[k]now, or have reason to know." *3Lions Publ'g, Inc. v. Marketresearch.com, Inc.*, No. 8:15-CV-356-MSS-JSS, 2015 WL 12843856, at *3 (M.D. Fla. Sept. 2, 2015); *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987); *Grokster*, 545 U.S. at 930–31 (requiring proof of knowledge of a third party's infringing activity). None of the Individual Defendants became aware of any alleged infringing activity until after *NightGarden* season one concluded. SOF ¶¶ 90–95. In November 2019, just four days before *NightGarden* season two opened, Plaintiffs' counsel sent a cease-and-desist letter to certain defendants. The letter only mentioned the *arrangement* of the stick-and-bulb lights at Plaintiffs' exhibition sites and was silent as to the fiber lights. *See* SOF ¶ 92 (letter claiming a portion of *NightGarden* bears "uncanny resemblance" to *Field of Light*).

Although the test is not related to Individual Defendants' knowledge of Munro generally, Manuel still testified that he did not know of Munro prior to receiving the cease-and-desist letter, which was promptly sent to attorneys. SOF ¶¶ 90–91. Zapata testified that she had no recollection of Munro prior to receiving the cease-and-desist letter. SOF ¶ 84. Painter testified that he did not know of Munro until after this lawsuit was filed and after *NightGarden* season two ended (and he never received a cease-and-desist letter). SOF ¶ 95; Painter Decl. ¶ 19. The alleged mushroom and fiber lights were ordered prior to the *NightGarden* and well before Plaintiffs' November 2019 letter. SOF ¶¶ 100, 105.

There is no evidence to support that any of these individuals had actual knowledge of the alleged infringement; Plaintiffs' letter only addressed a potential claim for arrangement of lights at Plaintiffs' previous exhibition, which Plaintiffs have disclaimed. SOF ¶¶ 30, 92; *see Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 751 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) (knowledge of infringement means "actual or constructive knowledge of specific and identifiable infringements of individual items," not "a general awareness that there are infringements"). Nor is there any evidence that any of

these individuals, with knowledge, then "induced, caused or materially contributed to the infringing conduct of another." *See id.* at 750.

**VI.     Plaintiffs Have Not Proven Any Damages.**

As argued above, because this Court can find as a matter of law that summary judgment is appropriate on all Counts, a damages analysis is unnecessary. However, as an additional ground, summary judgment is proper because this Court can find that Plaintiffs 1) are not entitled to statutory damages, 2) have failed to provide any evidence of actual damages, and 3) have set forth no causal connection to *NightGarden* revenue.

Plaintiffs' alleged works at issue comprise of one United States registered work (*Forest of Light*), one United States unregistered work (*Field of Light* at Longwood Gardens),[20] and some unregistered United Kingdom works (exhibitions of the stick-and-bulb light and Munro's "fireflies" light at various locations). For the unregistered foreign works, it is clear that Plaintiffs can only recover proven actual damages. *See Mosley*, 694 F.3d at 1302–03 (citing 17 U.S.C. §§ 412, 504, 505 and noting that owners of foreign works may choose to apply for registration to receive the benefits of statutory damages and attorneys' fees). Likewise, Plaintiffs are not entitled to statutory damages on the Forest Registration. Without statutory damages, Plaintiffs are only entitled to—if proven—actual damages. Plaintiffs have not set forth any evidence of actual damages.

**A.     Plaintiffs are not Entitled to Statutory Damages or Attorneys' fees on their Direct and Contributory Infringement Claims (Count I and II).**

Generally, a plaintiff who has complied with the registration requirements can elect to recover actual or statutory damages, and a court may award reasonable attorneys' fees under 17 U.S.C. § 505 subject to the limitations of 17 U.S.C. § 412. However, as briefed in detail in Defendants' Motion for Partial Judgment on the Pleadings (DE [81, 89]), Plaintiffs cannot elect statutory damages for the Forest Registration or recover their attorneys' fees because the alleged

---

[20] Plaintiffs cannot recover damages for *Field of Light* at Longwood Gardens because it was first published in the United States and Plaintiffs have provided no evidence to support that it was ever registered with the Copyright Office. *See also* footnote 3, *supra* (Plaintiffs are not claiming infringement of a particular installation).

infringement occurred prior to registration.[21] *See Cornerstone Home Builders, Inc. v. McAllister*, 311 F. Supp. 2d 1351, 1352 (M.D. Fla. 2004); s*ee also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700–01 (9th Cir. 2008) ("Every court to consider the issue has held that infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs."); *see also Volk v. Zeanah*, No. 6:08-CV-94, 2010 WL 11537582, at *9 (S.D. Ga. Sept. 27, 2010) (for purposes of determining when section 412's bar is triggered, an infringement commences "when the first act in a series of infringements of the same kind occurs").

NightGarden* season one began in November 2018, and the Forest Registration is dated August 24, 2019. SOF ¶¶ 8, 84. Contrary to Plaintiffs' earlier arguments against partial judgment on the pleadings (DE [85]), neither redesigns of Defendants' installations nor the ten-month gap between seasons of the *NightGarden* triggers a new commencement period under section 412. *See, e.g.*, *New Name, Inc. v. The Walt Disney Co*., No. CV 07-5034PA(RZX), 2008 WL5587487, at *5 (C.D. Cal. July 23, 2008) (alteration to work does not commence new infringement); *Dyer v. Napier*, No. CIV04-0408 PHX SMM, 2006 WL 680551, at *4 (D. Ariz. Mar. 16, 2006) (changes in sizes and texture of sculptures does not start new commencement); *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, No. 04-CIV-6189JFK, 2008 WL 3906889, at *15 (S.D.N.Y. Aug. 21, 2008) (finding that section 412 imposes a bright-line rule that any infringement after commencement bars fees and statutory damages); *cf. Solid Oak Sketches, LLC v. 2K Games, Inc.*, No. 16CV724-LTS, 2016 WL 4126543, at *3 (S.D.N.Y. Aug. 2, 2016) (collecting cases that have not imposed the bright-line rule in *U2* but have found that a gap of one or more years between infringing acts does not reinstate the ability to recover statutory damages or fees).

Accordingly, this Court can find as a matter of law that Plaintiffs are only permitted to recover actual damages for alleged direct or contributory infringement for their works. As set forth below, Plaintiffs have failed to prove actual damages for all claims.

---

[21] The Court did not rule on the merits of Defendants' motion, but instead held that, in contrast to Rule 56(a), Rule 12(c) does not permit adjudication of part of a claim or defense. (*See* DE [114] at 4).

**B.      Plaintiffs Have Not Shown Any Evidence of Actual Damages and Claim Improper Measures of Damages.**

The Copyright Act entitles copyright owners to two types of compensatory damages: actual damages and infringers' profits attributable to the infringement to the extent not calculated in actual damages. 17 U.S.C. § 504(a)(1), (b); 17 U.S.C. § 1203 (c)(1)-(2). Actual damages may include "lost sales, lost opportunities to license, or diminution in the value of the copyright," or "the fair market value of a license covering the defendant's use." *BWP Media USA Inc. v. HipHopzilla, Inc*., No. 1:14-CV-0016-AT, 2016 WL 4059683, at *2 (N.D. Ga. May 26, 2016) (quoting *Gaylord v. United States*, 678 F.3d 1339, 1343 (Fed. Cir. 2012)). Here, Plaintiffs have not set forth *any* evidence of actual damages. Instead, Plaintiffs testified that one of those measures of damages could be implicated—a loss of unspecific prospective clients—and also that emotional and reputational damages are sought. SOF ¶¶ 108–10.[22]

First, as to Plaintiffs' claims that they have lost clients, they have no evidence to support that claim. SOF ¶¶ 111–12. In fact, they unequivocally testified that they have *not* lost any clients or opportunities during the *NightGarden* or at any time, and no one has cancelled any agreements with Plaintiffs. *Id.* In fact, their evidence supports the opposite conclusion: business has increased during the period of alleged infringement by Defendants. SOF ¶ 113; *see also Montgomery v. Noga*, 168 F.3d 1282, 1294 (11th Cir. 1999) (citing *Key West Hand Print Fabrics, Inc. v. Serbin, Inc*., 269 F. Supp. 605, 613 (S.D. Fla. 1966)) (noting that plaintiffs are also required to demonstrate a causal connection between their claimed actual damages and the alleged infringement). As to the DMCA claims, Plaintiffs do not license photographs they actually *do* own, and have not otherwise produced any evidence of actual damages. SOF ¶ 107.

Second, "emotional distress and stress-related ailments arising from [a defendant's] alleged infringement" are not compensable under the Copyright Act. *Stern v. Does*, 978 F. Supp. 2d 1031, 1050 (C.D. Cal. 2011), aff'd sub nom. *Stern v. Weinstein*, 512 F. App'x 701 (9th Cir.

---

[22] Plaintiffs provided the report of art appraiser X. Twil, who provided an "art valuation"; but the "art valuation" explicitly did not conduct an analysis of what the "fair market value of a license covering the Defendant's use" would be. *See Motion in Limine to Exclude Plaintiffs' Damages Expert X. Twil from Testifying at Trial* (DE [135], p. 12)(filed under seal). Accordingly, there is no evidence on this measure of actual damages, either. *See Thornton v. J Jargon Co*., 580 F. Supp. 2d 1261, 1277 (M.D. Fla. 2008) (granting summary judgment for failure to provide evidence of actual damages).

2013); *See also Kelley v. Universal Music Grp.,* No. 14 CIV. 2968 PAE, 2015 WL 6143737, at *7 (S.D.N.Y. Oct. 19, 2015) (same). Similarly, the Copyright Act does not explicitly provide for reputational damages. *Viktor v. Top Dawg Ent. LLC,* No. 18 CIV. 1554 (PAE), 2018 WL 5282886, at *3 (S.D.N.Y. Oct. 24, 2018). Some courts have found that nonspeculative evidence of reputational diminishment of *the works* may be recoverable, *see id.*, but Plaintiffs provide no such evidence. SOF ¶¶ 108–12.

Because Plaintiffs have provided no evidence of actual damages, they would only be entitled —if proven— to Defendants' profits attributable to the alleged infringement. But Plaintiffs have not proven any nexus between the alleged infringement and any gross revenues of Defendants. *See, e.g., Ordonez-Dawes v. Turnkey Props., Inc*., No. 06-60557-CIV, 2008 WL 828124, at *3 (S.D. Fla. March 27, 2008) (citing to decisions from the Second, Fourth, Seventh, Eighth, Ninth, and Federal Circuits that required a nexus between the gross revenue and infringement); *Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1175 (S.D. Fla. 2006) (a plaintiff must proffer some reasonable connection between the infringement and defendant's gross revenue); *Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc*., No. 603CV1860ORL19KRS, 2005 WL 3445522, at *14 (M.D. Fla. Dec. 14, 2005) (holding that the plaintiff "is required to at least proffer some evidence of a causal connection between the alleged infringement of the plans at issue and the home construction profits earned by [the defendant] in order to survive summary judgment.") For example, in season two of the *NightGarden*, Defendants' mushrooms and fiber lights were confined to a small fraction of the event space. SOF ¶¶ 86, 99, 103. The fiber lights were not used in *NightGarden* season one at all. SOF ¶ 102. Yet, Plaintiffs have not attempted to render any causal connection between the alleged infringing lights and revenue in either season. SOF ¶¶ 97-99;102-104. Plaintiffs should be barred from seeking Defendants' profits at trial.

In addition, presumably because they have not suffered any damages and have similarly failed to provide any such evidence, Plaintiffs this morning – on the day dispositive motions are due – provided some new calculation of actual damages. The Court should enter summary judgment in favor of Defendants on Counts I and II for failure to provide any evidence of actual damages. *See Carlson v. FedEx Ground Package Sys., Inc.*, No. 8:05-CV-1380-T-24, 2013 WL 3804991, at *7 (M.D. Fla. July 19, 2013), aff'd, 787 F.3d 1313 (11th Cir. 2015) (no evidence of damages can be a ground for summary judgment); *See Fey v. Panacea Mgmt. Grp. LLC*, 261 F.

Supp. 3d 1297, 1311 (N.D. Ga. 2017) (granting summary judgment in copyright case based on no evidence of actual damages or profits and no attempt to show causal relationship between infringement and profits).

In short, Plaintiffs have provided *no* evidence of lost sales, *no* evidence of lost opportunities, *no* evidence of a retroactive licensing fee, *no* evidence of diminution in value of any copyright, and *no* evidence of any causal connection between alleged infringement and *NightGarden* revenue. This Court can find that, as a matter of law, Plaintiffs are not entitled to statutory damages for Counts I and II, Plaintiffs have failed to provide any evidence of actual damages for Counts I, II and III and therefore summary judgment is proper.

## CONCLUSION

In sum, the Court should enter summary judgment in favor of Defendants and against Plaintiffs on all counts. Plaintiffs cannot demonstrate any DMCA claims because the DMCA does not allow recovery for failure to attribute "knock-offs," because Plaintiffs also do not own the *NightGarden* map or any of the photographs complained about, and because there is absolutely no evidence of intent. Plaintiffs cannot demonstrate any copyright claims because their works are useful articles that constitute unprotectable shapes, lacking any creativity or originality. They also cannot show any factual or legal copying of those works because there are no protectable elements to copy, and Plaintiffs are trying to protect ideas. As to the Individual Defendants, all three lacked the required knowledge and cannot, as a legal matter, be held contributorily liable for their own companies' conduct. Plaintiffs are not entitled to statutory damages and attorney's fees for their copyright claims, and they also cannot establish actual damages for any claim. Summary judgment is proper in favor of Defendants as a matter of law.

Dated: May 3, 2021.                          Respectfully Submitted,

                                             SHULLMAN FUGATE PLLC

                                             **Allison S. Lovelady**
                                             Deanna K. Shullman (FBN 514462)
                                             Allison S. Lovelady (FBN 70662)
                                             Giselle M. Girones (FBN 124373)
                                             James M. Slater (FBN 111779)
                                             2101 Vista Parkway, Suite 4006
                                             West Palm Beach, FL 33411

Tel: (561) 614-2592
dshullman@shullmanfugate.com
alovelady@shullmanfugate.com
ggirones@shullmanfugate.com
jslater@shullmanfugate.com

*Attorneys for Defendants*