## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.:  1-20-cv-20079-RS-LFL

BRUCE MUNRO AND BRUCE MUNRO,
LTD. DBA BRUCE MUNRO STUDIO,

        Plaintiffs,

v.

FAIRCHILD TROPICAL BOTANIC
GARDEN, INC., NANETTE M. ZAPATA,
NIGHT GARDEN, LLC, KILBURN LIVE,
LLC, KILBURN MEDIA, LLC, MARK C.
MANUEL, IMAGINER, INC., IMAGINER
LTD., MAX PAINTER, and ZHONGSHAN
G-LIGHTS LIGHTING CO., LTD.,

        Defendants.

_____

### PLAINTIFFS' *EXPEDITED* MOTION TO STRIKE
### DEFENDANTS' NONCOMPLIANT SUMMARY JUDGMENT
### <u>MOTION (DE [145]) RULE 56.1 STATEMENT (DE [146])</u>

Plaintiffs Bruce Munro ("Munro") and Bruce Munro Ltd. dba Bruce Munro Studio

("Studio", collectively "Plaintiffs") move on an **<u>expedited</u>** basis to strike NightGarden

Defendants' noncompliant, so-called "Statement of Undisputed Material Facts" (DE [146]) filed

under Local Rule 56.1 in support of their scattershot summary judgment motion (DE [145]).[1]

NightGarden Defendants' lengthy, 114-paragraph Rule 56.1 statement comprises a series

of argumentative positional statements replete with **<u>*immaterial*</u>** and peripheral non-facts, legal

_____

[1] "NightGarden Defendants" collectively refers to jointly represented defendants Fairchild
Tropical Botanic Garden, Inc. ("Fairchild"), Imaginer, Inc. ("IInc."), Imaginer Ltd ("ILtd"),
Kilburn Live, LLC ("K-Live"), Kilburn Media LLC ("K-Media"), Night Garden, LLC ("NGL"),
Mark Manuel (Manuel"), Max Painter ("Painter"), and Nanette Zapata ("Zapata").  Remaining
defendant Zhongshan G-Lights Lighting Co., Ltd. ("G-Lights") has defaulted.  (DE [44]).

argument, and spin ranging from conclusory to argumentative to derogatory toward Plaintiffs and the famous copyrighted works in suit (which they belatedly concede were copied).  It is  not useful on summary judgment, it is not a proper Rule 56.1 statement, and it should be struck or disregarded.  *See* S.D. Fla. L.R. 56.1(d).

Due to the pending May 28th summary judgment response deadline (*see* DE [162]) Plaintiffs bring this motion on an **expedited** basis under S.D. Fla. L.R. 7.1(d)(2) so the Court may promptly assess and strike NightGarden Defendants' Rule 56.1 Statement (DE [146], "R56.1 Statement"), as Plaintiffs should not be forced to incur the undue burden and expense of responding to the litany of peripheral and noncompliant assertions throughout the lengthy 114-paragraph R56.1 Statement.  Plaintiffs respectfully request in view of the summary judgment response deadline that the Court provide guidance and a ruling on this issue by May 24th.

## I.      Legal Standards for Rule 56.1 Statements of Material Facts

### A.  Rule 56.1 statements must state **material**, not peripheral, facts

In furtherance of federal rule 56,[2] Local Rule 56.1 requires summary judgment movants to submit a statement of material facts concisely "list[ing] the ***material*** **facts** that the movant contends are not genuinely disputed" that are determinative to their summary judgment motion. S.D. Fla. L.R. 56.1(a)(1) (emphasis added).   "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case,"

---

[2] Fed. R. Civ. P. 56(c)(1) ("Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").  An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find for the nonmovant in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).  "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016).

*Prisua Engineering Corp. v. Samsung Electronics Co., Ltd*., Case No. 1:16-cv-21761-KMM at

*7 (S.D. Fla. Feb. 15, 2018) (citing *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir.

1997)),[3] whereas a factual dispute without legal significance is not "material."  *See Union*

*Planters Nat'l Leasing Co. v. Woods*, 687 F.2d 117, 119 (5th Cir. 1982) ("contested fact must

have some legal significance to be material to the resolution of a case").

### 1. Substantive claims at issue

Here, internationally renowned artist Munro and his eponymous Studio make claims in

this action against the NightGarden Defendants for copyright infringement and copyright

management information ("CMI") violations.  *See* Amended Complaint (DE [69]) (*citing* 17

U.S.C. §§ 501, 602, 1202-03).  In particular, NightGarden Defendants made, publicly displayed,

and disseminated without proper CMI derivative copies of several of Plaintiffs' most famous

copyrighted sculptural works, and facilitated and encouraged others to do the same.[4]  *Id*.  The

Court has ruled that "[t]he Works [in suit] are protectable under the Copyright Act as sculptures"

and side-by-side comparisons show NightGarden Defendants' copies are "highly comparable."[5]

---

[3] *See also Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 248 (1986) (a fact is material if it "might affect the outcome of the suit under governing law"); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case").

[4] The violations occurred primarily in connection with two exhibitions held 10 months apart at Fairchild Tropical Botanic Garden ("FTBG") called "The NightGarden" and accompanying promotions, but also occurred in connection with other facets of defendants' businesses.  *Id*.

[5] Order (DE [65]) at pp. 5, 6.  As Judge Singhal explained, "examples by way of photographs of NightGarden's replicas . . . show, as Munro argues, displays that are <u>highly comparable to his works.</u>"  *Id.* (citing *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1348 (5th Cir. 1994) ("copying" prong of copyright infringement claim may be demonstrated either through access plus substantial similarity, "striking similarity," or a side-by-side comparison where the alleged infringing work extensively copies the subject work almost verbatim); *see also* Amended Answer (DE [92]) at ¶ 144-45(admitting that Figs. 30 and 36 at ¶ 144-45 of the Amended Complaint (DE [ 69]) show screenshots of defendants' Instagram social media pages).

NightGarden Defendants, however, have nevertheless now outlandishly requested summary judgment on each of the claims via their scattershot motion (DE [145]), and in support filed a R56.1 Statement (DE [146]) that contains 114 paragraphs despite the few claims in suit, is impermissibly filled with argumentative, derogatory, and conclusory statements and legal contentions, and strays off into peripheral matters. *See, e.g., id*. at ¶ 19, 26, 28, 30, 49, 55, 65, 77, 81, 82, 108, 112; Appendix A at Table I (specifying noncompliant paragraphs).

### 2. Copyright infringement and elements

As to the infringement claim, the Eleventh Circuit has explained that,

> Copyright infringement has two elements: "(1) ownership of a valid copyright, and (2) copying of [protectable] elements." The second element can be proven either with direct proof of copying or, if direct proof is unavailable, "by demonstrating that the defendants had access to the copyrighted work and that the works are 'substantially similar.'"

*Home Design Services, Inc. v. Turner Heritage Homes Inc*., No. 15-11912, 2016 WL 3361479 (11th Cir. June 17, 2016) (quoting *Miller's Ale House, Inc. v. Boyton Carolina Ale House, LLC*, 702 F.3d 1312, 1325 (11th Cir. 2012) and *Oravec v. Sunny Isles Luxury Ventures, LLC*, 527 F.3d 1218, 1223 (11th Cir. 2008)).[6]

For the Season 1 NightGarden exhibition (Nov. '18 - Jan. '19), Plaintiffs have asserted and evidence shows a *prima facie* case of infringement of the UK sculptural works *Field of Light*

---

[6] *See also Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014) ("To make out a prima facie case of copyright infringement, a plaintiff must show that (1) it owns a valid copyright in the [work] and (2) defendants copied protected elements from the [work].") (quotations omitted); *supra* at n. 5 (recognizing that "striking similarity" or a side-by-side comparison evidencing extensive copying can substitute for "access" plus "substantial similarity"); *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987). "[A] 'striking similarity' between the works may give rise to a permissible inference of copying."). "[A]fter an infringement plaintiff has demonstrated that he holds a valid copyright and that the defendant engaged in factual copying, the *defendant* bears the burden of proving—as part of the filtration analysis—that the elements he copied from a copyrighted work are *unprotectable*." *Compulife Software Inc. v. Newman*, No. 18-12007, 2020 WL 2549505 (11th Cir. May 20, 2020) (emphasis in original).

(Long Knoll, Wilshire, UK, 2004), *Field of Light* (Eden Project, Cornwall, UK, 2008), and *Field of Light* (Holburne Museum, Bath, UK, 2011) because (i) pre-Season 1 pitchdecks produced in discovery (and other evidence like Fairchild and Zapata's earlier communications around their interest in securing a Munro exhibition[7]) establish defendants' unquestionable prior "access" to (and copying of) photos and images of these three copyright-protected UK sculptural works, and (ii) at least two NightGarden Season 1 installations that were publicly displayed at FTBG for 36 discrete nights during Season 1 (and also depicted in numerous derivative photos and images) were – as the Court already noted (*see* DE [65] at pp. 5-6) – visually substantially and strikingly similar to each of the UK sculptural works *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Eden Project, Cornwall, UK, 2008), and *Field of Light* (Holburne Museum, Bath, UK, 2011).  *See, e.g.*, Appendix B at Table II (comparative photos re Season 1); Amended Complaint (DE [69]) at ¶ 22, 37, 38, 42, 43, 54, 55 and Figs. 1-5, 10; Amended Answer (DE [92]) at ¶ 132; Sanford Depo. Tr. (DE [155-1]) at p.58, l.15 - p.59, l.20, p.80, l.11 - p.83, l.11, p.97, l.12 - p.99, l.12; Sanford Depo. Exhibits (DE [139-1]) at Ex. 26; Zapata Depo. Exhibits (DE [142-1]) at Exs. 19, 22 (at pp. 7-12), 24 (at p. 1), 26.[8]

---

[7] *See, e.g.*, Lewis Depo. Tr. (DE [138]) at p. 178, l. 25- p. 181, l. 10; Lewis Depo. Exhibits (DE [138-1]) at Exs. 20, 21, and 22; Zapata Depo. Tr. (DE [142]) at p. 67, ll. 16-25, p. 78, ll. 2-18; Zapata Depo. Exhibits (DE [142-1]) at Exs. 2, 3, 4, 6, 7; DE [148-19]; Amended Answer (DE [92]) at ¶ 151.

[8] NightGarden Defendants have conceded via defendant Painter, their proffered "rebuttal" expert, and other agents that direct copying occurred and substantial similarity exists.  *E.g.,* Painter Depo. Tr. (DE [141]) at p.38, ll.5-12, p.75, l.19 - p.76, l.4, p.77, l.18 - p.78, l.1, p.78, l.22 - p.79, l.2, p.136, l.21 - p.137, l.18, p.177, l.12 - p.178, l.7, p.222, l.18 - p.223, l.6 (discussing Painter's use of Google searches to obtain images of Plaintiffs' works, copying them into pitchdecks, and using them to design each NightGarden exhibition); Expert Report of Brian Buss (DE [152-5]) at p. 45, Sch. 6a, col. 5, row 8 ("As images allegedly based on Munro Works were used in the Pitch Decks, event development may have been influenced by the Munro Works."); Sanford Depo. Exhibits (DE [139-2] at Exs. 59, 60 (defendant supplier's site advertising "Hot sale cheap Bruce Munro style outdoor wood decoration fiber optic light"), 61 ("Hi Mark, I

For the Season 2 NightGarden exhibition (Nov. '19 - Jan. '20), Plaintiffs have asserted and evidence shows a *prima facie* case of infringement of the registered U.S. sculptural work *Forest of Light* (U.S. Cert. Reg. No. VA 2-176-825) and the UK sculptural works *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Eden Project, Cornwall, UK, 2008), *Field of Light* (Holburne Museum, Bath, UK, 2011), *River of Light*, and *Fireflies* because (i) a demand letter, various pitchdecks produced in discovery, and other evidence establish defendants' unquestionable prior "access" to photos and images of these six copyright-protected sculptural works,[9] (ii) at least one NightGarden Season 2 installation that was publicly displayed at FTBG for 42 discrete nights during Season 2 (and also depicted in numerous derivative photos and images) was – as the Court already noted (*see* DE [65] at pp. 5-6) – visually substantially and strikingly similar to the U.S.-registered *Forest of Light* sculptural work and the UK *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Eden Project, Cornwall, UK, 2008), *Field of Light* (Holburne Museum, Bath, UK, 2011), and *River of Light* sculptural works, and (iii) at least two NightGarden Season 2 installations that were publicly displayed at Fairchild's facilities for 42 discrete nights during Season 2 (and also depicted in several derivative photos

---

wanted to quickly check in and share this article in case you hadn't seen it. The first image is nearly identical to the activation at NightGarden."), 62 (linked article), 63 ("I'm a member of the Illuminating Engineering Society. They have an annual awards event . . .. I am planning on submitting NightGarden Miami for their consideration. . . .  I'm NOT planning on showing anything [to the IES awards committee] that was previously created by another artist. (The fiber mushrooms and spinning shadow sculptures come to mind. The adjudication committee is likely to know Bruce Munroe and the Hybocozo folks personally... don't want to open that particular can of worms.)"), and 65; Sanford Depo. Tr. (DE [155-1]) at p. 200, l.19 - p.215, l.16, p. 220, l.23 - p.232, l.4 ; *see also, e.g.,* DE [148-12] at 14, 25, 35; Munro Depo. Tr. (DE [136]) at p.73, l.4 - p.77, l.25; Munro Depo. Exhibits (DE [136-2]) at Ex. 3.

[9] *See* DE [153-1] (depicting *Forest of Light* sculptural work and citing its copyright registration); Zapata Depo. Exhibits (DE [142-1]) at Exs. 8, 11 (at p. 6); Zapata Depo. Tr. (DE [142]) at p.90, l. 11 - p.91, l.11, p.94, l.19 - p. 95, l. 9, p.111, l.1 - p. 115, l.4;  Sanford Depo. Tr. (DE [155-1]) at p.74, l.22 - p.80, l.24; Sanford Depo. Exhibits (DE [139-1]) at Exs. 85, 86 and (DE [139-2]) at Exs. 59-62; *see also supra* at nn. 7 & 8.

and images) were – as the Court already noted (*see* DE [65] at pp. 5-6) – visually substantially and strikingly similar to the UK sculptural work *Fireflies*.  *See, e.g.*, Appendix C at Table III (comparative photos re Season 2); Amended Complaint (DE [69]) at ¶ 22, 37, 38, 42, 43, 47, 48, 54, 55, 60, 61, 70, 71, Figs. 1-6, 10, 12-14, 18, and DE [69-1]; Amended Answer (DE [92]) at ¶ 142; Sanford Depo. Tr. (DE [155-1]) at p.58, l.15 - p.59, l.20, p.80, l.11 - p.83, l.11, p.97, l.12 - p.99, l.12, p.180, ll.2-25, p.181, ll.1-23; Sanford Depo. Exhibits (DE [139-1]) at Ex. 11, 12, 26 and (DE [139-2]) at Ex. 42.

Thus, evidence overwhelmingly establishes *prima facie* **willful** infringement of (1) three UK sculptural works via the NightGarden Season 1 exhibition and derivative photos and images thereof; and (2) five UK sculptural works and one U.S.-registered sculptural work via the NightGarden Season 2 exhibition and derivative photos and images thereof.  17 U.S.C. §§ 106, 501, 504(c)(2); *see also supra* nn. 7-9; *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) ("[A] finding of 'willfulness' [ ] can be based on either 'intentional' behavior, or merely 'reckless' behavior."); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc*., 658 F.3d 936, 944 (9th Cir. 2011) ("To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights.") (*quoting Island Software & Computer Serv., Inc. v. Microsoft Corp*., 413 F.3d 257, 263 (2d Cir. 2005)).

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

### 3. CMI §1202 attribution violations and elements

The Digital Millenium Copyright Act ("DMCA"), which was intended to provide broad

protections to copyright owners,[10] defines copyright management information ("CMI") to

include,

> **any of the following information conveyed in connection with copies** [
> ] **of a work [ ] or displays of a work, including in digital form** . . . : (1)
> **The title** and other information identifying the work, including the
> information set forth on a notice of copyright. (2) **The name of**, and other
> identifying information about, **the author of a work**. (3) **The name of**,
> and other identifying information about, **the copyright owner** of the
> work, including the information set forth in a notice of copyright . . ..

17 U.S.C. § 1202(c)(3) (emphasis added).  CMI need not be personally affixed by the plaintiff

nor even located on the subject works to give rise to an actionable CMI claim.  *Mango v.*

*Buzzfeed, Inc*., No. 19-446-cv at n.1 (2d Cir. Aug. 13, 2020) ("The DMCA, by its express terms,

contains no requirement that a copyright owner personally affix CMI."); *Agent France Presse v.*

*Morel*, 769 F.Supp. 295, 305 (S.D.N.Y. 2011) ("The DMCA prohibits intentionally removing or

altering CMI, or distributing CMI knowing it has been removed or altered . . ..  This Court

rejects the movants' argument that CMI must be removed from the photograph itself to state a

claim for removal or alteration of CMI. First, § 1202(b) imposes no such requirement.

Moreover, the DMCA defines CMI as information 'conveyed *in connection with* copies' of a

work.").

The record contains numerous examples of Plaintiffs' use and conveyance of CMI in

connection with displays and depictions of the works.  *E.g*., DE [69] at ¶ 64 and Fig. 16 (signage

with title and author information); DE [69-7, 69-8] (websites with title, author, and copyright

---

[10] *See Murphy v. Millenium Radio Grp. LLC*, 650 F.3d 295, 303 (3d Cir. 2011) ("As for the
purpose of the statute as a whole, it is undisputed that the DMCA was intended to expand—in
some cases . . . significantly—the rights of copyright owners.").

notice information); Munro Depo. Exhibits (DE [136-4]) at Ex. 40 (exhibition guide with title and author information); Zapata Depo. Exhibits (DE [142-1, 142-2]) at Exs. 4 (article with title and author information), 28 (websites with title, author, and copyright notice information).

Violations of Section 1202 of the Digital Millenium Copyright Act ("DMCA") occur when a defendant knowingly:[11]

- provides or distributes CMI that is false, 17 U.S.C. § 1202(a);[12]

- alters or removes CMI, 17 U.S.C. § 1202(b)(1);[13]

- distributes CMI that has been removed or altered, 17 U.S.C. § 1202(b)(2); or

- distributes or publicly performs works [or] copies of works with altered or removed CMI, 17 U.S.C. § 1202(b)(3).[14]

---

[11] Knowledge and intent may be inferred from circumstantial evidence. *See, e.g., GC2 Inc. v. Int'l Game Technology*, Case No. 16 C 8794 (N.D. Ill. July 15, 2019).

[12] "False Copyright Management Information.—No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—(1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." *Id.*; *see also Ward v. Nat'l Geographic Soc.,* 208 F. Supp. 2d 429, 449 (S.D.N.Y. 2002) (the "two prerequisites" for a § 1202(a) violation are "knowledge] [that] the copyright management information is false" and "intent to induce, enable, facilitate or conceal an infringement of any right under title 17").

[13] "Removal or Alteration of Copyright Management Information.—No person shall, without the authority of the copyright owner or the law—(1) intentionally remove or alter any copyright management information, (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b).

[14] *See Mango v. Buzzfeed, Inc.*, No. 19-446-cv (2d Cir. Aug. 13, 2020) ("A plaintiff must thus prove the following: (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant 'distribute[d] . . . works [or] copies of works'; (3) while 'knowing that [CMI] has been removed or altered without authority of the copyright owner or the law'; and (4) while 'knowing, or . . . having reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an infringement.'") (citing §1202(b) and *Fischer v. Forrest*, Nos. 18-cv-

The plain meaning of the statutory language[15] bars these acts as to originals, copies, and derivatives of the works.  *GC2 Inc. v. Int'l Game Technology*, 391 F. Supp. 3d 828  (N.D. Ill. 2019) (deeming defendants' argument that § 1202 applied only to "original works" to be "wholly without merit").

NightGarden Defendants' numerous CMI violations relating to the works in suit and defendants' copies and derivatives thereof generally occurred in one of three ways (none of which in either season used the true author and title CMI conveyed with Plaintiffs' works).[16] The three principle ways they committed CMI violations were, according to the evidence, by: (1) preparation and distribution of pitchdecks that affix false and/or altered title, authorship, and source CMI to or nearby depictions (i.e., copied photos) of Plaintiffs' sculptural works and

---

2955, 18-cv-2959, 2020 WL 4457943, at *5 (2d Cir. Aug. 4, 2020) (stating the general elements for a Section 1202(b) claim)); *Gattoni v. Tibi, LLC*, No. 16 Civ. 7527 (RWS), 2017 WL 2313882, at *4 (S.D.N.Y. May 25, 2017) ("To establish a violation under subsection 1202(b), a plaintiff must show '(1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally.'") (quoting *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (collecting cases)).

[15] *Kobi Karp Architecture & Interior Design, Inc. v. O'Donnell Dannwolf & Partners Architects, Inc.*, No. 19-24588-CIV, 2020 WL 4287005 (S.D. Fla. Jul. 27, 2020) (noting in regard to Section 1202's  "Removal of Copyright Management Information" restriction that "the Court must consider a statute's plain meaning before it considers its legislative history").

[16] Defendants admit they "did not use the terms *Forest of Light*, *River of Light*, or *Field of Light* in connection with any actual *NightGarden* installation," "did not use the term *Fireflies* in connection with any actual *NightGarden* installation," and "ha[ve] not included an attribution to Plaintiff regarding any actual *NightGarden* installation."  K-Live and NGL Response to Plaintiff's First Requests for Admissions at RFA Resp. nos. 13, 19, 21 (June 1, 2020); Fairchild Response to Plaintiff's First Requests for Admissions at RFA Resp. nos. 13, 19, 21 (June 1, 2020); Zapata NGL Response to Plaintiff's First Requests for Admissions at RFA Resp. nos. 13, 19 (June 1, 2020).  *See also* Amended Answer (DE [92]) at ¶ 149.

related communications repeating the false/altered titles;[17] (2) thirty-six discrete public displays (on separate Season 1 evenings) of two replica installations sans original CMI and forty-two discrete public displays (on separate Season 2 evenings) of three replica installations sans original CMI, accompanied by signage and/or guide maps distributed to attendees conveying false/altered title, authorship, and source CMI in connection with the replica displays;[18] and (3) posted, hosted, and distributed photos, images, and videos on defendants' websites and social media (and also conveyed to traditional and digital media outlets) of the replica displays sans original CMI but conveyed with false/altered title, source, and authorship CMI.[19]  NightGarden Defendants also had numerous indications and reasons to know that they were distributing and conveying false/altered CMI and that their activities were likely to (and actually did) induce,

---

[17] For examples of pitchdecks incorporating photos of Plaintiffs' works but conveyed with different titles and source information, *see, e.g.,* DE [148-12] at 1, 6, 8, 9, 11, 14, 16-19, 25, 35, 39-42, 63; Manuel Depo. Exhibits (DE [140-1]) at Ex. 3 at pp. 1, 04, 14; Zapata Depo. Exhibits (DE [142-1]) at Ex. 11 at p. 6.  *See also* DE [148-16] at p. 13 (email repeating the use of a false/altered CMI title of "mystery mushrooms").

[18] *See, e.g.*, Sanford Depo Tr. (DE [155-1]) at p.171, l. 25-p.172, l. 11, p.174, l.13 - p. 175, l.21, p. 180, ll. 9-25, p.181, l.1 - p.183, l.22; Sanford Depo. Exhibits (DE [139-2]) at Ex. 42 (map included at p. 23); Zapata Depo. Exhibits (DE [142-1]) at Ex. 27; Zapata Depo Tr. (DE [142]) at p.205, l.23 - p.207, l.22; DE [148-14] (guide map provided to NightGarden attendees conveying false/altered title and source CMI of "NightGarden", "FTBG", and "Mystic Mushrooms" in connection with location of replica copy); *compare also* Amended Answer (DE [92]) at ¶ 148-49 *with* Amended Complaint (DE [69]) at ¶ 148-49 and Fig. 39.

[19] *See, e.g*., Sanford Depo. Exhibits (DE [139-1]) at Exs. 11-12 (websites displaying and scrolling images of replica displays accompanied with false/altered "NightGarden" CMI); Sanford Depo Tr. (DE [155-1]) at p.156, l.10 - p. 165, l.12 and p.167, l.16 -  p. 168, l .8 (discussing defendant's website containing a scroll bearing images of replica displays accompanied by false/altered "NightGarden" and copyright attribution CMI and admitting that the site, which repeatedly re-displays the image several times a minute, has been distributed as promotional material to third parties by defendant K-Live over 200 times); Zapata Depo. Exhibits (DE [142-1] at Exs. 20 (at p.2), 22 (at pp. 7-12) and 24 (at p.1) (all tweets and posts conveying false/altered title, authorship, and source CMI of "Web of Life", "Max Painter", and "NightGarden" alongside images and video of replica display); Zapata Depo. Tr. (DE [142]) at p.162, l. 19 - p. 163, l.3, p.168, l.25 - p.169, l.15, p.171, l.1 - p.172, l.17, p.177, ll.18-24; *see also* DE [122-6] at 4, 6, 9, 10.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

enable, facilitate, or conceal infringement.  *See, e.g., supra* at Sec. I(A)(2) and nn. 7-9, 17-19;

DE [153-1] (containing images of the sculptural work *Forest of Light* and citing its copyright

registration); Sanford Depo Tr. (DE [155-1]) at p.225, l.14 - p.230, l.19 (acknowledging review

of an article on Munro).

Thus, the evidence also overwhelmingly establishes *prima facie* CMI violations under

Sections 1202(a) & (b).[20]

### B.  Purpose and form of Rule 56.1 statements

For summary judgment, the movant's Rule 56.1 statement of material facts must

concisely list in separate paragraphs with record cites each purportedly undisputed material fact

supporting its motion.[21]  By making the movant identify the material facts and record excerpts on

which its motion is based, the Rule 56.1 statement enables the court (and non-movant) to

efficiently and effectively identify the evidence at issue and address the motion's merits.  *See*

*Tesoro Refining & Marketing Company LLC v. Nat. Union Fire Ins. Co. of Pittsburgh, P.A.*, No:

SA:13-cv-931-DAE at 3 (W.D. Tex. Mar. 16, 2015) (*citing* Fed. R. Civ. P. 56(c)(1) and multiple

district courts' similar requirements for Rule 56.1 statements).

---

[20] "[E]ach violative act performed by a [d]efendant" is grounds for an additional statutory award under 17 U.S.C. § 1203.  *Preston Woods & Associates LLC v. Cameron Architects, Inc*.., Civ. Act. No.  H-16-cv-1427, 2018 WL 8732108 at *2 (S.D. Tex. Nov. 8, 2018); *see also Stockwire Research Group, Inc. v. Lebed*, 577 F. Supp.2d 1262, 1266-67 (S.D. Fla.  Sept. 18, 2008); *GC2 Inc. v. Int'l Game Technology*, Case No. 16 C 8794 (N.D. Ill. July 15, 2019).

[21] S.D. Fla. L.R. 56.1(b)(1)(B) ("Form Required for Statements of Material Facts. . . .  [T]he Statements of Material Facts shall: . . . (B) Consist of separately numbered paragraphs, limited as far as practicable to a single material fact, with each fact supported by specific, pinpoint references to particular parts of record material . . ..."); *see also* Scheduling Order (DE [27]) at p. 3 ("Each material fact in the statement . . . shall be set forth in an individually numbered paragraph and supported by a specific citation.") (emphasis added).

Rule 56.1 statements <u>are not argument</u> and <u>should not contain any conclusions</u>.  *See Rodriguez v. Schneider*, No. 95 Civ. 4083 (RPP), 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999).

### C.  Noncompliant Rule 56.1 statements may be struck per Local Rule 56.1(d)

Courts have found a moving party's failure to comply with Rule 56.1 to be "particularly troubling," for "the moving party bears the burden of demonstrating that there is no genuine issue of material fact."  *See Travelers Indem. Co. of Ill. v. Hunter Fan Co., Inc*., No. 99 Civ. 4863 (JFK), 2002 WL 109567, at *6 (S.D.N.Y. Jan. 28, 2002).

In this district, noncompliant Rule 56.1 statements may be struck and result in other relief:

> Consequences of Non-Compliance. If a party files and serves any Statement of Material Facts that does not comply with this rule, then the Court may strike the Statement, require immediate compliance, grant relief to any opposing party for any prejudice arising from a non-compliant statement or response, or enter other sanctions that the Court deems appropriate.

S.D. Fla. L.R. 56.1(d).[22]  Statements, for instance, cannot contain conclusory allegations or legal argument and should be struck where they do.  *Tesoro Refining & Marketing Company LLC v. Nat. Union Fire Ins. Co. of Pittsburg, P.A.*, No: SA:13-cv-931-DAE (W.D. Tex. Mar. 16, 2015); *see Nw. Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003) (affirming district court's decision to not consider a responsive statement of material facts where it was "replete with conclusory allegations and legal argument"); *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000) (holding that a statement of material fact containing

---

[22] A district court may deny a summary judgment motion based solely on a movant's failure to comply with Rule 56.1.  *See MTV Networks v. Lane*, 998 F. Supp. 390, 393 (S.D.N.Y. 1998); *Rossi v. N.Y.C. Police Dep't*, No. 94 Civ. 5113 (JFK), 1998 WL 65999, at *4 (S.D.N.Y. Feb. 17, 1998).

"evasive denials" and legal argument was subject to strike); *Ofudu v. Barr Laboratories, Inc.*, 98

F. Supp. 2d 510, 512-13 (S.D.N.Y. 2000) (striking various statements as conclusory,

argumentative, opinion, or non-facts (i.e., positions or legal argument)).[23]

## II.   NightGarden Defendants' Noncompliant R56.1 Statement Should Be Stricken

In a stark contrast to the purposes for and required content of Rule 56.1 statements,

NightGarden Defendants' R.56.1 Statement (DE [146]) is littered with impermissible and

noncompliant paragraphs that deviate far from what Local Rule 56.1 and case law mandate.

Most paragraphs of the R56.1 Statement are noncompliant, flawed, and deficient in

multiple ways.  *See* Appendix A at Table I (tabulating the multiple defects in 100 of the R56.1

Statement's 114 paragraphs and headings).  Many, for instance, are legal argument or statements

of purported positions on or in the lawsuit, not of underlying facts (*e.g.,* R56.1 Statement at ¶ 5,

13, 22, 27, 28, 30, 43, 52, 53, 56, 60, 61, 63, 67, 68, 71, 72, 76-82, 88, 92, 94, 95, 108-110, 112.

114), are conclusory (*e.g., id.* at ¶ 29, 32-38, 40, 45, 47, 52, 54-58, 70, 73-76, 78, 81, 83-88, 90-

92, 94, 95, 103, 106, 112, 114), or are rife with generalized conjecture, argumentative spin (*e.g.,*

*id.* at ¶ 28, 30, 32-38, 40, 44, 45, 48, 52, 54-58, 67, 75-78, 81, 82, 86-88, 90-92, 94-101, 103,

108-112, 114), and demeaning argumentative insinuations, as exemplified in numerous

paragraphs that derogatorily call Plaintiffs' famous, globally lauded mixed-media works "stick-

and-bulb" "lights" (*e.g., id.* at ¶ 4, 12, 13, 15, 16, 17, 19, 20, 21, 23, 24, 26, 27, 28, 32, 33, 36,

38, 40, 41, 42, 88, 92).

Some are impermissibly compound (*e.g., id.* at ¶ 4, 22, 29, 32-34, 40, 46, 48, 54, 56, 57,

60, 61, 63, 68, 71-74, 76, 78, 82, 86-88, 90-92, 94-95, 97-101, 103, 107-109, 111, 113, 114),

---

[23] *See also RMD, LLC v. Nitto Americas, Inc.*, No. 09-2056-JAR, 2012 WL 1033542, at *2 (D. Kan. Mar. 27, 2012) (noting that district's practice of disregarding the portions of a statement of uncontroverted facts that do not comply with Local Rule 56.1 or Rule 56(c)).

others relate to intentionally spoliated key evidence or deficient discovery responses (*e.g., id.* at ¶ 54, 55, 57, 83, 86, 87, 90, 91, 97-99, 101, 103, 104, 106), and numerous dwell on **_non_**material matters peripheral or extraneous to the pending copyright and CMI claims (e.g., an application no claim is made on (*id.* at ¶ 15-26), a work no infringement claim is made on (*id.* at ¶ 14),  and other extraneous matters not pertinent to legal-element-related (i.e., material) facts relevant to existing claims (*id.* at ¶ 29, 34, 38, 39, 41, 42, 43, 50, 51, 56, 61-76, 81, 82, 94-96, 107, 113).

*Compare* Amended Complaint (DE [69]) at ¶ 157, 168, 169.  Much of the R56.1 Statement also appears aimed at impermissibly relitigating what this Court already expressly determined, i.e., that the "[w]orks are protectible under the Copyright Act as sculptures."  Order (DE [65]) at p. 5; *see Arizona v. California*,  460 U.S. 605, 618 (1983) *decision supplemented*, 466 U.S. 144 (1984) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1392 (9th Cir. 1995) ("'[E]ven summarily treated issues become the law of the case.'") (cites omitted).

As Table I in attached Appendix A demonstrates, the NightGarden Defendants' R56.1 Statement is wholly defective, does not satisfy federal rule 56 or Local Rule 56.1, and should be struck.  It is counter to the rules and purpose for Rule 56.1 statements, it is unhelpful to both the Court and responding party Plaintiffs in the context of summary judgment, and it would be too prejudicial and undue of burden to necessitate a paragraph-by-paragraph assessment and responsive summary judgment statement on in view of 100 of its 114  paragraphs evidencing one or more  defects.  *See* S.D. Fla. L.R. 56.1(b) & (d); *supra* at Sec. I(C) (citing cases striking statements containing defects like those throughout NightGarden Defendants' R56.1 Statement).

### III.   **The Lengthy, Noncompliant R56.1 Statement Necessitates a Response Extension**

An extension to respond to and oppose defendants' R56.1 Statement also is warranted and necessary due to the statement's length, defects, and numerous paragraphs that impermissibly contain compound statements.

Here, defendants' 114-paragraph R.56.1 Statement is already 10 pages (*see* DE [146]), the  Scheduling Order appears to require its 114-paragraphs to each be incorporated verbatim into the opposing statement (*see* DE [27] at p. 3, #4; *but see* S.D. Fla. L.R. 56.1(b)(2)(A)(2nd cl.), but Local Rule 56.1 limits opposing statements to 10 pages, *see* S.D. Fla. 56.1(b)(1)(B) & (b)(2)(A)(1st cl.), which would be fully occupied by the original statement and leave no room for opposing statements of fact.  Accordingly, Plaintiffs' also request that they be granted (i) a page-limit extension of an additional ten (10) pages (i.e., for a total of twenty (20) pages), for their opposing statement of material facts; and (ii) leave to request, as needed in view of the Court's ruling, an extension of their filing deadline for responding to defendants' summary judgment motion (DE [145]) and R56.1 Statement (DE [146]) of up to ten (10) days from the Court's ruling on the present motion.

### IV.   **Conclusion**

For these reasons, Plaintiffs respectfully request that the Court grant this motion, strike and disregard NightGarden Defendants' noncompliant R56.1 Statement (DE [146]), and reject any consideration of the identified noncompliant portions in connection with determination of NightGarden Defendants' scattershot summary judgment motion (DE [145]).

### **GOOD FAITH CERTIFICATION PER LOCAL RULE 7.1**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has

made reasonable efforts to confer with all parties who may be affected by the relief sought in this motion (including via emails, voicemail message, and provision of a draft of this motion) in a good faith effort to resolve the issues but has been unable to resolve the issues.

Dated: May 19, 2021                    Respectfully submitted,

                                       /s/ Joel B. Rothman
                                       JOEL B. ROTHMAN
                                       Florida Bar Number: 98220
                                       joel.rothman@sriplaw.com
                                       CRAIG A. WIRTH
                                       Florida Bar Number: 125322
                                       craig.wirth@sriplaw.com
                                       MEIR TEITELBAUM
                                       Florida Bar No. 1022915
                                       meir.teitelbaum@sriplaw.com

                                       **SRIPLAW**
                                       21301 Powerline Road
                                       Suite 100
                                       Boca Raton, FL 33433
                                       561.404.4350 – Telephone
                                       561.404.4353 – Facsimile

                                       and

                                       CARL F. SCHWENKER *(pro hac vice)*
                                       Texas Bar No. 00788374
                                       cfslaw@swbell.net

                                       **LAW OFFICES OF CARL F. SCHWENKER**
                                       The Parsons House
                                       3807 Duval Street, Suite E
                                       Austin, TX 78751
                                       512.480.8427 – Telephone
                                       512.857.1294 – Facsimile

                                       *Counsel for Plaintiffs Bruce Munro and Bruce*
                                       *Munro, Ltd. dba Bruce Munro Studio*

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 19, 2021, a true and correct copy of the foregoing document was sent via electronic mail by the Court's CM/ECF System to all parties listed below on the Service List.

/s/ Joel B. Rothman
JOEL B. ROTHMAN

## SERVICE LIST

Deanna K. Shullman
Allison S. Lovelady
Giselle M. Girones
James Slater
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Telephone: (561) 429-3619
dshullman@shullmanfugate.com
alovelady@shullmanfugate.com
ggirones@shullmanfugate.com
jslater@shullmanfugate.com

*Counsel for Defendants Kilburn Live, LLC, Kilburn Media LLC, Manuel, Night Garden, LLC, Fairchild Tropical Botanic Garden, Inc., Zapata, Imaginer Ltd., Imaginer Inc., and Painter*

John K. Shubin, Esq.
SHUBIN & BASS, P.A.
46 S.W. First Street, Third Floor
Miami, Florida 33130
Telephone:(305) 381-6060
Facsimile: (305) 381-9457
jshubin@shubinbass.com
eservice@shubinbass.com

*Co-counsel for Defendants Fairchild Tropical Botanic Garden, Inc. and Zapata*

**Appendix A**
**Table I: Chart re Noncompliant Paragraphs in NightGarden Defendants' R56.1 Statement[24]**

| R56.1 ¶# | Non-factual/ Positional | Immaterial to claims | Conclusory | Argumentative/ Conjecture | Derogatory | Discovery deficiency | Compound | Comment |
|---|---|---|---|---|---|---|---|---|
| 4 | | | | x | x | | x | |
| 5 | x | | | | | | | |
| 12 | | | | x | x | | | |
| 13 | x | | | x | x | | | "stick-and-bulb" |
| 14 | | x[25] | | | | | | |
| 15 | | x[26] | | x | x | | | |
| 16 | | x | | x | x | | | see n. 40 |
| 17 | | x | | | x | | | see n. 40 |
| 18 | | x | | | | | | see n. 40, 1st sent. |
| 19 | | x | | x | x | | | see n. 40 |
| 20 | | x | | | x | | | see n. 40 |
| 21 | | x | | | x | | | see n. 40 |
| 22 | x | x | | | | | x | see n. 40 |
| 23 | | x | | | x | | | see n. 40 |
| 24 | | x | | x | x | | | see n. 40 |
| 25 | | x | | x | | | | see n. 40 |
| 26 | | x | | | x | | | see n. 40 |
| 27 | x | | | x | x | | | |
| 28 | x | | | x | x | | | |
| 29 | | x | x | x | x | | x | "lights" |
| 30 | x | | | x | | | | |

---

[24] Table I identifies facial flaws in the R56.1 Statement. It does not address other matters (e.g., substantive record cite inaccuracies).

[25] No infringement claim was made on the *Field of Lights* (Longwood Gardens) work. *See* Amended Complaint (DE [69]) at ¶157, 168-69.

[26] No infringement claim was made on the referenced application. *Id.* Paragraph also uses argumentative, derogatory "stick-and-bulb" terminology.

| R56.1 ¶# | Non-factual/ Positional | Immaterial to claims | Conclusory | Argumentative/ Conjecture | Derogatory | Discovery deficiency | Compound | Comment |
|---|---|---|---|---|---|---|---|---|
| 31 | x | x | | x | x | | | "lights" |
| Heading | | | | x | x | | | "stick-and-bulb lights" |
| 32 | x | x | x | x | x | | x | |
| 33 | | | x | x | x | | x | "stick-and-bulb" |
| 34 | x | x | x | x | | | x | indefinite |
| 35 | x | x | x | x | | | | indefinite |
| 36 | | | x | x | x | | | "stick-and-bulb" |
| 37 | x | | x | x | | | | |
| 38 | | x | x | x | x | | | "stick-and-bulb" |
| 39 | | x | | | x | | | "bulbs" |
| 40 | | x | x | x | x | | | indefinite; §106(2)[27] |
| 41 | | x[28] | | | x | | | "stick-and-bulb" |
| 42 | | x | | x | x | | | see n. 42; supra l.41 |
| 43 | x | | | | | | | |
| 44 | | | | x | | | | indefinite |
| 45 | | x | x | x | | | | indefinite |
| 46 | | x[29] | | | | | x | |
| 47 | | x | x | x | | | | indefinite |
| 48 | | x | x | x | | | x | indefinite; §106(2)[30] |

[27] Paragraph is indefinite as to which, if any, of the five sued-on works (*see* Amended Complaint (DE [69]) at ¶157) it is referencing and instead appears to be a generalized argumentative and conclusory comment about subsequent projects (to which the exclusive rights of 17 U.S.C. §106, including its subsection 2 right to authorize copies or derivatives, would in any event apply).

[28] CMI need not be physically located on a work for an actionable CMI claim. *Mango v. Buzzfeed, Inc.*, No. 19-446-cv at n.1 (2d Cir. Aug. 13, 2020); *Agent France Presse v. Morel*, 769 F.Supp. 295, 305 (S.D.N.Y. 2011).

[29] Sculptural works do not generally exist to topple over.

[30] Paragraph is indefinite as to which instance of a *Fireflies* installations it is referencing and, instead of concerning the work in suit (*see* Amended Complaint (DE [69]) at ¶ 47-49, 157), appears to be a generalized argumentative and conclusory comment about subsequent projects (to which the exclusive rights of 17 U.S.C. §106, including its subsection 2 right to authorize copies or derivatives, would in any event apply).

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

| R56.1 ¶# | Non-factual/ Positional | Immaterial to claims | Conclusory | Argumentative/ Conjecture | Derogatory | Discovery deficiency | Compound | Comment |
|---|---|---|---|---|---|---|---|---|
| 49 | x | x | x | x | | | | indefinite; see n. 44 |
| 50 | | x | | | | | | see n. 42 |
| 51 | | x | | | | | | see n.42 |
| 52 | x | | x | x | | | x | see n.45 |
| 53 | x | x[31] | | | | | | |
| 54 | | | x[32] | x | | x[33] | x | see nn. 42, 45 |
| 55 | | | x | x | | x | | see nn. 42, 45-47 |
| 56 | x | x | x | x | | | x | |
| 57 | | | x | x | | x | x | see nn. 46, 47 |
| 58 | x | | x | x | | | | see nn. 46, 47 |
| 60 | | | | | | | x | |
| 61 | x | 2nd cl | | | | | x | see nn. 42, 45, 46 |
| 62 | | x | | | | | | see n. 45 |
| 63 | x | 2nd cl | | | | | x | see nn. 42, 45, 46 |
| 64 | | x | | | | | | see n. 45 |
| 65 | | x | | | | | | see n. 45 |
| 66 | | x | | | | | | see n. 45 |
| 67 | x | x | | x | | | | see n. 45 |

[31] Plaintiffs' claims are for infringement and CMI violations related to Plaintiffs' copyrighted sculptural works. *See, e.g.,* Amended Complaint (DE [69]) at ¶ 47-49, 157, 168-69, 175-76. Though the sculptural works are memorialized in various images and photos, Plaintiffs have not made CMI or infringement claims for any third party photographers. *Id.*

[32] *See Friedman v. Live Nation Merchandise, Inc.*, 833 F.3d 1180 (9th Cir. 2016) (reversing summary judgment on a § 1202(b) CMI claim because a plaintiff "could also prevail upon a showing that [defendant] distributed his works with the knowledge that CMI had been removed, even if [defendant] did not remove it" and that "'[q]uestions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment,'" "whether a party had knowledge of a particular circumstance 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence," and that "whenever state of mind is at issue, 'direct proof' of one's specific wrongful intent is 'rarely available' and so recourse to circumstantial evidence is most often necessary") (citations omitted).

[33] Painter Depo. Tr. (DE [141]) at p.138, l.7 - p.142, l.21, p.145, ll. 8-13; *see* Fed. R. Civ. P. 37(c)(1) (exclusionary rule).

| R56.1 ¶# | Non-factual/ Positional | Immaterial to claims | Conclusory | Argumentative/ Conjecture | Derogatory | Discovery deficiency | Compound | Comment |
|---|---|---|---|---|---|---|---|---|
| 68 | x | 2nd cl | | | | | x | see nn. 42, 45, 46 |
| 69 | | x | | | | | | see n. 45 |
| 70 | | x | x | | | | | see n. 45 |
| 71 | x | 2nd cl | | | | | x | see nn. 42, 45, 46 |
| 72 | x | 2nd cl | | | | | x | see nn. 42, 45, 46 |
| 73 | | x | x | | | | x | see n. 45 |
| 74 | | x | x | | | | x | see n. 45 |
| 75 | | x | x | x | | | | see n. 45 |
| 76 | x | x | x | x | | | x | see n. 45 |
| 77 | x | | | x | | | | |
| 78 | x | | x | x | | | x | indefinite |
| 79 | x | | | | | | | |
| 80 | x | | | | | | | |
| 81 | x | x | x | x | | | | |
| 82 | x | x | | x | | | x | see n. 42 |
| 83 | | | x | | | x[34] | | |
| 86 | | | x | x | | x[35] | x | indefinite as to season |
| 87 | | | x | x | | x[36] | x | indefinite as to season |
| 88 | x | | x | x | x | | x | indefinite as to season |
| 90 | | | x | x | | x[37] | x | see n. 46 |
| 91 | | | x | x | | x | x | see nn. 46, 51 |
| 92 | x | | x | x | x | | x | |

---

[34] Sanford Depo. Tr. (DE [139]) at p.173, l.2 - p.179, l.14; *see* Fed. R. Civ. P. 37(c)(1) (exclusionary rule).

[35] *See* DE [157-5] at Interrogatory Resp. nos. 6-8; Fed. R. Civ. P. 37(c)(1) (exclusionary rule).

[36] *See* DE [157-5] at Interrogatory Resp. nos. 8; DE [122-1] at Interrogatory Resp. no. 2; Fed. R. Civ. P. 37(c)(1) (exclusionary rule).

[37] Sanford Depo. Tr. (DE [139]) at p.216, l.7 - p. 217, l.6, p.225, l.9 - p. 230, l.19, p.232, l.5 - p.236, l.17; Fed. R. Civ. P. 37(c)(1) (exclusionary rule); *see also supra* at n. 8.

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

| R56.1 ¶# | Non-factual/ Positional | Immaterial to claims | Conclusory | Argumentative/ Conjecture | Derogatory | Discovery deficiency | Compound | Comment |
|---|---|---|---|---|---|---|---|---|
| 94 | x | x | x | x | | | x | see n. 46[38] |
| 95 | x | x | x | x | | | x | see nn. 8, 9, 46 and Tables II & III (access) |
| 96 | | x | | x | | | | see nn. 8, 9, 46 and Tables II & III (access) |
| 97 | | | | x | | x[39] | x | Spoliation (DE [153]) |
| 98 | | | | x | | | x | Spoliation (DE [153]); see also n.53 |
| 99 | | | | x | | x | x | Spoliation (DE [153]); see also n.53 |
| 100 | | | | x | | | x | indefinite entity and order reference |
| 101 | | | | x | | x | x | Spoliation (DE [153]); see also n.53 |
| 103 | | | x | x | | x | x | Spoliation (DE [153]); see also n.53 |
| 104 | | | | | | x | | Spoliation (DE [153]); see also n.53 |
| 105 | | | | | | | | indefinite entity and order reference |
| 106 | | | x | | | x | | Spoliation (DE [153]); see also n.53 |
| 107 | | x | | | | | x | see n. 45 |
| 108 | x | | | x[40] | | | x | |

---

[38] *See also supra* at nn. 7 & 9 (Zapata communications and "access" to works and images thereof).

[39] Sanford Depo. Tr. (DE [139 or 155-1]) at p.243, l.16 - p. 244, l.12; DE [105-12] at RFA Resp. nos. 5, 7-11; DE (122-1) at Interrogatory Resp. no. 3;  Fed. R. Civ. P. 37(c)(1) (exclusionary rule); *see also supra* at n. 8.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

| R56.1 ¶# | Non-factual/ Positional | Immaterial to claims | Conclusory | Argumentative/ Conjecture | Derogatory | Discovery deficiency | Compound | Comment |
|---|---|---|---|---|---|---|---|---|
| 109 | x | | | x | | | x | see n. 54 |
| 110 | x | | | x | | | | see n. 54 |
| 111 | | | | x | | | x | see n. 54 |
| 112 | x | | x | x | | | | |
| 113 | | x | | | | | x | |
| 114 | x | | x | x | | | x | see n. 54 |

[40] *See* 17 U.S.C. § 504(b) ("actual damages" and "infringer's profits"); DE [69] at ¶ 163, 172, 178; DE [152] at pp. 2-8; Twil Expert Appraisal Report (DE [152-3]) at pp. 1, 8, 44; Sanford Depo. Tr. (DE [139 or 155-1]) at p.95, l. 22 - p.99, l.12; Sanford Depo. Exhibits (DE [139-1] at Exs. 25 & 26.

**Appendix B**
**Table II: re Season 1 Infringement of Works[41]**

| Munro Sculptural Work:<br>Title & Sample Image | Sample of Image of Munro Work<br>Defendants Had Prior "Access" To | NightGarden<br>Season 1 Infringing Displays | Sample Season 1<br>Derivative Photos/Images |
|---|---|---|---|
| *Field of Light* (Long Knoll, Wilshire, UK, 2004):<br><br>Bates # MUNRO-00199 & Sharp Depo. Ex. 9 (*see also* Exs. 10 - 12 & Bates # MUNRO-00192) | <br>Bates # KILBURN00386 | <br>Bates # MUNRO-008938<br><br>Bates # SIPPLE 00121 | <br>Bates # MUNRO-008693<br><br>Bates # MUNRO-009089 |

---

[41] Table II provides illustrative examples of committed infringements of the identified Munro Works in Season 1.  It is not meant to limit in any way the infringements that may be established at trial based on the conduct of defendants.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK



| Munro Sculptural Work:<br>_Title & Sample Image_ | Sample of Image of Munro Work<br>Defendants Had Prior "Access" To | NightGarden<br>Season 1 Infringing Displays | Sample Season 1<br>Derivative Photos/Images |
|---|---|---|---|
| _Field of Light_ (Eden Project, Cornwall, UK, 2008):<br><br>Sharp Depo. Ex. 13 | Bates # FAIRCHILD00340 | Bates # MUNRO-009027<br><br>Bates # MUNRO-011485 | Bates # MUNRO-011505 |
| _Field of Light_ (Holburne Museum, Bath, UK, 2011):<br><br>Bates # MUNRO-00196 | Bates # KILBURN00386 | Bates # SIPPLE 00131 | Bates # MUNRO-008746 |

| Munro Sculptural Work:<br>Title & Sample Image | Sample of Image of Munro Work<br>Defendants Had Prior "Access" To | NightGarden<br>Season 1 Infringing Displays | Sample Season 1<br>Derivative Photos/Images |
|---|---|---|---|
| (DE [69] at 23]) | | | |
| *River of Light:*<br><br>(DE [1] at 12) | | <br>Bates # MUNRO-008952<br><br>Bates # MUNRO-008939<br><br>Bates # MUNRO-008926 | <br>Bates # MUNRO-008914<br><br>Bates # MUNRO-008824 |

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

**Appendix C**
**Table III: re Season 2 Infringement of Works[42]**

| Munro Sculptural Work:<br>Title & Sample Image | Sample of Images of Munro Work<br>Defendants Had Prior "Access" To | NightGarden<br>Season 2 Infringing Displays | Sample Season 2<br>Derivative Photos/Images |
|---|---|---|---|
| *Forest of Light:*<br><br>Bates # MUNRO-00156<br>Registration Deposit Photo<br>U.S. Reg. No. VA 2-176-825<br>&<br>Bates # FAIRCHILD1048 | <br>Bates # FAIRCHILD1048 | <br>Sharp Depo. Ex. 5<br>Bates # Sea Hill Press 003 | <br>Bates # MUNRO-011420 |

---

[42] Table III provides illustrative examples of committed infringements of the identified Munro Works in Season 2. It is not meant to limit in any way the infringements that may be established at trial based on the conduct of defendants.

| Munro Sculptural Work:<br>Title & Sample Image | Sample of Images of Munro Work<br>Defendants Had Prior "Access" To | NightGarden<br>Season 2 Infringing Displays | Sample Season 2<br>Derivative Photos/Images |
|---|---|---|---|
| *Field of Light* (Long Knoll, Wilshire, UK, 2004):<br><br>Bates # MUNRO-00199 &<br>Sharp Depo. Ex. 9 (*see also* Exs. 10 - 12 & Bates # MUNRO-00192) | <br>Bates # KILBURN00386 | <br>Sharp Depo. Ex. 5<br>Bates # Sea Hill Press 00002 | <br>Bates # MUNRO-008678 |

| Munro Sculptural Work: Title & Sample Image | Sample of Images of Munro Work Defendants Had Prior "Access" To | NightGarden Season 2 Infringing Displays | Sample Season 2 Derivative Photos/Images |
|---|---|---|---|
| *Field of Light* (Eden Project, Cornwall, UK, 2008):<br><br>Sharp Depo. Ex. 13 | <br>Bates # FAIRCHILD00340 | <br>Sharp Depo. Ex. 5<br>Bates # Sea Hill Press 00045 | <br>Bates # MUNRO-008709 |

| Munro Sculptural Work: Title & Sample Image | Sample of Images of Munro Work Defendants Had Prior "Access" To | NightGarden Season 2 Infringing Displays | Sample Season 2 Derivative Photos/Images |
|---|---|---|---|
| *Field of Light* (Holburne Museum, Bath, UK, 2011):  Bates # MUNRO-00196 (DE [69] at 23]) |  Bates # KILBURN00386 |  Bates # MUNRO-009173 |  Bates # MUNRO-008709 |
| *River of Light:*  (DE [1] at 12) | |  Sharp Depo. Ex. 5 Bates # Sea Hill Press 00015 |  Bates # MUNRO-008849 |

| Munro Sculptural Work: Title & Sample Image | Sample of Images of Munro Work Defendants Had Prior "Access" To | NightGarden Season 2 Infringing Displays | Sample Season 2 Derivative Photos/Images |
|---|---|---|---|
| *Fireflies/Arrow Springs* Cite/include UK version of fireflies/arrow spring  Bates # MUNRO-001006 (DE [69-8]) |  Bates # Kilburn00396  Bates # Kilburn00396 |  Sharp Depo. Ex. 5 Bates # Sea Hill Press 00010  Sharp Depo. Ex. 5 Bates # Sea Hill Press 00011 |  Bates # MUNRO-008679  Bates # MUNRO-008759 |

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK