**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:  1:20-cv-20079-RS-LFL**

BRUCE MUNRO AND BRUCE MUNRO,
LTD. DBA BRUCE MUNRO STUDIO,

        Plaintiffs,

v.

FAIRCHILD TROPICAL BOTANIC
GARDEN, INC., NANETTE M. ZAPATA,
NIGHT GARDEN, LLC, KILBURN LIVE,
LLC, KILBURN MEDIA, LLC, MARK C.
MANUEL, IMAGINER, INC., IMAGINER
LTD., MAX PAINTER, AND ZHONGSHAN
G-LIGHTS LIGHTING CO., LTD.,

        Defendants.

_____

**PLAINTIFFS' OPPOSING STATEMENT**
**OF MATERIAL FACTS (CORRECTED)**

JOEL B. ROTHMAN
MEIR TEITELBAUM
**SRIPLAW**
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone

and

CARL F. SCHWENKER *(pro hac vice)*
**LAW OFFICES OF CARL F. SCHWENKER**
The Parsons House
3807 Duval Street, Suite E
Austin, TX 78751
512.480.8427 – Telephone
*Counsel for Plaintiffs Bruce Munro and Bruce*
*Munro, Ltd. dba Bruce Munro Studio*

Pursuant to Federal Rule 56, Local Rule 56.1, and the scheduling and extension orders (DE [27, 186]), Plaintiffs file this opposing statement of material facts responsive to Defendants' Joint Motion for Summary Judgment (DE [145], "MSJ") and Statement of Undisputed Material Facts (DE [146], "R56.1 Statement").[1] Section I addresses the R56.1 Statement's 114 asserted facts. Section II provides additional facts that further compel the MSJ's denial. *See* S.D. Fla. L.R. 56.1(b)(1)B),(b)(2)(D), and (d).

Pertinent to the MSJ and R56.1 Statement, (i) Defendants did not answer timely served requests for admissions (DE [125-2], "RFAs"), which are therefore deemed admitted (*see* DE [125, 132]) and as to each Defendant are conclusively established facts, *id.*; *see* Fed. R. Civ. P. 36(a)(3), (b); and (ii) defendant G-Lights, who Defendants admit was their supplier as to the elements they call "mushrooms," Sanford Dep. (DE [139 and 155-1]) 220:23-224:25 and at Exs. 59-60 (DE [139-2]); Painter Decl. (DE [147]) ¶ 20, has defaulted (DE [44]) so the factual allegations of the original complaint "are deemed admitted in light of [G-Light]'s default" and "'taken as true,'" at least as to G-Lights. *Federal Trade Comm'n v. Croft*, Case No. 9:17-cv-80425-DMM (S.D. Fla. July 7, 2017) (quoting *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007); *see also* Amended Complaint (DE [69]) ¶ 7; Complaint (DE [1]) ¶¶ 14-92. Also, supplier G-Lights' admission by default and by its advertisements touting that the "mushroom" elements (as referred to by Defendants) are copies of Munro works, Sanford Dep. 82:20-83:14, 220:23-232:4 and at Exs. 59-60 (DE [139-2] (G-Lights' Alibaba sites advertising

---

[1] Plaintiffs are Bruce Munro (Munro) and Bruce Munro Ltd. dba Bruce Munro Studio (BML). "Defendants" or "Movants" collectively refers to jointly represented defendants Fairchild Tropical Botanic Garden, Inc. (Fairchild), Imaginer Inc. (IInc), Imaginer Ltd (ILtd), Kilburn Live, LLC (K-Live), Kilburn Media LLC (K-Media), Night Garden, LLC (NGL), Mark C. Manuel (Manuel), Max Painter (Painter), and Nanette M. Zapata (Zapata). Remaining defendant Zhongshan G-Lights Lighting Co., Ltd. (G-Lights) has defaulted. (DE [44]).

"Hot sale cheap Bruce Munro style outdoor wood decoration fiber optic light")); Complaint at Ex. C (DE [1-13]); Amended Complaint at Ex. C (DE [69-13]), is also binding and preclusive on the buyer/user Defendants, who cannot now dispute the admitted, established fact that the "mushroom" elements <u>are</u> copies of Munro's works.

## I.   Plaintiffs' Responses to Movants' R56.1 Statement[2]

1. Undisputed, but incomplete. International artist Bruce Munro resides in Wiltshire, England, and is a leader in the installation and experiential art movement alongside artist contemporaries Yayoi Kusama, Ai Weiwei, Jim Turrell, Dale Chihuly, and Christo. Deposition of Bruce Munro (DE [136], "Munro Dep.") 11:14-25; Declaration of Bruce Munro (DE [182-1], "Munro Decl.") ¶¶ 1-11; Deposition of Xiliary Twil (DE [171-1], "Twil Dep.") 132:11-134:11.

2. Undisputed, but incomplete. BML is a UK limited company formed August 8, 2002 that is Munro's studio through which Munro exhibits and does business related to his artwork. (DE [69] "FAC") ¶ 20; Munro Dep. 11:14-25, 13:22-24, 62:21-63:23, 242:1-2; Munro Decl. ¶ 3.

3. Undisputed.

4. Disputed,[3] and as incomplete. Munro received and owns U.S. copyright registration Reg. No. VA 2-176-825 (DE [69-1, 148-2] Bates No. MUNRO168-69, "Forest Registration") for his mixed media sculptural work "Forest of Light" depicted in the following deposit photo:

---

[2] A significant portion of the 114 paragraphs, Plaintiffs submit, lack foundation, take testimony out of context, and are argumentative, conclusory, and immaterial to the claims in suit.

[3] Plaintiffs hereby make and assert standing disputes and objections to the use in R56.1 Statement paragraphs 4, 12, 13, 15-17, 19-21, 23, 24, 26-28, 32, 33, 36, 38, 40-42, and 92 of the argumentative loaded terms "stick-and-bulb lights" and "Stick-and-Bulb Application," which are disputed as factually incorrect (Munro Decl. ¶¶ 25, 65; Munro Dep. 165:8-12) and inaccurately implying functionality (Munro Decl. ¶ 20-26).



The Forest Registration lists Munro as the "Forest of Light" author and copyright claimant and has an effective date of August 24, 2019. Munro Dep. 202:4-9, 217:12-24 and at Exs. 8, 9, 22, 23 (DE [136-3]); Munro Decl. ¶¶ 9, 20; Forest Registration (DE [136-3] at Ex. 22 (Bates No. MUNRO168-69)); Forest Deposit Photo (DE [136-3] at Ex. 9 (Bates No. MUNRO159)).

5.   Disputed, as not supported by the cited witness testimony or scope of the case. Munro Dep. 168:16-169:1 (attesting to two copyright registrations); FAC ¶ 29 (discussing Munro mixed media sculptural work "Field of Light at Sensorio"), U.S. Reg. No. VA 2-169-192 ("Sensorio Registration," effective July 22, 2019 and identifying Munro as "author").  Prior to NightGarden Season 2 opening, Defendants knew of and by a written demand letter had been notified in writing of Munro, of the "Forest of Light" and "Field of Light at Sensorio" works and of images depicting them, of Munro's copyright interests therein, and of the Forest Registration, Sensorio Registration, and copyright registration numbers of each. Amended Answer (DE[92]) ¶ 92; Munro Dep. 168:16-169:1, 202:4-9, 217:12-24; Munro Decl. ¶¶ 9, 12-20; Forest Registration; Deposition of Jonathan Sanford (DE [139 and 155-1], "Sanford Dep.") 58:15-59:20, 74:22-86:11, 94:1-99:19, 225:9-232:4 and at Exs. 61, 62 (circulating in June 2019 an article on Munro's *Field of Light at Sensorio* work and commenting: "Hi Mark, I wanted to quickly check

in and share this article in case you hadn't seen it. The first image is nearly identical to the activation at NightGarden.") and Exs. 85, 86 (DE [139-1] at Bates No. FAIRCHILD01046-50)[4]; RFAs #140-47.

6.   Undisputed.

7.   Disputed, including as an oversimplification of the witness testimony, Munro Dep. 266:2-3; 268:3-9, 285:8-17, and not reflective of Plaintiffs' customs, practices, and informal arrangements.  Munro authorizes BML to exhibit Munro works, exhibits artistic works through BML, and BML and Munro enter into contracts for exhibition of Munro works.  *See supra* at ¶¶ 2-3 and citations therein; *see also, e.g.*, Munro Dep. 307:14-25, 312:7-313:6 and at Exs. 38-40 (DE [136-4], Sensorio Exhibition Agreement (at Bates No. MUNRO1198-1208, at sec. K), Longwood Exhibition Agreement (at Bates No. MUNRO1606-1612, at p. 1610), Longwood Exhibition Guide (at Bates No. MUNRO9842-486)).

8.   Undisputed.

9.   Disputed that the cited testimony substantiates the asserted fact, Munro Dep. 142:3-24, 198:14-200:20, 222:20-224:19, but undisputed that the Forest Registration's application (Ser. No. 1-8003648351) included seven deposit copy photos.  (DE [148-3] at Bates No. MUNRO156-62).

10. Undisputed.

11. Disputed as incomplete and the cited testimony fails to substantiate the asserted fact. Undisputed that six deposit copy photos included with the Forest Registration's application (Ser. No. 1-8003648351) depict "Forest of Light" presented in 2012 at Longwood Gardens but one

---

[4] The 11/11/19 cease-and-desist letter and email are also located in the record at DE [148-18], DE [153-1], and DE [142-1] at Ex. 8.

inadvertently-included CGI-enhanced image shows Munro's 2012 orb-and-stem elements for "Forest of Light" against a Longwood Gardens background. Munro Dep. 142:3-143:24, 198:13-199:8, 222:20-224:19 and at Ex. 9 (DE [136-3] at Bates No. MUNRO159); Forest Deposit Photos (DE [148-3] at Bates No. MUNRO156-62).

12. Disputed (*see* n. 3), and the cited testimony fails to substantiate the asserted fact. Undisputed, however, as stated in paragraph 11 above.

13. Disputed (*see* n. 3), and as incomplete and not fairly reflecting the case or pleadings. *See* FAC ¶¶ 14, 22, 32, 36-38, 42, 43, 47-49, 54-55, 60-61, 70-71, 78, 87, 132-35, 142, 144-45, 157-58, 168-69; Amended Answer (DE [92]) ¶¶ 132, 142, 151; Order (DE [65]) at 5-6 (finding defendants' "replicas" to be "highly comparable" to Plaintiffs' original works); Munro Decl. ¶¶ 4, 12-22, 26, 30-37, 39, 40, 50, 51, 54, 55, and 57-64 with attached Tables of comparative photos (DE [182-2]); Munro Dep. 24:11-17, 40:4-13, 73:4-77:25 and at Ex. 3 (DE[136-2]); Deposition of Greg Sharp (DE [174-1], "Sharp Dep.") 103:6-110:25; 114:1-117:25, 118:20-119:9 and at Ex. 5, 6, 13, 15, 18 (DE [174-6, -7, -14, -16, -19]); Deposition of Max Painter (DE [141], "Painter Dep.") 35:17-38:12, 75:19-76:4, 77:18-78:1; 78:22-79:2, 136:21-137:24; 172:24-174:7, 176:22-179:17, 192:23-193:23, 197:5-198:14, 199:18-201:1, 203:25-204:4, 222:18-223:6, and at Exs. 29 (DE [141-24]), 30 (DE [141-25]), 33 (DE [141-28]), 35 (DE [141-30] at Bates No. FAIRCHILD340 at R2, C1), 36 (DE [141-31] at Bates No. IMAGINER053 at R1, C1 & 3, and Bates No. IMAGINER063), 61 (DE [141-34]), 63 (DE [141-36]), 65 (DE [141-37]), and 120-123 (DE [141-46-49]); Declaration of Max Painter (DE [147], "Painter Decl.") ¶¶ 6, 8, 20; Declaration of James Slater (DE [148], "Slater Decl.") ¶¶ 15, 21-24; NightGarden Pitchdecks (DE [148-12] at Bates No. FAIRCHILD340 at R2, C1, KILBURN386 at R1, C1 & 3, KILBURN396, FAIRCHILD081); Zapata & Fairchild Communications re Munro (DE [148-

19]); Sanford Dep. 58:15-59:20, 74:22-86:11, 97:12-99:12, 180:2-25; 181:1-23, 200:19-215:16, 220:23-232:4 and at Exs. 11, 12, 26, 85, 86 (DE [139-1]), Ex. 42 (DE [139-2]), Exs. 59-60 (DE [139-2] (defendants' supplier's Alibaba site advertising "Hot sale cheap Bruce Munro style outdoor wood decoration fiber optic light"), Exs. 61-62 (DE [139-2] (June 2019 emails and article about Munro's *Field of Light at Sensorio*) , and Ex. 63 and 65 (DE [139-2] (email chains stating "I'm NOT planning on showing anything [from the NightGarden to the IES awards committee] that was previously created by another artist. (The fiber mushrooms and spinning shadow sculptures come to mind. The adjudication committee is likely to know Bruce Munroe and the Hybycozo folks personally... don't want to open that particular can of worms.)"); Deposition of Jennifer Lewis (DE [138], "Lewis Dep.") 178:25-181:10 and at Exs. 20-22 (DE [138-1]); Deposition of Nanette Zapata (DE [142], "Zapata Dep.") 67:16-25, 78:2-18; 90:11-91:11, 94:19-95:9, 111:1-115:4 and at Exs. 2-4, 6-8, 11 (at p. 6), 19, 22 (at pp. 7-12), 24 (at p. 1), and 26 (DE [142-1]); Buss Rpt (DE [152-5]) at p. 45, Sch. 6a, R8, C5 ("As images allegedly based on Munro Works were used in the Pitch Decks, event development may have been influenced by the Munro Works."); *see also, generally*, RFAs.

Undisputed per the above-cited evidence that Plaintiffs claim and the record evidence shows *prima facie* cases of copyright infringement by Defendants of six Munro mixed-media sculptural works (the "6MWorks"), which are the U.S.-registered work *Forest of Light* (U.S. Reg. No. VA 2-176-825) and the five Berne convention UK works *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Eden Project, Cornwall, UK, 2008), *Field of Light* (Holburne Museum, Bath, UK, 2011), *River of Light*, and *Fireflies*, which were first presented in the UK.

NightGarden Season 1 (Nov. 2018 - Jan. 2019) infringed at least *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Eden Project, Cornwall, UK, 2008), and *Field of Light*

(Holburne Museum, Bath, UK, 2011). Defendants had prior access to and copies of photos and images of these works as reflected by pre-Season 1 NightGarden pitch decks circulated among defendants that include photos of the works, earlier Fairchild and Zapata correspondence with BML about Munro, his works, and securing a Munro exhibition, and G-Lights catalogs and sites viewed by defendants. Defendants then produced and for the 36 discrete nights of NightGarden Season 1 publicly displayed (and depicted in myriad derivative photos and images) at least two installations visually substantially and strikingly similar to these works. Munro Decl. ¶¶ 61-64 and attached Tables of comparative photos (DE [182-2]); Order (DE [65]) at pp. 5-6; RFAs #1-71, 122-24, 127-39, 147, 154.

NightGarden Season 2 (Nov. 2019 - Jan. 2020) infringed *Forest of Light* (U.S. Reg. No. VA 2-176-825), *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Eden Project, Cornwall, UK, 2008), *Field of Light* (Holburne Museum, Bath, UK, 2011), *River of Light*, and *Fireflies*. Defendants had prior access to and copies of photos and images of these works as reflected by the above-listed pitch decks, correspondence, and catalogs. Defendants then produced and for the 42 discrete nights of NightGarden Season 2 publicly displayed (and depicted in myriad derivative photos and images) (i) an installation visually substantially and strikingly similar to *Forest of Light* (U.S. Reg. No. VA 2-176-825), *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Eden Project, Cornwall, UK, 2008), *Field of Light* (Holburne Museum, Bath, UK, 2011), *River of Light*, and (ii) at least two installations visually substantially and strikingly similar to UK sculptural work *Fireflies*. Munro Decl. ¶¶ 61-64 and attached Tables of comparative photos (DE [182-2]); Order (DE [65]) at pp. 5-6; RFAs #122-24, 140-47, 154, 155-58.

14. Disputed, as not reflected by the cited pleadings or testimony. Plaintiffs presented *Field of Light* (Longwood Gardens) in Pennsylvania at Longwood Gardens in 2012, but no infringement claim is made in the complaint on this work.  Munro Dep. 42:14-20, 169:2-15; FAC ¶¶ 157, 168, 169.

15. Disputed (*see* n. 3), and legally irrelevant to any issue on which summary judgment is sought. FAC ¶¶  157, 168, 169 (complaint does not include an infringement claim for the referenced work). Without waiving the objection, undisputed if "Application No. 1-8001227961" is substituted for argumentative, incorrect "Stick-and-Bulb Application" term.

16. Disputed for the reasons stated in paragraph 15 above.

17. Disputed for the reasons stated in paragraph 15 above.

18. Disputed for the reasons stated in paragraph 15 above.

19. Disputed for the reasons stated in paragraph 15 above.  Also, deposit copy photos for Application No. 1-8001227961 exemplify a three dimensional mixed-media glass, acrylic, and fiber sculpture embodying Munro's creative choices and expression. Munro Decl. ¶¶ 20-22, 26; Munro Dep. 230:3-9 and at Ex. 25 (DE [136-3]).

20. Disputed (*see* n. 3), legally irrelevant to any issue on which summary judgment is sought, FAC ¶¶  157, 168, 169 (complaint does not include an infringement claim for the referenced work), and Plaintiffs object to this asserted fact as relying on inadmissible or nonprobative information. Defendants' supporting evidence for the cited conclusory quote is deemed legally nonprobative, *Clarus Transphase Sci., Inc. v. Q-Ray, Inc*., No. 06 C 4634, 2006 U.S. Dist. LEXIS 95005, at *67 (N.D. Ill. Oct. 6, 2006) (where Copyright Office rejected a registration application" the district court makes an independent determination regarding [plaintiff]'s ownership of a valid copyright; a de novo determination as to whether plaintiff's work is

copyrightable"), and per Fed. R. Civ. P. 56(c) it should not be considered by the Court at this stage.

21. Disputed and objected to for the reasons stated in paragraph 20 above.

22. Disputed and objected to for the reasons stated in paragraph 20 above, and as conclusory. Further, the referenced fiber configuration, arrangement, and juxtaposition in the sphere reflects Munro's creative choices and expression. Munro Decl. ¶¶ 20, 22, 26; Munro Dep. 119:23-120:9, 128:17-130:16, 230:3-9 and at Ex. 25 (DE [136-3]).

23. Disputed for the reasons stated in paragraph 15 above.

24. Disputed (*see* n. 3), and Plaintiffs object to the asserted fact as an incomplete, inaccurate summary (i.e., of Bates No. MUNRO11312-16) and as relying on inadmissible hearsay, and declarant Slater is not competent to authenticate the communication cited or its contents, and it therefore under Fed. R. Civ. P. 56(c) should not be considered on summary judgment.[5] Without waiving these objections, otherwise undisputed if "Application No. 1-8001227961" is substituted for the argumentative, incorrect "Stick-and-Bulb Application" term.

25. Disputed as legally irrelevant to any issues for which summary judgment is sought, FAC ¶¶ 157, 168, 169 (complaint does not include an infringement claim for the referenced work), and Plaintiffs object to the asserted fact as an incomplete, inaccurate summary of Application No. 1-8001227961 and the cited correspondence.  Bates No. MUNRO11317-22 (which is for

---

[5] As noted below and herein, Plaintiffs object to asserted facts nos. 25, 54, 57, 58, 86, 87, 100, 101, and 105 as relying on inadmissible hearsay:

"[I]nadmissible hearsay cannot be considered on a motion for summary judgment."  *Mucaba v. DeBoer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999); *see also* Fed. R. Evid. 801(c) (hearsay is "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.").

"registration of the separable artistic expression reflected in the non-useful sculptural design features of the object shown in deposit copies").

26. Disputed and objected to for the reasons stated in paragraph 20 above. Without waiving the objections, otherwise undisputed if rephrased as follows: No registration has issued to date on Application No. 1-8001227961.

27. Disputed (*see* n. 3), and as an incomplete, inaccurate summation not fairly reflecting the case or pleadings. *See* FAC (generally). Plaintiffs restate their response to paragraph 13 above. Additionally, e-commerce sites of Defendants' supplier, G-Lights, include photos of and offers to sell unauthorized reproductions of a substantial portion of Munro's portfolio of works. *Compare* FAC at Exs. C-G (DE [69-13-17]) *with* FAC at Exs.B1-B11 (DE [69-2-12]); *e.g.*, Sanford Dep. at Ex. 59 (DE [139-2], at Bates No. MUNRO9333).

28. Disputed (*see* n. 3), and as an incomplete, inaccurate, argumentative summation not fairly reflecting the case, pleadings, or witness testimony, and as a gross misstatement of the claims against Defendants. *See* FAC (generally); Munro Dep. 18:3-7, 24:2-17; 26:1-22; 40:4-13, 59:7-64:3, 65:23-67:16, 68:12-23; 209:1-17, 211:12-23. Plaintiffs restate their response to paragraph 13 above. Claims for violations of Section 1202 of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, are made against Defendants as they "knowingly" within the meaning of the statute in view of direct and circumstantial evidence provided or distributed CMI that is false, § 1202(a), altered or removed CMI, § 1202(b)(1), distributed CMI that has been removed or altered, § 1202(b)(2), and distributed and publicly displayed works and copies of works with altered or removed CMI, § 1202(b)(3), which under the plain meaning of the statutory language and case law is barred as to originals, copies, and derivatives of works—and which therefore encompasses not only the original Munro works but also photos of the Munro

works, Defendants' unauthorized derivative copies of the Munro works (i.e., the NightGarden exhibition replicas), and secondary derivatives (i.e., images and photos of those replicas).

29. Disputed (*see* n. 3), and Plaintiffs object to this asserted fact as inadmissible and legally irrelevant to any issue for which summary judgment is sought.  The asserted fact and its cited testimony are impermissibly vague, ambiguous, and lack any foundation tying them to the original exhibitions of the 6MWorks on which infringement claims are made (as opposed to exhibitions later or of other works) and per Fed. R. Civ. P. 56(c) it should not be considered by the Court at the summary judgment stage.  For photos and descriptions of the 6MWorks, *see* Munro Decl. ¶¶ 12-56, 61-64, and attached Tables of comparative photos (DE [182-2]).

30. Disputed (*see* n. 3), and as an incomplete, inaccurate, argumentative, conclusory summation not fairly reflecting the case, pleadings, or witness testimony and as a gross misstatement of the claims against Defendants.  *See* FAC (generally); Munro Dep. 18:3-7, 24:2-17; 26:1-22; 40:4-13, 59:7-64:3, 65:23-67:16, 68:12-23; 209:1-17, 211:12-23; Munro Decl. ¶¶ 12-20, 57-64, and attached Tables of comparative photos (DE [182-2]).  Plaintiffs restate their response to paragraph 13 above.

31. Disputed (*see* n. 3) and objected to for the reasons stated in paragraph 20 above; Plaintiffs also restate their response to paragraph 13 above.

32. Disputed (*see* n. 3), and as legally irrelevant to any issue for which summary judgment is sought and an out-of-context, overly-generalized, inaccurate argumentative summation of cherry-picked witness testimony excerpts not relevant to assessing infringement of the 6MWorks.

33. Disputed (*see* n. 3) and Plaintiffs object to the asserted fact as an overly-generalized, inaccurate argumentative summation of cherry-picked witness testimony excerpts not relevant to

assessing infringement of the 6MWorks, and as misdescriptive of the elements of each of the respective sculptural 6MWorks. *See* Munro Decl. ¶¶ 12-56, cited publications therein, and attached Tables of comparative photos (DE [182-2]) for descriptions and images of the works *Forest of Light* (U.S. Reg. No. VA 2-176-825), *Field of Light* (Long Knoll, Wilshire, UK, 2004), *Field of Light* (Eden Project, Cornwall, UK, 2008), *Field of Light* (Holburne Museum, Bath, UK, 2011), *River of Light*, and *Fireflies,*

34. Disputed, and Plaintiffs object to this asserted fact as inadmissible, incorrect regarding implications of functionality (Munro Decl. ¶ 20-26), and legally irrelevant to any issue for which summary judgment is sought. The asserted fact and its cited testimony are impermissibly vague, ambiguous, indefinite, and lack foundation tying them to the original exhibitions of the 6MWorks on which infringement claims are made (as opposed to exhibitions later or of other works), Munro Dep. 117:24-119:23, and per Fed. R. Civ. P. 56(c) it should not be considered by the Court at the summary judgment stage. Without waiving the objections, Munro specially designed a translucent grommet collar incorporated into the works and juxtaposed at the joinder of the sphere and the stem but without interrupting the visual aesthetic.  Munro Dep. 117:24-119:23 and at Exs. 9, 16 (DE [136-3]) and 40 (DE [136-4] at Bates No. MUNRO9847); *Bruce Munro: Catching the Light* ("*Catching Light*")[6] at pp. cover, XIV, 4-7, 20-21, 26-27 (photo illustrations).

35. Disputed, and Plaintiffs object to this asserted fact as inadmissible, incorrect regarding implications of functionality (Munro Decl. ¶ 20-26), and legally irrelevant to any issue for which summary judgment is sought. The asserted fact and its cited testimony are impermissibly vague, ambiguous, indefinite, and lack foundation tying use of "sheathing" to any of the original

---

[6] 2013 hard-back anthology submitted to Court chambers and filed in record in its entirety.

exhibitions of the 6MWorks on which infringement claims are made (as opposed to exhibitions later or of other works), Munro Dep. 167:7-168:4, and per Fed. R. Civ. P. 56(c) it should not be considered by the Court at the summary judgment stage.

36. Disputed (*see* n. 3), as not substantiated by and mischaracterizing the cited witness testimony, legally irrelevant to any issue for which summary judgment is sought, and not foundationally tied to any of the 6MWorks. The fiber arrangement, configuration, and juxtaposition in the spheres reflects Munro's creative choice and expression and the threading technique is described as analogous to learned skills associated with playing musical instruments. Munro Decl. ¶¶ 20, 22, 26; Munro Dep. 119:23-120:9, 128:12-130:16, 230:3-9 and at Ex. 25 (DE [136-3]); see also *Catching Light* at pp. 20-21, 26-29 (photo illustrations).

37. Disputed (*see* n. 3) and objected to for the reasons stated in paragraph 36 above. Plaintiffs also object to this asserted fact as relying on inadmissible or nonprobative information. Defendants' supporting evidence for the conclusory assertion (Bates No. MUNRO2731-34) is deemed legally nonprobative, *Clarus Transphase Sci., Inc. v. Q-Ray, Inc.*, No. 06 C 4634, 2006 U.S. Dist. LEXIS 95005, at *67 (N.D. Ill. Oct. 6, 2006) (where Copyright Office rejected registration application, "the district court makes an independent determination regarding [plaintiff]'s ownership of a valid copyright; a de novo determination as to whether plaintiff's work is copyrightable"), and per Fed. R. Civ. P. 56(c) it should not be considered by the Court at the summary judgment stage.

38.    Disputed (*see* n. 3) as argumentatively misstating the witness testimony and cited documents' contents (e.g., Bates No. MUNRO2130, 2133 (which used the terms "glass spheres" and "acrylic rods"), as legally irrelevant to any issue for which summary judgment is sought, as conclusory in regard to quantity, and as misleading. Munro conceived and designed the

sculptural works' elements, which are produced to Munro's exacting specifications and obtained from a materials supplier with whom Munro and BML have worked closely over the years. Munro Decl. ¶¶ 4, 20, 26, 30, 33, 37, 50, 54; Munro Dep. 151:17-152:5; 153:1-4.

39. Disputed, as argumentatively misstating the cited documents' contents (e.g., Ex. 11 at Bates No. MUNRO1882, 2130, 2133 (using the terms "glass spheres" and "glass ball and grommet"). Plaintiffs further object to this asserted fact as the relied-on testimony is ambiguous and indefinite, refers to no specific work or project, *see* Munro Dep. 152:18-154:1, and lacks foundation sufficient to relate it to any of the 6MWorks on which infringement claims are made, and per Fed. R. Civ. P. 56(c) the Court should not consider the information at the summary judgment stage.

40. Disputed (*see* n. 3) as a misleading and incomplete representation of the witness testimony, and as legally irrelevant to any issue for which summary judgment is sought. Plaintiffs further object to this asserted fact as the relied-on testimony is ambiguous and indefinite in that it refers to no specific exhibition nor any exhibition involving the 6MWorks, *see* Munro Dep. 122:5-126:18, 302:9-303:9, and lacks foundation sufficient to relate it to any of the 6MWorks on which infringement claims are made and per Fed. R. Civ. P. 56(c) the Court should not consider the information at the summary judgment stage. Without waiving the objections, Plaintiffs also dispute the asserted fact because Munro conceived, designed, and created each of the 6MWorks and their elements, Munro installed and oversaw the installation of the 6MWorks, and any staff or volunteer participation was under the direction and "strict guidance" of Munro and BML. Munro Decl. ¶¶ 4, 12-22, 26, 30-37, 39, 40, 50, 51, 54, 55, 62; Munro Dep. 122:5-126:18, 302:9-303:9; *Catching Light* at p. 16.

41. Disputed (*see* n. 3) as misleading, incomplete, and legally irrelevant to any claim or issue on which summary judgment is sought, but undisputed that copyright management information ("CMI") was not physically located "on " the Munro works.[7] Plaintiffs instead used and conveyed original CMI in connection with displays and depictions of the Munro works.  *E.g.*, Munro Decl. ¶¶ 7, 28, 29, 35, 37, 38, 41, 42, 50, 53, 54 (identifying, depicting, and referencing title, author, and copyright notice CMI that accompanied physical displays, digital images, and published photos of the works), Munro Dep. at Ex. 40 (DE [136-4] (exhibition guide with title and author information)); Zapata Dep. at Exs. 4 (DE [142-1] (article with title and author information)) and 28 (DE [142-2] (websites with title, author, and copyright notice information)); FAC at ¶ 64 (signage with title and author information) and at DE [69-7, 69-8] (websites with title, author, and copyright notice information); *Catching Light*.

42. Disputed (*see* n. 3), opposed, and responded to for the reasons stated in paragraph 41 above.

43. Disputed, in part, as misdescriptive of Plaintiffs' claims and misrepresentative of substantive law under the Copyright Act, which provides for enforcement of copyright for

---

[7] Plaintiffs object to the inapplicable and incorrect DMCA legal standard regarding CMI placement and location relied on in Movants' foregoing asserted facts:

*See* 17 U.S.C. § 1202(c)(3) (DMCA lacks any requirement that CMI be directly affixed to or placed "on" a subject work); *Mango v. Buzzfeed, Inc.*, No. 19-446-cv at n.1 (2d Cir. Aug. 13, 2020) ("The DMCA, by its express terms, contains no requirement that a copyright owner personally affix CMI."); *Agent France Presse v. Morel*, 769 F.Supp. 295, 305 (S.D.N.Y. 2011) ("The DMCA prohibits intentionally removing or altering CMI, or distributing CMI knowing it has been removed or altered . . ..  This Court rejects the movants' argument that CMI must be removed from the photograph itself to state a claim for removal or alteration of CMI. First, § 1202(b) imposes no such requirement. Moreover, the DMCA defines CMI as information 'conveyed *in connection with* copies' of a work."); *GC2 Inc. v. Int'l Game Technology*, Case No. 16 C 8794 (N.D. Ill. July 15, 2019) (citing  *Agence France* for support that "information identifying a copyright owner communicated near, but not actually on, a copyrighted image qualified as copyright management information").

foreign (non-U.S.) works. 17 U.S.C. §§ 101, 411(a); FAC ¶¶ 14, 48-50, 74, 90, 91, 105, 111, 142, 144, 151, 157, 158, 168, 169 (re *Fireflies* copyright claims); Munro Decl. ¶¶ 14-17, 41-49, 57-64; Munro Dep. 18:3-7, 40:4-13, 63:1-64:2, 102:13-103:9, 188:2-5;  Sharp Dep. 103:6-107:2; 117:10-25 and at Exs. 15, 18 (DE [174-16, 174-19]).

44. Undisputed, but misstates witness testimony and incomplete in failing to acknowledge Munro's contribution of conceiving and designing the sculpture, the elements, and how they come together, and suffusing the materials and elements with Munro's creative choices and expression to form the three dimensional mixed-media copper, brass, and fiber *Fireflies* sculpture.  Munro Decl. 18, 41-49, 62 at Ex. 1 (DE[182-2] at 9) and Ex. 3 (DE[182-4]); Munro Dep. 109:12-110:18, 172:11-175:6, 189:17-190:20;  *Catching Light* (at pp. 42-49); *Fireflies* webpage (DE [69-8] and DE [137-1] at Ex. 6).

45. Disputed as incomplete, as legally irrelevant to any issue for which summary judgment is sought, as conclusory in regard to quantity, and as misleading. Munro conceived of and designed *Fireflies* and its elements, which are produced to Munro's exacting specifications and obtained from a materials supplier with whom Munro and BML have worked closely over the years. Munro Decl. ¶¶ 41-46, 49; Munro Dep. 151:17-152:5; 153:1-4.

46. Undisputed, but legally irrelevant to any issue for which summary judgment is sought and incorrect and misleading regarding implication of functionality (Munro Decl. ¶¶ 49).

47. Denied, in part, as incomplete and misrepresentative of the witness testimony. Munro conceived of and created *Fireflies*, including designing the work to feature a spreading plume design, and doing so involved a multitude of non-utilitarian creative artistic choices in the conception, design, and display of *Fireflies* and ways to obtain the plume-like appearance.

Munro Decl. ¶¶ 14, 17, 41-49, 62 and at Ex. 1 Table of comparative photos (DE [182-2]); Munro Dep. 172:11-175:6, 189:17-190:20.

48. Disputed as misleading, incomplete, a false representation of the witness testimony, and legally irrelevant to any issue for which summary judgment is sought. Plaintiffs object to this asserted fact on the ground that the cited testimony pertains not to the original *Fireflies* on which claims of infringement are made, FAC ¶¶ 47-50, 142, 144, 157, 168, 169; Munro Decl. ¶¶ 14, 17, 41-49, 62 and at Ex. 1 Table of comparative photos (DE [182-2]), but instead to more recent projects, and it therefore lacks foundation sufficient to relate to the *Fireflies* on which infringement claims are made, and per Fed. R. Civ. P. 56(c) the Court should not consider the information at the summary judgment stage. Without waiving the objections, Plaintiffs dispute the asserted fact because Munro conceived, designed, and created *Fireflies*, "had his hands on these [*Fireflies* into 2012] as well," installed and oversaw the installation of *Fireflies*, and any staff or volunteer participation was under the direction and "strict guidance" of Munro and BML. Munro Decl. ¶¶ 14, 17, 41-49, 62 and at Ex. 1 Table of comparative photos (DE [182-2]); Munro Dep. 122:5-126:18, 172:11-175:18, 189:17-190:20, 302:9-303:9.

49. Disputed and objected and responded to for the reasons states in paragraphs 40 and 48 above and as an argumentative and conclusory misstatement of cherry-picked, out-of-context lay witness testimony. *Compare* Munro Dep. 103:1-9; Munro Decl. 1-56.

50. Disputed, opposed, and responded to for the reasons stated in paragraph 41 above. *See also* Munro Decl. ¶¶ 7, 28, 41, 42 (identifying CMI that accompanied displays and images of *Fireflies*); Deposition of Jane O'Conner (DE [137] "O'Connor Dep.") 35:21-22, 36:6-12, 37:1-2, 59:5-60:21 and at Ex. 6 (DE [137-1] at Bates No. MUNRO10048-49 (*Fireflies* webpage CMI));

*Catching Light*, at pp. 51. Disputed, opposed, and responded to for the reasons stated in paragraph 50 above.

52. Undisputed, but misleading, argumentative, and incomplete as phrased. NightGarden pitch decks <u>do</u>, in fact, include images of the Munro sculptural works, *compare* Munro Decl. 12-19, 62 and at Ex. 1 Table of comparative photos (DE[182-2]) *with* NightGarden Pitchdeck (DE [148-12] at Bates No. FAIRCHILD340 at R2, C1, KILBURN388 at R1, C1&3, KILBURN398 at R2, C2&3); Sharp Dep. 114:1-117:25, 118:20-119:9 and at Ex. 18 (DE [174-19]), Defendants admit so, Painter Dep. 38:1-12; Amended Answer (DE [92]) ¶¶ 97, 98, 104, 105; RFAs #1-71, and Defendants acknowledge they did not obtain or seek authorization to use or reproduce images of the Munro works. Painter Dep. 80:5-9, 80:22-81:2; Amended Answer (DE [92]) ¶ 86; RFAs #5, 18, 31, 44, 57. Additionally, the citations for the asserted fact do not provide support for the implication that the pitch decks were not also in paper form.

53. Undisputed, but misleading and legally irrelevant to any issue for which summary judgment is sought. The sculptural works depicted in various images contained in NightGarden pitch decks are Munro sculptural works in which Plaintiffs hold copyright interests. *See* response to paragraph 52 above.

54. Disputed, in part, and objected to as implying use of an inapplicable legal standard, as concerning factual issues regarding state of mind and claimed absences of knowledge that are jury issues inappropriate for resolution on summary judgment, as indefinite as to the term "Imaginer" (which may refer to either defendant IInc or defendant ILtd), as incomplete, and as based on inadmissible hearsay. Plaintiffs object to the asserted fact with regard to Painter's assertion of knowledge (i.e., what Painter claims to have seen), as a witness' knowledge or purported lack thereof is a matter that (a) is subject to proof by circumstantial evidence, (b) also

includes willful blindness and recklessness, and (c) must be addresses by the fact-finder at trial and is inappropriate for determination on summary judgment.[8] The witness testimony regarding the purported contents of the cited documents (i.e., the presence or absence of markings on any images) is also inadmissible hearsay and therefore under Fed. R. Civ. P. 56(c) it also should not be considered on summary judgment.

---

[8]As noted and for the reasons below, Plaintiffs object to Movants' asserted facts nos. 54, 90, 92,94, and 95, particularly, and others, as impermissibly attempting to resolve issues of knowledge or state of mind at the summary judgment stage and relying on an inapplicable and incorrect legal standard that ignores circumstantial evidence, willful blindness, recklessness, and retransmission of materials with removed or altered CMI:

Knowledge and intent may be inferred from circumstantial evidence. *See, e.g., GC2 Inc. v. Int'l Game Technology*, Case No. 16 C 8794 (N.D. Ill. July 15, 2019); *see also Friedman v. Live Nation Merchandise, Inc*., 833 F.3d 1180 (9th Cir. 2016) (reversing summary judgment on a § 1202(b) CMI claim because a plaintiff "could also prevail upon a showing that [defendant] distributed his works with the knowledge that CMI had been removed, even if [defendant] did not remove it" and that "'[q]uestions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment,'" "whether a party had knowledge of a particular circumstance 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence," and that "whenever state of mind is at issue, 'direct proof' of one's specific wrongful intent is 'rarely available' and so recourse to circumstantial evidence is most often necessary") (citations omitted); *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) ("[A] finding of 'willfulness' [ ] can be based on either 'intentional' behavior, or merely 'reckless' behavior.").

Under the Copyright Act, willful "means that the defendant 'knows his actions constitute an infringement; the actions need not have been malicious.'" *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1271 (11th Cir. 2015) (quoting *Cable/Home Commc'n Corp. v. Network Prods., Inc*., 902 F.2d 829, 851 (11th Cir. 1990)). Willfulness can also mean "reckless disregard of the possibility that one's actions are infringing a copyright." *Id.* at 1272; *see Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc*., 658 F.3d 936, 944 (9th Cir. 2011) ("To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights.") (*quoting Island Software & Computer Serv., Inc. v. Microsoft Corp*., 413 F.3d 257, 263 (2d Cir. 2005)); *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007) (finding that "ostrich-like" business practices were sufficient to support a finding of intent for purposes of contributory infringement); *see also* Sanford Dep at 234:1-14 (no consideration given to revising Season 2 after receiving cease-and-desist letter).

Without waiving the objections, undisputed that Painter used the internet and Google to locate and make unauthorized copies of at least some images of the Munro sculptural works, which Painter copied into NightGarden pitch decks. Painter Dep. 176:22-177:6. The cited evidence and other witness testimony and materials, however, do not conclusively substantiate that Painter acted "through" either IInc, which was not formed until roughly a year later, or ILtd since draft agreements for Painter to be NightGarden "creative director" were issued in Painter's personal name rather than the name of either entity. Amended Complaint (DE [92]) ¶ 83; Painter Dep. 88:10-25, 90:1-16, 91:15, 222:18-223:6 and at Exs. 12, 13, 75, 76 (DE [141-11, -12, -42, -43]); Manuel Dep. 99:17-101:15 and at Exs. 38, 41 (DE [140-2]).

As to knowledge, state of mind, willful blindness, recklessness, and circumstantial evidence, various direct and circumstantial evidence contradicts the false assertion that Painter was unaware of, did not see, or did not remove any "markings" associated with photos that were incorporated into NightGarden pitch decks. The NightGarden pitch decks, for instance, did not include the original filenames Painter had obtained with the various photos, *compare* (DE [148-12]) *with* Painter Dep. 217:5-218:14, 219:11-20 and at Exs. 120-122  (DE [141-46, -47, -48]), the pitch decks evidence Painter and defendants' practice of appropriating photos of and making replicas of multiple artists' works, *compare* (DE [148-12] at Bates No. FAIRCHILD92 *with* Painter Dep. 245:23-247:10, 248:1-21, 249:21-250-16 and at Exs. 53, 70, 72 (DE [141-33, -39, -40]) (showing copies of another's Hybycozo sculptures), a reverse search of the image filenames show Google Images displaying a  warning that "images may be subject to copyright," Painter Dep. 142:25-143:13 and at Ex. 120 (DE [141-46]), and pitch decks show that Painter copied and used unauthorized copies of unpurchased stock photos of others' works, like the image below of

an appropriated stock photo in the pitch decks that still included the "Alamy" watermark (DE [148-12] at Bates No. KILBURN395 at R2, C1):



55. Disputed and objected to for the reasons stated in paragraph 54 above, and without waiving the objections, responded to as stated in paragraph 54 above.

56. Disputed, and Plaintiffs object to the asserted fact as legally irrelevant to any issue for which summary judgment is sought, misleading, indefinite, ambiguous, argumentative, and conclusory as to the terms "internal reference" and "public use". Without waiving the objections, images in NightGarden pitch decks are of Munro sculptural works in which Plaintiffs hold copyright interests, *see* response to paragraph 52 above, multiple defendants circulated the pitch decks, Amended Answer (DE[92]) ¶¶ 97, 98, 104, 105; RFAs #1-7; (DE [105-12] at RFA #15), and Fairchild and Zapata were sent the pitch decks by their co-defendants for business marketing, promotion, and solicitation purposes <u>before</u> (and in order to solicit them for) a business relationship and agreement that at the time had not yet been consummated as to the

NightGarden events, Painter Dep. at Ex. 31 (DE [141-26]); Sanford Dep. 190:1-191:18 and at Ex. 23 (DE [139-2]) (agreement dated July 27, 2018); Zapata Dep. at Ex. 9 (DE [142-1]); *compare also* Painter Dep. at Exs. 28-32 (DE [141-23-27]), which establishes that the usages were neither internal nor non-public.

57. Disputed and objected to for the reasons stated in paragraph 54 above. Plaintiffs further object to the asserted fact under Fed. R. Civ. P. 37(c) for Defendants' failure to provide information requested in discovery about "visited" websites (*see* DE [157-4] at ROG 10-14) and because witness testimony on the content of "visited" websites is inadmissible hearsay that per Fed. R. Civ. P. 56(c) should not be considered by the Court at the summary judgment stage. Without waiving the objections, Plaintiffs restate their response to paragraph 54 above.

58. Disputed in that the asserted fact relies on inadmissible information and is legally irrelevant to any issues for which summary judgment is sought, and because each defendant received, copied, and circulated the pitch decks that contained images of various Munro works. Amended Answer (DE[92]) ¶¶ 97, 98, 104, 105; RFAs #1-7; (DE [105-12] at RFA #15). Plaintiffs also object to the asserted fact as based on inadmissible witness testimony not made on personal knowledge, that lacks foundation and is speculative, or is based on inadmissible hearsay, and per Fed. R. Civ. P. 56(c) should therefore not be considered by the Court at the summary judgment stage. Plaintiff further object in that Defendants' definition of the term "Kilburn" to mean "NightGarden LLC or Kilburn Live" renders fatally indefinite each asserted fact that included the term (i.e., asserted facts nos. 58, 62, 90, 100, and 105).

59. Disputed, in part, as incomplete, misleading, and misrepresentative of the witness testimony. Undisputed that an image included in the NightGarden pitch decks is a copy of a CGI-enhanced image, which Munro commissioned, of Munro's 2012 orb-and-stem elements for

"Forest of Light" against a Longwood Gardens background. Munro Dep. 142:3-143:16, 198:13-199:8, 222:20-224:19 and at Ex. 9 (DE [136-3] at Bates No. MUNRO159)).

60. Undisputed, misleading and incomplete. Munro and BML hired, commissioned, and instructed Steve Weeks to make the CGI-enhanced picture of Munro's 2012 orb-and-stem elements for "Forest of Light" against a Longwood Gardens background. Munro Dep. 142:3-143:24, 198:14-200:20, 222:20-224:19.

61. Disputed, in part, as to the implication that the sculpture or image was not originally conveyed or accompanied by Munro-related CMI; undisputed that NightGarden pitch decks (e.g., Bates No. KILBURN494, R2, C1 (DE [148-12]) as depicted in the complaint at FAC ¶ 98 (fig. 19, R2, C1)), include an image of the 2012 Munro work *Field of Light* (Longwood Garden) and that Defendants did not accompany the image in the pitch decks with proper CMI markings, reference, or attribution to Munro, BML, or the true title of the work, *see* Bates No. KILBURN494, R2, C1 (DE [148-12]); Amended Answer (DE [92]) ¶¶ 86, 92, 97, 98, 104, 105; RFAs #1-13, 53-71; (DE [105-12]) at RFA #15), but instead accompanied and distributed the image with different false headings, titles, and self-attributions (e.g., "The Nightgarden," "Imaginer," "Kilburn Media," "Max Painter") in nearby and accompanying text in footers, headers and on the cover and rear pages of the pitch decks, *see* Bates No. KILBURN489, 494, 496 (DE [148-12]). *See also* nn. 7 & 8 above (CMI need not be physically "on" the work).

62. Undisputed, but misleading and incomplete as Munro and BML hired, paid, instructed, and permitted Mark Pickthall and Hank Davis to photograph the copyrighted Munro sculptural works exhibited at Longwood Gardens. Munro Dep. 69:22-70:6, 194:6-7, 289:8-290:4, 319:7-22; O'Connor Dep 95:1-22; Sharp Dep. 42:4-43:13, 115:1-117:6, 118:20-119:21; *Catching Light*, at publication data page ("© 2013 . . . Bruce Munro Studio").

63. Disputed, in part, as to the misleading implication that the sculpture or images of the work were not originally conveyed or accompanied by Munro-related CMI (e.g., Munro Decl. ¶¶ 50; Sharp Dep. 77:6-79:10 and at Ex. 7 (DE [174-8]) (showing attributed and titled photo *Field of Light* (Holburne Museum, Bath, UK, 2011) in published book); undisputed that NightGarden pitch decks (e.g., Bates No. KILBURN386, R1, C1 (DE [148-12]) as depicted in the complaint at FAC ¶ 54 (fig. 20, R1, C1)), include an image of the Munro work *Field of Light* (Holburne Museum, Bath, UK, 2011) and that defendants did not accompany the image in the pitch decks with proper CMI markings, reference, or attribution to Munro, BML, or the true title of the work, *see* Bates No. KILBURN386, R1, C1 (DE [148-12]); Amended Answer (DE [92]) ¶¶ 92, 97, 98, 104, 105; RFAs #27-39, 66-71; (DE [105-12] at RFA #15), but instead accompanied and distributed the image with different false headings, titles, and self-attributions (e.g., "Mystic Mushrooms," "Installation: Mystic Mushrooms," "The Nightgarden") in nearby and accompanying text in footers, headings, and on the cover and intro pages of the pitch decks, *see* Bates No. KILBURN378, 379, 380, 386 (DE [148-12]). *See also* nn. 7 & 8 above (CMI need not be physically "on" the work).

64. Undisputed, but misleading and incomplete as Munro and BML hired, paid, instructed, and permitted Mark Pickthall to photograph the copyrighted Munro sculptural *Field of Light* work presented at Holburne Museum. Munro Dep. 69:22-70:6, 77:6-79:10, 194:6-7, 289:8-290:4, 319:7-22; O'Connor Dep 95:1-22; Sharp Dep. 42:4-43:13, 115:1-117:6, 118:20-119:21 and at Ex. 7 (DE [174-8]); *Catching Light*, at publication data page ("© 2013 . . . Bruce Munro Studio").

65. Undisputed as clarified: Munro and BML have hired, used, and allowed Mark Pickthall, who is also a Munro friend, to photograph some of the copyrighted Munro sculptural works and

exhibitions for Munro and BML. Munro Dep. 69:22-70:6, 115:11-24.  Plaintiffs also restate their response to paragraphs 62 and 64 above.

66. Undisputed.

67. Disputed as argumentative, misleading, and unsupported by the cited and other witness testimony. Munro Dep. 69:22-70:6, 115:11-24; 289:8-290:4 (stating that Mark Pickthall was hired by Munro and BML and agreed over the years to photograph various copyrighted Munro sculptural works and exhibitions, that Munro did not recall whether a written pre-2018 agreement with Mr. Pickthall or his companies did or did not exist, but that Mr. Pickthall might know whether one does and where to locate a copy); *see also* response to paragraphs 62 and 64, above, Munro Dep. 69:22-70:6, 77:6-79:10, 194:6-7, 289:8-290:4, 319:7-22; O'Connor Dep 95:1-22; Sharp Dep. 42:4-43:13, 115:1-117:6, 118:20-119:21 and at Ex. 7 (DE [174-8]); *Catching Light*, at publication data page ("© 2013 . . . Bruce Munro Studio").

68. Disputed, in part, as to the implication that the sculpture or image was not originally conveyed or accompanied by Munro-related CMI (*see* Munro Decl. 30, 35; Sharp Dep. 82:18-88:11 and at Exs 6-12 (DE [174-7-13]); *Catching Light* at pp. cover, rear, and XIV); undisputed that NightGarden pitch decks (e.g., Bates No. KILBURN386, R1, C3 (DE [148-12]) as depicted in the complaint at FAC ¶ 37, 105 (figs. 3 and 20, R1, C3)), include an image of the Munro work *Field of Light* (Long Knoll, Wiltshire, UK, 2004) and that defendants did not accompany the image in the pitch decks with proper CMI markings, reference, or attribution to Munro, BML, or the true title of the work, *see* Bates No. KILBURN386, R1, C3 (DE [148-12]); Amended Answer (DE [92]) ¶¶ 86, 92, 97, 98, 104, 105; RFAs #27-39, 66-71; (DE [105-12] at RFA #15), but instead accompanied and distributed the image with different false headings, titles, and self-attributions (e.g., "Mystic Mushrooms," "Installation: Mystic Mushrooms," "The Nightgarden")

in nearby and accompanying text in footers, headings, and on the cover and intro pages of the pitch decks, *see* Bates No. KILBURN378, 379, 380, 386 (DE [148-12]); Sharp Dep. 115:17-117:6 and at Ex. 18 (DE [174-19] at KILBURN386, R1, C3). *See also* nn. 7 & 8 above (CMI need not be physically "on" the work). The photo of *Field of Light* (Long Knoll, Wiltshire, UK, 2004) that Defendants without authorization copied and circulated in the NightGarden pitch decks (e.g., DE [148-12] at Bates No. KILBURN386, R1, C3), is the same photo that appears in the complaint, FAC ¶¶ 37 (fig. 3), 105 (fig. 20 R1, C3), that was previously published with accompanying CMI in and on the cover of *Catching Light* (which Munro and BML also hold copyrights in), and that "is the branding image for the front cover of *Catching Light*, the front cover of the calendar, and the front cover of the note card set.  It was also used in content in all the Light books that [Munro, BML, and Sea Hill Press] produced." Sharp Dep. 43:1-13, 115:1-117:6 and at Ex. 18 (DE [174-19] at Bates No. KILBURN386, R1, C3); Munro Dep. 193:7-194:24; *Catching Light*, at pp. cover, publication data, rear, and XIV.

69. Undisputed, but incomplete, indefinitely phrased, and misleading as Munro and BML asked, paid, and allowed Vince Evans to photograph the copyrighted work *Field of Light* (Long Knoll, Wiltshire, UK, 2004). Munro Dep. 193:16-194:20; Sharp Dep. 42:4-43:13, 115:1-117:6, 118:20-119:21 and at Ex. 7 (DE [174-8]); *Catching Light*, at publication data page ("© 2013 . . . Bruce Munro Studio"). Plaintiffs also restate their answer to paragraph 68 above, and the citations therein.

70. Disputed. Sharp Dep. 40:14-19; 43:1-13, 115:1-117:6, 118:20-119:21; Munro Dep. 193:7-194:24 (stating that Plaintiffs "paid [Evans] for all the photographs"); *Catching Light*, at publication data page ("© 2013 . . . Bruce Munro Studio"). Plaintiffs also object to the asserted "fact" as being a legal conclusion on ownership, which is subject to determination under United

Kingdom law as the location of the photo and the transaction under which Munro and BML allowed and paid Evans to photograph *Field of Light* for Munro and BML. *Id.*

71.     Disputed, in part, as to the misleading implication that the sculpture or image was not originally conveyed or accompanied by CMI (*see* Munro Decl. 41-43; O'Connor Dep. 59:5-60:21, 63:1-64:1 and at Ex. 6 (DE [138-1] at Bates No. MUNRO10048-49); undisputed that NightGarden pitch decks (e.g., Bates No. KILBURN396, R1, C2 (DE [148-12]) as depicted in the complaint at FAC ¶¶ 51 (fig. 8), 105 (fig. 21 R2, C1)), include an image of the Munro *Fireflies* work *Arrow Spring* (The Hermitage, TN 2014) and that defendants did not accompany the image in the pitch decks with proper CMI markings, reference, or attribution to Munro, BML, or the true title of the work, *see* Bates No. KILBURN396, R1, C2 (DE [148-12]); Sharp Dep. 116:21-117:25 and at Ex. 18 (DE [174-19] at Bates KILBURN396, R1, C2 (DE [148-12]); Amended Answer (DE [92]) ¶¶ 86, 92, 97, 98, 104, 105; RFAs #40-52, 66-71; (DE [105-12] at RFA #15), but instead accompanied and distributed the image with different false headings, titles, and self-attributions (e.g., "The Nightgarden," "Seed", "Installation: Seed") in nearby and accompanying text in footers, headings, and on the cover and intro pages of the pitch decks, *see* Bates No. KILBURN378, 379, 380, 386 (DE [148-12]). *See also* nn. 7 & 8 above (CMI need not be physically "on" the work).

72. Disputed, in part, as to the misleading implication that the sculpture or image was not originally conveyed or accompanied by CMI (*see* Munro Decl. 41-43; *Catching Light*, at pp. 42-43); undisputed that NightGarden pitch decks (e.g., Bates No. KILBURN396, R2, C2 (DE [148-12]) as depicted in the complaint at FAC ¶¶ 51 (fig. 7), 105 (fig. 21 R2, C2)), include an image of the Munro *Fireflies* work *Arrow Spring* (Longwood Gardens, PA 2012) and that defendants did not accompany the image in the pitch decks with proper CMI markings, reference, or

attribution to Munro, BML, or the true title of the work, *see* Bates No. KILBURN396, R2, C2 (DE [148-12]); Sharp Dep. 116:21-117:25 and at Ex. 18 (DE [174-19] at Bates KILBURN396, R2, C2 (DE [148-12]); Amended Answer (DE [92]) ¶¶ 86, 92, 97, 98, 104, 105; RFAs #40-52, 66-71; (DE [105-12] at RFA #15), but instead accompanied and distributed the image with different false headings, titles, and self-attributions (e.g., "The Nightgarden", "Seed", "Installation: Seed") in nearby and accompanying text in footers, headings, and on the cover and intro pages of the pitch decks, *see* Bates No. KILBURN378, 379, 380, 386 (DE [148-12]). *See also* nn. 7 & 8 above (CMI need not be physically "on" the work).

73. Undisputed, but misleading. Munro and BML asked, instructed, retained, commissioned, hired, and paid the above-referenced photographers to photograph for Munro and BML the copyrighted Munro sculptural works reflected in the appropriated pitch deck images. *See* responses to paragraphs 59-72 above.

74. Disputed, *see* responses to paragraphs 59-72 above, and Plaintiffs additionally object to the asserted "fact" as being a legal conclusion determinable under United Kingdom or United States law, as applicable, for the images of Munro works described in paragraphs 59-72 above.

75. Disputed, object to, and respond to as stated in paragraph 74 above.

76. Disputed, object to, and respond to as stated in paragraph 74 above.  Moreover, Plaintiffs own the copyright to the Munro sculptural works depicted in the pitch deck images.

77. Disputed as argumentative and a gross misrepresentation of the case and Plaintiffs' CMI claims, and Plaintiffs also restate their response to paragraph 28 above.

78. Disputed, in part, as misleading, incomplete, and an argumentative description of the case and Plaintiffs' claims. Defendants <u>have</u> posted, maintained, and distributed photos online of derivatives of the Munro 6MWorks and other sculptural works, including on the NightGarden

website www.thenightgarden.com, and Defendants concede that none of those online photos provided attribution to Munro. Amended Answer (DE [92]) ¶¶ 92, 144-45; RFAs #155-58; Munro Decl. ¶¶ 12-20, 61-64, and attached Tables of comparative photos (DE [182-2]); Manuel Dep. 141:15-18, 150:7-151:16, 152:25-153:19, 154:19-156:5 and at Exs. 17 (DE [140-1, -2]) and 18 (DE 140-2] at MUNRO8574-76); Sanford Dep. 157:22-161:17, 162:5-168:12, 170:17-172:11 and at Exs. 11-12 (DE [139-1]); Zapata Dep. 156:8-17, 162:9-163:3, 168:22-172:17, 177:18-178:3, 180:17-182:2 and at Ex. 17, 19-22, 24, 26 (DE [142-1]).

79. Disputed, incomplete, and an argumentative mischaracterization of the case and Plaintiffs' claims. The image in fig. 38 of the FAC and elsewhere in the record, *e.g..* Sanford Dep. 157:22-161:17, 162:5-168:12, 170:17-172:11 and at Exs. 11-12 (DE [139-1]), appeared on the NightGarden website and is a photo of an unauthorized derivative replica copy of one or more Munro works. Munro Dep. 213:3-15; Munro Decl. ¶¶ 12-20, 61-64, and attached Tables of comparative photos (DE [182-2]).

80. Disputed, in part, as incomplete and an argumentative mischaracterization of the case and Plaintiffs' claims. Undisputed that multiple forms of NightGarden maps, which NightGarden personnel made, distributed, and handed out to NightGarden attendees and used for NightGarden operations, evidence CMI violations (*see* nn. 7 & 8 above)[9] in that the maps lack proper CMI

---

[9] Plaintiffs object to the inapplicable DMCA CMI legal standard relied on in Movants' foregoing asserted facts, which improperly exclude derivative works from consideration:

CMI violations may also occur in connection with a derivative work, *see GC2 Inc. v. Int'l Game Technology*, Case No. 16 C 8794 (N.D. Ill. July 15, 2019) ("The defendants simply argue that because they modified the artwork provided by GC2, creating a derivative work, there was no longer an 'original work' from which to remove the copyright management information. That argument is wholly without merit[.]"); 17 U.S.C. § 1202(a) &(b), including where a defendant fails to accompany a derivative work with original CMI. *See id.* (citing *Monotype Imaging, Inc. v. Bitstream, Inc.* (*Monotype I*), No. 03 C 4349, 2005 WL 936882 (N.D. Ill. Apr. 21, 2005) ("*Monotype* held that although the defendant had not literally 'removed' copyright notices 'but

markings, reference, or attribution to Munro, BML, or the true title of the originals of derivative replica works (i.e., none of the 6MWorks' titles appear) but instead provided and conveyed different false CMI attributions and headings (e.g., "The Nightgarden," "FTBG") and title (i.e., "Mystic Mushrooms") in map text and verbiage in reference to and nearby the indicated NightGarden areas on the map where unauthorized derivative replicas of the Munro 6MWorks works were displayed. FAC ¶¶147-49 (fig. 39); Slater Decl. Ex. N (KILBURN577); Amended Answer (DE [92]) ¶¶ 148-49; Sanford Dep. 172:11-174:23, 175:6-21, 180:9-183:23 and at Ex. 49 (DE [139-2]); Deposition of Maryann Milligan (DE [173-1], "Milligan Dep.") 86:17-92:18 at Ex. 15, 27, 28 (DE [173-12, -24, -25]); Sharp Dep. 102:17-109-6 at Ex. 5 (DE 174-6], at Bates No. SEAHILPRESS13) and 15 (DE [174-16] at Bates No. MUNRO8662). *See also* nn. 7 & 8 above (CMI need not be physically "on" the work).

81. Undisputed, but legally irrelevant to (a) any issues for which summary judgment is sought, (b) Plaintiffs' right to proper CMI attribution in connection with usage of the Munro works or copies and derivatives thereof, (c) Defendants' obligations to respect Plaintiffs' copyrights and compliance with the Copyright Act and the DMCA.

82. Disputed, in part, as misleading, and as a false, argumentative characterization of the case and Plaintiffs' pleadings. Undisputed that the map does not include photos, but legally irrelevant to any issues for which summary judgment is sought. Plaintiffs reassert paragraph 80 above.

83. Undisputed, but misleading, incomplete, and the asserted fact is not supported by the referenced testimony and is legally irrelevant to any issues for which summary judgment is sought in that the identified contractor reported to and was subject to defendants' direction and

_____

instead [made] copies of the [disputed materials] without including the copyright notice, [this did] not preclude liability under the DMCA.'").

control. Amended Answer (DE [92]) ¶¶ 148-49; Sanford Dep. 172:11-174:23, 175:6-21, 180:9-183:23 and at Ex. 49 (DE [139-2]); Deposition of Maryann Milligan (DE [173-1], "Milligan Dep.") 86:17-92:18 at Ex. 15, 27, 28 (DE [173-12, -24, -25]); Sharp Dep. 102:17-109-6 at Ex. 5 (DE 174-6], at Bates No. SEAHILPRESS13).

84. Undisputed, but incomplete and misleading as to dates and times for Season 1, which was 36 discontinuous separate evenings from November 20, 2018 to January 11, 2019, with Fairchild's facility open for non-NightGarden operations during the daytime.  Amended Answer (DE [92]) ¶ 134; Sanford Dep. 96:1-99:12  and at Ex. 26 (DE [139-1]); RFAs #77-83, 163.

85. Undisputed, but incomplete and misleading as to dates and times for Season 2, which was 42 discontinuous separate evenings from November 14, 2019 to January 11, 2020, with Fairchild's facility open for non-NightGarden operations during the daytime.  Amended Answer (DE [92]) ¶ 142; Sanford Dep. 96:1-99:12  and at Ex. 26 (DE [139-1]); RFAs #77-83, 163.

86. Disputed, as Plaintiffs object to the asserted fact on the basis of spoliation (*see* DE [153]; DE [105-12] at RFAs #5, 7-9, 11; Sanford Dep. 243:16-244:12), under Fed. R. Civ. P. 37(c) for Defendants' refusal to provide this exact information requested in discovery about the NightGarden events (*see* DE [157-5] at ROG 6, 7), and because the document cited as support for the assertion is inadmissible hearsay, declarant Slater is incompetent to authenticate it, and per Fed. R. Civ. P. 56(c) it should therefore not be considered by the Court at the summary judgment stage. Plaintiffs further dispute and object to the asserted fact as argumentative, misleading, incomplete, and indefinite in that it fails to identify which NightGarden season (1 or 2) it pertains to and also intentionally argumentatively omits mention of NightGarden's display of replicas of Munro works.

87. Disputed, as Plaintiffs object to the asserted fact on the basis of spoliation (*see* DE [153]; DE [105-12] at RFAs #5, 7-9, 11; Sanford Dep. 243:16-244:12), under Fed. R. Civ. P. 37(c) for Defendants' refusal to provide this exact information requested in discovery about the NightGarden events and Defendants' work on them (*see* DE [157-2] at ROG 14, 15; DE [157-3] at ROG 14, 15; DE [157-4] at ROG 14, 15; DE [157-5] at ROG 6-8; *see also* DE [78-1] at ROG 2; DE [78-2] at ROG 2; DE [78-3] at ROG 2), and because the documents cited as support for the assertion are inadmissible hearsay, declarant Slater is incompetent to authenticate them, and per Fed. R. Civ. P. 56(c) they should therefore not be considered by the Court at the summary judgment stage. Plaintiffs further dispute and object to the asserted fact as argumentative, misleading, incomplete, and indefinite in that it fails to identify which NightGarden season (1 or 2) it pertains to and also intentionally argumentatively omits mention of NightGarden's display of replicas of Munro works.

88. Disputed (*see* n. 3) as argumentative, misleading, and incomplete and as not fairly reflecting the case or pleadings (*see generally* FAC). Undisputed that NightGarden Seasons 1 and 2 did incorporate and publicly display infringing "knock offs" and "copies" of Munro's 6MWorks. Plaintiffs further restate their response to paragraph 13 above.

89. Undisputed.

90. Disputed, and objected to as indefinite as to the term "Kilburn" (which as defined by Defendants may refer to either defendant K-Live or defendant NGL), as incomplete, as concerning factual issues regarding state of mind and claimed absences of knowledge that are jury issues inappropriate for resolution on summary judgment (*see* n. 8), and as misleadingly implying use of an inapplicable legal standard regarding relevant subjects and scope of

knowledge (i.e., knowledge of the artist versus knowledge of or access to the artist's artwork).[10]

Without waiving the objections, each defendant was aware by no later than mid-2018 of Munro's works (including the 6MWorks) by virtue of receiving photos of the works in the above-referenced NightGarden pitch decks, plus all defendants were aware of and had reviewed information on Munro and Munro works long before November 2019. *See* responses to paragraphs 52-72 above and citations therein; Amended Answer (DE [92]) ¶¶ 97, 98, 104, 105; RFAs #1-71, 137-39, 140-47; (DE [105-12] at RFA #15); *see also, e.g.*, Slater Decl. at (DE [148-12, -19]; Manuel Dep. at 66:8-85:10 and at Exs. 2, 3 (DE [140-1]); Sanford Dep. at 225:14-235:18 and at Exs. 61, 62 (DE [139-2]) ; Zapata Dep. at 47:19-49:11, 51:18-53:6, 59:10-60:23, 61:17-62:5, 77:15-79:3, 111:1-20, 114:2-117:24 and at Exs. 2-7, 11-13 (DE [142-1]); Painter Dep. at 171:7-174:3, 176:8-180:16, 188:5-16, 192:2-23, 194:10-13, 197:5-198:23, 199:18-200:14, 202:5-18; 224:21-228:23, 239:1-242:22 and at Exs. 29-36, 52, 53, 63, 65, 120-23 (DE [141-22-31, -32. -33, 36, -37, -46-49); Sharp Dep. 42:4-43:13, 77:6-79:10, 82:18-88:11, 103:6-107:2; 117:10-25, 115:1-117:6, 118:20-119:21 and at Exs 6-12, 16-18 (DE [174-7-13, 174-17-19]). Undisputed that one or more defendants forwarded the cease-and-desist letter to counsel in November 2019.

91. Disputed, and Plaintiffs restate their response and objections to paragraph 90 above.

92. Disputed (*see* n. 3), and objected to as argumentative characterization of the referenced document, (DE [148-28]); Manuel Dep. at Ex. 28 (DE [140-2]) (also providing link to the Munro

---

[10] Plaintiffs object to Movants' foregoing asserted facts as applying an incorrect and inapplicable legal standard regarding access and knowledge regarding the copyright holder's works:

As to elements of access and knowledge, awareness of or access to the subject work(s) is the relevant, appropriate inquiry, *Dream Custom Homes, Inc. v. Mod. Day Const., Inc*., 773 F. Supp. 2d 1288, 1302 (M.D. Fla. 2011), aff'd, 476 F. App'x 190 (11th Cir. 2012) ("access" demonstrable by a reasonable opportunity to view the artist's copyrighted subject work), and particularized knowledge of the artist by name is not a requirement. *Id*.; *see also* n. 8, *supra*.

and BML website), and as misleadingly implying use of an inapplicable legal standard regarding knowledge and applicable standards of conduct (*see* n. 8). Without waiving the objections, undisputed that the cease-and-desist letter provided descriptions, photos, and registration numbers for registered Munro works Forest of Light (Longwood, PA) and Field of Light at Sensorio.

93. Undisputed, but incomplete and misleading in that Zapata also corresponded with Fairchild's officers and trustees, including Lin Lougheed and counsel Bruce Greer, about Munro and Munro's works. Plaintiffs also restate their response and objections to paragraph 90 above.

94. Disputed, as concerning factual issues regarding state of mind and claimed absences of knowledge that are jury issues inappropriate for resolution on summary judgment (*see* n. 8).

95. Disputed, and objected to as concerning factual issues regarding state of mind and claimed absences of knowledge that are jury issues inappropriate for resolution on summary judgment (*see* n. 8). Without waiving the objections, Plaintiffs restate their response and objections to paragraph 90 above, which evidence Painter's knowledge of Munro's works by early 2018, at latest.

96. Disputed, incomplete, and legally irrelevant to any issues for which summary judgment is sought. Plaintiffs restate their responses to paragraphs 52-72 above and citations therein, which establish that Painter obtained and viewed photographs of and articles on Munro works and exhibitions, thereby virtually visiting multiple Munro exhibitions remotely via the internet.

97. Disputed, in part, and Plaintiffs object to the asserted fact as argumentatively phrased and on the basis of spoliation (*see* DE [153]; DE [105-12] at RFAs #5, 7-9, 11; Sanford Dep. 243:16-244:12). Without waiving the objections, undisputed that NightGarden Seasons 1 and 2 included multiple distinct "activations" that are copies of Munro works and incorporated materials that

Defendants refer to as "mushrooms" and obtained from defaulted defendant-supplier G-Lights, who admitted they were copies of Munro works. Sanford Dep. 58:15-59:20; 81:11-83:14 and at Ex. 59-60 (DE [139-2]); FAC at Ex. C (DE [69-13]); Complaint (DE [1]) at Ex. C (DE [1-13]).

98. Disputed, in part, (*see* n. 3) and Plaintiffs restate their response and objections to paragraph 98 above. *See also* Sharp Dep. 103:6-110:25; 114:1-117:25, 118:20-119:9 and at Ex. 5, 15 (DE [174-6, -16]).

99. Plaintiffs restate their response and objections to paragraph 99 above.

100.   Disputed, in part, as to quantity and timing, as indefinite as to the term "Kilburn" (which may refer to either defendant K-Live or defendant NGL), as incomplete, and as based on inadmissible hearsay. Plaintiffs object to the asserted fact because the compilation document cited as support for the assertion, Slater Decl. Comp. Ex. T (Bates Nos. KILBURN275-77, 152-55), is a compilation of two distinct documents, an order record dated "2018-09-20" and a quote dated "May 9, 2019" (neither of which declarant Slater is competent to authenticate and that on their face appear to reflect two distinct transactions for different quantities of units), are inadmissible hearsay, and per Fed. R. Civ. P. 56(c) they should therefore not be considered by the Court at the summary judgment stage.   Without waiving the objection, the asserted fact's relied-on evidence instead indicates two separate purchases in different quantities by different defendants that occurred in September 2018 and sometime after May 9, 2019; the purchaser referenced on the "2018-09-20" order record is defendant "Kilburn Media" (Bates Nos. KILBURN275-76) whereas the "May 9, 2019" quotation is directed to defendant "Max Painter" and reflects a different quantity of units (Bates Nos. KILBURN154-55). Undisputed that Defendants made the purchase(s) through the Alibaba platform and their supplier was Chinese company G-Lights, which has defaulted in this action (DE [44]), which using appropriated

photos of Munro works advertises for sale on Alibaba and elsewhere unauthorized replicas of a substantial portion of the Munro portfolio of work, FAC ¶¶ 113-130, figs. 22-23, and Exs. C-F (DE [69-13-17]) (*compare also with* FAC at Exs. B1-B11 (DE [69-2-12])), and which on Alibaba specifically advertised the materials defendants purchased as "Hot sale cheap Bruce Munro style outdoor wood decoration fiber optic light" and the NightGarden as a reference project. Sanford Dep. 220:23-224:25 and at Exs. 59-60 (DE [139-2]); Painter Decl. ¶ 20.

101.   Disputed; Plaintiffs object to this asserted fact as relying on documents that are inadmissible hearsay as stated above in paragraph 100, and on the basis of spoliation (*see* DE [153]; DE [152] at n.6; DE [105] RFAs #5, 7-9, 11; Sanford Dep. 243:16-244:12). Without waiving the objection, undisputed that Defendants produced samples for inspection, which had the approximate measurements and materials stated, of what Defendants refer to as "mushrooms" and purport were present in activations on display at the NightGarden,  *See also* Sharp Dep. 103:6-108:23 and at Ex. 5 (DE  [174-6]).

102.   Undisputed, but Plaintiffs object to the argumentative term "fiber lights" used in the asserted fact.

103.   Disputed, in part, Sharp Dep. 103:6-108:23 and at Ex. 5 (DE [174-6]), and Plaintiffs object to the asserted fact on the basis of spoliation (*see* DE [153]; DE [152] at n.6; DE [105] RFAs #5, 7-9, 11; Sanford Dep. 243:16-244:12) and of its use of the argumentative term "fiber lights." Undisputed that defendants failed to display proper CMI with either of two displays in NightGarden Season 2 that visually looked like *Fireflies*.

104.   Undisputed as rephrased, but Plaintiffs object to the argumentative term "fiber lights": Two areas of NightGarden Season 2 that were visually similar to *Fireflies* incorporated

between them a total of approximately 600 elements. Sanford Dep. 81:21-82:11; Slater Decl. Ex. A, Rog 7, p. 4; Sharp Dep. 103:6-108:23 and at Ex. 5 (DE [174-6]).

105.    Disputed as based on inadmissible hearsay, as indefinite as to the term "Kilburn" (which based on Defendants' definition may refer to either defendant K-Live or defendant NGL), and for its use of the argumentative term "fiber lights." Plaintiffs object to the asserted fact because the document cited as support for the assertion, Slater Decl. Ex. U (Bates No. KILBURN1108), is inadmissible hearsay, declarant Slater is not competent to authenticate the document, and per Fed. R. Civ. P. 56(c) it should therefore not be considered by the Court at the summary judgment stage. Without waiving the objection, (a) the evidence relied on fails to provide support for the asserted fact since the document is undated, does not show a transaction occurred on any date, and names "Night Garden LLC" only as a prospective buyer. *Id*. Without waiving the objection, otherwise undisputed if rephrased as follows: NGL's supplier for the accused infringing works that appeared in two locations in NightGarden Season 2 and looked like *Fireflies* was Toprex, a Chinese company. Slater Decl. Ex. U (Bates No. KILBURN1108); Sharp Dep. 103:6-108:23 and at Ex. 5 (DE [174-6]).

106.    Disputed as inadmissible and objectionable for the reasons stated in paragraph 105 above and on the basis of spoliation (*see* DE [153]; DE [152] at n.6; DE [105] RFAs #5, 7-9, 11; Sanford Dep. 243:16-244:12). Without waiving this objection, the accused infringing works that Defendants contend incorporate these elements appeared in two locations in NightGarden Season 2 and looked like *Fireflies* or copies thereof.  Sharp Dep. 103:6-108:23 and at Ex. 5 (DE [174-6]).

107.    Disputed (*see* n.3), and legally irrelevant to any issues for which summary judgment is sought and misleading in that Plaintiffs' works are leased out for exhibition via exhibition

agreement licenses, *e.g.*, Lewis Dep. 137:19-138:20; Twil Rpt (DE [170-1]) at 27, 41, and because images of Munro works are incorporated into publications (e.g., books, notecards, calendars, etc.) on which Plaintiffs receive royalty payments.  Sharp Dep. 44:12-52:23.

108.    Disputed; Plaintiffs object that this conclusory, argumentative asserted "fact" instead misrepresents the cited witness testimony, the Plaintiffs' claims and damages sought, FAC at 67-75, and the recoveries  provided for and sought by Plaintiffs' in this action under 17 U.S.C. §§ 504, 1203.  *See also* Twil Rpt (DE [170-1]).

109.    Disputed, objected, and responded to for the reasons stated in paragraph 108 above.

110.    Disputed and objected to for the reasons stated in paragraph 108 above.

111.    Disputed, objected, and responded to as legally irrelevant to any issues for which summary judgment is sought, incomplete, and misrepresentative of the substance of the witness testimony. Fairchild expressed interest in a Munro exhibition (and internally stated strong interest upon reviewing Munro's works), Lewis identified Fairchild as a potential lost client due to co-defendants' actions (which, at least in part and on the basis of NightGarden pitch decks containing photos of Munro works, convinced Zapata and Fairchild to contract with K-Live for the NightGarden), and Lewis' testimony reflects the perception of damage and that the witness merely lacks of awareness regarding possible loss of other possible clients. Lewis Dep. 162:7-164:1, 168:7-18, 175:22-182:10 and at Exs. 20-22 (DE [138-1]); Fairchild/Zapata-BML Communications (DE [148-19]) (Zapata: "I will call you soon to discuss Bruce's work – which is extraordinary!"); Zapata Dep.  47:18-49:10, 51:18-53:6, 77:15,78:18; 104:2-115:4 and at Ex. 2 (DE [142-1] (Zapata in response to Fairchild trustee Lin Lougheed's email providing the hyperlink to BML's studio portfolio website www.brucemunro.co.uk: "Oh wow! This is stunning!

A stunner! A stunner!  How can we make first overtures?")) and at Exs. 3-7, 9, 11 (DE [142-1]). *See also* Twil Rpt (DE [170-1]).

112.   Disputed, objected, and responded to for the reasons stated in paragraph 111 above.

113.   Undisputed, but misleading regarding calculations derivable from financial data and legally irrelevant to any asserted damage model or any issue for which summary judgment is sought.  *See also* Twil Rpt (DE [170-1]); *see also* (DE [152] at 3-8).

114.   Disputed. The witness testimony does not substantiate the conclusory, argumentative asserted fact, Munro Dep. 88:19-90:2, 93:17-94:15, 261:2-25; Lewis Dep. 162:7- 163:23, NightGarden Season 2 continued operating through  January 11, 2020, Sanford Dep. 96:1-99:12 and at Ex. 26 (DE [139-1]), and defendant websites and social media continue to contain infringing content and evidence CMI violations, *e.g.*, FAC ¶¶ 144-45 (figs. 30, 36), resulting in ongoing harm, damage, and loss.

**II.      Plaintiffs' Additional Facts Material to the MSJ**

115.   Munro is an artist known for light-based works, sculptures, and large-scale immersive sculptural installations and exhibitions produced through his studio BML. Munro Decl. ¶ 3; Twil Dep. 132:11-134:12; Twil Rpt at 22-24; *Catching Light*.

116.   Munro is an installation light artist, whose medium is immersive and three-dimensional, and within that medium he aims to transform and alter viewers' surroundings and perceptions of space by manipulating the environment. Munro Decl. ¶ 4.

117.   Munro is best known for his "Field of Light" work and certain site-specific iterative versions of Field of Light, including "Forest of Light" presented in 2012 at Longwood Gardens, Kennett Square, Pennsylvania, and "River of Light" presented in 2013 at Waddesdon Manor, the

Rothschild Collection, Buckinghamshire, UK. Munro Decl. ¶ 5; Sharp Dep. 85:10-87:21; 116:9-20; *Catching Light*.

118.    Munro's immersive works are presented on a very large scale, often covering many acres, but some cover smaller areas measured in meters, with smaller scale versions displayed and exhibited at galleries and museums, and large installations presented at gardens and public spaces around the world, including the Atlanta Botanical Gardens, the United Kingdom's Salisbury Cathedral, Houston's Discovery Green Park, and Pennsylvania's Longwood Gardens. Munro Decl. ¶ 6, 10; Twil Dep at 132:11-134:12; Twil Rpt at pp. 22-24.

119.    Munro received many professional honors including the Guggenheim Museum's 2010 invitation in celebration of its 50th anniversary to display in the inspirational rotunda of the Frank Lloyd Wright–designed Guggenheim building in Manhattan; the 2011 Artist of the Year Award from Wiltshire Life Magazine; the 2013 American Alliance of Museums Excellence in Exhibition Award; the 2017 Americans for the Arts Public Art Network Year in Review Award for one of the 49 most compelling public art projects of 2016; and the 2019 National Award of Excellence for Community Based Initiative of the Year from Parks and Leisure Australia for the 2018 Field of Light installation at the Avenue of Honor, Albany, Australia. Munro Decl. ¶ 8.

120.    Munro has been favorably compared to other artists working on the installation scale such as Dale Chihuly and Christo, and the New York Times named Paso Robles, California sixth in its list of the top 52 places to go in the world in 2020 because of Munro's ongoing *Field of Light at Sensorio* exhibition. Munro Decl. ¶ 9; Munro Dep. at Exs. 15 & 37 (DE [136-3]); Sanford Dep. at Ex. 62 (DE [139-2]); Twil Dep. 53:19-24, 142:22-143:22; Twil Rpt at 22, 23, 26.

121.     "Forest of Light" was registered with the Copyright Office as a three-dimensional work of fine art and applied art, U.S. Reg. No. VA 2-176-825, effective August 24, 2019. Munro Dep. at Exs. 9, 10, 22 (DE [136-3]); Munro Decl. ¶ 20.

122.     Exhibitions of Munro's works routinely generate substantial media, public, and online interest and underwriter sponsor support; are seen and visited by millions of people around the world; and generate millions of dollars in underwriting, ticketing, gift shop, and food court revenues, as well as substantial media attention, website visitor web traffic, and social media engagement. Munro Decl. ¶ 11; Twil Dep. 142:22-143:22; Twil Rpt at pp. 23, 26.

123.     The following six Munro works of art ("Munro Works" or "6MWorks") are original works of Munro that were copied by the defendants in this case:

    1.   U.S. Registered Work #1: *Forest of Light* (Longwood Gardens, PA 2012).

    2.   UK Work #1: *Field of Light* (Long Knoll, Wilshire, UK, 2004).

    *3.*   UK Work #2: *Field of Light* (Eden Project, Cornwall, UK, 2008).

    4.   UK Work #3: *Fireflies* (Residential Installation, UK, 2008).

    5.   UK Work #5: *Field of Light* (Holburne Museum, Bath, UK, 2011).

    6.   UK Work #8: *River of Light* (Waddesdon, UK 2013).

Munro Decl. ¶¶ 12-20, 57-64 and Tables I & II of comparative photos attached to Munro Decl. as Ex. 1 (DE [182-2]); Munro Decl. at Exs. 2, 3 (DE[ 183-3, -4]); Sharp Dep. 78:3-80:10; 82:10-89:19, 98:19-108:23, 109:6-110:2-25, 112:19-117:25 and at Exs. 5, 9, 10, 12, 13 (DE [174-6, -10, -11, -13, -14]).

124.     The Munro Works listed in paragraph 123 immediately above are mixed media installations conceived of, designed, created, and installed by Munro that are non-utilitarian, creative and artistic. Munro Decl. ¶¶ 1-57; Twil Rpt (DE [152-3]).

125.    Conveyed in connection with each of the Munro Works when originally presented via signage, guides, and literature was copyright management information on the work's title and author (Munro). Munro Decl. ¶¶ 28, 29, 37, 41, 50, 54.

126.    Conveyed in connection with each of the Munro Works when reproduced in images in Munro and BML books and websites was copyright management information on the work's title, author (Munro), and © symbol.  Munro Decl. ¶¶ 7, 27, 28, 30, 35, 36, 38, 42, 53; *Catching Light*; Sharp Dep. 78:3-80:10; 82:10-89:19, 98:19-108:23, 109:6-110:2-25, 112:19-117:25 and at Exs. 5, 9, 10, 12, 13 (DE [174-6, -10, -11, -13, -14]).

127.    No copyright management information associated with Munro or any Munro Works was included on or distributed, displayed, uploaded, or posted in connection anything produced by the Defendants. Amended Answer (DE [92]) ¶¶ 92, 144-45; RFAs # 122-24, 154-58; *see also* responsive paragraphs 52-72 above.

128.    *Forest of Light*, *Field of Light, Fireflies,* and *River of Light* are each a large installation like all of Munro's immersive works, and as such the still photographs submitted in this case cannot capture the experience of *Forest of Light*, *Field of Light, Fireflies,* or *River of Light* because each work moves, undulates, changes, ebbs and flows, changes color, and gets brighter and dimmer. Munro Decl. ¶¶ 20-26, 45-49.

129.    *Forest of Light*, *Field of Light,* and *River of Light* consist of stranded stemmed spheres or orbs of light wherein as to *Forest of Light* the spherical clear glass spheres or orbs visibly display wound fiber optics cables, and wherein the orbs sit atop slender, transparent acrylic tubular stems, and wherein each orb and stem is its own three-dimensional mini-sculpture ("Stemmed Sphere"), and wherein a single Stemmed Sphere does not exist without many other fiber optic lit Stemmed Spheres selected and arranged by Munro, and wherein specialized

halogen and LED projectors illuminate the fibers that in turn illuminate the Stemmed Spheres, and wherein the projectors are programmed to increase and decrease light output in a gradual manner and rotate hand-painted glass color wheels that cause the light output to each Stemmed Sphere to pulse or cycle slowly from very dim or off to the equivalent of just a few watts, and wherein Munro has added radial patterns (with colors) on the glass wheels to achieve a shimmer effect, and wherein by increasing the layers of color Munro achieves richer chromatic hues and darker tonal effects. Munro Decl. ¶ 20-26; *Catching Light*.

130.   *Fireflies* consists of multiple Fireflies that are bundles of fiber optic cables of different lengths connected to and lit by projectors pre-set to dim using different intensity halogen lamps; wherein the bundles of fiber optic cables of different lengths are arranged through and splaying out in plumes from tubular stems, and wherein the projectors are programmed to increase and decrease light output in a gradual manner that cause the light output to each Firefly to pulse or cycle slowly from very dim or off. Munro Decl. ¶¶ 45-49; *Catching Light*.

131.   Munro's Stemmed Spheres and Fireflies are non-functional. Munro Decl. ¶¶ 20-26, 45-49; *Catching Light*.

132.   The amount and variation of light emitted by a single fiber optic lit Stemmed Sphere or Firefly is insufficient for any function other than as an element in Munro's art installations, the purpose for which they were designed. Munro Decl. ¶¶ 20-26, 45-49; *Catching Light*.

133.   Munro conceived of, designed, created, and fashioned the Stemmed Spheres and Fireflies creatively making non-utilitarian artistic choices about their geometric shape, transparency, materials, fiber positioning and winding arrangement, and relative size ratios. Munro Decl. ¶¶ 4, 20-26, 30-37, 39, 40, 45-49, 50, 51, 54, 55, 62 and at Ex. 1 (DE [182-2] at 9)

and Ex. 3 & 4 (DE [182-4, -5]); Munro Dep. 109:12-110:18, 122:5-126:18, 172:11-175:6, 189:17-190:20, 302:9-303:9; *Catching Light* at pp. 16, 42-49; *Fireflies* webpage (DE [69-8] and DE [137-1] at Ex. 6).

134.    Defendants had access to Munro's Works. Munro Decl. *passim*, and ¶¶ 57-60 and at Tables I & II attached to Munro Decl. as Ex. 1 (DE [182-2]); NightGarden Pitchdecks (DE [148-12]); *see also* paragraph 13 above and citations therein.

135.    Defendants copied Munro's Works. Munro Decl. ¶¶ 61-64 and Tables I & II attached to Munro Decl. as Ex. 1 (DE [182-2]); *see also* paragraph 13 above and citations therein.

136.    Defendants "removed" CMI from Munro's Works.  Munro Decl. ¶¶ 61-64 and Tables I & II attached to Munro Decl. as Ex. 1 (DE [182-2]); *see also* paragraph 13, 52-72 above and citations therein; nn 7-9, *supra*.

137.    Defendants placed and conveyed false CMI on and with copies of Munro's Works, which they distributed and publicly displayed. Munro Decl. ¶¶ 61-64 and Tables I & II attached to Munro Decl. as Ex. 1 (DE [182-2]); *see also* paragraph 13, 52-72 above and citations therein; nn 7-9, *supra*.

138.    Defendants received revenues on NightGarden Seasons 1 and 2. Sanford Dep. 95:22-104:11 at Ex. 25 & 26 (DE [139-1]); Milligan Dep. 98:1-99:9, 100:16-101:18, 101:21-102:10, 129:8-131:11, 134:13-135:16, 175:14-176:4 and at Exs. 25, 26, 38 (DE [173-22, -23, -33]).

139.    Accredited Senior Appraiser Twil conducted an assessment and prepared a fine art appraisal report on the fair market value payable for two hypothetical usage licenses of Munro works as of the 2018 Season 1 and the 2019 Season 2 NightGarden exhibitions at Fairchild. (Twil Dep. 18:11-20; 24:16-25:25, 31:1-3; 60:20-62:23, 63:15-24, 86:18-87:7, 96:4-15, 221:10-23, 117:11-118:14, 160:14-21; Twil Rpt,  *generally*).

Dated:  June 18, 2021                    Respectfully submitted,


**<u>Joel B. Rothman</u>**
JOEL B. ROTHMAN
Florida Bar No. 98220
joel.rothman@sriplaw.com
CRAIG A. WIRTH
Florida Bar Number:  125322
craig.wirth@sriplaw.com
MEIR TEITELBAUM
Florida Bar No. 1022915
meir.teitelbaum@sriplaw.com

**SRIPLAW**
21301 Powerline Road
Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

and

CARL F. SCHWENKER (pro hac vice)
Texas Bar No. 00788374
cfslaw@swbell.net
**LAW OFFICES OF CARL F. SCHWENKER**
The Parsons House
3807 Duval Street, Suite E
Austin, TX  78751
512.480.8427 – Telephone
512.857.1294 – Facsimile

*Counsel for Plaintiff Bruce Munro and Bruce*
*Munro Ltd. dba Bruce Munro Studio*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on June 18, 2021, a true and correct copy of the foregoing document was served by electronic mail by the Court's CM/ECF System to all parties listed below on the Service List.

**Joel B. Rothman**
JOEL B. ROTHMAN

## SERVICE LIST

Deanna K. Shullman
Allison S. Lovelady
Giselle M. Girones
James Slater
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Telephone: (561) 429-3619
dshullman@shullmanfugate.com
alovelady@shullmanfugate.com
ggirones@shullmanfugate.com
jslater@shullmanfugate.com

*Counsel for Defendants Kilburn Live, LLC, Kilburn Media LLC, Manuel, Night Garden, LLC, Fairchild Tropical Botanic Garden, Inc., Zapata, Imaginer Ltd., Imaginer Inc., and Painter*

John K. Shubin, Esq.
SHUBIN & BASS, P.A.
46 S.W. First Street, Third Floor
Miami, Florida 33130
Telephone:(305) 381-6060
Facsimile: (305) 381-9457
jshubin@shubinbass.com
eservice@shubinbass.com

*Co-counsel for Defendants Fairchild Tropical Botanic Garden, Inc. and Zapata*