UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-20079-CIV-SINGHAL/LOUIS

BRUCE MUNRO and BRUCE MUNRO LTD.,

      Plaintiffs,

v.

FAIRCHILD TROPICAL BOTANIC GARDEN, INC.;
NIGHT GARDEN, LLC; KILBURN LIVE, LLC;
ZHONGSHAN G-LIGHTS LIGHTING CO., LTD.;
NANNETTE M. ZAPATA; KILBURN MEDIA, LLC;
MARK C. MANUEL; IMAGINER LTD; IMAGINER,
INC.; and MAX PAINTER,

      Defendants.
_____/

## ORDER ON DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendants'[1] Joint Motion for Summary

Judgment (DE [145]).  Plaintiffs have filed a Corrected Response in Opposition (DE [188-

1]), and Defendants have filed a Reply (DE [207]).  The Court has also considered the

parties' supporting documents and all the exhibits in the record.  *See* (DE [146], [193],

[205]).  For the reasons discussed below, the Court grants Defendants' Motion.

### I.    MATERIAL FACTS[2]

---

[1] As used in this Order, "Defendants" refers to all Defendants except Zhongshan G-Lights Lighting Co.,
Ltd., which has defaulted.

[2] Plaintiffs have expended this Court's limited resources by "disputing" many facts that are not actually in
dispute.  For example, Plaintiffs dispute as "argumentative" or "factually incorrect" Defendants' references
to Munro's sculptures as "stick-and-bulb lights"; Plaintiffs prefer that these sculptures be called "Stemmed
Spheres."   As another example, Plaintiffs dispute as "argumentative" basic allegations of their own
Amended Complaint.  Yet another example is the plethora of legal arguments and legal conclusions
scattered throughout the Corrected Opposing Statement of Material Facts ("OSOMF") (DE [193]), which
the Court has already once ruled are impermissible.  *See* (DE [186], at 2).  None of these objections are
actual disputes of material facts.  The Court also notes that Plaintiffs object to some of Defendants' material
facts on the basis that Defendants spoliated evidence.  But, because the Court has already denied Plaintiffs'
motion for spoliation sanctions, *see* (DE [153], [204]), spoliation is not a valid objection.  The Court therefore

Bruce Munro ("Munro") is an artist who resides in England, and Bruce Munro Ltd. ("BML") is Munro's United Kingdom-based company and studio.  SOMF ¶¶ 1–2 (DE [146]).  Munro has a United States Copyright Office registration for his sculpture called "Forest of Light," which lists Munro as the author and claimant and has an effective date of August 24, 2019.  *Id.* ¶¶ 4, 8.  Forest of Light—which was first published in the United States on June 9, 2012—is the only U.S.-registered work in this action ("the Forest Registration").  SOMF ¶¶ 5, 8 (DE [146]); (DE [182-2], ¶¶ 12–13).

Plaintiffs also maintain that five of Munro's United Kingdom unregistered works have been infringed: Field of Light (Long Knoll, UK, 2004; Eden Project, UK, 2008; and Holburne Museum, UK, 2011); Fireflies (Residential Installation, UK, 2008); and River of Light (Waddesdon, UK, 2013).  SOMF ¶ 13 (DE [146]); OSOMF ¶ 13 (DE [193]); (DE [182-1] ¶¶ 14–19).  Another unregistered work is Field of Light (Longwood Gardens, Pennsylvania, 2012), for which Plaintiffs allege a copyright management information ("CMI") violation.  SOMF ¶¶ 13–14 (DE [146]); OSOMF ¶ 14 (DE [14]).  Regarding the five works for which Plaintiffs claim CMI violations, Munro did not place his signature on any individual component of those sculptures.  SOMF ¶¶ 41–42, 50–51 (DE [146]).

In short, this action essentially boils down to alleged copyright infringement for two exhibits Defendants displayed at their NightGarden event held at the Fairchild Tropical

---

deems admitted all facts to which Plaintiffs have baselessly objected.  *See* S.D. Fla. L.R. 56.1(c).  True disputes will be noted with the parties' respective positions.

The Court also notes that Plaintiffs' OSOMF exceeds the prior page limitation set forth by the Court.  *See* (DE [186], at 5–6).  Plaintiffs moved for leave to file this corrected document—their third one—and the Court thought that Plaintiffs had simply inadvertently forgotten to attach the proposed document to their Motion. After seeing that the OSOMF is actually 44 pages of substantive text, the Court wonders if Plaintiffs' failure to attach the proposed corrected OSOMF was inadvertent in light of the Court's clear prior Order limiting their previous OSOMF to 20 total pages, which was *already* an extension of Local Rule 56.1(b)(2)(D)'s page limitation.

Botanic Garden[3]: (1) Defendants' "mushroom" exhibit, which allegedly infringes Munro's registered Forest of Light work and unregistered Field of Light and River of Light works; and (2) Defendants' "fiber light" exhibit, which allegedly infringes Munro's unregistered Fireflies work.  Below are side-by-side comparisons:

 

Munro's U.S.-registered Forest of Light (Longwood Gardens, PA).   Am. Compl. ¶ 60 (DE [69]).

 

Defendants' "mushroom" exhibit at NightGarden.  *Id.* ¶ 145.

---

[3] NightGarden was a large-scale, "light-focused evening entertainment event" that Defendants created and hosted at Fairchild Tropical Botanic Garden between November 2018 and January 2019 (Season 1) and between November 2019 to January 2020 (Season 2).  Am. Compl. ¶ 78 (DE [69]); *see also* SOMF ¶¶ 84–85 (DE [146]).

 

Munro's unregistered Fireflies work.  Am. Compl. ¶¶ 47, 51 (DE [69]).

 

Defendants' "fiber light" exhibit at NightGarden.  *Id.* ¶ 144.

Plaintiffs allege that in April 2018, Defendants Manuel, Painter, Kilburn Media, Kilburn Live, and Imaginer created a pitch deck (a slideshow of photos) that includes six "stolen" images of Munro's works, which Defendants used to advertise their NightGarden event.  SOMF ¶ 52 (DE [146]); *see also* (DE [148-12], at 6, 25, 35).  The six photos at issue are outlined in red below:



Figure 19
4/18 Pitch-deck excerpt (Bates # KILBURN00494)

Copied Work:

R1, C1: *Forest of Light* (Fig. 15, supra)

R2, C1: *Field of Light* (Longwood Gardens, PA, 2012) (Fig. 17, supra)



Figure 20
8/18 Pitch-deck excerpt (Bates # KILBURN00386)

Copied Work:

R1, C1: *Field of Light* (Holburne Museum, Bath, UK, 2011 (Fig. 10, supra)

R1, C3: *Field of Light* (Long Knoll, Wilshire, UK, 2004), (Figs. 1-3, supra)



**Figure 21**
8/18 Pitch-deck excerpt (Bates # KILBURN00396)

Am. Compl. ¶¶ 98, 105 (DE [69]).

Defendant Painter, through his company Imaginer, found the NightGarden pitch deck images using a Google image search and did not see or remove any markings on the images. SOMF ¶ 54 (DE [146]). Painter never saw Plaintiffs' names in connection with these six photos. *Id.* ¶ 55. The pitch decks were for internal, not public, use. *Id.* ¶ 56. No Defendants other than Painter and Imaginer performed the pitch deck image searches. *Id.* ¶ 58. Plaintiffs dispute these facts on the grounds that: they are inadmissible hearsay as to Painter's state of mind; Imaginer Inc. was not formed until a year later; Painter was a creative director of the NightGarden exhibit in his individual capacity, not through either entity; and the Defendants circulated the pitch decks among themselves for advertisement and marketing of NightGarden before any business relationship was consummated, indicating that the use was not internal. OSOMF ¶¶ 54–58 (DE [193]).

The very first image outlined on the pitch deck above (labeled Fig. 15) is a

computer-generated image ("CGI"), created by a third-party contractor at Plaintiffs' instruction, depicting Forest of Light against a Longwood Gardens background.  SOMF ¶¶ 59–60 (DE [146]).  This CGI has the Longwood Gardens logo on the bottom.  *Id.* ¶ 59. The remaining images of the three Field of Light works and Fireflies in the pitch deck do not contain Plaintiffs' signatures, and some were photographed by photographers who are not parties to this suit but whom Plaintiffs specifically hired to photograph the works. *See id.* ¶¶ 61–69, 71–72.  Plaintiffs contend that the original photos used in the pitch deck were accompanied by Plaintiffs' CMI, which were not present on the photos in the pitch deck.  OSOMF ¶¶ 61, 63, 68, 71–72 (DE [193]).

Although Plaintiffs themselves did not capture or create any of the images used in the pitch deck, they hired photographers to take those photographs.  SOMF ¶ 73 (DE [146]); OSOMF ¶ 73 (DE [193]).  Defendants maintain that Plaintiffs do not have any interest or right in the pitch deck images, including copyright ownership, but Plaintiffs assert that whether they have any rights in the pitch deck photos is a legal determination. SOMF ¶¶ 74–76 (DE [146]); OSOMF ¶¶ 74–76 (DE [193]).

Regarding the six pitch deck photos, Plaintiffs allege that they constitute violations of the Digital Millennium Copyright Act ("DMCA") and that they fail to properly attribute Plaintiff.  *See* SOMF ¶¶ 77–78 (DE [146]).  Plaintiffs also allege in the Amended Complaint that the NightGarden "Buy Tickets" Promotion on their website (figure 38) and the NightGarden guide (figure 39) display copies of Munro's works without authorization and fail to properly attribute Munro and his replicated exhibits:



Figure 38
NightGarden Promotion



Figure 39
NightGarden Guide

Am. Compl. ¶¶ 147–49 (DE [69]); *see also* SOMF ¶¶ 78–80 (DE [146]); OSOMF ¶¶ 78–80 (DE [193]).  Although the NightGarden guide does not contain photos of any of Munro's actual works, Plaintiffs maintain that it still constitutes a DMCA violation for not attributing Munro or the true titles of his original works. SOMF ¶ 82 (DE [146]); OSOMF ¶¶ 80, 82 (DE [193]).

Defendants contend that the NightGarden event consisted of custom lighting that they and their contractors built and assembled.  SOMF ¶ 87 (DE [146]).  Despite Plaintiffs' entire lawsuit being premised on Defendants' unauthorized replication and misattribution of Plaintiffs' works, Plaintiffs assert that the documents submitted in support of this fact are inadmissible hearsay.  OSOMF ¶ 87 (DE [193]).  Plaintiffs also maintain that Defendants' "mushrooms" and "fiber optic lights" displayed at NightGarden are "knock-offs" or "copies" of Munro's five works.  SOMF ¶ 88 (DE [146]).

Plaintiffs' counsel sent Defendants Zapata (Fairchild's COO) and Manuel (Kilburn Media's CEO) a cease-and-desist letter on November 11, 2019.  *See id.* ¶¶ 90–91; (DE [148-18]).  The letter informed Zapata and Manuel that "a significant part" of the scheduled season 2 of the NightGarden exhibit replicated Munro's Forest of Light (Longwood Gardens, Pennsylvania, 2012) and Field of Light (Sensorio, California, 2012) without authorization and, as a result, would "violate Munro's registered copyrights and other intellectual property interests and [would] damage Munro."  (DE [148-18], at 1).  The letter requested that Fairchild and Kilburn take corrective action.  *See id.* at 4.  The letter did not address Fireflies or any other Field of Light works.  *See id.* at 1–4.

Manuel maintains that he had not heard of Munro until he received the cease-and-desist letter.  SOMF ¶¶ 90–91 (DE [146]).  *But see* (DE [139-2], at 103) (email sent to

Manuel in June 2019 with a link to an article about Munro's Field of Light at Sensorio work informing Manuel that work was "nearly identical" to NightGarden). Zapata had previously corresponded with Munro's staff in 2014, but she had no recollection of the emails until she went back to read them after seeing the Complaint. SOMF ¶¶ 93–94 (DE [146]). The 2014 email from Munro's staff to Zapata mentioned Munro's Longwood Gardens exhibit. *See* (DE [148-19], at 11). Painter and Imaginer first became aware of Munro and his works in early 2020, after the Complaint was filed. SOMF ¶¶ 95–96 (DE [146]). Plaintiffs dispute Defendants' facts about their knowledge of Munro and his works, maintaining that state of mind is a factual question inappropriate for summary judgment. OSOMF ¶¶ 90–91, 94–96 (DE [193]). Plaintiffs also assert that all Defendants knew "by no later than mid-2018" of Munro's works when they received the NightGarden pitch decks. *Id.*

Defendants displayed the mushrooms during both seasons of NightGarden. SOMF ¶ 97–99 (DE [146]). Kilburn Media and Painter purchased the mushrooms online in 2018 from defaulted Defendant Zhongshan G-Lights Lighting Co., a Chinese manufacturer that advertised the mushrooms as "Bruce Munro style . . . fiber optic lights." OSOMF ¶¶ 97–100 (DE [193]); *see also* SOMF ¶ 100 (DE [146]); (DE [69-13]). Defendants did not display any fiber lights during season 1. SOMF ¶ 102 (DE [146]). During season 2, fewer than 600 fiber lights were placed in bushes and near trees as filler and were not identified by Munro's name or by Fireflies work. *Id.* ¶¶ 103–04; *see also* (DE [174-6]) (photos of allegedly infringing exhibits). Night Garden, LLC's supplier for the fiber lights was Toprex, a Chinese company. SOMF ¶ 105 (DE [146]); OSOMF ¶ 105 (DE [187]).

The parties dispute the measure of damages Plaintiffs have suffered. Defendants

maintain that: (1) Plaintiffs are not sure how they were damaged, but Munro testified that damages included his "feeling in [his] heart" and "mental damage" caused by unauthorized copies of his works, SOMF ¶ 108 (DE [146]); (2) Plaintiffs cannot quantify their reputational harm, *id.* ¶ 109; (3) Plaintiffs are claiming damages for Munro's loss of exclusivity, *id.* ¶ 110; and (4) Plaintiffs are unaware of any lost business or third parties' refusal to work with Plaintiffs because of the NightGarden event, and no third parties have cancelled any existing agreements with Plaintiffs, *id.* ¶¶ 111–12.

In contrast, Plaintiffs maintain that these characterizations take Plaintiffs' witnesses' testimony out of context and that the witnesses simply had no knowledge of the damages; Plaintiffs instead rely on the Amended Complaint's assessment of damages. *See* OSOMF ¶¶ 108–12 (DE [193]) (citing Am. Compl. ¶¶ 67–75 (DE [69])). Plaintiffs also include a citation to the sealed expert report of Xiliary Twil (DE [170-1]), an art appraiser, though Plaintiffs do not actually point to a specific amount of damages in the record evidence. *See* OSOMF ¶ 108 (DE [193]).  Twil's report indicates that the "overall fair market value for court case purposes" of the damages resulting from the allegedly infringing NightGarden installations is $2,193,161.00.  (DE [170-1], at 1, 4, 8). Plaintiffs also point to BML's corporate representative's deposition testimony, where she testified that Fairchild was a potentially lost client because Zapata expressed interest in Munro's work, yet Fairchild ultimately "went with a different model," and Munro's work "was bastardized in a format that demeans its integrity and harms his reputation." (DE [138], at 161).  Plaintiffs do not dispute that BML's overall profits increased in 2019 compared to 2018, though BML does not record its profits on individual exhibitions. SOMF ¶ 113 (DE [146]).  While Defendants maintain that Plaintiffs have not attributed

any losses in 2020 to NightGarden, *id.* ¶ 114, Plaintiffs contend that season 2 of NightGarden continued operating through January 11, 2020, and Defendants' infringing content and DMCA violations are still displayed on their social media accounts, OSOMF ¶ 114 (DE [193]).

Plaintiffs also assert their own additional material facts.  Plaintiffs make representations about Munro's level of international renown and the "aim" of his art, which Defendants dispute as speculation, hearsay, opinion, or immaterial.  *See* OSOMF ¶¶ 115–16,119–20, 122 (DE [193]); RSOMF ¶¶ 115–16, 119–20, 122 (DE [205]).  The Court finds that these facts are not material to the issues presented in Defendants' Motion for Summary Judgment and therefore will be disregarded.

Plaintiffs also contend that CMI in the form of the works' titles and Munro as author was "[c]onveyed in connection with" each of Plaintiffs' works when they were originally presented and that no CMI was included on or displayed with "anything produced by the Defendants."  OSOMF ¶¶ 125–27 (DE [193]).  Plaintiffs further assert that Defendants removed CMI from Munro's works and that they "placed and conveyed false CMI on and with copies of" Munro's works.  *Id.* ¶¶ 136–37.  Defendants do not dispute that "Munro's name was not used on anything produced by Defendants," but they contend that whether CMI was conveyed with the works is a legal conclusion for the Court.  RSOMF ¶¶ 125–27 (DE [205]).

Plaintiffs also explain the materials, lighting mechanisms, non-functionality, and non-utilitarianism of Forest of Light, Field of Light, River of Light, and Fireflies.  OSOMF ¶¶ 129–33 (DE [193]).  Defendants assert that it is undisputed that Forest of Light, Field of Light, and River of Light "consist of spheres or bulbs that sit atop stems or sticks, into

which fiber-optic cable is strung into the sphere or bulb."  RSOMF ¶ 129 (DE [205]).  It is also undisputed that Fireflies "consists of a bundle of fiber optic cables."  *Id.* ¶ 130.  But Defendants argue that the functionality and utilitarianism of Munro's works are legal arguments.  *Id.* ¶¶ 131–33.  The Court agrees.  The Court also agrees with Defendants that the questions of whether Defendants "had access to" or "copied" Munro's works are legal arguments.  *See id.* ¶¶ 134–35.

Regarding damages, Plaintiffs assert that Defendants received revenue from both seasons of NightGarden.  OSOMF ¶ 138 (DE [193]).  Defendants maintain that only NightGarden, LLC and Kilburn Live "received revenue from the event."  RSOMF ¶ 138 (DE [205]).  Plaintiffs also assert that Twil prepared an appraisal report "on the fair market value payable for two hypothetical usage licenses of Munro works as of the 2018 Season 1 and the 2019 Season 2 NightGarden exhibitions at Fairchild."  OSOMF ¶ 139 (DE [193]).  Defendants do not dispute that Twil prepared an appraisal report, but they do dispute the basis of the report; they assert that Twil "has no experience with license fees and did not calculate any license fee for what hypothetical use at *NightGarden* would have been."  RSOMF ¶ 139 (DE [205]).  With this extensive factual framework in mind, the Court turns to the merits of Defendants' Motion for Summary Judgment.

## I.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018).  An issue is "genuine" if a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in

light of his burden of proof.  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).  And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case."  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law."  *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 F. App'x 817, 820 (11th Cir. 2015).

*Nakava, LLC v. S. Pac. Elixir Co.*, 2020 WL 4601641, at *1 (S.D. Fla. Aug. 10, 2020) (alteration in original).

## II.    DISCUSSION

For counts I and II, Defendants argue that summary judgment should be entered in their favor for five reasons: (1) "knock-offs" are not entitled to protection under the DMCA, 17 U.S.C. § 1202; (2) Plaintiffs' works are useful articles that are unprotectable basic shapes and lack creativity or originality; (3) there is no substantial similarity between Plaintiffs' and Defendants' installations because there are no protectable elements to copy; (4) the individual Defendants, as corporate officers, cannot be liable for contributory infringement as to their own entities; and (5) Plaintiffs cannot prove any actual damages and are not entitled to statutory damages or attorney's fees.  Regarding count III, Defendants argue that Plaintiffs fail to establish the double-scienter requirement of a CMI violation.

Plaintiffs respond that Defendants' arguments fail because they had a reasonable opportunity to access Munro's copyrightable works and intentionally copied them in their NightGarden exhibits.[4]  Plaintiffs also argue that Defendants removed CMI from Munro's

---

[4] Plaintiffs appear to argue that the Court should deny Defendants' Motion for Summary Judgment because the Court has already ruled that Defendants' mushroom and fiber light exhibits were "highly comparable" to Munro's works and that Munro's works are protectible as sculptures under the Copyright Act—rulings that Plaintiffs contend have become the law of the case.  *See* Resp. in Opp'n 13, 14 n.5, 21, 32–33 (DE 188-1) (quoting (DE 65), at 5–6). [footnote continued on next page]

works and that Defendants' state of mind is a factual question for a jury.  The Court addresses each count in turn.

## A. Direct Copyright Infringement (Count I) and Contributory Copyright Infringement (Count II)

Defendants first argue that Plaintiffs cannot prove valid copyrights in their works because the works are merely useful articles and lack the requisite originality.  Plaintiffs respond that any question of utility or originality is for the jury to decide.  Plaintiffs alternatively argue that their works are protectible as a matter of law.

To prove copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Singleton v. Dean*, 611 F. App'x 671, 672 (11th Cir. 2015) (citing *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994)).  Regarding the first element, under 17 U.S.C. § 410(c), a certificate of registration constitutes "prima facie evidence of the validity of the copyright" if the registration was "made before or within five years after first publication of the work."

A sculptural work, which includes a three-dimensional work of fine art, 17 U.S.C. § 101, may receive copyright protection, *id.* § 102(a)(5).  Sculptural works include "works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article . . . shall be considered a . . . sculptural work only if, and only to the extent that, such design incorporates . . . sculptural features that

---

But Plaintiffs misunderstand this doctrine.  First, a motion to dismiss and motion for summary judgment serve different purposes and are evaluated under different factual and evidentiary standards with respect to whether a plaintiff's suit may proceed any further.  Second, law of the case is an *appellate* principle.  *See Musacchio v. United States*, 577 U.S. 237, 245 (2016) ("The doctrine 'expresses the practice of courts generally to refuse to reopen what has been decided,' but it does not 'limit [courts'] power.' *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S. Ct. 739, 56 L. Ed. 1152 (1912). Thus, the doctrine may describe an appellate court's decision not to depart from a ruling that it made in a prior appeal in the same case." (alteration in original)).  Thus, any ruling at the motion-to-dismiss stage does not preclude the Court from reaching a different result after considering the record evidence, and law of the case is inapplicable here.

can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id.* § 101. "A 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *Id.* Regarding separate identification, "[t]he decisionmaker need only be able to look at the useful article and spot some . . . three-dimensional element that appears to have . . . sculptural qualities." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017). Regarding independent existence, "[t]he decisionmaker must determine that the separately identified feature has the capacity to exist apart from the utilitarian aspects of the article"; "[i]n other words, the feature must be able to exist as its own . . . sculptural work as defined in § 101 once it is imagined apart from the useful article." *Id.*

Aside from the separability test, "[t]o qualify for copyright protection, a work must be original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citation omitted). In this context, original "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* (citation omitted). Creativity is a low bar and requires "only some creative spark, no matter how crude, humble or obvious." *Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, 1409 (11th Cir. 2015) (quoting *Feist*, 499 U.S. at 345). But copyright protection does not extend to any aspect of the work that constitutes an "idea" or "concept." *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, 596 F.3d 1313, 1320 (11th Cir. 2010) (quoting 17 U.S.C. § 102(b)).

Regarding the second element of infringement, "[t]o establish copying, the plaintiff

must show that the defendant had access to the copyrighted work and that the two works are so 'substantially similar' that an average lay observer would recognize the alleged copy as having been appropriated from the original work." *Singleton*, 611 F. App'x at 672 (quoting *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002)).  "Access requires proof of 'a reasonable opportunity to view' the work in question."  *Olem Shoe Corp. v. Wash. Shoe Corp.*, 591 F. App'x 873, 882 (11th Cir. 2015) (quoting *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007)).  "If the plaintiff cannot show access, the plaintiff may still prevail by demonstrating that the works are 'strikingly similar.'"  *Singleton*, 611 F. App'x at 672 (quoting *Calhoun*, 298 F.3d at 1232 n.6). "Striking similarity exists where the proof of similarity in appearance is so striking that the possibilities of independent creation, coincidence, and prior common source are, as a practical matter, precluded."  *Id.* (citing *Corwin*, 475 F.3d at 1253).

Here, Defendants contend that Plaintiff cannot prove either element of copyright infringement.  As to valid copyright ownership, "the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright."  17 U.S.C. § 410(c).  The only U.S. registration at issue in this case is the August 24, 2019 registration for Forest of Light, and the work was first published in the U.S. on June 9, 2012.  Thus, it was not registered within five years of publication, and none of Plaintiffs' works in this case are entitled to a presumption of validity under § 401(c).[5]  Plaintiffs therefore carry the burden of establishing validity of their works.

---

[5] While Plaintiffs' OSOMF references another U.S. copyright registration for Munro's Field of Light at Sensorio work, that specific work is not alleged to have been infringed under any count in the Amended Complaint.  Thus, that registration is not at issue in this case and does not establish a presumption of validity.

Defendants contend that Plaintiffs' works do not satisfy the separability test because Munro's "stick-and-bulb" sculptures are simply useful articles, as evidenced by the U.S. Copyright Office's three rejections—once initially and twice on reconsideration—of Munro's application to copyright his "stick-and-bulb" design:



*See* (DE [148-4], [148-5], [148-6], [206-1]).  In response, Plaintiffs argue that Munro is not asserting copyright protection in those discrete components themselves; rather, he is claiming protection in his "unique and creative combination" of the unprotectable individual components in his own arrangements.  Resp. in Opp'n 36 (DE [188-1]).  Munro also argues that the rejection is not entitled to deference and that Forest of Light, which uses this design in Munro's own unique arrangement, is already copyrighted.

The Court agrees with Defendants.  In *Norris Industries, Inc. v. International Telephone & Telegraph Corp.*, 696 F.2d 918, 922 (11th Cir. 1983), the Eleventh Circuit held that a district court properly gives "some deference to the expertise of the [Copyright]

Register in its decision" of determining whether an article is ornamental or useful. "The expertise relied on is not technical expertise in the use of the article submitted for registration but expertise in the interpretation of the law and its application to the facts presented by the copyright application." *Id.*; *see also Alper Auto., Inc. v. Day to Day Imports, Inc.*, 2020 WL 5514414, at *4 (S.D. Fla. July 13, 2020) (applying deference to Copyright Office's decision "as to what is copyrightable and what is not" (quoting *Norris Indus., Inc.*, 696 F.2d at 922)).

Here, granting some deference to the Copyright Office's determination of utility and originality, the Court finds that Plaintiffs have failed to establish valid copyrights in their works at issue in this case. In the initial and second rejections of Munro's registration, the Copyright Office found that Munro's stick-and-bulb work was a useful article that did not contain any copyrightable ownership under *Star Athletica*'s separability test. In the Copyright Office's May 2021 final response letter after Munro's second request for reconsideration, the Copyright Office appears to have partially reversed its finding, agreeing with Munro that the work was "not a useful article because it is a sculptural work intended to be integrated into larger, site-specific installations and is not a lamp with the intrinsic utilitarian function of assisting sight." (DE [206-1], at 5). The Office maintained its decision, however, that Munro's work—both in its individual elements and in its design as a whole sculpture—did not contain the requisite originality required to obtain a copyright. *Id.*

Applying deference to that decision here, the Court agrees that Munro's stick-and-bulb design comprising Field of Light, Forest of Light, and River of Light does not have the required originality. Viewed as a whole, the arrangement of the glass orbs, tubes,

and filaments is not an original enough combination of functional components.  Although Munro maintains that he made creative artistic choices about the arrangement of the fiber positioning, *see* (DE [182-1] ¶ 20), the Court agrees with the Copyright Office that the positioning of a lighted filament within a glass orb is limited by the natural shape and curvature of the orb, making it a *de minimis* expression of an idea.  *See* (DE [206-1], at 5 n.3, 6).  Further, Munro is attempting to copyright the concept or idea of arranging several useful stick-and-bulb articles together in various landscapes, which is impermissible.  *See Utopia Provider Sys., Inc.*, 596 F.3d at 1320.

The same is true of Munro's Fireflies work.  It consists of bundles of fiber-optic filaments threaded through a copper tube until the filaments hang down, resulting in a tree-like shape, which is anchored to the ground with a spike.  Munro asserts in his declaration that Fireflies is not a useful article because "[t]he maximum amount of light emitted by a single Firefly is insufficient for any function other than as an element in [his] art installations, the purpose for which they were designed."  (DE [182-1] ¶ 47).  The Court is unpersuaded.  The components of Fireflies are useful articles that are not sufficiently original, even in their collective arrangement with several pieces, to warrant copyright protection.  *Cf. Progressive Lighting, Inc. v. Lowe's Home Ctrs., Inc.*, 549 F. App'x 913, 921 (11th Cir. 2013) ("[A]n entire useful article cannot receive copyright protection, no matter how many superfluous, aesthetic individual components it has.").  Thus, neither Munro's stick-and-bulb arrangements nor Fireflies satisfies the first element of a direct copyright infringement claim, and the Court need not reach Defendants' additional arguments regarding protectible elements, the defenses of copyright misuse and invalidity regarding Munro's Forest Registration, or damages.  Defendants are therefore entitled to

summary judgment in their favor on count I.

And because the direct copyright infringement claim fails, the contributory copyright infringement claim (count II) also fails. *See Cable/Home Commc'n Corp. v. Network Productions, Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) (holding that contributory copyright infringement occurs when "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another" (quoting *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987))); *id.* ("Contributory infringement necessarily must follow a finding of direct or primary infringement." (citation omitted)); *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1298 n.11 (11th Cir. 2008) ("[T]here can be no contributory infringement without a direct infringement[.]" (quoting *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004))).

## B. DMCA Violations (Count III)

Plaintiffs allege that Defendants violated both subsections of § 1202 of the DMCA, which governs the integrity of CMI:

> **(a) False copyright management information.**--No person shall *knowingly and with the intent* to induce, enable, facilitate, or conceal infringement--
>
> (1) provide copyright management information that is false, or
>
> (2) distribute or import for distribution copyright management information that is false.
>
> **(b) Removal or alteration of copyright management information.**--No person shall, without the authority of the copyright owner or the law--
>
> (1) *intentionally* remove or alter any copyright management information,
>
> (2) distribute or import for distribution copyright management information *knowing* that the copyright management information has been removed or

altered without authority of the copyright owner or the law, or

(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, *knowing* that copyright management information has been removed or altered without authority of the copyright owner or the law,

*knowing*, or, with respect to civil remedies under section 1203, *having reasonable grounds to know*, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(a)–(b) (italic emphasis added).  CMI includes the title of a work and "[t]he name of, and other identifying information about," the author or copyright owner of a work.  *Id.* § 1202(c)(1)–(3).

"Section 120[2](b) contains a so-called 'double-scienter' requirement because a defendant must (1) intentionally remove CMI, under subpart (a), or distribute works knowing that the CMI has been removed, under subpart (b)[;] and (2) have actual or constructive knowledge that such distribution will induce, enable, facilitate, or conceal an infringement."  *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 2021 WL 2384618, at *3 (S.D. Fla. May 3, 2021) (citing *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020)).  Similarly, subsection (a) of § 1202 also has double-scienter requirement.  *Yellow Pages Photos, Inc. v. Dex Media, Inc.*, 2021 WL 799695, at *7 (M.D. Fla. Feb. 3, 2021) (citations omitted).

Further, "[a]n action for removal of copyright management information requires the information to be removed from a plaintiff's product or original work."  *Miller v. Suriel Group, Inc.*, 2020 WL 6122246, at *3 (S.D. Fla. July 22, 2020) (quoting *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010)).  Consequently, where the CMI has not been affirmatively removed from the plaintiff's original work and some of the work's elements are merely copied into a different form

compiled by the defendant, there is no CMI violation under § 1202(b).  *See Faulkner Press*, 756 F. Supp. 2d at 1359; *see, e.g.*, *Design Basics, LLC v. WK Olson Architects, Inc.*, 2019 WL 527535, at *5 (N.D. Ill. Feb. 11, 2019) (finding that plaintiff did not state a claim for a DMCA violation because plaintiffs did not allege that defendant "directly reproduced their plans without CMI"; instead, plaintiffs alleged that defendant "copied aspects of its original works, with [defendant]'s plans appearing 'virtually identical'" to plaintiffs' plans, which is not a DMCA violation); *Frost-Tsuji Architects v. Highway Inn, Inc.*, 2014 WL 5798282, at *6 (D. Haw. Nov. 7, 2014) ("Reliance on another's work is insufficient to support a claim of removal of copyright management information." (citing *Faulkner Press*, 756 F. Supp. 2d at 1359)).

Subsections (a) and (b) of § 1202 "are different, independent causes of action." *Tomelleri v. Orlando Lakes & Wetlands, Inc.*, 2020 WL 6363765, at *2 (S.D. Fla. Mar. 30, 2020), *report and recommendation adopted sub nom. Tomelleri v. Natale*, 2020 WL 6343353 (S.D. Fla. Apr. 10, 2020).  Yet, in count III, Plaintiffs lump together all their DMCA claims under both subsections against all Defendants.  *See* Am. Compl. ¶¶ 174–78 (DE [69]).  Nevertheless, Plaintiffs attempt to clarify in their Response that Defendants committed CMI violations by: (1) preparing and distributing the pitch deck that affixed false CMI or altered the CMI; (2) publicly displaying without CMI the mushroom and fiber light exhibits at NightGarden, and showing guide maps or signage with false/altered CMI; and (3) posting and distributing photos and videos on social media and websites of the NightGarden exhibits without CMI and with false/altered CMI.  *See* Resp. in Opp'n 31 (DE [188-1]).

Plaintiffs also rely on a footnote in *Mango*, an out-of-circuit case, to support their

argument that they need not have personally affixed the CMI on their works to give rise to an actionable CMI claim.  *See* 970 F.3d at 171 n.1 ("The DMCA, by its express terms, contains no requirement that a copyright owner personally affix CMI.  We therefore reject BuzzFeed's argument that Mango's gutter credit[6] cannot constitute CMI because he did not personally affix it to the Photo in the *New York Post* article." (citing *GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 845 (N.D. Ill. 2019) ("Nowhere does the text of section 1202 suggest that removal of copyright management information is only a violation if that information was placed on the copyrighted materials by the plaintiff itself.  Such a reading would lead to the absurd result where a copyright owner who contracts with another entity to manufacture their products—and in the process to affix copyright management information—could not avail itself of the DMCA's removal provisions."))); *see also Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305 (S.D.N.Y. 2011) ("This Court rejects the movants' argument that CMI must be removed from the photograph itself to state a claim for removal or alteration of CMI.").

But Plaintiffs misconstrue these cases.  First, it is clear from the plain language of § 1202(b) that the defendant itself must "remove" or "alter" CMI—that is, must affirmatively take away or modify something that was already there.  *See Remove*, Merriam-Webster Dictionary ("to get rid of: eliminate"); *Alter*, Merriam-Webster Dictionary ("to make different without changing into something else"); *see also Frost-Tsuji Architects*, 2014 WL 5798282, at *8 (stating that a defendant's "mere receipt and possession of a copyrighted work that has allegedly had [CMI] removed does not violate § 1202(b)(1)").  Thus, to the extent that Plaintiffs contend that their works did not need to have any original CMI, this

---

[6] "Gutter credit" as used in *Mango* was the photographer's attribution included in the text of the article.

argument is unpersuasive.

On the other hand, the Court does agree with Plaintiffs that, under the plain language of the statute, the CMI need only be "conveyed in connection with" copies of the work; it need not be affixed to the actual *body* of the work.  *See* 17 U.S.C. § 1202(c). Although there is out-of-circuit legal support for Defendants' argument that the CMI must be affixed to the "body of" or "area around" the work, *see, e.g.*, *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 929 (N.D. Ill. 2013) (quoting *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 2012 WL 414803, at *7 (N.D. Ill. Feb. 8, 2012)), the Court rejects this argument because it contravenes the statute's plain language, which is not so restrictive, *see, e.g.*, *Tomelleri v. Zazzle, Inc.*, 2015 WL 8375083, at *13 (D. Kan. Dec. 9, 2015) ("The Court does not believe that the phrase 'conveyed in connection with copies . . . of the work' requires that the information be located immediately adjacent to the [work] to qualify as CMI.").

Nevertheless, Plaintiffs' DMCA claim still fails.  As Defendants correctly point out, it is undisputed that Plaintiffs did not create the allegedly infringing mushroom and fiber light NightGarden exhibits or the "Buy Tickets" webpage and guide map.  None of these items are Plaintiffs' works.  Thus, Plaintiffs cannot establish that Defendants—knowingly and with the intent to enable infringement—provided or distributed false CMI under subsection (a) with respect to these materials. *See* 17 U.S.C. § 1202(a)(1)–(2).  The same is true of the pitch deck images circulated among Defendants.  The pitch deck photos themselves were taken and created by third parties at Munro's direction, and Munro concedes that he has no copyrights in the original works of the images themselves.  Most importantly, the undisputed evidence indicates that Defendants found the images through

a Google search.  There is no evidence that any Defendant removed or altered CMI from the images found on Google, much less that any Defendant acted with the double-scienter requirement.  And even if the pitch deck images are considered copies of works under § 1202(b)(3) and were distributed among Defendants (and not to the public), there again is no evidence that Defendants *knew* that CMI was removed or altered without Plaintiffs' authority.  Plaintiffs argue that Defendants' state of mind is a jury question.  But, in the absence of any counterevidence offered by Plaintiffs, there is no factual question about whether Defendants removed or altered CMI or added false CMI.  Thus, there is no DMCA violation for the pitch decks.  Defendants are therefore entitled to summary judgment in their favor on count III.

## IV.    CONCLUSION

Defendants are entitled to summary judgment in their favor on all three counts of the Amended Complaint.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Joint Motion for Summary Judgment (DE [145]) is **GRANTED**.  All other pending motions are **DENIED AS MOOT**.  Final judgment will be entered separately.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 13th day of January 2022.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel via CM/ECF