UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-20079-SINGHAL/LOUIS

BRUCE MUNRO, *et al.*,

    Plaintiffs,

v.

FAIRCHILD TROPICAL BOTANIC
GARDEN, INC., *et al.*,

    Defendants.

**DEFENDANTS' RESPONSE PARTIALLY OPPOSING MUNRO'S
SECOND MOTION FOR DEFAULT JUDGMENT AGAINST G-LIGHTS**

Defendants[1] file this response to partially oppose the "Second Motion for default judgment against Defendant G-Lights" (D.E. 263; the "Motion") filed by Plaintiffs Bruce Munro and Bruce Munro, LTD. (collectively, "Munro"). The Defendants take no position in relation to a default judgment against those non-intertwined claims exclusively brought against G-Lights but do oppose Munro's Motion to the extent it 1) moves this court to vacate or reconsider summary judgment; and 2) seeks judgment concerning intertwined works brought against the Defendants which would be inconsistent with the summary judgment ruling in this case.

**BACKGROUND**

This matter stems from Munro's unfounded accusations that Defendants committed copyright infringement and violated the DMCA related to use of lights at Defendants' outdoor

---

[1] As always, the term "Defendants" or "NightGarden Defendants" includes Fairchild Tropical Botanic Garden, Inc.; Night Garden, LLC; Kilburn Live, LLC; Nannette M. Zapata; Kilburn Media, LLC; Mark C. Manuel; Imaginer Ltd.; Imaginer, Inc.; and Max Painter; the term excludes defaulted defendant Zhongshan G-Lights Lighting Co., Ltd.

1

*NightGarden* event. (D.E. 69). Munro's chief complaint against Defendants pertains to two lights – a stick-and-bulb light and a fiber-optic strand light – that Munro uses in his various displays he coined *Forest of Light, Field of Light, River of Light* and *Fireflies.* Munro also asserted that G-Lights infringed on Munro's works – both those alleged against Defendants and other, unrelated works – by virtue of photographs appearing on G-Lights' website.

G-Lights appears to be a China-based manufacturer of various lighting components. G-Lights sells lighting components and other items via its website and/or related company, Alibaba. (D.E. 69). Here, G-Lights sold some lighting components, through Alibaba, to Defendant Kilburn, which were then used to assemble and display "mushroom" lights at *NightGarden* that Munro complains infringe on his stick-and-bulb light used in his *Forest of Light*, *Field of Light* and *River of Light* works. (D.E. 146 ¶ 100-101)(discussing components for the *NightGarden* mushroom light). Munro also alleges that G-Lights advertises and/or sells fiber-optic lights that infringe on his *Fireflies* work, although Defendants did not purchase any fiber light components from G-lights. (D.E. 146 ¶ 105). As alleged by Munro, G-Lights also advertises lights on its website using photographs of Munro's actual light displays, (D.E. 69), although the evidence is clear that Defendants did not recall any reference or connection to Munro in purchasing its mushroom light components from G-Lights and Munro presented no evidence that the Munro displays were on G-Lights website at the time Defendants purchased the light components. (D.E. 146 ¶¶ 90-91, 95; D.E. 147 ¶ 21).

On January 13, 2022, the Court granted summary judgment in favor of Defendants, entering final judgment against Munro, and denying all other pending motions as moot. (D.E. 216; 217). Munro appealed the summary judgment order to the Eleventh Circuit. On appeal, the Eleventh Circuit dismissed Munro's petition for lack of appellate jurisdiction because "the district

court's judgment in favor of the *NightGarden* defendants wasn't final because Munro's claims against G-Lights remain pending." (D.E. 232 at 10). Munro thereafter asked this Court to re-open or reconsider summary judgment and to hold a status conference. The Court denied Plaintiffs' request for reconsideration (D.E. 236) and granted the request for a Status Conference. After a Status Conference on November 6, 2023, this Court entered an Order on Default Final Judgment Procedure requiring that Munro's motion for default be filed by December 14, 2023 (D.E. 239). After multiple extensions, Munro filed his original default motion on February 20, 2024, and the parties completed briefing on April 8. Upon review, the Court determined that Munro never sought a default against G-Lights on the operative, Amended Complaint and denied Munro's original motion for default. Munro then sought and obtained a clerk's default on the Amended Complaint and filed his second Motion (D.E. 263). It is unclear to Defendants whether G-Lights was ever served with the Amended Complaint.

Meanwhile, Munro sued the U.S. Copyright Office after the Office issued a final rejection of Munro's stick-and-bulb light application because, it held, the light was uncopyrightable. On March 18, 2024, the District Court for the District of Columbia affirmed the U.S. Copyright Office's rejection of Munro's stick-and-bulb light by granting summary judgment in favor of the Copyright Office and denying Munro's motion for summary judgment. *See* Opinion attached to Defendants' Notice of Supplemental Authority filed at (D.E. 253).

For the reasons explained below, this Court should reject Munro's request to reconsider summary judgment. Further, Defendants take no position on the viability of a default judgment against G-Lights regarding the *non-intertwined* works at issue. Defendants have standing[2] and do

---

[2] *Tan v. Sushi Yama Japanese Rest., Inc.*, 20-20679-CIV, 2020 WL 6293216, at *3 (S.D. Fla. Aug. 4, 2020), *report and recommendation adopted,* 20-20679-CIV, 2020 WL 6290345 (S.D. Fla. Oct. 27, 2020) (counting cases for the proposition that a non-defaulted defendant has standing to oppose

object, however, to Munro's request that this Court reconsider and/or vacate summary judgment, hold a trial, or enter judgment as to works and claims also alleged against Defendants and disposed of in their favor at summary judgment.

Additionally, Munro's request for hearing should be denied. The parties attended a status conference in this matter in November 2023 - at Munro's request - regarding default judgment. The Court instructed Munro to briefly set out his request for judgment and to refrain from using the motion to argue that the court reconsider or revisit summary judgment. Despite that, Munro has not heeded the Court's Orders regarding brevity or reconsideration of summary judgment nor has he complied with the local rules concerning extensions and page limits. Because Munro is using his Motion as another attempt to unravel the summary judgment in this case despite repeated Court instructions, another hearing will be a waste of party and judicial resources as Munro again attempts to re-argue the merits of the summary judgment entered in Defendants' favor more than two years ago. This issue before the Court is simply whether and to what extent Munro is entitled to judgment against the defaulted defendant G-Lights. It is, in part, not entitled to judgment against G-Lights. Because this Court found that the lights are uncopyrightable and the DMCA claims are similarly unsupported because none of the complained-of works were owned by Munro, entering

---

a motion for default judgment if the defendants may be jointly and severally liable). The logic of standing applies whenever there is the possibility of inconsistent results, regardless of joint and several liability. *See N. Pointe Ins. co. v. Glob. Roofing & Sheet Metal, Inc.*, No. 6:12-cv-476-Orl-31TBS, 2012 WL 5378740, at *1 (M.D. Fla. Oct. 31, 2012). ("[W]hen a default is entered against one defendant in a multi-defendant case, the preferred practice [within the Eleventh Circuit] is for the court to withhold granting a default judgment until after trial on the merits against the remaining defendants."); *Mayorga v. Stampt Concrete & Pavers, Inc.*, No. 13-81274-CIV, 2015 WL 3556972, at *2 (S.D. Fla. June 4, 2015) ("the relevant distinction is not whether liability is joint or joint and several. Instead, the question turns on 'whether under the theory of the complaint, liability of all the defendants must be uniform") (cleaned up; citation omitted); *Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) ("when defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits").

default judgment or holding a trial on these same intertwined works and overlapping claims would be inconsistent with this Court's prior ruling, and in error.

## ARGUMENT

### I. Munro's unfounded request to vacate summary judgment should be rejected.

This Court's Orders on Default Final Judgment Procedure specify that Munro should "*briefly* describe all allegations and advise the Court" and caution that "Plaintiffs are not to treat their motion for default judgment as a motion for reconsideration of this Court's Order." (D.E. 239 at 2; D.E. 260 at 2)(emphasis added). Indeed, this Court already made clear that it was not inclined to revisit summary judgment. *See* Page 23, ll. 23-25, Transcript of November 6, 2023 Status Conference filed at (D.E. 252-1); *see also* (D.E. 236) (Order denying Munro's general request for reconsideration contained in his request for status conference at D.E. 233).

Despite these instructions, Munro spends several pages of the Motion asking this Court to reconsider or vacate its summary judgment ruling, suggesting that a joint trial with the NightGarden Defendants and G-Lights is proper and requesting a damage award against *all* Defendants. (D.E. 263 at 19, 28). Munro's request to reconsider and vacate summary judgment is untimely, unsupported and should be rejected.

"[R]econsideration is an extraordinary remedy which must be used sparingly." *Guevara v. NCL (Bahamas) Ltd.*, 15-24294-CIV, 2017 WL 6597980, at *1 (S.D. Fla. May 26, 2017) (citation omitted). As this Court has explained, "a court may grant reconsideration only for newly discovered evidence or manifest errors of law or fact. A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Noble House, LLC v. Underwriters at Lloyd's, London*, 20-62080-CIV, 2021 WL 10282317, at *1 (S.D. Fla. Apr. 27, 2021) (denying motion for reconsideration) (cleaned up;

5

quoting *Phillips v. Soc. Sec. Admin., Comm'r*, 833 F. App'x 308, 322 (11th Cir. 2020); *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)). And a "manifest error," in this context, constitutes "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Blackmon v. Jones*, 16-60901-CIV, 2019 WL 8752279, at *1 (S.D. Fla. Jan. 11, 2019) (citation and brackets omitted).

In addition to the fact that Munro did not make any attempts to comply with Rule 59's 28-day requirement to alter or amend the judgment back in 2022, Munro has also not specified any newly discovered evidence or manifest error of law. *See* Rule 59, Fed. R. Civ P. Munro also cites *Federated Bank v. FDIC,* 645 F. App'x 853 (11th Cir. 2016) and *Toole v Baxter Healthcare Corp.* 235 F.3d 1307 (11th Cir. 2000) to suggest that this Court can reconsider summary judgment at any time outside of the bounds of Rule 59. (D.E. 263 at 20). However, *Federated* and *Toole* did not involve a procedural history analogous to what we have here; namely, a summary judgment decision and entry of final judgment that remained as status quo through an appeal, only to have Munro belatedly request reconsideration almost 2 years later with no basis to do so. *See Federated*, 645 F. App'x at 860 (affirming the trial court's reconsideration of its denial of summary judgment and subsequent granting of same); *Toole,* 235 F.3d at 1315 (finding no error where trial court revoked its order for a new trial).

Instead, he states in conclusory fashion that summary judgment can be revised or should be vacated because of an unidentified United Kingdom law. But the only reference to the United Kingdom in this lawsuit up to this point is Munro's contention that three of his works were first published in the United Kingdom and are therefore exempt from U.S. copyright registration requirements via the Berne Convention and the Copyright Act 17 U.S.C § 411(c) (a United States statute). Munro has never requested that this Court apply UK law to his claims at any time (nor

would it likely be appropriate). Rule 44.1 requires that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." *See* Fed. R. Civ. P. 44.1; *World Fuel Servs., Inc. v. M/V PARKGRACHT*, 489 F. Supp. 3d 1340, 1345 (S.D. Fla. 2020). Munro never did so.

Furthermore, Munro's suggestion that UK law should govern Munro's ownership and copyrightability ignores the established finding here that the lights were uncopyrightable. As an initial matter, Munro himself brought claims under the U.S. Copyright Act and never raised a conflict or choice of law issue at any time, including in his own summary judgment motions.[3] The instant Motion cites to U.S. copyright law to support his claims of liability and damages against G-Lights. Further, none of Munro's cited cases provide a basis for his request to reconsider or vacate summary judgment on any grounds, including applicability of non-descript UK law. For instance, Munro's citation to *Saregama India Ltd. v. Moseley* for the proposition that UK law governs Munro's copyright ownership is not instructive here because *Saregama* involved an issue regarding whether Plaintiff had standing under an agreement and assignment governed by Indian copyright law to assert the claims over the musical work at issue. 635 F.3d 1284 (11th Cir. 2011). Similarly, *RCTV Int'l Corp v. Rosenfeld*, 2016 WL 6818955 (S.D. Fla. 2016) decided the parties' conflict of law dispute related to Venezuelan copyright ownership and transfer of same, none of which is at issue here. While it is true that a foreign work can form the basis for a U.S. copyright action without meeting the pre-registration requirements, the issue of pre-registration and

---

[3] *See Cavic v. Grand Bahama Development Co., Ltd.,* 701 F.2d 879, 882 (11th Cir.1983) (noting that Federal Rule of Civil Procedure 44.1(1) requires parties to give written notice of their intention to assert foreign law, and applying Florida law where the parties did not raise a conflict of laws issue in the district court or on appeal), *cited in Federacion Nacional Autonoma de Futbol de Honduras v. Traffic Sports USA, Inc.*, No. 08-21505-MC, 2008 WL 4056295, at *3 (S.D. Fla. Aug. 29, 2008).

ownership (or transfer of such ownership to convey standing) is distinctly different from whether, as a matter of law, the actual works are copyrightable or capable of being infringed. The authority Munro cites is simply neither analogous to the case at hand nor does it absolve Munro from his obligations to comply with the Federal Rules, including Rule 59. Importantly, regardless of the procedural mechanism, Munro provides *no* basis to reconsider summary judgment. Munro's argument here boils down to the notion that he simply believes he is entitled to have a jury "determination of those 'intertwined' claims" under both US and UK law without explanation or support. (D.E. 263 at 14).[4]

In short, there is no basis to reconsider summary judgment, and Munro's use of the default judgment procedure to thwart or contradict this Court's established ruling in favor of Defendants on this issue is improper. Similarly, because this Court found that the lights are uncopyrightable and not capable of sustaining a copyright claim, and the DMCA claims are similarly unsupported because none of the complained-of works were owned by Munro, entering default judgment or holding a trial on these same works would be inconsistent with this Court's prior ruling, and in error. The request should be denied.

---

[4] Munro's premonitions about how the Eleventh Circuit feels substantively about the case based on questions asked during oral argument—typical panelist banter toward both sides—is similarly unfounded. As stated in Defendants' Response to Munro's request for status conference (D.E. 234), hypothesizing about the possible substantive effect of an appellate panelist's questions during oral argument—especially when the appellate court as a whole disclaimed the authority to consider any substantive issues—falls well short of demonstrating "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *See Blackmon*, 2019 WL 8752279, at *1. *C.f. United States v. Percoco*, 16-CR-776, 2019 WL 493962, at *8 (S.D.N.Y. Feb. 8, 2019) ("Reading the tea leaves of oral argument is an act of pure speculation. The Second Circuit did not specify the basis for its decision on *Silver*'s motion, and this Court does not find it appropriate to look past that decision.")

**II.     Defendants take no position regarding non-intertwined works.**

As to Munro's request for a default judgment related to *non-intertwined* works, the NightGarden Defendants take no position. The non-intertwined works are those works Munro calls *Beacon, Bell Chandelier, Blue Moon, Brass Monkeys, Fagin's Urchins, Icos, TePees, Water-Towers* and *Whizz Pops*, as discussed in the Motion (D.E. 248 pg. 9) and listed in Table II of the Rothman Declaration (D.E. 263-1 ¶ 22). The NightGarden Defendants also take no position on the photographs allegedly displayed on G-Lights website(s) pertaining to *Forest of Light, Fireflies, Field of Light* and *River of Light* to the extent the photographs are different than those alleged against NightGarden Defendants. *See e.g.* (D.E. 263-18 and D.E. 263-19) (Alibaba website screen shots displaying photographs of *Water-Towers* and *Brass Monkeys*). However, three photographs do overlap: a CGI-generated image of stick-and-bulb lights, an image of *Field of Light* with a building in the background, and a photograph displaying a few fiber optic lights at night. As to these photographs that *do* overlap and were the subject of Defendants' summary judgment briefing and Order (D.E. 145-148, 206-207, 216), default judgment is improper as to those works and should not be entered (see Section III(c), *infra*). Finally, the Defendants take no position on whether jurisdiction is proper or whether service was perfected as to G-Lights on the Amended Complaint.

**III.    Munro's request for default judgment and/or a trial pertaining to intertwined works should be rejected.**

Munro has brought intertwined claims and works against G-Lights and Defendants related to certain lights (stick-and-bulb, fiber light), the contributory infringement claim, and three photographs as further discussed below. To that end, this Court cannot enter judgment regarding 1) the alleged copyrightability and infringement of lights used in Munro's *Field of Light, Forest of Light,* or *Firefly* works (Count I and II); 2) the contributory infringement claim (Count II); and

9

3) CMI and/or direct violations as to photographs alleged against both G-Lights and Defendants (Count I and III).

As a basis for his request for judgment on the intertwined claims, Munro states that outdated case law predating *Gulf Coast Fans* entitles him to judgment, and he doesn't know where to draw the line on intertwined works. (*See* D.E. 263). But none of Munro's arguments warrant a judgment on the intertwined claims. This Court should not walk into error (vis a vis a contradictory ruling) based on Munro's request.

First, the cases are clear that when the same claims are brought against parties either jointly and severally liable or even simply similarly situated, a judgment should not be entered against a defaulted defendant that is unfair and inconsistent with judgments pertaining to non-defaulted defendants on intertwined claims. *See Gulf Coast Fans v. Midwest Electronics Importers, Inc.,* 740 F.2d 1499 (11th Cir. 1984). In *Gulf Coast Fans*, the Eleventh Circuit vacated a default judgment against a defaulted party after the similarly situated defendants prevailed on the merits. In so doing, it affirmed the rule that when a non-defaulted defendant prevails, the trial court cannot enter a default judgment against a jointly liable—or even similarly situated—but defaulted defendant. *Id.* at 1512; *see also* 11th Circuit Opinion (D.E. 233-1 at 5) (pointing out some of the non-intertwined claims here and suggesting that *Gulf Coast* may apply to prevent entry of judgment on the intertwined claims). Other cases have held that a previously obtained dismissal prevents a later judgment against a defaulted defendant as to the same claims. *Barbuto v. Miami Herald Media Co.*, No. 22-12478, 2023 WL 3773707 at *2 (11th Cir. June 2, 2023) (denying plaintiff's request for default judgment on defamation claim that had already been dismissed based on the statute of limitations and fair report privilege as to another defendant); *Ben-Yishay v. Mastercraft Development LLC*, No. 08-14046-CIV-MOORE/LYNCH, 2009 WL 10667252 at *1 (S.D. Fla.

10

Aug. 26, 2009) (denying plaintiff's request for default judgment on claims that had been dismissed as to other defendants because the entry of default would create risk of incongruous or inconsistent adjudications of the same claim). Munro's cited cases regarding multiple, defaulted defendants related to counterfeit goods marketplaces (D.E. 263 at 16) are not analogous. Those cases did not involve the procedural posture in the instant matter; namely, a summary judgment ruling in favor of defendants regarding works also alleged against a defaulted co-defendant. Those cases did not create a risk of inconsistent judgments as is the case here. Accordingly, this Court should refrain from entering judgment on the intertwined claims.

Second, Munro's confusion regarding demarcation between claims seems to be a product of his own inarticulate pleadings and misinterpretation of the record facts. For instance, Munro incorrectly states that "G-Lights online stores sold knock-off copies and componentry for …*Forest of Light, Fireflies, Field of Light and River of Light…*" thereby "causing the NightGarden activations to infringe these Munro works." (D.E. 263 at 19). With regards to the fiber light—the work that Munro claims infringes his work called *Fireflies*—the evidentiary record is clear that the NightGarden defendants *did not* order the lights from G-Lights (D.E. 146 ¶ 105). Munro also incorrectly argues that he is entitled to judgment "as to G-Lights' involvements in the NightGarden activations" (D.E. 263 at 23). But again, G-Lights was not involved in *NightGarden* at all. Rather, the record is clear that Kilburn Defendants purchased some light component pieces (bulbs, fiber-optic cable, sticks) from a representative working for Alibaba, which were then custom assembled and arranged by Defendants at the Fairchild botanical gardens in Miami. (D.E. 146 ¶ 87).

Regardless of Munro's confusion, the intertwined works and claims are clear, and this Court should not enter default judgment on those items now after Defendants prevailed on them.

A. **Judgment should not be entered against G-Lights on lights held to be uncopyrightable**

Against Defendants, Plaintiffs complain about the use of two lights at *NightGarden* – a stick-and-bulb light (referred to at *NightGarden* as "mushrooms") and a fiber light. (D.E. 69; D.E. 146 ¶¶ 28, 30-31). Munro's chief complaint against Defendants is that they used lights that resemble those that Munro uses in his own displays. Munro's case was never alleged to be about the number of lights used or the selection and arrangement of them. In fact, Munro testified that this case is not about selection and arrangement but is about *NightGarden*'s use of similar stick-and-bulb and fiber lights to create their own arrangements. (D.E. 146 ¶ 30). Based on the record, which included the U.S. Copyright Office's refusal of Munro's stick-and-bulb light, this Court correctly determined that the lights themselves are uncopyrightable and in part useful articles. (D.E. 216 at 19-21)(finding that the lights do not have the required originality and stating "Munro is attempting to copyright the concept or idea of arranging several useful stick-and-bulb articles together in various landscapes, which is impermissible").

Munro now seeks judgment as to the intertwined, uncopyrightable lights in contravention of this Court's Orders (D.E. 216, 239).[5] Essentially ignoring summary judgment, Munro claims that his lights are not a useful article, and that his original (now inoperative) Complaint survived dismissal (D.E. 248 at 17). Munro is attempting to obtain judgment in direct conflict with the Court's summary judgment decision on the *operative* Amended Complaint – issued two and a half years before Munro obtained a clerk's default against G-Lights – including, in part, the Court's

---

[5] To Defendants' understanding, Munro is not asserting *direct* infringement claims against G-Lights for the lights themselves, as he did against Defendants. Munro does, however, discuss the lights themselves, including G-Lights' sale of stick-and-bulb style light components, in connection with its contributory infringement claim (D.E. 248 at 14).

12

determination that the lights are useful articles (D.E. 216).

This Court should similarly reject Munro's attempt to railroad a holding that his lights are in fact copyrightable despite findings at summary judgment.[6] *See also* (D.E. 233-2 at 11-12) (Judge Luck pointing out that Munro disclaimed copyright in the lights and components individually).

In short, this Court cannot enter judgment against G-Lights on Count I or II regarding the stick-and-bulb and *Fireflies* lights that this Court already held to be uncopyrightable.

### B. Judgment should not be entered on the contributory infringement claim.

Munro's Motion admits that he alleges joint and several liability as to the contributory infringement claim. (D.E. 248 at 14). More specifically, Munro alleges that G-Lights contributed to Defendants' purported infringement because G-Lights sold certain light components to Defendants that Defendants then used at *NightGarden*. (D.E. 69; D.E. 248 at 14). But because the copyright infringement claim failed, under *Gulf Coast Fans*, judgment against G-Lights for contributory infringement would be improper. *Gulf Coast Fans, Inc.* 740 F.2d at 1512 (11th Cir. 1984) (holding that even when "defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits"); *Drill S., Inc. v. Int'l Fid. Ins.*, 234 F.3d 1232, 1237 n.8 (11th Cir. 2000) (stating "where multiple defendants are jointly liable, it would be 'incongruous' for judgment to be entered against a

---

[6] In re-arguing the merits of his non-copyrightable lights, Munro points to a recent summary judgment decision involving "art" – a banana and orange duct-taped to a wall - to suggest that Munro's works are copyrightable. *Morford v. Cattelan*, No. 21-20039-CIV, 2023 WL 3971968, at *7 (S.D. Fla. June 12, 2023), *aff'd sub nom.* No. 23-12263, 2024 WL 3857453 (11th Cir. Aug. 16, 2024). Munro misrepresents the holding of the case in claiming the Court found the fruit work was original, creative and not a useful article, even surviving summary judgment. (Motion at 17). However, the Court – in granting summary judgment for the defendant – found that the works were not substantially similar and that that the fruit work contained "few" protectible elements. 2023 WL 3971968 at *7. Useful article was not discussed at all. Much like the instant matter, the Court there stated that Plaintiff "cannot claim a copyright in the idea" of affixing a banana to a vertical plane using duct tape and "cannot claim a copyright in bananas or duct tape." *Id.*

defaulting defendant…"). Accordingly, this Court should not enter default judgment on Count II for contributory infringement.

### C. **Judgment should not be entered on intertwined photograph works.**

Munro also seeks judgment against G-Lights pertaining to the direct infringement claim and DMCA claim (Counts I and III) related to photographs allegedly displayed on G-Lights' website. As to Defendants, Munro alleged that a handful of photographs appearing in internal pitch decks (along with some other Defendant-created works such as a *NightGarden* map) infringe on Munro's rights under the DMCA. (D.E. 69). The Court correctly decided that the DMCA claim failed because none of the works complained of against Defendants were owned or created by Munro, there was no evidence of CMI removal or alteration, and no evidence that Defendants possessed the required scienter for such a claim. (D.E. 216 at 25-26); 17 U.S.C. § 1202.

In light of the summary judgment decision, specifically the fact that Munro does not own the photographs he complains about, this Court should refrain from entering judgment with regards to the photographs alleged against G-lights and *also* alleged against Defendants. (D.E. 146 ¶¶ 73-76; D.E. 216 at 25-26). Specifically, this overlap pertains to three photographs: a CGI-generated image of bulbs, an image of *Field of Light* with a building in the background, and a photograph displaying a few fiber optic lights at night. The CGI-generated image was generated by a third party, contained a third-party marking, and does not depict a real Munro installation. (D.E. 69 Fig. 15, 19; D.E. 216 at 5 (Fig. 19) D.E. 146 ¶¶ 59-60; 148-12 at 6). The *Field of Light* with building photograph was taken by a third party, contains no CMI and is not owned by Munro. (D.E. 69 Fig 20; D.E. 216 at 5 (Fig. 20); D.E. 146 ¶¶ 63-67; 74-76). The nighttime fiber optic light photograph was also taken by a third party, contains no CMI and is similarly not owned by Munro. (D.E. 69 Fig. 8, 21; D.E. 216 at 6 (Fig. 21); D.E. 146 ¶ 71; D.E. 148-12 at 35). According to the Amended

14

Complaint, these three photographs also appeared on G-Lights' various websites (D.E. 69 Fig 23, 69-14 at 4, 69-16 at 6).[7] Importantly, the undisputed evidence resulted in a judgment in Defendants' favor as to these (and other) photographs. Accordingly, judgment should not be entered on these intertwined photographs.

### IV. Damages and injunctive relief

Regarding Munro's request for damages and injunctive relief as to non-intertwined works, Defendants again take no position on whether Munro is entitled to such damages, whether the damages are speculative, appropriately calculated or proven, or whether a trial on damages is appropriate.

As to the intertwined works, however, Defendants object to Munro's attempt to railroad a large damage award pertaining to lights that were found by this Court and U.S. Copyright Office to be uncopyrightable, as was affirmed by the District Court for the District of Columbia, and as similarly acknowledged by Munro (D.E. 146 at ¶ 20-22, D.E. 206-1; D.E. 216 at 19-21; D.E. 233-2 at 12; D.E. 253). For instance, Munro attempts to recover multiple retroactive licensing fees totaling millions of dollars based on "NightGarden infringements" and "NightGarden activations" for light components that G-Lights did not assemble and/or Defendants did not purchase from G-Lights. (D.E. 263 at 27). Munro also baselessly claims that Munro is entitled to recover these sums from G-Lights and Defendants jointly, despite Defendants prevailing in this case. (*Id.* at 28).

This Court should also refrain from a damage award as to the contributory claims and photographs that were disposed of in Defendants' favor at summary judgment. *See Gulf Coast*

---

[7] Based on the exhibits filed by Munro, Defendants were able to identify the three (3) photographs outlined herein as those that overlap with those alleged against Defendants. To the extent Munro is claiming any of the other photographs from Defendants' pitch decks (D.E. 148-12) appeared on G-Lights' websites and therefore also overlap, judgment should not be entered on those either.

*Fans, Inc. v. Midwest Elecs. Imp., Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) ("[i]t would be incongruous and unfair to allow [plaintiff] to collect a half million dollars from [a defaulted defendant] on a contract that a jury found was breached by [plaintiff]."). Accordingly, this Court should not enter a damage award on the intertwined claims.

## CONCLUSION

Munro's use of the default judgment procedure against G-Lights to re-open summary judgment in favor of the remaining defendants should be rejected. Further, Defendants take no position on the validity or appropriateness of a default judgment against G-Lights regarding non-intertwined works. However, the Court should refrain from entering judgment and any monetary award on the works and claims intertwined with Defendants—the stick and bulb and fiber lights used by Munro in his *Forest of Light, Field of Light, River of Light* and *Fireflies* displays, the contributory infringement claim and the three photographs that are part of the DMCA claims against all defendants—which would result in inconsistent and incongruent judgments in this matter.

Dated: August 30, 2024.

Respectfully Submitted,

SHULLMAN FUGATE PLLC

**Allison S. Lovelady**
Deanna K. Shullman (FBN 514462)
Allison S. Lovelady (FBN 70662)
Minch Minchin (FBN 1015950)
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Tel: (561) 614-2592
dshullman@shullmanfugate.com
alovelady@shullmanfugate.com
mminchin@shullmanfugate.com

*Attorneys for Defendants*

16